UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KEITH DOUGLAS,

                              Petitioner,

v.                                                          9:19-cv-00952
                                                            (LEK/TWD)

TIMOTHY McCARTHY,

                              Respondent.
_____

APPEARANCES:                                OF COUNSEL:

KEITH DOUGLAS
*Petitioner, pro se*
15-A-0253
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562

HON. LETITIA JAMES                          MARGARET A. CIEPRISZ, ESQ.
Attorney General for the State of New York  Assistant Attorney General
*Attorney for Respondent*
28 Liberty Street
New York, NY 10005

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

### I.    INTRODUCTION

       This matter has been referred for a report and recommendation by the Hon. Lawrence E.

Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

72.3(c).  Petitioner Keith Douglas ("Petitioner"), a New York State prisoner appearing *pro se*,

has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Dkt. No. 1.)  He is

currently incarcerated at Sing Sing Correctional Facility.  (Dkt. No. 20.)  In 2015, following a

trial by jury, Petitioner was convicted in Albany County Court of three counts of third degree

criminal possession of a controlled substance, one count of fourth degree criminal possession of a controlled substance, two counts of second degree criminally using drug paraphernalia, two counts of third degree criminal sale of a controlled substance, and one count of fifth degree criminal possession of marijuana.  (Dkt. No. 1 at 1-2.[1])  Petitioner was sentenced, as a second felony offender, to an aggregate determinate prison term of 28 years, to be followed by three years of post-release supervision.  *Id.* at 1.  The Appellate Division, Third Department, affirmed the conviction on June 14, 2018, and the New York Court of Appeals denied leave to appeal on July 31, 2018.  *People v. Douglas*, 162 A.D.3d 1212, 1213 (3rd Dep't), *lv. denied*, 31 N.Y.3d 1147 (2018).  This action followed.  (Dkt. No. 1.)

Petitioner contends he is entitled to federal habeas relief because (1) counsel was ineffective due to a conflict of interest during the pretrial proceedings, *id*. at 5-9, 10-11; (2) there were various defects with the search warrant executed against him, including the fact that no probable cause supported it, *id.* at 7-8; and (3) his Fourth Amendment rights were violated when law enforcement exceeded the scope of the search warrant, *id*. at 8-9.  (*See also* Dkt. No. 18.)  Respondent, through the State of New York, filed an answer to the petition, together with the pertinent state court records and a memorandum of law.  (Dkt. Nos. 11, 12, 13.[2])  Generally, Respondent contends Petitioner's claims provide no basis for habeas relief because Petitioner has failed to establish his first attorney labored under an actual conflict of interest that impacted his defense, has established no prosecutorial misconduct in the timing of the conflict's disclosure,

---

[1]  Citations to all submissions refer to the pagination generated by CM/ECF, the Court's electronic filing system.  Excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected unless indicated.

[2]  The state court record is found at Dkt. No. 13-1 and the state court transcript is found at Dkt. No. 13-2.

and Fourth Amendment claims are not cognizable on habeas review.  (Dkt. No. 11 at 14-23.)
Petitioner filed a traverse.  (Dkt. No. 18.)

For the reasons that follow, the Court recommends that Petitioner's petition be denied
and dismissed, and that no certificate of appealability be issued.

## II.    BACKGROUND

On October 24 and 29, 2013, Petitioner sold crack cocaine from his Albany, New York
apartment to a confidential police informant ("CI").  On October 30, 2013, police executed a
search warrant at Petitioner's apartment, where they recovered, *inter alia*, large quantities of
cocaine, heroin, and marijuana.  Police arrested Petitioner outside of his home and recovered
additional cocaine hidden inside of Petitioner's mouth.  These events led to two indictments,
later consolidated for trial before the Hon. Thomas A. Breslin in Albany County Court.  (Dkt.
No. 13-1 at 135-4; Dkt. No. 13-2 at 45-48.)

### A.    Pre-Trial Proceedings

On November 20, 2013, Petitioner was arraigned on the first indictment charging him
with three counts of third degree criminal possession of a controlled substance and two counts of
second degree criminally using drug paraphernalia, all relating to the evidence recovered when
police executed the search warrant at his apartment on October 30, 2013.  The Albany County
Public Defender's Office was appointed to represent Petitioner, and Assistant Public Defender
Marie Beckford was assigned to the case.  (Dkt. No. 13-1 at 135-39; Dkt. No. 13-2 at 2-4.)

On February 4, 2014, Petitioner appeared with Beckford before Judge Breslin for a
motion to suppress the evidence recovered through the search warrant.  (Dkt. No. 13-1 at 147-49;
Dkt. No. 13-2 at 9-37.)  During the hearing, the People presented evidence of Petitioner's
participation in the October 2013 drug sales to serve as proof of probable cause for the search

warrant the police effectuated upon Petitioner and his residence. (Dkt. No. 13-2 at 12-22.) On cross-examination, Beckford questioned Albany County Police Department Detective Kenneth Koonz, who prepared the search warrant application, about the two controlled buys and probed the reliability of the CI. *Id.* at 23-33. At the conclusion of the hearing, the court denied Petitioner's motion to suppress concluding "the issuance of the warrant was proper given the specific factual allegations with regard to the drug sales occurring at that address, within a period of time very shortly before the issuance and execution of the warrant." *Id.* at 34-36.

Petitioner was arraigned on the second indictment on April 4, 2014, and charged with resisting arrest, one count of third degree criminal possession of a controlled substance, one count of fifth degree criminal possession of marijuana, and four counts of third degree criminal sale of a controlled substance. (Dkt. No. 13-1 at 140-46; Dkt. No. 13-2 at 40-44.) Two of the sale charges related to the controlled buys conducted on October 24 and 29, 2013,[3] the resisting arrest and third degree criminal possession of a controlled substance charges related to Petitioner's arrest and the cocaine recovered from his mouth, while and the marijuana possession charge was for drugs recovered through the search warrant. *Id.* at 188-89.

On May 6, 2014, Judge Breslin granted the People's unopposed motion to consolidate the two indictments. *Id.* at 45-48.

On May 30, 2014, Petitioner appeared with Beckford before Judge Breslin for a suppression hearing regarding charges in the second indictment. However, the hearing was not held because a conflict of interest had been discovered: the CI who had made the two controlled drug buys from Petitioner in October 2013 was represented by an attorney from Beckford's

---

[3] Petitioner also was charged with drug sales on November 30, 2011, and January 23, 2012, but those counts were dismissed before trial. (Dkt. No. 13-1 at 188-89.)

office in a pending misdemeanor case unrelated to Petitioner's charges.  *Id.* at 49-50.  Beckford

reported that she had discussed the conflict with Petitioner, who had decided not to waive it.  *Id.*

at 50.  As such, the court appointed the Albany County Alternative Public Defender's Office to

represent Petitioner.  *Id.* at 50-51.  Assistant Alternate Public Defender Joseph Meany was

assigned to the case and represented Petitioner throughout the remainder of the trial court

proceedings.  *Id.* at 53.

During the second suppression hearing, Petitioner appeared with Meany before Judge

Breslin on June 26 and July 11, 2014, during which Petitioner sought to suppress the cocaine and

cell phone recovered during his October 30, 2014, arrest.  Meany also raised an issue regarding

the validity of the search warrant and sought to reopen  asserting "there were some facial

insufficiencies" regarding the return of the warrant.  *Id.* at 55-56, 104-05.

Following the hearing, at which Detective Koonz and two Albany County police officers

involved with Petitioner's arrest testified, Judge Breslin ruled there was probable cause for the

search warrant's issuance and for Petitioner's arrest, and that the property seized from Petitioner

was the product of a lawful search incident to arrest.  *Id.* at 108-12.

**B.     Trial**

Petitioner's jury trial began on November 17, 2014.  *Id.* at 127.  The People called

Detective Koonz and the CI, along with several Albany County police officers and the chemist

who analyzed the drugs recovered from Petitioner and his apartment.  According to the

testimony adduced a trial, the CI made two controlled purchases of crack cocaine from Petitioner

in his apartment at 646 Clinton Avenue in the City of Albany on October 24 and 29, 2013.  *Id.* at

308-13, 321, 323-31, 343-44, 413-24.

Detective Koonz obtained a search warrant based on the two controlled buys, which police executed on October 30, 2013.  *Id.* at 344-46.  Prior to executing the search warrant, Detective Koonz directed the CI to telephone Petitioner and arrange to meet at a location away from his apartment to buy more crack cocaine.  *Id.* at 344-46, 424-25.

Following the CI's call, Petitioner left his apartment and entered a car.  An arrest team approached the car while the warrant team entered the apartment.  *Id.* at 350, 468-68, 529-31.  After police ordered Petitioner out of the car, Petitioner spit out two plastic bags of crack cocaine.  *Id.* at 454.  Police officers also recovered a cell phone from Petitioner's pocket.  Detective Koonz later dialed the number the CI had used to arrange the prior sales and Petitioner's cell phone rang and displayed Detective Koonz's phone number.  *Id.* at 357, 476-79.

Meanwhile, the search warrant team recovered numerous bags of crack cocaine, heroin, digital scales, packaging materials, $70 of the pre-recorded "buy money" used in the controlled purchase made on October 29, 2013, a jar filled with marijuana, and mail addressed to Petitioner at that address.  *Id.* at 351-52, 401-02, 536, 540-45, 577-90.

The main thrust of the defense theory, as expressed in Meany's opening statement and summation, was that the police mishandled evidence and testified falsely, and the CI lacked credibility.  *See id.* at 293-301, 683-715.  Petitioner did not testify.  In his defense, Petitioner called Abbygail Bayrd, who testified she arranged to meet Petitioner for dinner on October 30, 2013.  *Id.* at 665-66.  She drove to Petitioner's block and called him when she parked at the corner of Clinton and Ontario.  *Id.* at 666-67.  Just after Petitioner got into the passenger seat of her car, the police approached and arrested Petitioner.  *Id.* at 668-69.  Bayrd stated she did not notice anything in Petitioner's mouth and did not see him spit anything out, but admitted "he

never said a word" and that she and Petitioner were on opposite sides when they exited the vehicle. *Id.* at 668-69, 671-72.

**C.    Verdict and Sentencing**

On November 21, 2014, Petitioner was convicted of three counts of third degree criminal possession of a controlled substance, one count of fourth degree criminal possession of a controlled substance, two counts of second degree criminally using drug paraphernalia, two counts of third degree criminal sale of a controlled substance, and one count of fifth degree criminal possession of marijuana. The jury acquitted Petitioner of resisting arrest. *Id*. at 676-78.

On January 9, 2015, the court sentenced Petitioner, as a second felony offender, to an aggregate determinate prison term of 28 years, to be followed by three years of post-release supervision. *Id.* at 831-33.

**D.    Motion to Vacate Judgment of Conviction**

While his direct appeal was pending, Petitioner filed a *pro se* motion to vacate his conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10, asserting, as relevant to his present claims, that (1) the prosecutor committed misconduct by not informing the court when Beckford was appointed that she had a conflict of interest because the CI was represented by an attorney in her office, (Dkt. No. 13-1 at 3-5, 12-15), and (2) he was denied the effective assistance of counsel because Beckford had a conflict of interest at the time of the February 4, 2014, suppression hearing. *Id.* at 8-9. Petitioner also asserted that Beckford was ineffective for not challenging the search warrant as defective. *Id.* at 9-10. The People opposed the motion. *Id.* at 33-42.

On August 28, 2015, Judge Breslin denied Petitioner's motion in its entirety. *Id.* at 43-50. In a written decision, the court determined Petitioner's claims were procedurally barred from

review under CPL § 440.10(2)(b), which requires the court to deny a motion to vacate a conviction when the judgment is pending appeal and the record is sufficient to address the claims on appeal. *Id.* at 47-48.

With respect to Petitioner's prosecutorial misconduct claim, the court concluded that even if the claim "could somehow be said to be raising an issue which does not appear in the record . . . no hearing would be required to resolve the issues and the motion would be denied." *Id.* at 48-49. The court explained:

> Defendant ignores the fact that the representation of the confidential informant (CI) did not become relevant until the second indictment was handed down (containing sale counts) and then consolidated with the first indictment such that this court then had both cases. New counsel (Meany) acknowledged in his submission dated August 13, 200214 [sic] that the CI was not relevant to the earlier case. Consolidation occurred on May 6 and the Assistant Public Defender was replaced on May 30. Defendant has not shown that the prosecutor was concealing this information so as to gain an unfair advantage. It is quite common for a prosecutor to not reveal the identity of a CI until necessary to do so (often so that the police can continue to employ the CI in other cases and in order to protect the CI's safety). Therefore, even if the prosecutor was aware of the conflict (which has not been established), the conflict existed for less than a month and certainly did not exist at the time of the earlier suppression motion or hearing. Furthermore, defendant has not shown how he was prejudiced. Although he appears to fault the first attorney for not making certain challenges concerning the search warrant, this has nothing to do with the prosecutor and/or the CI. Defendant has not shown that there was any prosecutorial misconduct. Furthermore, he has not shown that any asserted conduct on the prosecutor (appearing or not appearing in the record) operated to deprive him of due process or a fair trial.

*Id.* at 48-50 (internal citations omitted).

Petitioner's subsequent counseled application for leave to appeal the denial of his *pro se* § 440 motion was granted by the Appellate Division and the appeal was consolidated with his direct appeal. *Id.* at 51-55.

E.      **Direct Appeal**

In a counseled brief to the Appellate Division, as relevant here, Petitioner argued the 440 court erred in denying his *pro se* motion without a hearing because the motion raised issues of fact about when Beckford's conflict of interest arose and when the prosecution first learned of the conflict. *Id.* at 88-92. Petitioner asserted that if the concurrent representation occurred during the grand jury presentation, while plea negotiations were ongoing, and/or when counsel was preparing pretrial motions, "the conflict was an actual one requiring a finding of ineffective assistance regardless of whether he can show that it affected his defense." *Id.* at 92. Petitioner also argued the trial court erred in denying Petitioner's motion to suppress tangible evidence seized under the October 30, 2013, search warrant, since neither document bore the printed name of the magistrate who issued the warrant and administered the oath to the attesting police officer. *Id.*

Petitioner also filed a *pro se* supplemental brief in which he argued, *inter alia*, the police exceeded the authority of the search warrant by arresting him across the street from his apartment because the warrant permitted only the search of his home and anyone inside the premises. *Id.* at 415-17, 423. The People responded and Petitioner filed a counseled reply. *Id.* at 495-516, 543-61.

On June 14, 2018, the Appellate Division unanimously affirmed the judgment of conviction and the denial of Petitioner's *pro se* motion to vacate the conviction. *Id.* at 562-68. Specifically, the Appellate Division rejected Petitioner's claim that the 440 court erred in denying the motion without a hearing. *Id.* at 567. The Appellate Division determined no evidentiary hearing was needed to resolve when the conflict arose because that information was contained in the record: it arose when the second indictment was consolidated with the first

indictment in May 2014, because the second indictment, and not the first, was based on the CI's testimony. *Id.* at 567. The Appellate Division noted new counsel was appointed later that same month, and that Petitioner made "no claim that he received ineffective assistance of counsel as a result of the conflict during this brief period." *Id.* Moreover, because Petitioner's "defense could not have been harmed by a conflict that did not exist, any information about the period before the consolidation would be irrelevant. Thus, the motion was properly denied." *Id.* The Appellate Division concluded Petitioner's "remaining contentions, including those raised in his *pro se* submission, have been examined and found to be lacking in merit." *Id.* at 568.

Petitioner filed a counseled leave application in which he asserted, *inter alia*, the Appellate Division erroneously concluded no hearing was required on the 440 motion because the record failed to disclose when the concurrent representation by Beckford began, and thus "whether [a conflict of interest] existed at critical stages of [Petitioner's] case or whether the People failed to timely disclose" the conflict. *Id.* at 571-73. The Court of Appeals denied Petitioner's application on July 31, 2018. *Id.* at 574. Petitioner's subsequent *pro se* motion for re-argument filed in the Appellate Division was denied on November 1, 2018. *Id.* at 575-82.

## III.    ANALYSIS

### A.    Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28

U.S.C. §§ 2254(d)(1), (2); *Cullen v. Pinholster*, 563 U.S. 170, 180-81, 185 (2011); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt."  *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)).

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'"  *Nevada v. Jackson*, 569 U.S. 505, 508-509 (2013) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see Metrish v. Lancaster*, 569 U.S. 351, 358 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'") (quoting *Richter*, 562 U.S. at 103).

Additionally, AEDPA foreclosed "'using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.'"  *Parker v. Matthews*, 567 U.S. 37, 38 (2012) (per curiam) (quoting *Renico*, 559 U.S. at 779).  A state court's findings are not unreasonable under § 2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion.  *Wood v. Allen*, 558 U.S. 290, 301 (2010).  "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold."  *Schriro*, 550 U.S. at 473.

Federal habeas courts must presume the state courts' factual findings are correct unless a petitioner rebuts that presumption with "'clear and convincing evidence.'" *Id.* at 473-74 (quoting § 2254(e)(1)). "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015). Finally, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits." *Johnson v. Williams*, 568 U.S. 289, 301 (2013).

**B.    Ineffective Assistance of Counsel**

Petitioner contends he received the ineffective assistance of counsel due to Beckford's conflict of interest during pretrial proceedings. (Dkt. Nos. 1 at 5-6; Dkt. No. 18 at 1-9.) Respondent argues the Appellate Division reasonably rejected this claim on the merits when it affirmed the 440 court's decision. (Dkt. No. 11 at 14-21.) The Court agrees with Respondent.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. Amend. VI. A defendant's Sixth Amendment right to counsel guarantees the right to conflict-free representation. *See Wood v. Georgia*, 450 U.S. 261, 271 (1981) ("Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest."); *accord United States v. Blau*, 159 F.3d 68, 74 (2d Cir. 1998). If the petitioner shows that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance," then prejudice is presumed. *Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980). "An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely

affects counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2002). "An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *United States v. Schwarz*, 283 F.3d 76, 90-91 (2d Cir. 2002) (internal quotation marks and citations omitted).

To prove Beckford had an actual conflict of interest, Petitioner must demonstrate (1) that an "'actual conflict of interest' existed, *i.e.*, that 'the attorney's and defendant's interests diverge[d] with respect to a material factual or legal issue or to a course of action'"; (2) that he suffered an "adverse effect" by "demonstrating the existence of some plausible alternative defense strategy not pursued by his counsel"; and (3) that "the alternative defense strategy was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *Harris v. Smith*, No. 04-CV-1268 (LEK/GJD), 2008 WL 3155200, at *6 (N.D.N.Y. Aug. 4, 2008) (citations omitted).

"In the absence of [an actual] conflict of interest, a defendant claiming ineffective assistance of counsel must demonstrate that the lawyer's representation 'fell below an objective standard of reasonableness,'" and that "counsel's deficiency was 'prejudicial' to the defense." *Eisemann v. Herbert*, 401 F.3d 102, 107 (2d Cir. 2005) (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88, 692 (1984). A court need not decide both prongs of this test if there is an insufficient showing on either one. *See Strickland*, 466 U.S. at 697.

Moreover, when ineffective assistance of counsel claims are presented on collateral habeas review, the court assesses them subject to the strictures of AEDPA and must be "doubly deferential" in reviewing the state court's determination that counsel acted effectively. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citation omitted). Thus, to prevail on an ineffective

assistance of counsel claim on habeas review, Petitioner must show not only that Beckford's performance fell below the *Sullivan* or *Strickland* standard, but also that the state court's adjudication of those standards was itself unreasonable.  *See Richter*, 562 U.S. at 103)

Here, Petitioner has failed to establish any of the necessary factors to show an actual conflict of interest because he has failed to show that Beckford's interests diverged from his own, that any alternative defense strategy existed, or that such a strategy was not undertaken because of the conflict.  *See Harris*, 2008 WL 3155200, at *6; *see also* Dkt. No. 11 at 15-19.

Although Petitioner contends the conflict arose from the "simultaneous representation of counsel who was also representing the [ ] CI from the day of his first arraignment," *see* Dkt. No. 18 at 2, the Appellate Division determined "no conflict existed until the first indictment was consolidated with the second indictment, from which the conflict of interest arose.  The record reveals that the consolidation took place in May 2014, and that new counsel was assigned for defendant later that same month.  Defendant makes no claim that he received ineffective assistance of counsel as a result of the conflict during this brief period, and, as his defense could not have been harmed by a conflict that did not exist, any information about the period before the consolidation would be irrelevant."  (Dkt. No. 13-1 at 567.)  The state court's assessment was consistent with applicable law, represented a reasonable interpretation of the facts before it, and reasonably reached the conclusion that any alleged conflict did not adversely affect counsel's performance.  *See Sullivan*, 446 U.S. at 349-50.[4]

---

[4]  Moreover, as pointed out by Respondent, nothing in the record suggests that Beckford was aware of the CI's identity or that the CI was represented by another public defender during the February 4, 2014, suppression hearing.  (*See* Dkt. No. 11 at 17.)  Indeed, Beckford consistently used a male pronoun when referring to the female CI during her cross-examination of Detective Koonz.  (Dkt. No. 13-2 at 23-33.)

Nor is there any evidence to suggest a divergence of interest between Beckford and Petitioner with respect to a material factual or legal issue or course of action. Petitioner's frustration with Beckford's handling of the February 4, 2014, suppression hearing or other pretrial matters does not amount to a lapse in representation due to a conflict of interest.[5] A petitioner "cannot establish an actual conflict of interest merely by expressing dissatisfaction with [the] attorney's performance." *United States v. John Doe No. 1*, 272 F.3d 116, 126 (2d Cir. 2001). Further, although Petitioner argued in state court Beckford was ineffective for failing to challenge the search warrant as defective (*see* Dkt. No. 13-1 at 92-93), he never claimed this alleged lapse was related to the conflict of interest, nor has he established any such connection. In any event, the Appellate Division concluded that, contrary to Petitioner's claim, the search warrant was not defective. (Dkt. No. 13-1 at 563.) "Representation is not rendered ineffective merely because counsel refuses to make meritless motions." *Rodriguez v. Griffin*, No. 9:16-CV-1037, 2018 WL 6505808, at *26 (N.D.N.Y. Dec. 11, 2018) (citing *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) ("[T]he failure to make a meritless argument does not rise to the level of ineffective assistance[.]")).

Therefore, applying the "doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt," *Cullen*, 536 U.S. at 190, there is no basis to conclude the state court decision was contrary to, or an unreasonable application of, federal law, nor was it based on an unreasonable determination of the facts in light of the evidence

---

[5] For example, Petitioner takes issue that on May 30, 2014, Beckford "did not volunteer to correct the court when he started out saying that there was no informant in the first indictment, although she was present at the suppression hearing when trial court made his ruling from the bench that included the CI. The same CI that the court said did not exist in the first indictment[.]" (Dkt. No. 18 at 4.) Instead, Beckford only stated Petitioner would not waive the conflict, and new counsel was appointed. (*See* Dkt. No. 13-2 at 50-51.)

presented in the state court proceeding.  Accordingly, Petitioner is not entitled to habeas relief on this basis.

### C.    Prosecutorial Misconduct

Relatedly, Petitioner suggests the prosecutor committed misconduct by failing to timely disclose the conflict of interest.  (*See* Dkt. No. 1 at 10-12.)  The Court agrees with Respondent that Petitioner's prosecutorial misconduct claim, to the extent alleged, also fails because Petitioner has not shown any impropriety by the prosecutor or that the timing of the disclosure of the conflict denied his right to due process.  (*See* Dkt. No. 11 at 19-21.)

With respect to a prosecutorial misconduct claim, federal habeas review is limited to the narrow issue of whether the alleged misconduct violated due process.  *Darden v. Wainright*, 477 U.S. 168, 181 (1986).  To constitute a due process violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial."  *Greer v. Miller*, 483 U.S. 756, 765 (1987) (citation omitted).  "Under this standard, a petitioner must show there is a reasonable probability the error complained of affected the outcome of the trial— *i.e.*, that absent the alleged impropriety, the verdict probably would have been different."  *Griffin v. Coveny*, No. 19-CV-1495, 2021 WL 3884217, at *12 (N.D.N.Y. Aug. 31, 2021).  "Conclusory allegations of impropriety are insufficient to warrant habeas corpus relief."  *Nealy v. Artest*, No. 08-CV-3483 JFB, 2014 WL 726723, at *19 (E.D.N.Y. Feb. 25, 2014).

As set forth above, the 440 court found Petitioner "ha[d] not shown that the prosecutor was concealing this information so as to gain an unfair advantage."  (Dkt. No. 13-1 at 49.)  That

ruling was certainly not contrary to, or an unreasonable application of, federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented.[6]

Here, Petitioner has not alleged, let alone proven, that the timing of the disclosure of the conflict had any adverse impact on him whatsoever. Petitioner does not contend that the timing resulted in any unfairness during the pre-trial proceedings or caused any unfairness at his trial. Meany had nearly six months to prepare for the trial. *See Smith v. Phillips*, 455 U.S. 209, 219 (1982) (holding courts are to focus on "the fairness of the trial, not the culpability of the prosecutor"). Nor has Petitioner claimed any other adverse impact relating to the timing of the disclosure. As such, Petitioner's prosecutorial misconduct claim, if any, provides no basis for habeas relief.

---

[6] To the extent Petitioner suggests that he is entitled to habeas relief because the 440 court denied the motion without holding a hearing and, in turn, the Appellate Division determined the 440 court did not err in denying his motion without a hearing, such claim is meritless. (*See* Dkt. No. 18 at 2-9.) Initially, claims may not be raised for the first time in a traverse. *See Parker v. Smith*, 858 F. Supp. 2d 229, 233 (N.D.N.Y. 2012) (refusing to address new arguments raised in the traverse that were not in the petition because a traverse or reply is not the proper pleading in which to raise additional grounds for habeas relief) (citations omitted); *Simpson v. United States*, No. 5:03-CV-691 (FJS), 2005 WL 3159657, at *5 (N.D.N.Y. Nov. 25, 2005) (declining to consider habeas claims raised for the first time in the petitioner's traverse). In any event, the claim is not cognizable on habeas review. *See Ferrer v. Superintendent*, No. 05-CV-1010, 2008 WL 2967633, at *11 (N.D.N.Y. Jul. 25, 2008) ("Federal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings.") (internal quotation omitted); *see also Word v. Lord*, 648 F.3d 129, 132 (2d Cir. 2011) (per curiam) ("[A]lleged errors in a post[-] conviction proceeding are not grounds for § 2254 review because federal law does not require states to provide a post-conviction mechanism for seeking relief."); *see, e.g., Millington v. Lee*, No. 11 Civ. 499, 2015 WL 1402133, at *10 (S.D.N.Y. Aug. 14, 2014) (finding the petitioner's claim regarding the state's failure to hold an evidentiary hearing in his post-conviction proceeding was not cognizable in a federal habeas proceeding because alleged errors in post-conviction proceedings are not grounds for § 2254 review); *West v. Uhler*, No. 12-cv-01611 (JKS), 2014 WL 3895235, at *7 (N.D.N.Y. Aug. 8, 2014) (same); *see also Green v. Haggett*, No. 13-CV-0016 (GLS), 2014 WL 3778587, at *8 (N.D.N.Y. July 31, 2014) ("Petitioner's claim is that there was a procedural defect in the conduct of a state post-conviction proceeding, because the trial court failed to hold a hearing, and federal habeas relief is not available for such alleged defects.").

D.    **Fourth Amendment Claims**

Petitioner argues the search warrant and application were defective and evidence seized pursuant to the warrant should have been suppressed.  (Dkt. No. 1 at 7, 8.)  Specifically, Petitioner contends "[t]hat there are various defects in the search warrant executed against [him], including the fact that no probable cause supported it[,]" and his Fourth Amendment rights were violated "when the police exceeded the scope of the search warrant."  (Dkt. No. 18 at 1, 10-13.)  Petitioner's claims are not cognizable on federal habeas review.  (*See* Dkt. No. 11 at 21-23.)

It is well settled that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Stone v. Powell*, 428 U.S. 465, 481 (1976); *accord Graham v. Costello*, 299 F.3d 129, 133-34 (2d Cir. 2002).  The state is required to provide the petitioner only with the "opportunity" to litigate a Fourth Amendment claim.  *McPhail v. Warden, Attica Corr. Facility*, 707 F.2d 67, 69-70 (2d Cir. 1983).  "Review of a Fourth Amendment claim is therefore available only if the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations or if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process."  *Hirsh v. McArdle*, 74 F. Supp. 3d 525, 532-33 (N.D.N.Y. 2015) (quoting *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992)).

The Second Circuit has recognized that New York law provides adequate corrective procedures for redressing Fourth Amendment claims.  *See Capellan*, 975 F.2d at 70, n.1 (citing a motion to suppress evidence, pursuant to CPL § 710.10 *et seq.*, as a "facially adequate" and "approved" procedure for adjudicating alleged Fourth Amendment violations); *see also Blake v.*

*Martuscello*, No. 00-CV-2570, 2013 WL 3456958, at *5 (E.D.N.Y. July 8, 2013) (citing CPL §

710.10 and finding that the Second Circuit has explicitly approved New York's procedure for

litigating Fourth Amendment claims).

Here, Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims

in state court.  As detailed above, Petitioner utilized New York's available procedures by moving

to suppress evidence and challenging the search warrant.  The Appellate Division reviewed

Petitioner's claim that the search warrant was defective and rejected Petitioner's arguments

against it.  (Dkt. No. 13-1 at 563-64, 568.)  The Court of Appeals subsequently denied

Petitioner's application for leave to appeal.  *Id.* at 574.  Accordingly, New York State provided

corrective procedures to address Petitioner's Fourth Amendment claims.  *See Ferron v. Goord*,

255 F. Supp. 2d 127, 131-32 (W.D.N.Y. 2003) (holding that petitioner's "various applications

before the trial and appellate state courts challenging the search warrant clearly show that he was

given an opportunity for a 'full and fair' litigation of his Fourth Amendment claims.").

Moreover, Petitioner has not asserted that he was "precluded from utilizing" the state's

corrective procedures "by reason of an unconscionable breakdown in that process," and, in light

of his efforts to advance these claims, no basis for such an assertion can be discerned in the

record.  *See Hirsh*, 74 F. Supp. 3d at 532.  "[A] mere disagreement with the outcome of a state

court ruling is not the equivalent of an unconscionable breakdown in the state's corrective

process."  *Capellan*, 975 F.2d at 72; *see also Williams v. Gonyea*, No. 9:16-CV-0460 (JKS),

2017 WL 4990645, at *4 (N.D.N.Y. Oct. 31, 2017); *see also Blackshear v. Donnelly*, No. 9:03-

CV-450 (LEK/VEB), 2008 WL 150414, at *11 (N.D.N.Y. Jan. 14, 2008) (the proper focus is on

the existence and application of the state's corrective procedures and not on the "correctness of

the state court's corrective procedures for adjudicating Fourth Amendment claims.").

Petitioner appears to argue in his reply that his Fourth Amendment claims are not barred by *Stone* because "this case in an exception due the fact that there is a serious issue with the courts determination which establishes a violation of clearly established federal law[,]" and the Appellate Division's conclusion was "[a]n unreasonable determination of the facts in light of the evidence presented in the state court proceeding." (Dkt. No. 18 at 10, 12.) However, such arguments have explicitly been rejected by this Court. *See Parker v. Ercole*, 582 F. Supp. 2d 273, 286-87 (N.D.N.Y. 2008) ("Petitioner argues that his Fourth Amendment claims should not be barred by *Stone v. Powell* because the Appellate Division's findings of fact and conclusions of law are not supported by the record, and were contrary to or an unreasonable application of clearly established Supreme Court precedent[.] Petitioner apparently seeks *de novo* review of the Appellate Division's factual findings. That relief is expressly forbidden by *Stone*.").

Finally, Petitioner cannot circumvent *Stone* with the suggestion that his due process rights were violated during the suppression hearing. (*See* Dkt. No. 1 at 7; *see also* Dkt. No. 11 at 22 n.5.) *See Gomez v. Miller*, No. 9:19-CV-1571 (TJM), 2021 WL 5446979, at *10 (N.D.N.Y. Nov. 22, 2021) (citing *Ferron*, 255 F. Supp. 2d at 133 (holding that the petitioner's attempt to "end-run around *Stone*'*s* clearly established barrier to habeas review by 'transmogrifying' his barred Fourth Amendment claim into a due process claim must fail")).

Accordingly, Petitioner's Fourth Amendment claims provide no basis for habeas relief.

## IV.    CERTIFICATE OF APPEALABILITY

28 U.S.C. § 2253(c)(1) provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]" 28 U.S.C. § 2553(c)(1). A court may only issue a certificate of

20

appealability "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2553(c)(2). Since Petitioner has failed to make such a showing with regard to any of his claims, the Court recommends that no certificate of appealability be issued. *See Hohn v. United States*, 524 U.S. 236, 239-40 (1998) (quotation omitted).

## V.    CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, it is hereby

**RECOMMENDED** that Petitioner's *pro se* petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED** and **DISMISSED**; and it is further

**RECOMMENDED** that no certificate of appealability be issued; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Report-Recommendation and Order on the parties in accordance with the Local Rules, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[7]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir.

---

[7] If you are proceeding *pro se* and are served with this Report-Recommendation & Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also*

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 & 6(a).

      **IT IS SO ORDERED.**

Dated: July 27, 2022
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

Case 9:19-cv-00952-LEK-TWD   Document 22   Filed 07/27/22   Page 23 of 202
Harris v. Smith, Not Reported in F.Supp.2d (2008)
2008 WL 3155200

2008 WL 3155200
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Lawrence D. HARRIS, Petitioner,
v.
Joseph SMITH, Superintendent, Respondent.

No. 9:04–CV–1268 (LEK/GJD).
|
Aug. 4, 2008.

**Attorneys and Law Firms**

Lawrence D. Harris, Fallsburg, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, Michelle E. Maerov, Esq., Assistant Attorney General, of Counsel, New York, NY, for Respondent.

*MEMORANDUM–DECISION AND ORDER*

LAWRENCE E. KAHN, District Judge.

**I. BACKGROUND**

 *1 According to the testimony adduced at trial, between January 1996 and April 1996, Petitioner Lawrence Harris, as well as Anthony Wright, engaged in the sale of crack cocaine at the home of James Hill and his fiancee, Sharon Cannizzo, in the Town of Caroga, Fulton County. *See* Transcript of Trial of Lawrence Harris (7/3/97) ("Trial Tr.") at pp. 1022–31. In early 1996, Hill and Cannizzo, both of whom were admitted crack cocaine users, agreed to allow Harris and Wright to sell cocaine out of their house in exchange for drugs for their own personal use. Trial Tr. at pp. 849, 1024–29. Pursuant to their arrangement, Harris and Wright were to go to the Caroga Lake residence at least once per week in order to supply the crack cocaine. Trial Tr. at pp. 759–60, 1031–32. [1] Hill took money directly from the customers, went to a designated bedroom, turned the money over to Harris and Wright in exchange for the drugs, and returned to the customer with the drugs. Trial Tr. at pp. 743–48, 786–87, 1032–39. Cannizzo assisted the group by admitting customers into the house and also by both receiving and placing phone calls to Harris and Wright. Trial Tr. at pp. 789–91, 795–98. The record also established that Hill and Cannizzo contacted Harris and Wright through the use of a "beeper" if they were not in the house when a

potential customer arrived. Trial Tr. at pp. 791–94, 798–803, 1041–47. [2]

[1] Sometimes the two stayed at the house for several days. Trial Tr. at pp. 737, 759–60, 1031–32.

[2] In March 1996 alone, more than one hundred drug transactions occurred at the Caroga Lake residence. Trial Tr. at p. 787.

On March 9, 1996, Robert Warner informed a member of the Fulton County, New York Drug Task Force that drug sales were occurring at the Caroga Lake residence. Trial Tr. at pp. 410–14, 970–74. Warner thereafter agreed to act as a confidential informant for law enforcement agents, and subsequently participated in controlled purchases of cocaine from that house. Trial Tr. at pp. 412–414, 977. At trial, Warner testified that during the controlled purchases of narcotics, he entered the Caroga Lake residence and gave money to Hill. Trial Tr. at pp. 979–82. Hill then left the room and returned with the crack cocaine, which Warner in turn provided to the police. Trial Tr. at pp. 979–84.

Dan Thum testified that he went to the Caroga Lake residence between twenty and thirty times between January and April 1996 in order to purchase cocaine. Trial Tr. at p. 1155. During one purchase in January 1996, he observed an Isuzu Trooper, which Harris was subsequently found to be driving, *see* Trial Tr. at pp. 1230–33, in the driveway of the house and also observed two well-dressed African–American men in the living room watching television. Trial Tr. at pp. 1161–63. At trial, Thum specifically identified Harris as one of those men. *See* Trial Tr. at pp. 1163–65. Todd Heroth testified that he went to the Caroga Lake residence approximately twenty times between January and April 1996 to purchase cocaine, Trial Tr. at p. 1097, and that when he purchased cocaine from Hill on April 2, 1996, Harris was at the house. Trial Tr. at pp. 1102–03.

On April 3, 1996, Hill, Cannizzo, Harris and Wright were arrested at the Caroga Lake residence. Trial Tr. at pp. 811–15, 1022. A search of the home disclosed the presence of 5 1/2 ounces of cocaine, an electronic scale, razor blades, and plastic bags in the bedroom from which Harris and Wright apparently transacted their business. Trial Tr. at pp. 1283, 1321–22, 1494–95.

 *2 In the proceedings brought by the Fulton County District Attorney, Warner testified before the grand jury pursuant to a cooperation agreement into which he had entered wherein

2008 WL 3155200

the prosecutor agreed to not bring felony charges against him for certain criminal conduct in which he had engaged in prior to the controlled buys. Trial Tr. at pp. 1013–15. Hill and Cannizzo also entered into cooperation agreements with the District Attorney and testified before the grand jury. Trial Tr. at pp. 811, 1072–73, 1089.

On July 24, 1996, a Fulton County grand jury returned a nine count indictment against Harris and Wright. In that accusatory instrument, the two were charged with three counts of criminal sale of a controlled substance in the third degree, three counts of criminal facilitation in the fourth degree, criminal possession of a controlled substance in the first degree, criminal facilitation in the second degree, and conspiracy in the second degree. *E.g.,* Trial Tr. at p. 323. Wright subsequently moved for a severance of his trial from that of Harris, which the County Court denied. Trial Tr. at pp. 4–8, 51. Harris' jury trial on the charges commenced on June 27, 1997 in Fulton County Court with County Court Judge Angelo D. Lomanto presiding.

Several days into the trial, sworn juror C. Lamb requested to speak with Judge Lomanto Trial Tr. at p. 631. Judge Lomanto then questioned her, *in camera,* in the presence of both defense counsel and the District Attorney. Trial Tr. at p. 631. At that time, Lamb stated that before she was sworn as a juror, a woman with four children had sat next to her in the courtroom. Trial Tr. at pp. 631–32. The woman informed Lamb that she was in search of a place to stay, and Lamb responded by providing the woman with the names of some local hotels. Trial Tr. at pp. 632–33. In that list, Lamb included the name and phone number of a lodging facility where her husband was employed. Trial Tr. at p. 633. At the conference, Lamb informed the court that, after she was selected as a juror, she thought about her conversation with the woman about lodging, and ultimately came to the conclusion that her suggestion might not have been a good idea. Specifically, she advised the County Court:

> [T]he only thought that came to me at that point was if they lost the case, would there be any thought of retaliation against me now that I've given her my phone number and address and name. But I just thought well I'll just have to live with that, there's nothing I can do.

Trial Tr. at p. 634. Later on during the trial, Lamb saw the woman in a hallway with Wright. Trial Tr. at pp. 634–35. The woman smiled at Lamb, and although Lamb felt awkward, she returned the smile and politely asked the woman whether she had found a place to say, to which she responded she had. Trial Tr. at pp. 634–35. Lamb informed the court that the "only impact" she felt as a result of the foregoing was to "have a little bit of concern." Trial Tr. at p. 636. She further declared that her interaction with the woman:

> **\*3** wouldn't change the way I would vote or my impartiality at all. The only thing it could possibly do is make me feel a little more concerned for my safety in the future. But I don't think that's a valid thing to base decisions on.

Trial Tr. at p. 636.[3] Lamb further mentioned that she shared her concern regarding the incident with juror S. Benson in the presence of a male juror, whom she did not know by name. Trial Tr. at pp. 637–41.

[3]   Lamb repeatedly assured the court and counsel that while she had a "teeny bit" of concern for her safety, she would nevertheless be fair and impartial in arriving at her decision regarding the charges against the defendants. Trial Tr. at pp. 636–37, 642, 647–51.

William Lorman, Esq., Harris' counsel, as well as William Martuscello, Esq., defense counsel for Wright, questioned Lamb about the foregoing. Trial Tr. at pp. 639–50. In addition, Fulton County District Attorney Polly Hoye ("D.A.Hoye") examined Lamb. Trial Tr. at pp. 650–51. Neither Lorman nor Martuscello objected to conducting such hearing in the absence of the Defendants. Trial Tr. at pp. 630–82.

At the request of defense counsel, Judge Lomanto conducted further inquiry of several other jurors, including Benson, to determine whether Lamb's conduct regarding the foregoing had affected their ability to remain fair and impartial. Trial Tr. at pp. 653–54. Benson indicated that she did not have any concerns for her personal safety, and that her knowledge of Lamb's contact with the woman would not affect her own ability to be fair and impartial. Trial Tr. at p. 656. When the other jurors were asked by Judge Lomanto whether anyone

had overheard a conversation between Lamb and Benson, no juror responded in the affirmative, and the Court was unable to determine which male juror, if any, had been present when Lamb initially informed Benson of the incident. Trial Tr. at pp. 671–682.

At some point following the above discussion with the jurors, Harris and Wright were brought into chambers. Trial Tr. at p. 682. The circumstances of the hearing were recounted in the presence of the two Defendants, after which counsel for the Defendants moved for a mistrial and the disqualification of jurors Lamb and Benson. Trial Tr. at pp. 682–89.[4] The trial court denied those applications and also refused a request to disqualify any of the jurors. Trial Tr. at pp. 690–91.

4      Both Harris and Wright consented to these motions
       by their respective attorneys. Trial Tr. at p. 689.

In their defense to the charges against them, Harris chose to testify in his own defense while Wright refrained from testifying. Trial Tr. at pp. 1547–1609. In his testimony, Harris declared that he only visited the Caroga Lake house on a few occasions, and made no statements that implicated either himself or Wright in the drug sales. Trial Tr. at pp. 1571, 1550–1608.

At the conclusion of the trial,[5] Harris and Wright were found guilty of all nine counts. Trial Tr. at pp. 1791–95.

5      Three days before the verdict, Wright, who was free
       on bail, absconded. Trial Tr. at pp. 1120–30. After
       efforts to locate Wright failed, the trial continued in
       his absence. Trial Tr. at pp. 1135–44.

On July 30, 1997, Harris was sentenced as a second felony offender to various terms of imprisonment, resulting in an aggregate sentence of sixty-two and a half years to life. *See* Transcript of Sentencing of Lawrence Harris (7/30/97) at pp. 15–18.

Harris and Wright consolidated the appeals of their convictions and sentences to the New York Supreme Court, Appellate Division, Third Department. On November 15, 2001, that court affirmed the convictions in all respects. *People v. Harris,* 288 A.D.2d 610 (3d Dep't 2001). However, in the interests of justice, the Appellate Division mandated that all sentences imposed on Harris run concurrently, reducing the minimum term of imprisonment to which Harris was subject to twenty-five years to life. *Id.* at 618–20. The

New York Court of Appeals granted Harris' request for leave to appeal on January 22, 2002, *People v. Harris,* 97 N.Y.2d 705 (2002), and on November 21, 2002, the Court of Appeals affirmed the order of the Appellate Division in all respects. *People v. Harris,* 99 N.Y.2d 202 (2002).

 **\*4**  In an application dated February 13, 2004, Harris moved to vacate his judgment of conviction pursuant to New York's Criminal Procedure Law ("CPL") § 440.10 ("CPL Motion"). That application was opposed by the District Attorney, and in a Decision and Order dated August 19, 2004, Fulton County Court Judge Felix J. Catena denied Harris' CPL Motion. *See People v. Harris,* No. 22–96 (Fulton Cty. Ct. Aug. 19, 2004) ("August, 2004 Order").

### B. *Proceedings in this Court*

Harris commenced this action, *pro se,* on November 1, 2004 in the Northern District of New York. *See* Petition (Dkt. No. 1) ("Petition"). In his Petition, Harris asserts several grounds in support of his request for federal habeas intervention. Specifically, he argues that: (i) he received ineffective assistance of trial counsel because his court-appointed attorney labored under a conflict of interest; (ii) he was wrongfully excluded from the portion of his trial when the Court conducted a hearing into the potential tainting of juror Lamb; (iii) the County Court committed reversible error when it permitted Lamb to remain on the jury; (iv) comments made by two prosecution witnesses "poisoned the trial;" (v) the prosecutor and Harris' prior attorney intentionally withheld exculpatory evidence from Harris; and (vi) the prosecutor knowingly suborned perjurious testimony. This Court thereafter directed the Respondent to file a response to the Petition, Dkt. No. 5, and on July 29, 2005, the Office of the Attorney General for the State of New York, acting on Respondent's behalf, filed a response in opposition to Harris' pleading. *See* Dkt. No. 19. In opposing the Petition, Respondent argues that Harris' claims lack merit. *Id.* Harris thereafter submitted a traverse in further support of his application. *See* Dkt. No. 20 ("Traverse"). This Court has considered the above-referenced submissions, together with the state court records provided to the Court, in conjunction with its review of the Petition, which is currently before this Court for disposition.[6]

6      In accordance with General Order No. 32, this
       Court rescinds the prior reference of this action to
       Magistrate Judge Gustave J. DiBianco.

2008 WL 3155200

## II. *Discussion*

### A. *Standard of Review Applicable to Harris' Claims*

The April 1996 enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA") brought about significant new limitations on the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254. In discussing this deferential standard, the Second Circuit noted in *Rodriguez v. Miller,* 439 F .3d 68 (2d Cir.2006) that:

> a federal court may award habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the adjudication resulted in an outcome that: (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

**\*5** *Rodriguez,* 439 F.3d at 73 (quoting 28 U.S.C. § 2254(d)); *see also DeBerry v. Portuondo,* 403 F.3d 57, 66 (2d Cir.2005); *Miranda v. Bennett,* 322 F.3d 171, 177–78 (2d Cir.2003); *Boyette v. LeFevre,* 246 F.3d 76, 88 (2d Cir.2001). In providing guidance concerning application of this test, the Second Circuit has noted that:

> [A] state court's decision is "contrary to" clearly established federal law if it contradicts Supreme Court precedent on the application of a legal rule, or addresses a set of facts "materially indistinguishable" from a Supreme Court decision but nevertheless comes to a different conclusion than the Court did. [*Williams v. Taylor,* 529 U.S. 362,] at 405–06 [2000]; *Loliscio v. Goord,* 263 F.3d 178, 184 (2d Cir.2001).... [A] state court's decision is an "unreasonable application of" clearly established federal law if the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts" of the case before it. *Williams,* 529 U.S. at 413.

*Thibodeau v. Portuondo,* 486 F.3d 61, 65 (2d Cir.2007); *see also Williams v. Artuz,* 237 F.3d 147, 152 (2d Cir.2001) (citing *Francis S. v. Stone,* 221 F.3d 100, 108–09 (2d Cir.2000)).

Significantly, a federal court engaged in habeas review is not charged with determining whether the state court's determination was merely incorrect or erroneous, but instead whether such determination was "objectively unreasonable." *Williams,* 529 U .S .at 409; *see also Sellan v. Kuhlman,* 261 F.3d 303, 315 (2d Cir.2001). Objectively unreasonable in this context means " 'some increment of incorrectness beyond error is required' " for a federal court to properly grant a habeas application. *Earley v. Murray,* 451 F.3d 71, 74 (2d Cir.2006) (quoting *Francis S.,* 221 F.3d at 111).

### B. *Review of Harris' Claims*

#### 1. *Ineffective Assistance of Counsel*

In his first ground, Harris alleges that he received ineffective assistance of counsel because the attorney who represented him prior to trial, Michael Albanese, Esq., was simultaneously representing (on unrelated charges) Warner, who proved to be a prosecution witness who offered testimony damaging to Harris' defense. *See* Petition, Ground One. He also asserts, in his fifth ground for relief, that his attorney was aware that Warner "was at a minimum a witness in" the prosecution's case against Harris, but nevertheless continued on with the conflicted representation. *See* Petition, Ground Five. Finally, Petitioner suggests in his sixth ground that Attorney Albanese may have been aware of the conflict when he was provided with copies of prior statements that had been made by co-conspirators to law enforcement agents, but failed to take appropriate action. Petition, Ground Six.

The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. Amend. VI. A defendant's Sixth Amendment right to counsel guarantees the right to conflict-free representation. *See Wood v. Georgia,* 450 U.S. 261, 271 (1981) ("[w]here a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest"); *Cuyler v. Sullivan,* 446 U.S. 335, 345 (1980). In *Cuyler,* the Supreme Court observed that to establish a violation of this right, "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.,* 446 U.S. at 348–49.

**\*6** The Second Circuit has noted that there are three levels of conflicts of interest to be considered in evaluating a Sixth Amendment claim alleging same: a) a *per se* conflict, which does not require a showing of prejudice; b) an actual conflict of interest that carries a presumption of prejudice; and c) a potential conflict of interest that requires a finding of both deficient performance by counsel and prejudice. *See U.S. v. Doe No. 1,* 272 F.3d 116, 125 (2d Cir.2001) (citation omitted).

A *"per se"* conflict of interest exists only where trial counsel is not authorized to practice law, *see Solina v. U.S.,* 709 F.2d 160, 164 (2d Cir.1983), or is implicated in the very crime for which his client is on trial, *see U.S. v. Cancilla,* 725 F.2d 867, 870 (2d Cir.1984). [7] Since Petitioner has not established the existence of either circumstance, no *per se* conflict existed in the state court matter below.

[7]    The Second Circuit has consistently refused to extend the *per se* rule beyond these two limited situations. *See United States v. Rondon,* 204 F.3d 376, 379–80 (2d Cir.2000) (collecting cases).

To prove that his attorney labored under an actual conflict of interest during the course of his representation, Harris must demonstrate the existence of three distinct factors. *See Armienti v. United States,* 234 F.3d 820, 824 (2d Cir.2000); *United States v. Moree,* 220 F.3d 65, 69 (2d Cir.2000); *United States v. Berger,* 188 F.Supp.2d 307, 333 (S.D.N.Y.2002). First, Petitioner must establish that an "actual conflict of interest" existed, i.e., that "the attorney's and defendant's interests diverge[d] with respect to a material factual or legal issue or to a course of action." *Armienti,* 234 F.3d at 824 (citing *Winkler v. Keane,* 7 F.3d 304, 307 (2d Cir.1993)); *Berger,* 188 F.Supp.2d at 333. He must then establish "adverse effect" as a result of such conflict by demonstrating the existence of "some 'plausible alternative defense strategy' " not pursued by his counsel. *Armienti,* 234 F.3d at 824 (citing *United States v. Levy,* 25 F.3d 146, 157 (2d Cir.1994)) (other citation omitted). Finally, Harris must show "that the 'alternative defense strategy was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.' " *Armienti,* 234 F.3d at 824 (citing *Levy,* 25 F.3d at 157) (other citation omitted). [8]

[8]    An actual conflict in this context may not be a mere theoretical division of loyalties, but instead must be a conflict that adversely affects counsel's performance. *Mickens v. Taylor,* 535 U.S. 162, 170–72 & n. 5 (2002). Thus, an actual conflict of interest must result in an "actual lapse in representation" caused by an attorney who actively represents individuals with conflicting interests. *Cuyler,* 446 U.S. at 349.

In this case, Harris suggests that his interests and those of Attorney Albanese diverged with respect to a material factual matter, legal issue or course of action because Attorney Albanese was negotiating a plea proposal concerning Warner

with the District Attorney in which Warner agreed to testify against Harris in exchange for a favorable plea agreement on behalf of Warner. *See* Traverse at pp. 2–3.

However, as both the Appellate Division and the Court of Appeals observed, the only *evidence* before the Court establishes that although Attorney Albanese encouraged Warner to cooperate with the authorities in the context of counsel's representation of Warner, counsel was *unaware* that such cooperation including his assistance in the prosecution of Harris. *See Harris,* 288 A.D.2d at 613–14; *Harris,* 99 N.Y.2d at 210–11.

**\*7** Moreover, Judge Catena specifically considered and rejected Harris' claim in his CPL Motion—and reiterated by Petitioner in both his fifth and sixth grounds for relief—which suggests that Attorney Albanese was aware that Warner was to be a witness for the prosecution against Harris at his trial. *See* August, 2004 Order at 1–2. Harris has not presented any persuasive evidence which demonstrates that Judge Catena's determination was erroneous in any way.

In sum, Harris has failed to establish that Attorney Albanese did not pursue an alternative defense strategy due to his other loyalties or interests. Petitioner therefore has not established that his attorney labored under an actual conflict of interest with respect to Harris. *E.g., Armienti,* 234 F.3d at 824 (citations omitted).

Finally, any argument that Harris is entitled to habeas relief on this claim due to a potential conflict of interest that existed between himself and Attorney Albanese must fail because Petitioner has wholly failed to establish that he was prejudiced by the pre-trial dual representation. *See Doe No. 1,* 272 F.3d at 126. In this regard, the Court adopts the Appellate Division's determination that counsel's "innocent overlapping pretrial representation of the informant did not negatively impact [Attorney] Albanese's pretrial representation of Harris." *Harris,* 288 A.D .2d at 614.

Harris has not demonstrated that the denial of his ineffective assistance claim by the state courts is either contrary to, or represents an unreasonable application of, *Strickland* and its progeny. Nor has he demonstrated that Judge Catena erred in denying the portion of Harris' CPL Motion in which he claimed that Attorney Albanese was likely aware that Warner was assisting the prosecution in preparing its case against Harris. The Court therefore denies Harris' first ground for relief, as well as the portion of his fifth and sixth grounds

2008 WL 3155200

which argue that Attorney Albanese was aware of the claimed conflict of interest during the course of his representation of Harris.

### 2. Exclusion From In Camera Hearing

In his second ground for relief, Harris asserts that he was wrongfully excluded from the *in camera* meeting conducted by Judge Lomanto with counsel involving juror Lamb. Petition, Ground Two. He asserts that he "likely had information" regarding the possible tainting of that juror, *id.,* and specifically argues that he could have informed counsel of the substance of his wife's conversations with Lamb. Traverse at p. 7. He further suggests that the County Court erred in failing to question his wife about her interactions with the juror. *Id.* Petitioner also asserts that Judge Lomanto wrongfully failed to advise Harris of the substance of the *in camera* meeting that had taken place with Lamb in Harris' absence, including the statements that Lamb had made regarding her interaction with Harris' wife. Traverse at pp. 5–6. Finally, he contends that Lamb was aware of the fact that the woman with whom she spoke was Harris' wife before Lamb was chosen as a juror, but that she nevertheless continued to interact with Petitioner's wife even after Lamb was selected on the panel. Traverse at pp. 6–7.

**\*8** It is well settled that a criminal defendant's presence at trial is required "to the extent that a fair and just hearing would be thwarted by his absence." *Snyder v. Massachusetts,* 291 U.S. 97, 107–08 (1934), *overruled on other grounds by Malloy v. Hogan,* 378 U.S. 1 (1964); *see also Illinois v. Allen,* 397 U.S. 337, 338 (1970). This guarantee encompasses the right "to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings," *Faretta v. California,* 422 U.S. 806, 819 n. 15 (1975), and assures that an accused may even attend hearings in which he is not actually confronting witnesses or evidence against him. *See Kentucky v. Stincer,* 482 U.S. 730, 745 (1987); *United States v. Gagnon,* 470 U.S. 522, 526 (1985) (*per curiam* ). As the Supreme Court has recognized, however, this right to be present is not absolute; it is triggered only when the defendant's "presence has a relation, reasonably substantial, to the fu[l]lness of his opportunity to defend against the charge." *Snyder,* 291 U.S. at 105–06. Thus, there is no constitutional right to be present when the defendant's presence at a proceeding "would be useless, or the benefit but a shadow." *Snyder,* 291 U .S. at 106–07. Accordingly, when there is no indication that a defendant "could have done anything had he been at the hearing nor would he have gained anything by attending," no due process violation results from the holding of a hearing

in a defendant's absence. *Stincer,* 482 U.S. at 747; *Cohen v. Senkowski,* 290 F .3d 485, 489 (2d Cir.2002) ("the right to be present is not absolute: it is triggered only when the defendant's 'presence has a relation, reasonably substantial, to the fu[l]lness of his opportunity to defend against the charge' ") (quoting *Snyder* ); *see also Bohan v. Kuhlmann,* 234 F.Supp.2d 231, 268 (S.D.N.Y.2002) (citing *Stincer* ). When the proceeding is a "short interlude in a complex trial," it is not considered "material" under the due process clause. *Gagnon,* 470 U.S. at 527. In specifically addressing *in camera* discussions with jurors held outside the presence of a defendant, the Supreme Court has emphasized that " '[t]he defense has no constitutional right to be present at every interaction between a judge and a juror.' " *Gagnon,* 470 U.S. at 526 (quoting *Rushen v. Spain,* 464 U.S. 114, 125–26 (1983)) (Stevens, J., concurring in judgment).

This Court initially finds that the inquiry conducted by the County Court was not necessarily a material stage of the trial at which Harris had a right to be present. The Second Circuit has observed that the constitutional requirement that a defendant be present at all stages of his trial is to be applied in a flexible, "common sense" manner. *Clark v. Stinson,* 214 F.3d 315, 322–23 (2d Cir.2000). Significantly, the *Clark* court cited with approval a holding of the New York Court of Appeals which concluded that the questioning of a juror outside the defendant's presence does ***not*** constitute a material stage of trial. See *Clark,* 214 F.3d at 322–23 (citing *People v. Mullen,* 44 N.Y.2d 1, 5–6 (1978)); *see also Cruz v. Artuz,* No. 97–CV–2508, 2002 WL 1359386, at \*12 (E.D.N.Y. June 24, 2002) (rejecting petitioner's claim he was denied a fair trial because he was not present at trial court's *in camera* inquiry of three jurors following their encounter with petitioner's eight-year-old son outside the courtroom because the proceeding was not a material stage of the trial).

**\*9** Moreover, even assuming, *arguendo,* that the conference was a material stage of Harris' trial, he has not demonstrated that his absence from the inquiry bore a reasonable relationship to his opportunity to defend. Although Petitioner now claims that he could have assisted his attorney in questioning Lamb regarding her encounters with Harris' wife, conspicuous by its absence from the record is any evidence that addresses the ***substance*** of any of the claimed conversations between Harris and his wife that related to her interaction with the juror. Consequently, this Court could not properly find that Harris' defense would have benefitted had he been present at that conference. Furthermore, as noted above, Lamb expressed some unease following her

interaction with Harris' wife. Petitioner's presence at the *in camera* meeting may well have **hindered** the fact-finding process in which the trial court was required to engage because Lamb may not have believed she could speaking freely and honestly about her interactions and beliefs in his presence. *E.g. Gagnon,* 470 U.S. at 526–27 (finding that the presence of defendants and their counsel "could have been counterproductive" where court held *in camera, ex parte* inquiry of a sworn juror who expressed concern about the fact that the defendant had been sketching the jury during the proceedings); *United States v. Peterson,* 385 F.3d 127, 138 (2d Cir.2004) (indicating that *in camera* conversation between trial judge and sworn juror who informed other jurors, during deliberations, that she believed she had known the defendants in the past, did not require defendants' attendance because, *inter alia,* their "presence may have prevented [the] juror ... from speaking openly"). Finally, the continuous presence of Harris' counsel during the hearing, and his active participation in the questioning of Lamb, ensured the fundamental fairness of this aspect of the trial. *E.g. Pellington v. Greiner,* 307 F.Supp.2d 601, 606 (S.D.N.Y.2004) ("courts have repeatedly indicated that in most instances, the presence of defense counsel at a conference between a judge and juror adequately protects the defendant's interests"), *aff'd,* 132 Fed.Appx. 868 (2d Cir.2005) (citations omitted). Thus, Harris has failed to establish that the fairness of his trial was "thwarted" by his absence from a portion of the above-referenced hearing. [9]

9    Moreover, Harris waived any right to be present. He was present when counsel and the Court discussed what transpired during the questioning of Lamb and the other jurors, as well as during the arguments counsel made regarding the mistrial applications. *See* Trial Tr. at pp. 682–690. Although Harris directly addressed Judge Lomanto at that time, *see id.* at p. 689, he never objected to his absence from the prior meeting, asserted the need for further questioning of any of the jurors, or requested permission to supplement the fact-finding process. Thus, even if the conference was a material stage of his criminal trial, Harris' failure to lodge any objections to his absence amounted to a waiver of his right to be present. *E.g., United States v. Jones,* 381 F.3d 114, 122 (2d Cir.2004) (holding that the defendant waived his right to be present when he "never objected to his absence from the in-chambers hearing, even though he was present during the subsequent hearing in open court when the court made its ruling"); *Pounce v.*

*McLaughlin,* No. 04 CV 668, 2004 WL 2360037, at *8 (E.D.N.Y. Oct. 20, 2004) (finding that defendant's presence in the court when the County Court announced that a juror would remain was a "sufficient opportunity" for him to object to his absence from the conference), *appeal dismissed, Pounce v. McLaughlin,* No. 05–0596, slip op. (2d Cir. Aug. 30, 2005).

Based upon the foregoing, this Court concludes that the denial of this appellate claim by the Court of Appeals, *see Harris,* 99 N.Y.2d at 212–13, is neither contrary to, nor represents an unreasonable application of, clearly established Supreme Court precedent. Harris' second ground for relief is therefore denied.

### 3. *Failure to Remove Lamb as Juror*

In his third ground, Harris asserts that the trial court committed reversible error when it declined to dismiss Lamb from the jury following the *in camera* meeting with that juror. Petition, Ground Three.

 **\*10**  A trial court's finding of impartiality on the part of jury members may be overturned only on a finding of "manifest error." *Patton v. Yount,* 467 U.S. 1025, 1031 (1984). Habeas courts are to afford a trial court's conclusion as to whether a juror is qualified to remain on a panel "special deference." *Id.* at 1037 n. 12 (citations omitted); *see also Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 813 (2d Cir.2000) ("[o]n § 2254 review, the state trial court is entitled to a presumption of correctness with respect to its conclusion that the jury was impartial"). Because the trial court is in a "unique position to observe the juror," its decision on the issue of whether a juror may properly remain on the panel is to be afforded "great weight." *Johnson v. Ricks,* No. 02–CV–1366, 2007 WL 3171782, at *7 n. 10 (Oct. 29, 2007) (McCurn, S.J.) (quoting *People v. Pinckney,* 220 A.D.2d 539, 539–40 (2d Dept.1995)) (other citations omitted).

The record establishes that after hearing the argument of counsel following the *in camera* conference discussed above, Judge Lomanto concluded that none of the jurors engaged in misconduct, and accordingly denied the mistrial and juror disqualification motions made by counsel. Trial Tr. at pp. 690–91.

Both the Appellate Division and the Court of Appeals concluded that Judge Lomanto made a "probing and tactful" inquiry during the subject conference. *See Harris,* 288 A.D.2d

at 616; *Harris*, 99 N.Y.2d at 213. In conjunction with this ground for relief, the transcript of the *in camera* hearing over which the County Court presided relating to this issue has been reviewed. That review has satisfied this Court that Judge Lomanto properly denied the requests made by counsel for both Harris and Wright to have Lamb removed from the panel. Since petitioner has not demonstrated that the trial court's decision to permit that juror to remain on the jury was erroneous in any way, he is not entitled to habeas relief on this claim.

**4. *Testimony of Prosecution Witnesses Deprived Harris of Fair Trial***

In his fourth ground for relief, Harris asserts that he was deprived of his right to a fair trial due to the testimony offered by two prosecution witnesses. Petition, Ground Four. Specifically, he argues that one witness was wrongfully permitted to testify that she did not wish to disclose information about her employment because it might jeopardize her safety, while another witness improperly declared that testifying at the trial "could get him killed." *Id.* Petitioner asserts that the foregoing testimony, coupled with the concern that juror Lamb expressed regarding her own safety, as well as that juror's interaction with other jury members, deprived him of his right to a fair trial. *Id.*

The record reflects that when counsel for co-Defendant Wright asked Cannizzo on cross-examination where she was employed, Cannizzo responded: "I'd rather not disclose that. I don't feel I need to. Why do I need to disclose where I'm working at this time?" Trial Tr. at p. 883. An off-the-record sidebar was then held. Trial Tr. at pp. 883–84. After that conference, Judge Lomanto asked Cannizzo, "is there a reason why you do not want to answer the question as to where you're working," she responded, over the objection of Wright's counsel, "[f]or my own personal safety." Trial Tr. at p. 884. [10] Harris' counsel did not object to that testimony.

[10]    Wright's counsel then moved for a mistrial, which was denied by Judge Lomanto. Trial Tr. at pp. 884–85.

**\*11**    Additionally, when Hill was testifying on behalf of the prosecution, he noted that he had entered into a cooperation agreement with the prosecution in which he agreed to testify against Harris and Wright, and to plead guilty to narcotics charges relating to the drug activities with the co-defendants and Cannizzo. Trial Tr. at pp. 1065–68. On cross-examination, Wright's counsel inquired of Hill whether he

had thought about the consequences of what might happen if he failed to testify for the prosecution, to which the witness responded "Yeah." Trial Tr. at p. 1088. On re-direct examination, the District Attorney explored with Hill what he meant by his response, to which he replied there was "a whole bunch of consequences ... I could get killed. This isn't a favorable act where I live." Trial Tr. at p. 1091. Petitioner's counsel did not object to that testimony.

Claimed evidentiary errors by state courts are not ordinarily subject to habeas review unless they deprive a defendant of a fundamentally fair trial. *Estelle v. McGuire,* 502 U.S. 62, 72–75 (1991). A party is entitled to habeas relief on a claim that evidence was improperly admitted against him only where the introduction of that evidence "so infused the trial with unfairness as to deny [the defendant] due process of law." *Lisenba v. California,* 314 U.S. 219, 228 (1941). The introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence "is so extremely unfair that its admission violates fundamental conceptions of justice." *Dowling v. United States,* 493 U.S. 342, 352 (1990). As the *Dowling* Court noted, only a very narrow class of such evidentiary infractions violates fundamental fairness. *Dowling,* 493 U.S. at 352; *see also Dunnigan v. Keane,* 137 F.3d 117, 125 (2d Cir.1998); *Collins v. Scully,* 755 F.2d 16, 18 (2d Cir.1985) (stating that improperly admitted evidence results in a due process violation only if "the error was so pervasive as to have denied [the petitioner] a fundamentally fair trial"). Furthermore, "not all erroneous admissions of such evidence are errors of constitutional dimension." *Dunnigan,* 137 F.3d at 125. To the contrary, "[t]he introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.' " *Id.* (quoting *Dowling* ); *see also Wray v. Johnson,* 202 F.3d 515, 526 (2d Cir.2000); *Lopez v. Fischer,* No. 05 CIV.2558, 2006 WL 2996548, at \*10 (S.D.N.Y. Oct. 16, 2006) (citations omitted). The task for the federal habeas court, therefore, is to determine "whether the erroneously admitted evidence, viewed objectively in light of the entire record ... was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it. In short it must have been crucial, critical, highly significant." *Collins,* 755 F.2d at 19 (internal quotation and citation omitted); *Dalcin v. New York,* 438 F.Supp.2d 176, 182 (W.D.N.Y.2006) (citations omitted).

 **\*12** During counsels' cross-examinations of both Hill and Cannizzo, the attorneys for Harris and Wright elicited testimony that related to the state of mind of those witnesses and their reason for testifying on behalf of the prosecution. *E.g.* Trial Tr. at 880–81 (Wright's counsel noting that his questioning sought to "cross-examine [Cannizzo] as to her state of mind"); 1068–81 (Harris' counsel exploring the reason Hill agreed to testify for the prosecution and matters that he "considered" before testifying).

Where the cross-examination of witnesses focuses on the fact that their testimony was motivated by self-interest and an attempt to obtain lenient treatment, a trial court may properly allow testimony which suggests that "such cooperation was also against the [witnesses'] interest to a significant extent." *People v. Edwards,* 261 A.D.2d 260, 261 (1st Dept.1999). Furthermore, as noted above, Harris' counsel failed to object to the testimony of Hill and Cannizzo upon which Petitioner now relies in support of this aspect of his habeas petition. That fact casts significant doubt on a subsequent claim which alleges that a party was prejudiced by such testimony. *E.g., Rojas v. Senkowski,* No. 95–CV–1866, 1996 WL 449321, at \*4 (E.D.N.Y. July 29, 1996) (citation omitted) (counsel's failure to object to allegedly improper remark of prosecutor "undermines the seriousness of petitioner's claim of error").

Based upon the foregoing, this Court concludes that the decision of the Court of Appeals which rejected this appellate claim, *see Harris,* 99 N.Y.2d at 213, is neither contrary to, nor represents an unreasonable application of, *Lisenba* and its progeny. Harris' fourth ground for relief is therefore denied.

### 5. *Brady Violation*

In his sixth ground for relief,[11] Harris asserts that he was deprived of his right to a fair trial because the district attorney "intentionally withheld exculpatory evidence" from the defense. *See* Petition, Ground Six. Specifically, he asserts that "prior statements of accomplices made to law enforcement" were not disclosed to the defense, which in turn hampered trial counsel's ability to effectively cross-examine prosecution witnesses. *Id.*

[11]     This Court addressed the substance of Harris' fifth ground *supra* in conjunction with its analysis of his first ground which argued that Harris received the ineffective assistance of trial counsel.

In denying this claim when asserted by Harris in the context of his CPL Motion, Judge Catena found Harris' allegations

regarding the time at which the statements were disclosed by the prosecution to have been "belied by the record." August, 2004 Order at p. 1.

To prove a *Brady* violation, a habeas petitioner must establish that: 1) the evidence at issue was favorable to the accused, either because it was exculpatory or could have impeached a prosecution witness; 2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and 3) prejudice ensued from the withholding. *Moore v. Illinois,* 408 U.S. 786, 794–95 (1972); *see also Strickler v. Greene,* 527 U.S. 263, 281–82 (1999).

The record reflects that during a conference conducted between counsel for Harris, Wright and the County Court, a discussion was held regarding the pre-trial statements made by Cannizzo and Hill. *See* Trial Tr. at p. 932. When Judge Lomanto stated that he had assumed that counsel for the defense had "got [ten] all of those," the district attorney responded "[t]hey do, your Honor." *Id.* Since Harris' counsel did not dispute that statement of the prosecutor, it is patent that counsel was in possession of those statements before those witnesses testified.[12]

[12]     The excerpt of the trial transcript quoted above occurred immediately after Cannizzo testified and prior to Hill's testimony.

 **\*13** To establish that evidence was "suppressed" by the prosecution in a *Brady* sense, a petitioner must demonstrate that his attorney did not possess the requested evidence in time for its effective use at trial. "[A]s long as a defendant possesses *Brady* evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." *Lutes v. Ricks,* 02–CV–1043, 2005 WL 2180467, at \*15 n. 19 (N.D.N.Y. Sept. 9, 2005) (internal quotation and citations omitted).

The above-cited exchange between the Court and defense counsel conclusively establishes that Harris' counsel had been provided copies of the prior statements that Cannizzo and Hill had made to law enforcement agents before such witnesses testified at trial. *E.g.* Trial Tr. at p. 932. Since Harris has not demonstrated that those statements were "suppressed" by the prosecutor, he has necessarily failed to establish that the County Court's denial of his *Brady* claim is either contrary to, or represents an unreasonable application of, *Brady* and

Case 9:19-cv-00952-LEK-TWD Document 22 Filed 07/27/22 Page 32 of 202

its progeny. Petitioner's sixth ground for relief is therefore denied.

### 6. Subornation of Perjury

In his seventh and final ground, Harris claims that the prosecutor elicited false testimony from Warner when that witness declared that he personally knew Harris and recognized him as being present at the Caroga Lake residence when Warner purchased drugs. *See* Petition, Ground Seven. Petitioner also argues that the District Attorney knowingly supplied a false criminal history sheet to the County Court and counsel for Harris and Wright. *Id.*

Harris raised these claims in his CPL Motion, which was denied by the County Court. *See* August, 2004 Order at pp. 1–2.

The Supreme Court has noted that a conviction obtained by the knowing use of perjured testimony on the part of the prosecution "is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs,* 427 U.S. 97, 103 (1976) (footnote omitted). Additionally, "[a] conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Napue v. Illinois,* 360 U.S. 264, 269 (1959).

As noted in *Toland v. Walsh,* No. 04–CV–0773, 2008 WL 65583 (N .D.N.Y. Jan. 4, 2008):

> To prevail on [a perjury claim], [petitioner] must initially demonstrate that perjury was in fact committed at his trial. *See United States v. White,* 972 F.2d 16, 20 (2d Cir.1992); *Vail v. Walker,* No. 96–CV–578, 1997 WL 695583, at *5 (N.D.N.Y. Nov. 4, 1997) (Homer, M.J.) (citing *White* ), *adopted Vail v. Walker,* No. 96–CV–578 (Dkt. No. 49) (N.D.N.Y. Aug. 24, 1999) (Scullin, J.), *appeal dismissed, Vail v. Walker,* No. 99–2554 (2d Cir. Mar. 23, 2001).

*Toland,* 2008 WL 65583, at *22.

**\*14** Harris offers no proof that supports his claim that Warner's testimony was perjurious. [13] The petitioner bears the burden of proving in his habeas petition that his constitutional rights were violated in the state court proceeding. *See Whitaker v. Meachum,* 123 F.3d 714, 716 (2d Cir.1997) (citing *Walker v. Johnston,* 312 U.S. 275, 286 (1941) (petitioner has the burden on collateral review of "sustaining his allegations by a preponderance of evidence")) (other citations omitted); *Lovacco v. Kelly,* No. 99 CV 3094, 2005 WL 2482518, at *3 (S.D.N.Y. Oct. 7, 2005) (citation omitted); *Frazier v. New York,* 187 F.Supp.2d 102, 108 (S.D.N.Y.2002) (citation omitted); *Nunez v. Miller,* No. 00 CIV 0966, 2001 WL 1773731, at *8 (E.D.N.Y. July 12, 2001) (citations omitted). Harris' failure to provide factual support for his perjury claim represents a failure on his part to shoulder his burden of proof in this action.

[13]   Petitioner failed to cite the portion of Warner's testimony wherein the allegedly perjurious statements were made, and this Court was unable to locate testimony that supported this claim.

As to the criminal history sheet provided by D.A. Hoye, the record reflects that prior to Warner's testimony, the prosecutor provided counsel for the defendants and the court with a copy that witness's criminal history. Trial Tr. at p. 948. It was subsequently established that a prior conviction of Warner for "AUO" [14] in the second degree was absent from the list of convictions detailed on the sheet supplied to defense counsel regarding Warner's prior convictions. Trial Tr. at pp. 952, 958. When questioned about that omission, the District Attorney declared that she had never received any record of that conviction, and was completely unaware of same. Trial Tr. at pp. 957–58. Petitioner has wholly failed to establish that the prosecutor intentionally withheld information relating to the AUO conviction from defense counsel or the court. Moreover, the numerous crimes of which Warner was convicted were discussed during his direct examination, *see* Trial Tr. at 1009–1013, and Harris' counsel chose not to ask any question of this witness—including whether he was convicted of any crimes not brought out on direct examination or contained in the list of convictions provided to defense counsel—during cross-examination. *See id.* at p. 1018. He has therefore failed to establish either misconduct on the part of D.A. Hoye, or any prejudice as a result of the cited omission.

[14]   Though never clearly stated in the record, it appears that "AUO," as referenced at Harris' trial, refers to

the charge of aggravated unlicensed operation of a motor vehicle. *See* N.Y. Vehicle and Traffic Law § 511[2].

In sum, Petitioner has failed to establish any perjury on the part of Warner at Harris' trial, or that the prosecutor knowingly provided false information to the court and/or defense counsel regarding that witness. Moreover, he has wholly failed to demonstrate that his defense was prejudiced, in any way, by the fact that a prior conviction of Warner was inadvertently omitted from the criminal history sheet provided to defense counsel before that witness testified at trial. For all of these reasons, the Court concludes that Harris has not demonstrated that the County Court's denial of this claim, *see* August, 2004 Order at pp. 1–2, is either contrary to, or represents an unreasonable application of, the above-referenced Supreme Court precedent. This Court accordingly denies Harris' final ground seeking federal habeas intervention.

### III. *Certificate of Appealability*

 **\*15**  Finally, the Court notes that 28 U.S.C. § 2253(c)(1) provides in relevant part that:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court .... [15]

---

[15]    Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability

under 28 U.S.C. § 2253(c)." *See* Fed.R.App.P. 22(b).

A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Since Harris has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter.

**WHEREFORE,** after having reviewed the state court record, the documents submitted by the parties in conjunction with this action, the applicable law, and for the reasons discussed herein, it is hereby

**ORDERED,** that the Harris' Petition (Dkt. No. 1) is **DENIED** and **DISMISSED** in its entirety; and it is further

**ORDERED,** that the state court records not filed herein be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of this Memorandum–Decision and Order filed by any party), and it is further

**ORDERED,** that no Certificate of Appealability shall issue with regard to any of Petitioner's claims; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Decision and Order upon the parties by regular or electronic mail.

**IT IS SO ORDERED.**

### All Citations

Not Reported in F.Supp.2d, 2008 WL 3155200

---

End of Document                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:19-cv-00952-LEK-TWD    Document 22    Filed 07/27/22    Page 34 of 202

Rodriguez v. Griffin, Not Reported in Fed. Supp. (2018)
2018 WL 6505808

2018 WL 6505808
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jose A. RODRIGUEZ, Petitioner,
v.
Thomas GRIFFIN, Respondent.

9:16-CV-1037
|
Signed 12/11/2018

**Attorneys and Law Firms**

JOSE A. RODRIGUEZ, Petitioner, pro se, 11-B-3913, Green Haven Correctional Facility, P.O. Box 4000, Stormville, New York 12582.

HON. BARBARA D. UNDERWOOD, Acting New York State Attorney General, OF COUNSEL: DENNIS A. RAMBAUD, ESQ., Ass't Attorney General, The Capitol, Albany, New York 12224, Attorney for Respondent.

**DECISION and ORDER**

DAVID N. HURD, United States District Judge

**I. INTRODUCTION**

 **\*1**  Pro se petitioner Jose Rodriguez ("Rodriguez" or "petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dkt. No. 2, Petition ("Pet."). [1]

[1]   On August 17, 2016, the petition was transferred from the Southern District of New York to the Northern District of New York because petitioner's underlying criminal conviction and sentence came from Otsego County, which is located within the Northern District. Dkt. No. 5.

On December 23, 2016, Rodriguez filed a motion to stay his habeas petition. Dkt. No. 17. In that filing, petitioner signaled his intent to raise additional habeas claims. Respondent Thomas Griffin ("Griffin" or "respondent") opposed the motion to stay. Dkt. No. 19. Upon review, the Court denied petitioner's motion to stay and ordered petitioner to file a motion to amend if he wanted to add new claims to his pending habeas petition. Dkt. No. 20.

On March 6, 2017, in accordance with the Court's direction, Rodriguez filed a motion to amend his habeas petition. Dkt. No. 26. Petitioner also filed a request to stay the habeas proceeding while his writ of *error coram nobis* was pending in state court. Dkt. No. 27. Respondent did not oppose either motion. Dkt. No. 28.

On March 12, 2018, before the Court acted on either the motion to amend or the motion to stay, Rodriguez filed a motion to compel. Dkt. No. 49. In the motion to compel, petitioner seeks the production of certain documents related to the police investigation, namely search warrant applications, search warrants, and premises records of the crime scenes. Dkt. No. 49 at 1.

On April 5, 2017, the Court granted Rodriguez's motions to amend and to stay the proceedings. Dkt. No. 30. Petitioner duly filed his amended petition on May 1, 2017. Dkt. No. 31, Amended Petition ("Am. Pet.").

Thereafter, Rodriguez complied with the Court's order to provide status reports on his state court proceedings and, on June 28, 2017, petitioner informed the Court that his state court remedies had been exhausted. Dkt. No. 35. In accordance with that development, the Court directed a response to the amended petition. *Id.*

Respondent has filed an opposition to Rodriguez's amended petition. Dkt. No. 42, Respondent's Answer ("Ans."); Dkt. No. 42-1, Respondent's Memorandum of Law ("R. Memo."); Dkt. Nos. 43-43-5, State Court Records ("SCR"); Dkt. Nos. 43-6-43-9, Transcripts ("T."). Petitioner has filed a reply. Dkt. No. 48, Traverse.

For the reasons that follow, Rodriguez's habeas petition and motion to compel are both denied and the petition is dismissed.

**II. RELEVANT BACKGROUND**

 **A. Overview**
The basic facts underlying Rodriguez's criminal conviction are not in dispute. As stated by the Appellate Division:

Following a lengthy police investigation, [petitioner], a resident of the Bronx, was charged with various crimes arising out of his alleged management of a heroin distribution ring in Otsego County. He was tried by a jury and convicted of the crime of operating as a major

Case 9:19-cv-00952-LEK-TWD   Document 22   Filed 07/27/22   Page 35 of 202

Rodriguez v. Griffin, Not Reported in Fed. Supp. (2018)

2018 WL 6505808

trafficker, as well as four counts of criminal sale of a controlled substance in the third degree. County Court denied [petitioner]'s motion to set aside the verdict and sentenced him to a prison term of 20 years with five years of postrelease supervision on the major trafficking count and four five-year prison terms, each with three years of postrelease supervision, on the criminal sale counts, all sentences to be served consecutively.

*2 ...

The broad outline of the operation revealed by the testimony was that [petitioner]—located in New York City and using the nickname "Flip" instead of his real name—used throw-away cell phones with numbers that frequently changed to maintain contact with numerous individuals in the City of Oneonta, Otsego County, who followed his directions to sell heroin that he supplied to purchasers in that city, and who were paid for their efforts with heroin to support their drug habits. Oneonta narcotics detectives ... testified to describe their lengthy investigation into [petitioner]'s Oneonta heroin operation, their encounters with the various witnesses and [petitioner]'s ultimate arrest.

*People v. Rodriguez*, 995 N.Y.S.2d 785, 787-89 (3rd Dep't 2014).

### B. Arraignment

On December 17, 2010, Rodriguez was arraigned in Otsego County Court. SCR 495-501. During the arraignment, the court briefly summarized the charges in the indictment and informed petitioner he had a right to be represented, that counsel could be appointed if he did not have the resources to retain an attorney, and that the proceedings could be adjourned in order for petitioner to secure counsel. SCR 496-97.

In response, Rodriguez indicated on the record that he wanted an attorney but did not have the means to retain one. SCR 497. The County Court stated it would assign petitioner counsel, entered a plea of not guilty on petitioner's behalf, and adjourned the matter to allow petitioner time to meet with his soon-to-be court-appointed attorney. SCR 497-98.

At that time, the People made an application to remand Rodriguez without bail given his risk of flight. SCR 498-99. Petitioner reserved his right to object until he was represented by counsel. SCR 499. Petitioner was remanded without bail

pending further proceedings, which were then re-scheduled for January 14, 2011. SCR. 499-500.

On January 14, 2011, Rodriguez was arraigned. Dkt. No. 43-6 at 8-13. Petitioner's court-assigned counsel appeared and represented petitioner at the proceeding. *Id.* at 9-10. However, by that time petitioner had also retained his own attorney, who later served as petitioner's trial counsel. *Id.*

### C. Pre-trial Matters

Based upon speculation that the People "may introduce ... recorded conversations," Rodriguez's retained counsel made a pre-trial motion for an audibility hearing. SCR 138. In opposition, the People indicated they had "no[ ] inten[tion of] introduc[ing] any recordings on their direct case." SCR 142. The trial court denied petitioner's motion based on the People's representation. SCR 153. The court concluded that any mention of the tapes on the People's direct case would be prohibited. *Id.*

Prior to jury selection, Rodriguez's counsel moved to dismiss based on the composition of the jury panel. T. 1-8. Petitioner's counsel also moved to change venue given the press attention surrounding petitioner's case. *Id.* The trial court denied both motions. As to venue, the trial court found it had no authority to grant the application—such applications must be submitted in writing directly to the appropriate appellate division. T. 9. As to the jury panel's composition, the trial court concluded petitioner failed "to show facts that demonstrate[d] ... there [was] ... a substantial deviation from the requirement[s] of the Judiciary Law." T. 9.

*3 During jury selection, Rodriguez's trial counsel utilized a jury expert. T. 47. After the jury was selected, the trial court asked the People and petitioner's trial counsel to hand in the jury questionnaires. T. 345-46, 356. Petitioner's trial counsel did not object to returning these questionnaires. At that time, petitioner's trial counsel also provided the court with notes, though it is unclear from the record whether those notes came from the petitioner, the jury expert, or possibly both. T. 357-360.

### D. The People's Case

The People relied on the testimony of multiple confidential informants and other cooperating witnesses who made heroin purchases from Rodriguez's dealers in and around Oneonta. T. 694. Several of those dealers agreed to cooperate in the instant

Case 9:19-cv-00952-LEK-TWD    Document 22    Filed 07/27/22    Page 36 of 202
Rodriguez v. Griffin, Not Reported in Fed. Supp. (2018)
2018 WL 6505808

case for favorable treatment in their own pending criminal cases. *Id.*

One of the People's cooperating witnesses was Rebecca Kennedy. T. 691. Kennedy was incarcerated in the Lakeview Shock Program at the time of the trial. T. 691-92. Kennedy met Rodriguez in 2007 when she began buying heroin from him and his friends. T. 695-97. She would call petitioner on a cell phone, tell him what she wanted, and petitioner would direct her to someone in Oneonta that had drugs available. T. 698.

In 2009, Kennedy began working for Rodriguez. T. 698-99. Petitioner would call Kennedy and direct her to where someone was seeking heroin. T. 699. Kennedy was compensated for this work with drugs. *Id.* Kennedy also traveled to New York City to drop off cash – between $2,000 and $5,000 – and pick up bundles of heroin – usually twenty to thirty bundles per trip. T. 700-03. Kennedy estimates she completed this exchange approximately forty to fifty times. T. 700.

When she was in Oneonta, Kennedy estimated that she was personally selling an average of 80 to 100 bags of heroin per day, at $20 per bag. T. 704-05. She had between twenty and thirty regular customers in Oneonta, including confidential informants Chancy Couse, Mark Clark, and Justin Gage. T. 708-09. Kennedy would wire the money she received from the sales, via Western Union at various convenience and drug stores, to different names and addresses provided to her by Rodriguez. T. 705-06. Kennedy testified that every week or two she would wire one or two thousand dollars per petitioner's directions. *Id.*

On September 2, 2009, Kennedy sold five bags of heroin to confidential informant ("CI") Chancy Couse. T. 745-46, 755-61. CI Couse initiated the sale with a call to CI Mark Clark, the call went to voicemail, and then Kennedy returned the call and provided CI Couse with a location to receive the heroin. T. 755-56. CI Couse was given $100 for the buy, fitted with a listening device, and followed by police to the prearranged site. T. 756-58. The transaction was monitored: CI Couse was recorded saying "Here's the money" and Kennedy then exchanged five bags of heroin for the $100. T. 758. CI Couse provided the drugs to the police, which later tested positive for heroin. T. 759-761.

On January 21, 2010, Kennedy sold ten bags of heroin to CI Justin Gage. T. 746, 773-76. CI Gage contacted the police

asking if he should set up a controlled buy between himself and Kennedy. T. 773-74. CI Gage was given $180 for the buy and outfitted with a listening device. *Id.* Police followed CI Gage to a parking lot where he awaited further instructions. T. 774. CI Gage then received a call from Kennedy, who gave him directions to a house, near the parking lot, where he could go to meet her and buy the heroin. *Id.* CI Gage, watched by the police, followed the instructions and arrived at the house. T. 775. Once he arrived, Kennedy came out of the house, approached the car, and, after a short negotiation, sold CI Gage ten bags of heroin for $180. T. 775-76. The drugs in the bag were later confirmed to be heroin. T. 834-35.

**\*4** During cross-examination of the police officer who arrested Kennedy, Rodriguez's trial counsel asked several questions about the officer's knowledge of alleged calls that a man known as "Flip" made to several people, and about the officer's familiarity with Flip's voice. [2] T. 781-82. This eventually led the officer to respond that "[he] recognized [Flip's] voice when [the police] did controlled calls [with Flip] in two [other] investigations." T. 782.

[2]     Evidence introduced at trial established that other individuals knew Rodriguez by the moniker "Flip."

Rodriguez's counsel objected, which was overruled by the trial court because defense counsel had "asked the question." T. 782-83. Counsel continued questioning the officer on how he could recognize Flip's voice and the officer answered because "[i]t's a recorded phone call." T. 783. Petitioner's counsel moved for a mistrial based on the officer alluding to the existence of the recorded tapes, the mention of which had been prohibited during the People's direct case in the court's pre-trial ruling. T. 783; SCR 153. After hearing arguments on the matter (T. 782-87), the trial court denied the motion for a mistrial and opted to issue the following curative instruction:

I'm going to strike th[e last] answer from the record. I've obviously sustained the objection.

The answer dealt with a purported recording of a call. That answer was objected to and properly so and I ask you and direct you to strike from your mind any mention of there being a recorded telephone call. That is not evidence in this case before you. So as you sit here today, as you move forward in this case, well, as you sit here today there is no evidence before you of any type of recorded phone call.

I don't know what the future will bring because I don't know the evidence, but as we sit here today I tell you there's

Case 9:19-cv-00952-LEK-TWD    Document 22    Filed 07/27/22    Page 37 of 202

Rodriguez v. Griffin, Not Reported in Fed. Supp. (2018)

2018 WL 6505808

no evidence before you of a recorded call involving Mr. Rodriguez. So completely put that out of your mind.

T. 792-93. [3]

[3]     A similar exchange later occurred between the police officer and petitioner's counsel when he asked several questions about the officer's knowledge of the content of a controlled call placed by a CI while in the presence of the officer. T. 1133-34. The officer clarified that at the time the call was made, he heard the parties talking, and he "listened to the [contents of the] call later." T. 1134. Counsel made a motion for sanctions based on the officer's mention of a recorded phone conversation. T. 1135-36. The trial court heard arguments on the matter and reserved decision for after lunch. T. 1136-38. The court explained that a prior ruling prohibited reference to the calls, the first reference was rectified with a curative instruction; however, the second reference was more complex. T. 1139-1140. Accordingly, the court ordered, as a sanction, that count 12 of the indictment be dismissed. T. 1140.

Another cooperating witness was Jessica Gaston. Beginning in the spring of 2009, and lasting for approximately the next eighteen months, Gaston worked for Rodriguez, who she knew by the alias "Flip." T. 843-46. Gaston would drive down to New York City to pick up heroin and transport it back to Oneonta. T. 845-46. Gaston estimates she made thirty to forty trips to New York City where she would meet Flip, receive between ten to twenty bundles of heroin, and then transport them back to Oneonta with her. *Id.* Gaston generally traveled with someone, often Kennedy. T. 846. Gaston confirmed that Kennedy would take money, specifically "thousands" of dollars, down to New York with her. T. 847.

 **\*5** Gaston also wired money to the Bronx, via Western Union, to different names and addresses pursuant to Rodriguez's direction. T. 847-48. Gaston wired approximately $1,000 to $3,000 to petitioner on three different occasions. T. 848. While Gaston did not directly sell heroin, she acted as an intermediary, calling petitioner on the behalf of potential customers and relaying petitioner's instructions to the customers regarding where and from whom they could purchase heroin. T. 850-53. Gaston was compensated with heroin. T. 848.

On May 5, 2010, Gaston received heroin from one of Rodriguez's dealers for CI John Francis. T. 852-53, 888-892. CI Francis contacted Gaston and asked her to call petitioner and arrange a purchase for him. T. 853. Gaston called petitioner and he sent a dealer to Gaston's house with the heroin. T. 853, 889. Gaston received the heroin, then CI Francis arrived and exchanged $40 for two bags of heroin on Gaston's front porch. T. 853, 889-890. The drugs later tested positive for heroin. T. 891.

A third cooperating witness was Mark Rathburn, who worked briefly for Rodriguez until his arrest in February 2010. [4] T. 904-918. Rathburn first spoke with petitioner on the phone, when he was attempting to contact Kennedy to buy heroin. T. 904-05. Thereafter, Rathburn and petitioner spoke often when Rathburn would call seeking heroin. T. 905-06. Petitioner would direct Rathburn to different places where he was sold heroin by several different individuals. T. 906. Shortly thereafter, Rathburn offered to work for petitioner in exchange for drugs. T. 907-08.

[4]     It is unclear exactly when and for how long Rathburn engaged in certain of these activities.

Rodriguez directed Rathburn to pick people up at various homes and bus stations in Albany and Oneonta and give them rides in exchange for drugs. T. 908-910. Rathburn also wired money to different names and locations throughout the Bronx, per petitioner's direction, on approximately a dozen occasions. T. 916-17. During each transaction, Rathburn wired between $8,000 and $10,000 to petitioner. T. 917.

Rodriguez also directed Rathburn to rent an apartment. T. 910. The apartment was used as a stash house for drugs and money. T. 911-13. Petitioner would directly pay, or give money to Rathburn to pay, for the apartment's rent. T. 910-11. Petitioner would also compensate Rathburn $400-$500 per week for keeping the apartment in his name. T. 913.

The arrangement lasted until Rathburn's arrest three weeks later, which came after petitioner instructed Rathburn to go to a location to drop off heroin. T. 913-14. Rathburn was pulled over by police and, at the time, possessed fifty-six bags of heroin. T. 914. The heroin was from petitioner's stash house, about which Rathburn told the police and consented to its search. T. 914-16. Police obtained a warrant, searched the home, and found 250 bags of heroin inside. T. 956-57.

Case 9:19-cv-00952-LEK-TWD    Document 22    Filed 07/27/22    Page 38 of 202
Rodriguez v. Griffin, Not Reported in Fed. Supp. (2018)
2018 WL 6505808

A fourth cooperating witness, Jordan Krone, worked for Rodriguez by attempting to expand petitioner's heroin operation into Albany, New York. T. 1151. Krone would hand out samples of petitioner's heroin in Albany until early 2009, when the demand increased enough that it became lucrative to begin distributing heroin there. T. 1151-53. Krone distributed the samples, and then sold the heroin, pursuant to direction he received from petitioner over the phone. T. 1153, 1158. At the peak of his business, Krone was selling 300-400 bags of heroin every other day. T. 1155.

Krone would replenish his supply by going to New York City, Queens, or the Bronx and meeting Rodriguez. T. 1155-56. While in the city, Krone would also provide petitioner with the money he earned from the drug sales. T. 1161-62. Krone estimated making between thirty and fifty trips to the city to replenish his drug supply (T. 1155) and estimated that he brought down over $100,000 in profit to petitioner in a six-month period (T. 1161-62). Krone also wired money to different names and addresses, provided by petitioner, on several occasions. T. 1169-1170. The most Krone wired at once was $5,000. T. 1170.

*6 On July 1, 2010, Krone left Albany, at Rodriguez's request, to move to Oneonta and take over petitioner's heroin sales there. T. 1159-60, 1165. However, Krone was arrested almost immediately thereafter while trying to make a sale in Oneonta. T. 1167.

Another cooperating witness, Leo Moore, was acting as a confidential informant on June 15, 2010. T. 1083-85. CI Moore called a man he knew as Flip and asked if he could purchase heroin. T. 1084-85. Flip told CI Moore to go to several locations before a person arrived in a truck. T. 966-68. CI Moore exchanged $100 for five bags of heroin. T. 968, 1085-86. CI Moore recognized the dealer as Bobby Colone, who would later be called to testify by the defense. T. 1086.

At the conclusion of the People's case, Rodriguez's trial counsel "move[d] to dismiss each and every count of the indictment [because t]he People ... failed to prove a prima facie case, specifically as to counts three through 11 [sic]." T. 1221. The trial court reserved on the motion, taking the night to "go through ... notes carefully [to] make sure that there [was] sufficient corroboration of the testimony for each witness...." T. 1225. Ultimately, the court held that "there [was] sufficient evidence in the record ... for the jury to justify a guilty verdict...." T. 1240.

### E. The Defense Case
Bobby Colone testified that, on June 15, 2010, he sold five bags of marijuana to Leo Moore, who was acting as a confidential informant at the time. T. 1228-29. Colone testified that in his sixty arrests, four felony convictions, and fourteen misdemeanor convictions, he had never been arrested or convicted of possessing or selling heroin. T. 1219-33. Colone also stated that he did not have a nickname or alias and did not know, nor had he ever worked for, Rodriguez. T. 1231-32.

### F. The People's Rebuttal
Krone, a cooperating witness, identified Colone (the defense's witness) and testified that he also knew him by the street aliases of "Ricky Bobby" and "Shake and Bake." T. 1250. Krone testified that he knew Colone because he had "seen him with [Rodriguez] quite a few times when [he] went down to see him [in New York] and when [Krone] was living in Albany [Colone] came to visit [Krone and] ... stayed [in Krone's apartment] ... for a few days." T. 1250.

### G. Charge Conference, Deliberations, Verdict and Sentence
Prior to summations, Rodriguez's trial counsel made several motions to dismiss. First, he moved to dismiss all counts in the indictment, "specifically as to count one [because ... every person who testified ... was ... a co-conspirator[; thus] ... the People ... failed to present credible, believable evidence beyond a reasonable doubt as to counts one through 11." T. 1252. Additionally, petitioner's trial counsel moved to dismiss counts two, three, and four of the indictment because those counts charged conduct that occurred "before ... the date the [major drug trafficking] law [under which petitioner was charged] had[ ] been passed." T. 1253.

The trial court heard extensive argument on the issue. T. 1253-55. After a short recess, the court denied Rodriguez's trial counsel's motion. T. 1255. The court explained that the effective date of the major drug trafficking statute was November 1, 2009. *Id.* Because two counts in the indictment preceded the effective date, the court decided "not ... to amend the indictment, but ... to ... instruct the jury the only time [frame it may consider] is November 1st, 2009 to September 1st ... [2010]." T. 1256. Notably, the trial court concluded that while "[t]he jury obviously can't consider those counts as evidence supporting the major trafficker [law], ... they're still

Case 9:19-cv-00952-LEK-TWD    Document 22    Filed 07/27/22    Page 39 of 202

Rodriguez v. Griffin, Not Reported in Fed. Supp. (2018)

2018 WL 6505808

separate crimes in their own right and they can consider them as such." *Id.*

**\*7** Specifically, the trial court instructed the jury that:

> to find [petitioner] guilty of operating as a major trafficker, [the jury] must find beyond a reasonable doubt that between November 1st, 2009 and September 1st, 2010, [petitioner] ... acted as a director of a controlled substance organization and during this period the controlled substance organization sold ... one or more controlled substances and that the proceeds collected ... had an aggregate total value of $75,000.00 or more.

T. 1332.

Summations followed. Prior to Rodriguez's trial counsel's closing statement, the trial court read its instructions to the jury. As relevant here, the instructions stated that:

> Summations provide each lawyer an opportunity to review the evidence and to submit for your consideration the facts, inferences and conclusions that they contend you may properly draw from such evidence.

> If you find that a lawyer has accurately summarized and analyzed the evidence and if you find that the inferences and conclusions the lawyer asks you to draw from the evidence are reasonable, logical and consistent, then you may adopt those inferences and conclusions.

> But please bear in mind the following. You are the finders of fact. It's for you and you alone to determine the facts from the evidence that you find to be truthful and accurate, so please remember, no matter what the lawyers say to you in their summations, no matter how they say it, these are simply arguments submitted to you for your consideration.

> Remember that the lawyers are not witnesses in the case. If a lawyer during his summation asserts as a fact something that you find was not based on the evidence, then you must disregard it. You have heard the evidence and you must decide this case based on the evidence as you find it to be and the law as I explain it.

T. 1257-58.

Rodriguez's amended habeas petition alleges that several of the prosecutor's statements made during summation improperly vouched for the credibility of the People's witnesses. Am. Pet. at 13.

In particular, the People made statements about whether Flip was, as characterized by Krone, a "criminal master mind" (T. 1289-90); about what Rodriguez's trial counsel would have the jury believe (T. 1292, 1295-96); about whether a conspiracy theory existed (T. 1293); about whether the People's witnesses were telling the truth (T. 1296); about whether Flip kept drug records (T. 1298); and about how petitioner's trial counsel prepared witnesses (T. 1300).

Rodriguez's trial counsel objected to all these statements. T. 1289-90, 92-93, 1295-96, 1298, 1300. The trial court overruled several of the objections as argument, but also cautioned the prosecutor to be precise with his language (T. 1295-96) and sustained the objections about the drug records and about how Rodriguez's trial counsel prepared his witnesses (T. 1298, 1300).

After deliberating for a day, the jury sent out a note. T. 1340. It is unclear whether the trial court discussed or contemplated with counsel how the note should be handled. However, it is clear that counsel and petitioner had an opportunity to read the note. T. 1340 (petitioner's counsel asking the court to "[g]ive [him] a minute to show the [petitioner] the note" and the court announcing to the jury that the note has been "share[d] ... with the attorneys").

**\*8** The note requested a read-back of a portion of the testimony. T. 1340. The portion of the testimony elicited on direct examination was read back and then the trial court asked the jury to consider whether it also wanted to hear a read-back of the cross-examination portion of the testimony. T. 1340-41. No objections or further conversation on this point were had.

Soon thereafter, the trial court received a second note from the jury, this time requesting more read-backs. T. 1342. This time, Rodriguez's trial counsel requested that the entire questioning, both direct and cross, be read as "[i]t [wa]s not proper to stop after direct and ask [the jury] do you want more[?]". *Id.* The court agreed and this time read back both the direct and cross-examination testimony from the two witnesses requested in the note. T. 1342-43.

Case 9:19-cv-00952-LEK-TWD   Document 22   Filed 07/27/22   Page 40 of 202

Rodriguez v. Griffin, Not Reported in Fed. Supp. (2018)
2018 WL 6505808

Ultimately, the jury found Rodriguez guilty of operating as a major trafficker and of four counts of third-degree criminal sale of a controlled substance. T. 1356-59. In particular, petitioner was convicted of the sales that occurred with (1) Rebecca Kennedy on September 2, 2009 and January 21, 2010; (2) Jessica Gaston on May 4, 2010; and (3) Bobby Colone on June 15, 2010.

On December 22, 2011, Rodriguez was sentenced to a consecutive prison term of twenty years for his conviction for operating as a major trafficker and five years for each third-degree sale, to be followed by an aggregate term of five years post-release supervision. S. 17-18. Further, the trial court ordered petitioner to pay fines of $80,000 for his conviction for operating as a major trafficker and $5,000 for each of his third degree sale convictions. *Id.* The Uniform Sentence & Commitment Order, filed by the Clerk of the Court, stated that "[e]arnings are to be withheld from state prison wages for payment of surcharge and fees. Civil judgments to be entered for fine." T. 358

**H. CPL § 330.30**
On November 30, 2011, Rodriguez filed a counseled motion to set aside his verdict pursuant to New York Criminal Procedure Law ("CPL") § 330.30. SCR 1-11. Petitioner's CPL § 330.30 motion claimed that (1) his conviction was based on legally insufficient evidence; (2) the trial court erred by denying petitioner's oral objection to the composition of the jury panel; (3) the trial court erred in denying petitioner's motion to change venue; (4) the trial court erred by truncating the time it provided petitioner's trial counsel to voir dire prospective jurors; and (5) the trial court erred by seizing the jury notes and jury sheets created by the defense team during jury selection. SCR 7-10.

On December 22, 2011, the Otsego County Court denied Rodriguez's CPL § 330.30 motion. SCR 17-20. The court held that petitioner's renewed motion to set aside the verdict for insufficient evidence was denied for the same reasons stated at the close of the People's case. SCR 17-18. Specifically, viewing the evidence in the light most favorable to the prosecution, there was "a valid line of reasoning and permissible inferences from which the jury could rationally conclude that [petitioner] committed the offenses for which he was convicted." *Id.*

The court denied the motion to set aside the verdict as being against the weight of the evidence because "[a] trial judge

does not have the power to change a guilty verdict to a not guilty verdict based on a reassessment of the facts." SCR 18. The court also denied the motion to set aside the verdict based on Rodriguez's objection to the jury panel because the challenge was not in writing, a statutory prerequisite. SCR. 18-19 (citing CPL § 270.10(2) ).

**\*9** Similarly, the court denied Rodriguez's motion regarding the change of venue because it too did not fulfill the statutory prerequisites of being timely, in writing, and submitted to the appellate division. SCR 19 (citing CPL § 230.20(2) ). Finally, the court denied petitioner's motions with respect to his jury complaints. First, the court held that the voir dire time limitation was proper because petitioner failed to object to the limitation when it was imposed, rendering the issue unpreserved for review. SCR 19 (citing *People v. Smith*, 89 A.D.3d 1126, 1131 (3rd Dep't 2011) ). It also found that petitioner's trial counsel did not object at the time the court collected the jury questionnaires and notes. *Id.* Accordingly, that issue was also not properly preserved for further review. *Id.*

**I. Direct Appeal**
On December 11, 2013, Rodriguez filed a counseled brief on direct appeal to the Appellate Division, Third Department. SCR 28-107. Petitioner's brief on direct appeal alleged: (1) his conviction for operating as a major trafficker was not supported by legally sufficient evidence and was against the weight of the evidence; (2) the other four crimes of which he was convicted (criminal sale of a controlled substance in the third degree) were not supported by legally sufficient evidence and were against the weight of the evidence; (3) Jordan Krone's testimony should not have been admitted at trial without a prior *Ventimiglia* ruling because it related to uncharged bad acts and was unrelated to any of the charges in the indictment; (4) the trial court erred by effectively amending the indictment with its instruction to the jury about petitioner potentially operating as a major trafficker; (5) his trial counsel was ineffective; and (6) the sentence was harsh and excessive. SCR 28-107.

The Third Department rejected these arguments and affirmed Rodriguez's conviction. *People v. Rodriguez*, 121 A.D.3d 1435, 1444. First, the appellate division found that petitioner's contentions that his conviction were not supported by legally sufficient evidence and were against the weight of the evidence were only preserved "as to the charge of operating as a major trafficker, as [petitioner] specifically raised that claim when he moved to dismiss the trafficking charge at the close

Rodriguez v. Griffin, Not Reported in Fed. Supp. (2018)

2018 WL 6505808

Case 9:19-cv-00952-LEK-TWD    Document 22    Filed 07/27/22    Page 41 of 202

of proof, but did not include it in his more general motion to dismiss the other charges." *Id.* at 1436. Despite the failure to preserve the claim, the court went on to address the merits. *Id.* at 1436-1441.

The Third Department explained that a person is guilty of operating as a major trafficker where "he ... acts as a director [or leader] of a controlled substance organization [of four or more people] during a period of 12 months or less in which the organization sells a controlled substance ... and the proceeds due or collected ... have a total value of at least $75,000." *Rodriguez*, 121 A.D.3d at 1436-37. Through the witness testimony, the Third Department concluded "there was adequate corroboration for the testimony of these accomplice witnesses ... [which] connect[ed] the [petitioner] with the commission of the crime in such a way as may reasonably satisfy the jury that the accomplice was telling the truth." *Id.* at 1439. Specifically, the appellate division found that

the testimony of both female witnesses was corroborated by that of the narcotics detectives, who testified that they used CIs to make controlled heroin purchases from each of the women, and that these purchases were initiated by contact with [petitioner] or his employees and conducted according to the procedures described by the witnesses.

The testimony of the first male witness was corroborated by the same two detectives. [One officer] testified that he arrested the witness after observing what appeared to be a drug transaction at a residence in Oneonta and found 56 bags of heroin in his car. After the witness stated that additional heroin could be found in the stash house, [another officer] searched it and found an additional 250 bags. [That officer] further determined that the stash house had been leased in the name of this witness shortly before his arrest.

 **\*10** Corroborative evidence need not prove the commission of the crime, directly link [the petitioner] to the crime or lead exclusively to the inference of the [petitioner]'s guilt. Here, the police testimony confirming certain details of [petitioner]'s alleged operation as described by the accomplices was sufficient to support a reasonable inference that he was involved and to satisfy the minimal corroboration requirements of CPL 60.22(1).

*Rodriguez*, 121 A.D.3d at 1439-1440 (internal quotation marks and citations omitted) (some paragraph breaks added).

Further, the Third Department noted that testimony from another witness (1) confirmed Rodriguez's nickname as "Flip"; (2) confirmed petitioner's operational method of giving instructions to various parties via cell phones; (3) acknowledged the drug ring in Oneonta; and (4) confirmed the method for exchanging drugs and money in New York City and via Western Union wires. *Rodriguez*, 121 A.D.3d at 1440.

Accordingly, "[v]iewing the testimony in the light most favorable to the People, [the appellate court] f[ound] a valid line of reasoning and permissible inferences that could lead rational persons to the conclusion reached by the jury." *Rodriguez*, 121 A.D.3d at 1440-41. The testimony regarding the profits from the heroin proceeds "was more than adequate to satisfy the monetary threshold of $75,000. Further, the testimony of the accomplice witnesses as to their own involvement, that of [petitioner], and that of multiple other persons who they testified also worked for [petitioner] ... was sufficient to establish ... a controlled substance organization existed...." *Id.* at 1441.

Lastly, the testimony regarding Rodriguez's "management of the Oneonta operation by ... supplying the heroin, supervising and directing the workers, communicating with buyers and sellers to schedule heroin transaction, and collecting the proceeds sufficiently established that he was a ... leader of the organization." *Rodriguez*, 121 A.D.3d at 1441. Allegations that the witnesses were not credible "were vigorously explored in cross-examination, and the jury was free to credit or discredit their testimony as it saw fit," which is a determination that the Third Department held required deference as it "was in accord with the weight of the evidence." *Id.*

With respect to each individual sale, the Third Department also held that each of these four convictions were supported by sufficient evidence. *Rodriguez*, 121 A.D.3d at 1441-42. The first two convictions were supported by testimony regarding the September 2009 and January 2010 controlled buys. The witness stated "that [petitioner] was the supplier of the heroin that [the witness] sold during [the two controlled buys] ... [thus] the jury could reasonably have inferred that [petitioner] aided both sales by supplying the heroin." *Id.* at 1442.

The third conviction arose from the May 2010 controlled buy whereupon the witness testified that she sold a CI drugs at her home after she "contact[ed petitioner] to arrange the sale ...

Rodriguez v. Griffin, Not Reported in Fed. Supp. (2018)

2018 WL 6505808

and ... [petitioner] then sent a third party to her house – thus establishing [petitioner's] assistance on the sale." *Rodriguez, 121 A.D.3d at 1442*.

The fourth conviction stemmed from the June 2010 controlled buy where the jury believed the credibility of a CI and officer who testified to a phone call to petitioner to arrange to buy heroin, and a subsequent sale, which the jury determined to be true. *Rodriguez, 121 A.D.3d at 1442*. Giving "the jury's determinations appropriate deference, [the court] f[ound] that the weight of the evidence support[ed] all four convictions." *Id. 1443*.

 **\*11** Next, with regard to the *Ventimiglia* claim, the Third Department found Rodriguez's contentions meritless as "no ... hearing was required ... as the testimony of [Krone] ... did not address uncharged crimes or bad acts and was not introduced to suggest propensity, but was instead relevant to ... [petitioner's] ... direct[ion of] a controlled substance organization in Oneonta." *Rodriguez, 121 A.D.3d at 1440*. Further, to the extent petitioner alleges an ineffective assistance of counsel claim based on the failure to protest not having such a hearing, such claims are also meritless "as a [petitioner] is not denied the effective assistance of counsel when counsel fails to raise issues that have little or no chance of succeeding." *Id.*

The Third Department also denied Rodriguez's allegations about the trial court improperly amending the indictment. When the trial court "instructed the jury to base its determination of the trafficking charge only upon evidence of acts transpiring between November 1, 2009 and September 1, 2010 ... there was no objection to this charge;" accordingly, the claim is unpreserved, "the instruction neither altered the theory of prosecution nor prejudiced [petitioner] on the merits," and it was harmless at best. *Rodriguez, 121 A.D.3d at 1437 n.2*.

The Appellate Division also rejected Rodriguez's contention that his sentence was harsh and excessive. First, the appellate court observed that "the disparity between the sentence imposed ... and a shorter sentence offered by the People ... without more, does not demonstrate ... improper[ ] punish[ment] for exercising [petitioner's] right to go to trial." *Rodriguez, 121 A.D.3d at 1437*.

Further, the court noted that the "[trial c]ourt was authorized to impose a maximum indeterminate life term with a minimum of 15 to 25 years ... but instead elected to sentence

[petitioner] to a determinate term of 20 years, the maximum term permitted under th[at statutory option]. *Rodriguez, 121 A.D.3d at 1437*. This decision came after the trial court provided extensive rationalization for why it rejected petitioner's plea for leniency "including the serious harm caused by [petitioner's] conduct to the affected individuals and the community, [petitioner's] failure to show remorse or insight, his extensive prior criminal history – which included a previous conviction for selling heroin in Oneonta – and his criminal character as revealed by these factors." *Id.* Any mistake the trial court made in not putting express findings on the record was rectified by "the court's detailed remarks," resulting in the Third Department's decision refusing to vacate the sentence. *Id. at 1443-44*.

On November 17, 2014, Rodriguez sent a counseled application seeking leave to appeal the Third Department's ruling to the New York Court of Appeals. SCR 193-200. According to the application, leave to appeal further was "being sought on the grounds that the lower court misapplied the law with respect to the need to corroborate accomplice testimony[.]" SCR 194.

On January 24, 2015, the Court of Appeals denied leave to appeal. SCR 203; *see also* 24 N.Y.3d 1122 (2015). A subsequently filed motion for reconsideration (SCR 204-06) was also denied by the Court of Appeals on May 20, 2015. SCR207; *see also* *People v. Rodriguez*, 25 N.Y.3d 1076 (2015).

### M. CPL § 440.20

Rodriguez, by now acting *pro se*, moved in Otsego County Court to vacate his sentence pursuant to CPL § 440.20 on the grounds that (1) the trial court erred, pursuant to Penal Law § 80.25(1) and CPL § 380.20, in failing to specify which counts or charges were to run consecutively or concurrently; (2) the trial court erred in ordering that the criminal sale counts to run consecutively; (3) petitioner's due process rights were violated when the court clerk entered information onto the Uniform Sentence and Commitment Order; (4) the trial court erred in relying on incorrect information provided by the People during petitioner's sentencing; (5) double jeopardy was violated when petitioner was twice-punished for the same crimes; and (6) the fines were excessive. SCR 243, 245-265.

 **\*12** The court denied the motion. SCR 385-89. First, the court held that "the sentencing minutes ... make clear that the [trial] court complied with the statutory requirements

Case 9:19-cv-00952-LEK-TWD   Document 22   Filed 07/27/22   Page 43 of 202
Rodriguez v. Griffin, Not Reported in Fed. Supp. (2018)
2018 WL 6505808

governing sentences for convictions upon multiple counts of an accusatory instrument." SCR 385-86.

Further, the court found "[t]he People have met their burden of establishing the legality of sentence by relying on facts adduced at trial which establish ... that [Rodriguez] orchestrated sales of a narcotic drug ... to convict[ ] him as a major trafficker independent of the evidence upon which he was convicted of the sales in the other four counts." SCR 387.

Next, the court denied Rodriguez's claims of an invalid sentence based on the court clerk's notation. The notation, despite defendant's argument to the contrary, makes clear "that civil judgments would be entered for the fines ... [which] should not be collected from [petitioner's] wages in prison." SCR 388. Accordingly, the notation is correct and "[a]ny erroneous withholding by the Department of Corrections is outside th[e] court's purview." *Id.*

Moreover, the court found that Rodriguez's arguments that the sentence violated his due process rights were meritless. "As [petitioner] concedes, the [c]ourt made clear that it was not considering the advocacy of the District Attorney, but was instead relying on the memoranda which had been submitted." SCR 388.

Lastly, the court found that Rodriguez's arguments that the imposition of a fine and sentence of imprisonment violated double jeopardy were also meritless given the statutory provisions of the Penal and Criminal Procedure Law. SCR 388. "Further, the amounts of the fines were not excessive and were well within the limits set by law." SCR 389.

On October 2, 2015, Rodriguez filed for leave to appeal this unfavorable decision. SCR 390-409.

On November 24, 2015, the Third Department denied Rodriguez's application. SCR 410. Petitioner subsequently requested, and was denied, reconsideration of the application. SCR 411-14.

### N. First Coram Nobis Petition

On January 6, 2016, Rodriguez filed a *pro se* coram nobis petition with the Third Department alleging that his appellate counsel was ineffective. SCR 415-640. Specifically, petitioner contended appellate counsel was ineffective for failing to argue that: (1) petitioner was denied his due process rights by not having counsel at his arraignment; (2) the trial court erred in its response to a jury note; and

(3) the prosecutor committed various forms of misconduct by withholding information, ignoring pre-trial rulings on evidence admissibility, and making improper statements during his summation. SCR 415-640.

Rodriguez further argued that his appellate counsel's performance was deficient when he failed to argue that petitioner's trial counsel was ineffective for (1) failing to challenge, through timely objection, the trial court's instruction on accessorial liability; (2) failing to request a missing witness charge; (3) failing to argue that admission of the narcotic laboratory reports violated petitioner's right to confront his accusers; (4) failing to adequately prepare for the trial; and (5) failing to object to a variety of alleged errors at sentencing. *Id.*

On March 11, 2016, the Third Department summarily denied Rodriguez's *coram nobis* petition. SCR 641.

**\*13** On April 4, 2016, Rodriguez sought permission to appeal the denial of his *coram nobis* petition from the Court of Appeals. SCR 642-650. The Court of Appeals denied petitioner's application on July 28, 2016. SCR 651.

### O. Motion To Vacate Pursuant to CPLR §§ 317 and 5015(a)(4)

On March 16, 2016, Rodriguez filed a *pro se* motion seeking to vacate the civil judgments entered on the fines imposed by the sentencing court. SCR 652-661. Petitioner alleged he was never served with written notice of the entry of judgments by the County Clerk on January 13, 2012. *Id.*

On May 5, 2016, the Otsego County Court denied Rodriguez's motion. SCR 726-27. The court held "that the motion ha[d] absolutely no basis in fact or law [as petitioner] was present at all times throughout the [sentencing] proceedings ... wherein the District Attorney was authorized by the court to submit civil judgments on the fines for each conviction." SCR 726. Entry of the judgment was compliant with the Criminal Procedure Law. *Id.* Thus, petitioner's motion was denied and dismissed. SCR 727.

Rodriguez then filed a counseled appeal of this decision to the Third Department, along with a *pro se* supplemental brief. SCR 728-743. The Third Department rejected the appeal and affirmed. *People v. Rodriguez*, 158 A.D.3d 956, 957 (3rd Dep't 2018).

Case 9:19-cv-00952-LEK-TWD    Document 22    Filed 07/27/22    Page 44 of 202

Rodriguez v. Griffin, Not Reported in Fed. Supp. (2018)

2018 WL 6505808

In affirming, the Appellate Division found that "CPL § 420.10 provides a mechanism by which a criminal fine may be collected in the same manner as a judgment in a civil action." *Rodriguez*, 158 A.D.3d at 957. To the extent that Rodriguez alleges he was unable to challenge what happened during his sentencing hearing, the court held such contentions were unpreserved as he failed to timely object. *Id.*

Further, the Third Department held such matters to be "ministerial matter[s] required by statute and any purported failure to serve [petitioner] with a copy of the judgments and notice of their entry does not warrant vacatur of those judgments." *Rodriguez*, 158 A.D.3d at 957. Lastly, the court held Rodriguez "failed to demonstrate ... how County Court lacked personal or subject matter jurisdiction to impose the fines and order that they be entered as civil judgments or to establish any other basis [for] ... vacatur of the ... judgments." *Id.*

### P. Second *Coram Nobis* Petition

On December 15, 2016, Rodriguez filed a second *pro se* writ for *coram nobis* with the Appellate Division. SCR 749-760. Petitioner alleged that his appellate counsel was deficient in failing to challenge the trial court's denial of petitioner's CPL § 330.30 motion when appellate counsel (1) failed to challenge the perceived deficiencies in jury selection and (2) failed to object to trial counsel's failure to contest the deficiencies. *Id.*

The Appellate Division summarily denied this second *coram nobis* petition. SCR 815. Rodriguez sought reargument (SCR 816-823), which was request denied (SCR 824), and then petitioner appealed the denial to the Court of Appeals (SCR 825-832), which denied his application for leave to appeal (SCR 833). Having completed all of his state court proceedings, petitioner returned to this Court for habeas review.

### III. THE PETITION

Rodriguez seeks habeas relief on the following grounds: (1) his convictions were secured with legally insufficient evidence and the verdicts were against the weight of the evidence; (2) the trial court erred in admitting evidence of uncharged crimes and his trial counsel was ineffective for failing to object to the admission of such evidence; (3) the trial court erred in instructing the jury regarding the applicable time period to consider for petitioner's drug trafficking charge, which improperly and unilaterally amended the

indictment; (4) the prosecutor engaged in misconduct by (a) withholding *Brady/Rosario* material, (b) ignoring a pretrial ruling about the admissibility of pre-recorded phone calls, and (c) making improper remarks throughout his summation; (5) the trial court erred in its handling of a jury note; (6) petitioner's sentence was excessive, illegal, and imposed in violation of due process, double jeopardy, and excessive fines clauses of the Constitution; and (7) petitioner was deprived of the effective assistance of appellate counsel. Am. Pet. at 6-32.

### IV. LEGAL STANDARD

**\*14** Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1), (2); *Cullen v. Pinholster*, 563 U.S. 170, 180-81, 185 (2011); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted) ). The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.' " *Nevada v. Jackson*, 569 U.S. 505, 508-09 (2013) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011) ); *see Metrish v. Lancaster*, 569 U.S. 351, 358 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement' ") (quoting *Richter*, 562 U.S. at 103).

Additionally, the AEDPA foreclosed "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 567 U.S. 37, 38 (2012) (per curiam) (quoting *Renico*, 559 U.S. at 779). In other words, a state court's findings are not unreasonable

Case 9:19-cv-00952-LEK-TWD    Document 22    Filed 07/27/22    Page 45 of 202

Rodriguez v. Griffin, Not Reported in Fed. Supp. (2018)

2018 WL 6505808

under § 2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Rather, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold." *Schriro*, 550 U.S. at 473.

Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "clear and convincing evidence." *Schriro*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1) ). "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015) (internal quotation marks omitted). Finally, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]" *Johnson v. Williams*, 568 U.S. 289, 301 (2013).

## V. DISCUSSION

### A. Weight of the Evidence

Rodriguez asserts that all of his convictions are against the weight of the evidence. Am. Pet. at 6-8. Respondent contends that petitioner has f ailed to allege a cognizable habeas claim. R. Memo. at 16.

"It is well-settled that claims attacking a verdict as against the weight of the evidence are not cognizable in a federal habeas proceeding." *Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 360 (N.D.N.Y. 2013); *see also McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 Fed. App'x 69, 75 (2d Cir. 2011) ("[T]he argument that the verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus.") (citing cases). Accordingly, petitioner's claims regarding the weight of the evidence are dismissed.

### B. Legal Sufficiency

**\*15** Rodriguez asserts that the evidence was legally insufficient to support his convictions. Am. Pet. at 6-8. Specifically, petitioner contends that the only evidence available to convict him was from accomplices, without corroboration, and the prima facie elements of all claims were not satisfied. *Id.* Respondent opposes petitioner's claims

by arguing they are procedurally barred and substantively meritless. R. Memo. at 16-21.

### 1. Procedural Default

Substantive review of a habeas claim is prohibited if the state court rested its decision on " 'a state-law ground that is independent of the federal question and adequate to support the judgment.' " *Walker v. Martin*, 562 U.S. 307, 315 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53, 55 (2009) ) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) ).

To qualify as an "adequate" ground, the state law rule must be "firmly established and regularly followed." *Walker*, 562 U.S. at 316 (quotation marks and citation omitted); *Downs v. Lape*, 657 F.3d 97, 101 (2d Cir. 2011) (explaining that habeas review of a state court's application of its own rules is deferential and is focused on whether the challenged ruling "falls within the state's usual practice and is justified by legitimate state interests, not whether the state court ruling was correct."). A rule can be firmly established and regularly followed "even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Kindler*, 558 U.S. at 61.

As relevant here, New York law requires defendants to preserve challenges to a state court's legal rulings by objecting at a time when the trial court may act to correct the error. CPL § 470.05(2) (providing that a question of law is presented when "a protest thereto was registered, by the party claiming error, at the time of such ruling ... or at any subsequent time when the court had an opportunity of effectively changing the same."); *People v. Luperon*, 85 N.Y.2d 71, 78 (1995) (the preservation rule requires, "at the very least, that any matter which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error."). "The chief purpose of demanding notice through [specific] objection or motion in a trial court ... is to bring the claim to the trial court's attention. A general motion fails at this task." *Gray*, 86 N.Y.2d at 20.

The Third Department rejected Rodriguez's legal sufficiency claims, with the exception of his contentions surrounding his conviction under the major trafficking law, as unpreserved and procedurally barred. *Rodriguez*, 121 A.D.3d at 1436.

By way of review, at the close of the People's case Rodriguez's trial counsel "move[d] to dismiss each and every count of the indictment [because t]he People ... failed to prove a

Case 9:19-cv-00952-LEK-TWD    Document 22    Filed 07/27/22    Page 46 of 202

Rodriguez v. Griffin, Not Reported in Fed. Supp. (2018)

2018 WL 6505808

prima facie case, specifically as to counts three through 11 [*sic*].” T. 1221. And prior to summations, petitioner's trial counsel made another motion to dismiss all counts in the indictment, “specifically as to count one [because] ... every person who testified ... was ... a co-conspirator[; thus] ... the People ... failed to present credible, believable evidence beyond a reasonable doubt as to counts one through 11.” T. 1252.

The Third Department found the first motion to be a “general motion to dismiss the other charges,” *Rodriguez*, 121 A.D.3d at 1436, which was insufficient to preserve such claims. *Gray*, 86 N.Y.2d at 20; *see also Calderson v. Perez*, 1:10-CV-2562, 2011 WL 293709, at *24 (S.D.N.Y. Jan. 28, 2011) (explaining the “boilerplate” language within such motions to dismiss, “without [further] explanation” fails to satisfy the preservation requirement) (citing cases).

**\*16** This finding by the Third Department constitutes an independent and adequate state ground. *Downs*, 657 F.3d at 104; *Richardson v. Greene*, 497 F.3d 212, 219 (2d Cir. 2007) (“[A]pplication of the state's preservation rule is adequate – i.e. firmly established and regularly followed.”); *Santana v. Lee*, No. 9:11-CV-0105 (NAM/TWD), 2015 WL 4207230, at *20 (“The New York preservation rule has been determined to be an adequate and independent state law ground precluding federal habeas review.”). Accordingly, Rodriguez's habeas claim regarding the sufficiency of the evidence of his four individual drug sale convictions is denied as procedurally barred.

The Second Circuit has long held “that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule ... [and] constitutes an independent and adequate state law ground for disposing of a claim....” *Downs*, 657 F.3d at 104. However, in “exceptional cases,” the “exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question.” *Lee v. Kemna*, 534 U.S. 362, 376 (2002); *see Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003) (quoting *Lee*, 534 U.S. at 376).

In determining whether the application of an independent state rule was “exorbitant,” a reviewing court should consider: (1) whether the alleged procedural violation was actually relied upon by the trial court and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state case law required compliance with the rule in the specific circumstances; and

(3) whether petitioner had “substantially complied” with the rule given the “realities of trial,” and whether demanding perfect compliance with the rule would serve a legitimate governmental interest. *Garvey v. Duncan*, 485 F.3d 709, 714 (2d Cir. 2007) (quoting *Cotto*, 331 F.3d at 240). [5]

[5]    The *Cotto* factors are not all determinative, but are a guide to evaluate the state's interest in a particular rule in the circumstances of a particular case. *Garvey*, 485 F.3d at 714.

Upon review of these factors, the application of this procedural bar was not exorbitant in Rodriguez's case. On the contrary, the Appellate Division's application of the preservation rule to bar petitioner's legal sufficiency claims was consistent with the state's usual practice, [6] and the record supports the appellate court's conclusion that these claims were not properly raised in the trial court. T. 1221, 1252; *see Sanchez v. Lee*, 1:10-CV-7719, 2011 WL 924859, at *18 (S.D.N.Y. Mar. 16, 2011) (“[D]istrict court decisions within the Circuit have upheld as an adequate and independent state ground New York's rule that general motions to dismiss that do not set forth the specific grounds for the alleged insufficiency of the evidence fail to preserve the issue[.]”) (citing cases). Accordingly, petitioner's cause of action is not appropriately classified as an exceptional case.

[6]    “New York courts have consistently held that a general motion to dismiss does not preserve a challenge to the legal sufficiency of the evidence[.]” *Brito v. Phillips*, 485 F. Supp. 2d 357, 363 (S.D.N.Y. 2007) (citing New York cases holding the same with regard to depraved indifference convictions; *see also People v. Hawkins*, 11 N.Y.3d 484, 492 (2008) ) (explaining the preservation rule requires a “specifically directed [argument] at the error being urged [because] ... general motions simply do not create questions of law for th[e]s Court [of Appeal]'s review”).

**\*17** Further, because the Appellate Division also invoked this preservation rule with respect to Rodriguez's challenges to four of his convictions, federal habeas review of these convictions is barred unless he can show (1) cause for the default and (2) actual resulting prejudice, or petitioner can show that the denial of habeas relief would result in a fundamental miscarriage of justice, i.e., that he or she is

Rodriguez v. Griffin, Not Reported in Fed. Supp. (2018)

2018 WL 6505808

actually innocent. *House*, 547 U.S. at 536-39; *Schlup*, 513 U.S. at 327.

To establish cause, a petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Maples*, 565 U.S. at 280; *Coleman*, 501 U.S. at 753. If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *See Murray*, 477 U.S. at 496 (referring to the "cause-and-prejudice standard"); *Stepney*, 760 F.2d at 45. Rodriguez has not asserted that cause for the default exists or that he is actually innocent and therefore review is barred.[7]

[7]      With respect to the bar of procedural default, cause can be demonstrated, "in certain circumstances[, by] counsel's ineffectiveness in failing [to] properly preserve [a] claim for review in state court...." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citations omitted). Although petitioner contends that his trial counsel was ineffective, this claim is without merit for reasons discussed *infra* and is thus insufficient to establish cause.

Notably, even if the state court proceeds to consider the merits of an unpreserved claim, as it did here, its reliance on a procedural ground as one basis for the denial of the claim still operates to preclude habeas review. *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding" because "the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.") (emphasis in original); *Fama v. Commissioner of Corr. Servs.*, 235 F.3d 804, 810-11 & n. 4 (2d Cir. 2000) ("[W]here a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved"). Accordingly, petitioner's claim with regard to his four drug convictions is procedurally barred and habeas relief is precluded.

### 2. Merits

Regardless of whether Rodriguez could overcome the procedural bar just discussed or whether he continued with only a habeas challenge to his major drug trafficker conviction, all of petitioner's habeas claims would still fail because they are meritless.

"[T]he critical inquiry on [the] review of the sufficiency of the evidence ... [is] whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). The reviewing court must determine if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original).

In so doing, the reviewing court must be mindful that, when "faced with a record of historical facts that supports conflicting inferences [it] must presume − even if it does not affirmatively appear in the record − that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos v. Smith*, 565 U.S. 1, 7 (2011) (internal quotation marks and citations omitted). In seeking habeas corpus review, a petitioner who claims that the evidence was insufficient to sustain a conviction bears a "very heavy burden." *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000).

**\*18** Rodriguez claims that his major drug trafficking conviction was not supported by legally sufficient evidence because the prosecution failed to establish the requisite monetary element for the crime and all of the proof came from accomplices without any other independent corroboration. Am. Pet. at 6.

In order to prove that Rodriguez was a major drug trafficker, the jury was required to find, beyond a reasonable doubt, that petitioner "act[ed] as a director of a controlled substance organization [of four or more persons engaged in a common felonious purpose] during a period of 12 months or less in which the organization sells controlled ... substances, and the proceeds due or collected ... have a total value of at least $75,000." *Rodriguez*, 121 A.D.3d at 1436.

The Appellate Division found that the collective testimony of "witnesses who had allegedly purchased heroin from [Rodriguez] and/or worked for him by selling, distributing and delivering heroin," established sufficient evidence to sustain the conviction. *Id.* at 1437, 1440-41. Specifically, with regard to the monetary element, one witness's testimony could have led the jury to find "that she sold over $150,000 worth of heroin at [petitioner's] behest between November 2009 and 2010." *Id.* at 1438. Another witness testified that he "made approximately a dozen $8,000 to $10,000

2018 WL 6505808

wire transfers to New York City addresses supplied by [petitioner]." *Id.* at 1439.

Of course, the jury has the ability to, and ultimately did, credit this witness testimony and the Third Department reasonably and correctly deferred to the jury's decision in concluding that this "was more than adequate to satisfy the monetary threshold of $75,000." *Rodriguez*, 121 A.D.3d at 1441.

Given that there is no clear and convincing evidence presented to disturb these credibility determinations, they will retain their presumption of correctness and remain. *See e.g.,* *Huber v. Schriver*, 140 F. Supp. 2d 265, 277 (E.D.N.Y. 2001) ("[U]nder both ... state law ... and federal law, issues of credibility, as well as the weight to give to evidence, are questions to be determined by the jury.").

Concerning the controlled substance organization component, trial testimony came from multiple users and employees of Rodriguez, outlining how they would travel to exchange heroin and money, deliver the drugs to various parties in Oneonta, and arrange for drug transactions by phone – deferring to the petitioner regarding who could and could not be a customer and where and between whom such transactions would take place. T. 698-708, 755-761, 773-76, 845-853, 905-916, 1083-86, 1151-1170. T he Third Department reasonably concluded that

> the testimony of the accomplice witnesses as to their own involvement, that of [petitioner], and that of multiple other persons who they testified also worked for [petitioner] as seller and drug couriers in the Oneonta heroin operation was sufficient to establish that a controlled substance organization existed [of] ... four or more persons, each of whom shared in a common purpose to ... sell[ ] heroin.

*Id.* at 1441.

The Appellate Division further reasonably concluded that testimony "describing [Rodriguez's] management of the Oneonta operation by, among other things, supplying the heroin, supervising and directing the workers, communicating with buyers and sellers to schedule

heroin transactions, and collecting the proceeds sufficiently established [petitioner] ... was a 'principal administrator, organizer or leader of the organization." *Rodriguez*, 121 A.D.3d at 1441. Accordingly, "[v]iewing the testimony in the light most favorable to the People, [there was] ... a valid line of reasoning and permissible inferences that could lead rational persons to the conclusion reached by the jury." *Id.* at 1440-41.

 **\*19** Similarly, the Third Department reasonably concluded that, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to establish that Rodriguez "knowingly and unlawfully solicited, requested, commanded, importuned or intentionally aided in the [heroin] transactions." *Rodriguez*, 121 A.D.3d at 1442.

The first two of these convictions arose from controlled buys where "the testimony of the female witness [established] that [Rodriguez] was the supplier of the heroin that she sold during the time periods in question, [thus] the jury could reasonably have inferred that [petitioner] aided both sales by supplying the heroin." *Rodriguez*, 121 A.D.3d at 1442; *see also* T. 699-703 (discussing how the witness would travel to New York City to exchange money for heroin for her to sell in Oneonta at petitioner's direction).

The next of these convictions arose out of a transaction to buy heroin brokered by the witness between the CI and the Rodriguez. *Rodriguez*, 121 A.D.3d at 1442; *see also* T. 852-53 (describing how the deal was brokered). Because petitioner "sent the third party to her house – thus establishing [petitioner's] assistance in the sale," it was reasonable for a jury to convict, and the Third Department to give deference to and affirm that conviction *Rodriguez*, 121 A.D.3d at 1442.

Lastly, the fourth conviction arose from a CI speaking with Rodriguez and listening to petitioner's directions as to where and how much the heroin transaction would be. *Rodriguez*, 121 A.D.3d at 1442; *see also* T. 1083-86. Ultimately, the Third Department concluded that the testimony "presented credibility issues for the jury to resolve [and a]ccording [to] the jury's determinations [and] appropriate deference, [the Third Department] f[ound] the weight of the evidence support[ed] all four convictions." *Id.*

Second-guessing such credibility determinations made by the jury is inappropriate and not cognizable on habeas review. *Huber*, 140 F. Supp. 2d at 277; *see also Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) ("[A]ssessments of the weight

Case 9:19-cv-00952-LEK-TWD    Document 22    Filed 07/27/22    Page 49 of 202

Rodriguez v. Griffin, Not Reported in Fed. Supp. (2018)
2018 WL 6505808

of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal[.]").

Rodriguez has advanced two additional arguments in addition to his general legal insufficiency claims, both of which are unavailing. First, petitioner contends that "[t]he prosecutor relied upon uncorroborated accomplice testimony without any independent evidence to corroborate the witnesses' testimony to classify petitioner as a kingpin." Am. Pet. at 6. However, the "federal rule is well established that a defendant may be convicted upon the uncorroborated testimony of an accomplice." *United States v. Gordon*, 433 F.2d 313, 314 (2d Cir. 1970).

The evidence presented at trial was sufficient to support Rodriguez's convictions, particularly given the aforementioned deference required. Moreover, petitioner's contentions that "[t]he only evidence against [him] was the incredible testimony ... from [the] alleged accomplice witnesses[,]" is also unpersuasive. As previously stated, re-examining the credibility determinations made by the jury is inappropriate and not cognizable on habeas review. *Huber*, 140 F. Supp. 2d at 277; *also Maldonado*, 86 F.3d at 35. Accordingly, the petition is denied and dismissed.

### C. IMPROPERLY ADMITTED EVIDENCE

**\*20** Rodriguez next contends that the trial court erred in allowing Krone to testify. Am. Pet. at 9. Specifically, petitioner alleges that "Krone['s] testimony about uncharged crimes committed in Albany County [was improper] ... without [first holding] a *Ventimiglia* hearing," and contends the court lacked jurisdiction over the uncharged crimes as they occurred in Albany, not Otsego County. *Id.* Respondent alleges that these claims are procedurally defaulted and meritless. R. Memo. at 22-26.

### 1. Exhaustion & Default

Rodriguez's contentions are procedurally barred for two reasons. First, the Third Department found that petitioner did not lodge any specific objections to the trial court's exercise of jurisdiction over him during any of the court's proceedings and therefore the issue was not preserved. *Rodriguez*, 121 A.D.3d at 1440.

As discussed above, the denial of a claim by a state court for failure to comply with the preservation rule is an independent and adequate state procedural bar to petitioner's habeas petition. *Downs*, 657 F.3d at 104; *Richardson*, 497 F.3d at 219;

*Santana*, 2015 WL 4207230, at \*20. [8] Application of this preservation rule is consistent with the state's usual practice and the record supports the appellate court's conclusion that the claims were not raised in the trial court. T. 1253. Accordingly, application of the procedural bar is appropriate. *See Sanchez*, 2011 WL 924859, at \*18.

[8]    In any event, petitioner's contentions that the trial court lacked jurisdiction are meritless. Krone's testimony was relevant to demonstrate the operations occurring in Otsego county and, as such, the County Court had jurisdiction over the crime. *See People v. Guzman*, 153 A.D.3d 1273, 1274-75 (2d Dep't 2017) (explaining that both common law and the New York State Constitution require a defendant "to be tried in the county where the crime was committed....") (citing CPL § 20.40(2)(c) ). Accordingly, the Third Department correctly noted that no evidentiary law was improperly applied.

Rodriguez has not asserted that cause for the default of this claim exists or that he is actually innocent on this basis. Notably, a petitioner seeking federal habeas review must utilize the appropriate state-provided procedural vehicles to exhaust his claims. *Dean*, 753 F.2d at 241.

Throughout the state appellate process, the federal nature of the claims must be identified. *Daye v. Attorney General of State of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982). As the Second Circuit has explained:

[T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

2018 WL 6505808

*Id.* at 194. If a claim is not "fairly presented," it is unexhausted. Where federal courts have found a failure to exhaust, a petitioner's claims are considered procedurally defaulted. *Clark*, 510 F.3d at 390.

Rodriguez's arguments that the trial court erred in failing to hold a *Ventimiglia* hearing, improperly admitted testimony of prior bad acts, and presided over a trial in which it did not have jurisdiction, were all presented to the state court as alleged violations of state law. SR 98-100. Petitioner's presentation did not included any citation to federal cases, did not rely on state cases utilizing a constitutional analysis, and did not assert the claim or pattern of facts in a way to call to mind a federal right. Instead, petitioner relied upon the state's criminal procedure law and cases discussing state jurisdictional concerns at the county level. *Id.* Accordingly, the claims remain unexhausted because the state courts were never alerted to the constitutional nature of the claims.

**\*21** Even on the merits, Rodriguez's claim that the trial court erred in admitting Krone's testimony is meritless. "Generally, evidentiary rulings in a state court do not warrant habeas corpus relief, and such relief is available 'only where petitioner can show that the error deprived h[im] of a fundamentally fair trial.' " *Wright v. Duncan*, 31 F. Supp. 3d 378, 416 (N.D.N.Y. 2011) (citing *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983) ). Accordingly, to succeed on this claim petitioner must demonstrate "that an evidentiary error amounted to a deprivation of due process ... so pervasive as to have denied him a fundamentally fair trial." *Id.* (citing *United States v. Agurs*, 427 U.S. 97, 108 (1976) ); *accord Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985).

"In determining whether a state court's alleged evidentiary error deprived a petitioner of a fair trial, federal habeas courts engage in a two-part analysis [first] examining (1) whether the trial court's evidentiary ruling was erroneous under state law, and [then] (2) whether the error amounted to the denial of the constitutional right to a fundamentally fair trial. *Taylor v. Connelly*, 18 F. Supp. 3d 242, 257 (E.D.N.Y. 2014) (citing *Wade v. Mantello*, 333 F.3d 51, 59-60 & n.7 (2d Cir. 2003) ).

Under New York State law, evidence demonstrating an individual's criminal propensity is generally inadmissible; however, "New York courts frequently admit evidence of prior bad acts, including uncharged crimes, as background material and to complete the narrative of events." *Rodriguez v. Superintendent, Collins Corr. Facility*, 549 F. Supp. 2d 226,

244 (N.D.N.Y. 2008) (internal quotation marks and citations omitted).

As outlined by the Third Department in Rodriguez's case, "no *Ventimiglia* hearing was required, as [Krone's] ... testimony ... did not address uncharged crimes or bad acts and was not introduced to suggest propensity, but was instead relevant to the charge that [petitioner] directed a controlled substance organization in Oneonta." *Rodriguez*, 121 A.D.3d at 1440. Since the admission of the testimony was to further clarify and expand upon petitioner's operations as a major drug trafficker, the evidence was properly admitted, and habeas relief is inappropriate.

Furthermore, because a petitioner is "entitled to one (and only one) appeal to the Appellate Division and one request for leave to appeal to the Court of Appeals," Rodriguez cannot now return to the state courts in an attempt to exhaust his claim. *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001). Accordingly, "[b]ecause [petitioner] failed to raise his claim in the ordinary appellate process and can now no longer do so, it is procedurally defaulted." *Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 170 (2d Cir. 2000).

Rodriguez contends that regardless of the reason for this procedural default, he has demonstrated cause—the ineffectiveness of his trial counsel. However, as discussed below, this ineffective-assistance claim is without merit and thus insufficient to establish cause. Accordingly, petitioner's petition must be dismissed.

### 2. Not Cognizable

Even if his petition were properly exhausted, the requested relief to remedy the trial court's decision to admit Krone's testimony would still be barred.

> The Supreme Court has declined to take a position as to whether admission of prior bad acts, even if probative only of the [petitioner]'s propensity to commit a crime, violates due process. *Estelle*, 506 U.S. at 75. In the absence of any clearly established law by the Supreme Court, [petitioner] may not rely on § 2254(d)(1) to save his procedurally barred claim.

Rodriguez v. Griffin, Not Reported in Fed. Supp. (2018)

2018 WL 6505808

**\*22** *Poquee v. Ercole,* No. 9:06-CV-0045 (LEK/DRH), 2007 WL 1218722, at \*3 (N.D.N.Y. April 25, 2007). Accordingly, the petition must also be dismissed for this reason.

### D. CONSTRUCTIVE AMENDMENT OF THE INDICTMENT

Rodriguez alleges that the trial court violated his rights to due process when it improperly amended the indictment by instructing the jury "not [to] consider any evidence related to the two months before the enactment of the statute." Am. Pet. at 10. Specifically, the petitioner contends that "the judge's instructions altered an essential element of the charge ... [and] the court failed to examine the grand jury transcript to ensure that [it] ... had sufficient evidence before them to deliver an indictment...." *Id.* Respondent argues that petitioner's claims are procedurally defaulted or alternatively barred and, in any event, meritless. R. Memo. at 26-29.

This argument is also rejected. As the Appellate Division correctly noted, Rodriguez failed to preserve an objection to the trial court's alleged constructive amendment of the indictment. Accordingly, an independent and adequate state procedural bar precludes habeas relief. *Downs,* 657 F.3d at 103.

Specifically, at the close of proof, Rodriguez's counsel drew the trial court's attention to the fact that the law under which petitioner was being prosecuted actually went into effect two months after the time period alleged in the indictment began. T. 1253. After hearing arguments, the trial court held that it would instruct the jury to disregard proof during that two month time period and clarify that the time in question for petitioner's alleged drug trafficking was from November 1, 2009 to September 1, 2010. *Id.* at 1256. Petitioner's trial counsel did not object to this ruling.

When Rodriguez raised this ground on his direct appeal, the Third Department held that because "there was no objection to this [jury] charge, [petitioner]'s contention that the instruction was impermissible was not preserved." *Rodriguez,* 121 A.D.3d at 1437 n.2.

"Because petitioner's failure to comply with section CPL 470.05(2) is an independent and adequate state law ground," the Third Department's decision appears to bar federal habeas review of this claim. *Ortiz v. New York,* No. 1:12-CV-1116, 2013 WL 1346249, at \*8 (E.D.N.Y. Mar. 31, 2013). And

as application of the preservation rule is consistent with the state's usual practice, and the record supports the court's conclusion that the claims were not raised in the trial court, the application of the procedural bar is appropriate. T. 1253; *Sanchez,* 2011 WL 924859, at \*18.

As with his other claims, habeas relief could issue even in the face of the procedural bar, if Rodriguez could show cause for the default and actual resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice, i.e., that he is actually innocent. *House,* 547 U.S. at 536-39; *Schlup,* 513 U.S. at 327.

But Rodriguez has not asserted that cause for the default exists or that he is actually innocent. Although petitioner raises an ineffective assistance of counsel claim as possible "cause," for the reasons discussed *infra* any ineffective-assistance claim is without merit. For these reasons, the petition must be denied.

### E. PROSECUTORIAL MISCONDUCT & THE JURY'S NOTE

**\*23** Rodriguez alleges that he was deprived of a fair trial because the trial court erred in its response to the prosecutor's misconduct and to a jury note it received. Specifically, petitioner contends that the prosecutor committed misconduct by withholding *Brady/Rosario* material, ignoring pretrial rules, and making improper comments during summations. Am. Pet. at 12-13. Moreover, petitioner contends that when the jury asked for a read back of certain testimony, the trial court failed to first allow counsel to inspect the note outside the presence of the jury, failed to read the note into the record, and inappropriately (and independently) decided which excerpts of the testimony to read back. *Id.* at 15. Respondent contends that petitioner's arguments are unexhausted and procedurally defaulted, as well as meritless. R. Memo. at 29-38.

Rodriguez alleged in his first *error coram nobis* petition that his appellate counsel was ineffective for failing to argue that the trial court erred in its response to the prosecutorial misconduct (SR 432-37) and the aforementioned jury note (SR 427-432).

However, Rodriguez never asserted an independent claim for relief on these grounds in state court during his *direct* appeal. Thus, "in the *error nobis* motion, petitioner's [aforementioned claims] w[ere] subsumed within a broader claim of ineffective assistance of appellate counsel." *Attawwab v. Gurdich,* No.

Case 9:19-cv-00952-LEK-TWD    Document 22    Filed 07/27/22    Page 52 of 202
Rodriguez v. Griffin, Not Reported in Fed. Supp. (2018)
2018 WL 6505808

1:04-CV-3889, 2007 WL 2120405, at *6 (E.D.N.Y. July 23, 2007).

Importantly, though, the "filing of the *coram nobis* petition did not exhaust [petitioner's] challenge[s] to the[se] underlying state court error[s]." *Miller v. Chappius*, No. 9:16-CV-0512 (TJM/CFH), 2018 WL 2709228, at *8 (N.D.N.Y. Apr. 2, 2018) (citing *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) ); *see also Zimmerman v. Burge*, 492 F. Supp. 2d 170, 189 (E.D.N.Y. 2007) ("[A] petition for a writ of error *coram nobis* does not exhaust the underlying claims advanced to support the claim of ineffective assistance of appellate counsel."). Accordingly, the claims are unexhausted.

Furthermore, because such claims were available on the record, the appropriate place to argue those claims was during the course of Rodriguez's direct appeal. *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997) (explaining "New York's Criminal Procedure Law mandates that the state court deny any [collateral attack] where the [petitioner] unjustifiably failed to argue such constitutional violation on direct appeal despite a sufficient record").

It bears repeating that Rodriguez is "entitled to one (and only one) appeal to the Appellate Division and one request for leave to appeal to the Court of Appeals," and therefore he cannot return to the state courts in an attempt to exhaust this claim. *Aparcio*, 269 F.3d at 91; *Rush v. Lempke*, 500 F. App'x 12, 15 (2d Cir. 2012) ("The petitioner's failure to raise the claim on direct review also forecloses collateral review in state court."). Accordingly, "[b]ecause [petitioner] failed to raise his claim in the ordinary appellate process and can now no longer do so, it is procedurally defaulted." *Spence*, 219 F.3d at 170.

As with his other claims, Rodriguez appears to contend he has demonstrated "cause" via the ineffectiveness of his appellate counsel. However, as discussed below, this ineffective-assistance claim is without merit and is thus insufficient to establish cause. Accordingly, petitioner's petition must be dismissed.

## F. SENTENCING

Rodriguez makes several arguments dealing with various sentencing issues. Petitioner alleges that the sentencing court erred in (1) failing to specify whether his convictions ran concurrently or consecutively and (2) imposing illegally consecutive sentences when they were supposed to be concurrent. Am. Pet. at 16-19. Petitioner also contends

that his sentence, both the time he was to be incarcerated and the amount of his corresponding fine, was harsh and excessive. *Id.* at 23, 30-31. Further, petitioner contends that a civil judgment was wrongly imposed upon him without the appropriate notifications, in violation of his Due Process rights and double jeopardy protections, allowing DOCCS to wrongly withhold his prison wages in satisfaction of the judgment pursuant to an unauthorized notation by the court clerk. *Id.* at 21-22. Respondent contends that petitioner's sentencing arguments are not cognizable and meritless. R. Memo. at 38-45.

**\*24** Rodriguez's first contention, that the sentencing court failed to specify whether his convictions ran concurrently or consecutively, is flatly refuted by the sentencing transcript. In the denial of petitioner's 440 motion, the court held that petitioner's "[a]rgument is not supported by the sentencing minutes which make clear the court complied with the statutory requirements....". T. 385; *see also* S. 17-18. Accordingly, such claims are meritless.

Rodriguez's remaining contentions regarding the concurrence or consecutiveness of his sentence are inadequate to trigger habeas relief. First, petitioner's argument that the sentencing court erred in imposing consecutive sentences is not cognizable on federal habeas review. *See United States v. McLean*, 287 F.3d 127, 136 (2d Cir. 2002) ("[T]here is no constitutionally cognizable right to concurrent, rather than consecutive, sentences.") (internal quotation marks omitted).

Second, Rodriguez's argument that his sentence is harsh and excessive fails because "no federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *see also Mayerhofer v. Bennett*, No. 9:02-CV-0074 (LEK/VEB), 2007 WL 1624767, at *7 (N.D.N.Y. June 6, 2007) (same); *Taylor v. Connelly*, 18 F. Supp. 3d 242, 268 (E.D.N.Y. 2014) ("An excessive sentence claim may not provide grounds for habeas corpus relief where a petitioner's sentence is within the range prescribed by state law.").

Rodriguez also argues that his sentence was harsh and excessive because the sentence he received after going to trial and being convicted was considerably longer the sentence offered to him during plea negotiations. However, as the Appellate Division observed:

Case 9:19-cv-00952-LEK-TWD    Document 22    Filed 07/27/22    Page 53 of 202
Rodriguez v. Griffin, Not Reported in Fed. Supp. (2018)
2018 WL 6505808

County Court was authorized to impose a maximum indeterminate life term with a minimum term of 15 to 25 years for [petitioner]'s conviction for operating as a major trafficker (see Penal Law §§ 70.00(2)(a); (3)(a)(i); 70.71(5)(b) ), but instead elected to sentence [petitioner] to a determinate term of 20 years, the maximum term permitted under this option (see Penal Law § 70.71(2)(b)(i); (5)(c) ).

*Rodriguez*, 121 A.D.3d at 1443. The trial court was also authorized to impose a determinate prison term of between one and nine years for each of the third-degree drug sale convictions. Penal Law § 70.70(2)(a)(i). Regardless of what was offered to Rodriguez during his plea deal, or the sentence any other individuals received, petitioner's sentence is only unconstitutional if it falls outside the range prescribed by state law. *White,* 969 F.2d at 1383.

Rodriguez's consecutive sentences of twenty years for operating as a major trafficker – even if representing the maximum amount of time permissible – along with the five years for each drug sale, fall within the limits set by New York law and therefore petitioner's claim provides no grounds for federal habeas relief. *See Townsend v. Burke*, 334 U.S. 736, 741 (1948) ("The sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus.").

The same holds true for Rodriguez's allegations about the fine assessed. The County Court was authorized to impose a fine of up to $100,000 or, alternatively, up to twice petitioner's monetary gain, for his conviction of operating as a major trafficker, as well as $30,000 for each criminal sale conviction. Penal Law §§ 60.04(4), 60.05(7), 80.00.

 *25  Rodriguez was actually fined $80,000 for operating as a major trafficker and $5,000 for each criminal sale, both well below the statutory limits allowed. Accordingly, petitioner's claims provide no grounds for federal habeas relief. *See Townsend*, 334 U.S. at 741.

To the extent Rodriguez has attempted to allege that his sentence violated the Eighth Amendment clause against cruel and unusual punishment, such contentions would also be deemed insufficient to warrant habeas relief.

The Eighth Amendment forbids only extreme sentences which are "grossly disproportionate" to the crime of conviction. *Lockyer v. Andrade,* 538 U.S. 63, 72-73 (2003); *accord, Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *Rummel v. Estelle*, 445 U.S. 263, 271 (1980).

A sentence that is within the limits of a valid state statute is not cruel and unusual punishment in the constitutional sense. *See White*, 969 F.2d at 1383; *accord, Todd v. Superintendent*, No. 9:08-CV-1209 (NAM), 2009 WL 5216944, at *7 (N.D.N.Y. Dec. 30, 2009) ("A sentence of imprisonment which is within the limits of a valid state statute is simply not cruel and unusual punishment in the constitutional sense."). Accordingly, because Rodriguez's sentence is within the statutory range, it does not offend the Eighth Amendment.

Rodriguez double jeopardy argument is meritless for similar reasons. Where state lawmakers allow for "a single criminal offense [to] be punished by both a monetary fine and by a term of imprisonment ... imposition of both a fine and a prison sentence in accordance with such a provision constitute[ ] a[ ]permissible punishment." *Whalen v. United States*, 445 U.S. 684, 688 (1980). Conversely, where the law provides for one or the other, imposition of both "run[s] afoul of the double jeopardy guarantee of the Constitution." *Id.*

In this case, the Penal Law expressly authorized the imposition of both a fine and sentence of imprisonment, and the Criminal Procedure Law permitted the entry of a civil judgment to collect said fines. *See Penal Law § 60.04(4); CPL § 420.10(6)(a).* Therefore, because Rodriguez's sentence is within the scope of punishments statutorily permitted, it does not offend the double jeopardy clause.

Rodriguez's last two contentions—that the court clerk included unauthorized notations and failed to properly notify him of the civil judgment—are meritless, as the prior state court decisions in this matter conclusively demonstrate. *See* T. 440, 387-88 ("The order makes clear that only the surcharge and fees were to be withheld by [DOCCS] and that civil judgments would be entered for the fines ... [and] the fines should not be collected from [petitioner]'s wages in prison."); SR 726-27 (holding that petitioner "was present at all times throughout the proceedings wherein the [court] ...

Case 9:19-cv-00952-LEK-TWD    Document 22    Filed 07/27/22    Page 54 of 202

Rodriguez v. Griffin, Not Reported in Fed. Supp. (2018)
2018 WL 6505808

authorized ... the ... civil judgments," and noting that "the judgments were entered in compliance with [the Criminal Procedure Law]."). Whether petitioner has misunderstood or misrepresented the relevant facts, the state court transcripts demonstrate that no violations of state, let alone federal, law have occurred.

### G. INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate constitutionally ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of professional reasonableness, and but for counsel's alleged errors, the result of the proceedings would have been different. *Premo v. Moore*, 562 U.S. 115, 121-22 (2011); *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

 **\*26** This standard "must be applied with scrupulous care" in habeas proceedings, because such a claim "can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or in pretrial] proceedings[.]" *Premo*, 562 U.S. at 122. "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (quoting *Strickland*, 466 U.S. at 687) (internal quotation marks and further citation omitted).

A petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955) ). Even if petitioner can establish that counsel was deficient, he still must show that he suffered prejudice. *Id.* at 693-94.

#### 1. Trial Counsel

Rodriguez contends his trial counsel was ineffective for failing to object to the admissibility of Krone's testimony and for failing to challenge the court's jurisdiction. Am. Pet. at 11. Respondent argues that petitioner's contentions are meritless. R. Memo. at 26.

For the reasons previously discussed above in part C.1, Rodriguez's allegations that his trial counsel should have made arguments regarding Krone's testimony and the County Court's exercise of jurisdiction over him were unavailing. Representation is not rendered ineffective merely because counsel refuses to make meritless motions. *See United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) ("[T]he failure to make a meritless argument does not rise to the level of ineffective assistance...."). Accordingly, petitioner is not entitled to habeas relief on this basis.

#### 2. Appellate Counsel

Rodriguez also contends that his appellate counsel was ineffective for several reasons. Specifically, petitioner contends counsel was ineffective for failing to challenge the (1) fact that petitioner's constitutional rights were violated when he was arraigned without counsel; (2) trial court's errors in handling the jury note; (3) prosecutorial misconduct which occurred when the People failed to produce relevant *Brady/Rosario* material, violated the court's prior ruling on discussing recorded conversations, and improperly vouched for witnesses during his summation; (4) ineffective assistance of trial counsel because trial counsel (a) did not object to the fact that lab experts were not testifying to validate the scientific findings and (b) had a delayed realization that the statute pursuant to which petitioner was being prosecuted became effective two months after the indictment; and (5) manner in which the jury was picked. Am. Pet. at 24-28. The Third Department summarily denied both of petitioner's writs for *error coram nobis*. SR 641, 65, 815, 824, 833.

Upon review, the state court did not unreasonably or incorrectly apply the *Strickland* standard to petitioner's numerous challenges to his appellate representation. In order to prevail on a claim of ineffective assistance of counsel, "petitioner [must] ... show[ ] that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

Rodriguez adopted all four of the arguments that his appellate counsel advanced in his seventy-one page brief to the Appellate Division. By expressly adopting all of these claims in the present petition, it can be inferred that petitioner believed, at a minimum, the representation he received and the claims that were advanced during the course of his appeal were in fact competent and effective. *See Kollar v. Smith*, No. 1:04-CV-10175, 2005 WL 1653883, at \*10 (S.D.N.Y. July 12, 2005) (holding that "[n]othing ... suggest[ed] that [counsel's] ... efforts were outside the range of professionally competent assistance [where] ... petitioner reiterate[d] many of the same arguments made by appellate counsel on appeal").

 **\*27** Further, a review of Rodriguez's ineffective-assistance arguments reveal that they are overwhelmingly frivolous

Case 9:19-cv-00952-LEK-TWD    Document 22    Filed 07/27/22    Page 55 of 202

Rodriguez v. Griffin, Not Reported in Fed. Supp. (2018)

2018 WL 6505808

and weak. For example, petitioner asserts that he did not have counsel at arraignment. But that claim is only partially accurate. At the time he was unrepresented, a plea of not guilty was entered and the proceedings were adjourned until petitioner could meet with counsel. SR 497-500; Dkt. No. 43-6 at 8-13.

When evaluating the entire factual record, it is clear that Rodriguez's constitutional rights were not violated by this delay. Petitioner was able to have the benefit of counsel's advice and advocacy at that critical stage in his trial. Nor is there any evidence that the slight delay caused any prejudice. *See People v. Young*, 35 A.D.3d 958, 960 (3rd Dep't 2006) ("[W]hile it was error to arraign [a defendant] in the absence of counsel, this error had no impact on the case as a whole.").

With respect to Rodriguez's prosecutorial misconduct claims, his claim that exculpatory evidence was hidden totally fails to identify how the allegedly "hidden" evidence would have helped him or how this "hidden" evidence was actually unavailable during trial.

With respect to the challenged comments made during the People's summations, even assuming they amounted to improperly vouching for the prosecution's witnesses, those comments were preceded by clear jury instructions that the jury alone determines credibility. Importantly, the law presumes the jury obeyed the trial court's instruction, making these frivolous arguments to advance on appeal. *Weeks v. Angelone*, 528 U.S. 225, 226 (2000).

Similarly meritless is Rodriguez's complaint about his counsel's failure to object to the admission of certain *stipulated* evidence. *See Mills v. Lempke*, No.1:11-CV-0440, 2013 WL 435477, at *56 (W.D.N.Y. Feb. 4, 2013 (holding it was "not ineffective [assistance of counsel] for failing to make a pointless objection to the admission of petitioner's statements which ... were admitted through stipulation.").

Rodriguez's challenge to the composition of his jury is also deficient. It was not appropriately asserted and, even if it was, it failed to contain the content necessary to find any sort of bias or discrimination. *See People v. Branch*, 244 A.D.2d 262, 262 (2d Dep't 1997) (holding the "challenge to the racial composition of the jury panel was waived by [the] failure to make th[e] challenge in writing to the trial court prior to the commencement of jury selection," and that, regardless, the merits were still lacking as the "failure to demonstrate that the claimed underrepresentation of blacks and Hispanics was

the result of systematic exclusion ... would require rejection of [the] challenge")

As previously discussed, counsel is neither incompetent nor ineffective for refusing to advance meritless arguments. *Kirsh*, 54 F.3d at 1071. Moreover, to the extent one or more of Rodriguez's proffered arguments about his trial counsel may have been non-frivolous, it remains appellate counsel's job to cull out the weaker arguments and to choose among them. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).

Stated another way, a petitioner may not establish ineffective assistance of counsel solely by alleging "that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." *Mayo*, 13 F.3d at 533 (citing *Barnes*, 463 U.S. at 754); *see also Figueroa v. Grenier*, No. 1:02-CV-5444, 2005 WL 249001, at *18 (S.D.N.Y. Feb. 3, 2005) ("[C]ounsel is not required to present every claim on behalf of [a petitioner] appealing his or her conviction."). What is important is that the state court reasonably and correctly found counsel's performance satisfied the *Strickland* standard given the arguments that counsel did choose to advance.

**\*28** Equally important, Rodriguez has failed to show that any of the alleged errors by counsel prejudiced him. As previously noted, most of the arguments that petitioner contends should have been advanced were weak or even totally meritless. Pursuing such claims would have been prejudicial, as well as improper, because "rais[ing] every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions." *Jones*, 463 U.S. at 753. Accordingly, the Appellate Division did not unreasonably apply clearly established federal law in deciding that appellate counsel had not been ineffective and the petition is, therefore, denied.

## VI. MOTION TO COMPEL

Rodriguez filed a motion to compel seeking disclosure of several documents he contends the police have kept from him. Dkt. No. 49. Specifically, petitioner seeks "Search Warrants (sic) Application (sic), ... all Search Warrants, ... [and] all premises records of [the] crime scene (During Drug buy and Search & Seizure)," as well as "all Notes and Rathburn['s] (sic) statement," alleging that these documents contained material evidence. *Id.* at 1. Petitioner states these documents could reveal the identity of a third party or another confidential informant who may "reveal that CI Couse was

**Rodriguez v. Griffin, Not Reported in Fed. Supp. (2018)**

2018 WL 6505808

playing a double agent (working for the police - working for drug dealers) ....” *Id.* at 2.

Habeas petitioners are generally “not entitled to discovery as a matter of ordinary course ... [unless there has been] a showing of good cause.” *Drake v. Portuondo*, 321 F.3d 338, 346 (2d Cir. 2003) (quoting *Bracy v. Gramley*, 520 U.S. 899, 904 (1997) ) (internal quotation marks omitted).

“In order to show good cause, a petitioner must set forth specific allegations that provide reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief.” *Cobb v. Unger*, 1:09-CV-0491, 2013 WL 821179, at *2 (W.D.N.Y. Mar. 5, 2013) (internal quotation marks omitted).

Upon review, Rodriguez has failed to establish the good cause required to permit the unusual granting of a discovery request in a habeas petition. Petitioner's argument is based on nothing but speculation and conjecture. He has failed to specifically identify the reasons to believe that these papers exist or would give rise to the information, if the facts were more fully developed, he is hypothesizing he may find within them. Accordingly, petitioner's motion to compel discovery is denied.

**VII. CONCLUSION**

Therefore, it is

ORDERED that

1. Petitioner's motion to compel (Dkt. No. 49) is **DENIED**;

2. The amended petition (Dkt. No. 31) is **DENIED AND DISMISSED IN ITS ENTIRETY**;

3. No Certificate of Appealability (“COA”) shall issue because petitioner failed to make a “substantial showing of the denial of a constitutional right” as 28 U.S.C. § 2253(c)(2) requires; [9]

[9]    *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, “the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation” (emphasis in original) ).

4. Any further request for a Certificate of Appealability must be addressed to the Court of Appeals (Fed. R. App. P. 22(b) ); and

5. The Clerk of the Court shall serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 6505808

---

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 3884217

2021 WL 3884217
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Anthony GRIFFIN, Petitioner,

v.

Raymond COVENY, Superintendent,

Elmira Correctional Facility, [1] Respondent.

[1]    Raymond Coveny, Superintendent, Elmira
      Correctional Facility, is substituted for Joseph
      Noeth, Superintendent, Attica Correctional
      Facility. FED. R. CIV. P. 25(c).

No. 9:19-cv-01495-JKS
|
Signed 08/31/2021

**Attorneys and Law Firms**

Anthony Griffin, Attica, NY, Pro Se.

Margaret A. Cieprisz, New York State Attorney General, New
York, NY, for Respondent.

MEMORANDUM DECISION

JAMES K. SINGLETON, JR., Senior United States District
Judge

**\*1**  Anthony Griffin, a New York state prisoner proceeding
*pro se*, filed a Petition for a Writ of Habeas Corpus with
this Court pursuant to 28 U.S.C. § 2254. Griffin is in the
custody of the New York State Department of Corrections
and Community Supervision ("DOCCS") and incarcerated
at Attica Correctional Facility. Respondent has answered the
Petition, and Griffin has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On October 28, 2009, Griffin, along with co-defendants Jason
Kelley, Darron Phillips, and Justin White, was subsequently
charged with two counts of first-degree burglary, first-degree
robbery, second-degree robbery, second-degree assault, third-
degree criminal possession of a weapon, two counts of
second-degree intimidating a victim or witness, endangering

the welfare of a child, and fourth-degree conspiracy. The
indictment also charged Griffin individually with second-
degree criminal possession of a controlled substance, third-
degree criminal possession of a controlled substance, two
counts of second-degree criminal contempt, and making a
punishable false written statement. The charges stemmed
from several incidents in June and July 2009 where Griffin
ordered several of his gang members to commit a home
invasion at the home of his estranged wife.

Prior to trial, Griffin moved to sever the charges relating
to the July 24 home invasion from the trial on the other
counts because the menacing, contempt, and drugs charges
would unduly prejudice Griffin's trial on the home invasion
charges. The People opposed, arguing that the counts were
joinable because they were all based upon the same criminal
transaction. The court determined that the offenses were
properly joined as they were "inexplicably woven," and each
offense would be material and admissible to the others. The
court concluded that severing the offenses would "sanitize
any possible motive Griffin would have to conspire with
anyone to have this home invasion," but stated that it would
provide a limiting instruction to the jury concerning the
separate consideration of each of the counts.

The court also held a pre-trial *Huntley*[2]/*Mapp*[3] hearing
to determine the admissibility of Griffin's statements and
evidence seized by police. At the hearing, Officer Sean
Davis testified that he was dispatched on a domestic-related
incident to the home of the parents of Griffin's estranged
wife. The wife informed Davis that Griffin had physically
assaulted her, and he could now be found sleeping at their
home. Davis took the wife home, where she granted law
enforcement access to arrest Griffin. According to Officer
Davis, upon his arrest Griffin hit the wife with a pillow
and threw his keys at her. Two days later, Officer Davis
received a call to respond to the home because she found
in Griffin's vehicle a substance she believed to be drugs.
The wife signed a consent to search form, and Officer Davis
found multiple clear plastic baggies with a whitish/yellowish
substance inside, which, based on his experience, Davis
believed to be crack cocaine. Officer Davis asked Griffin to
come to the police station, and provided him with his *Miranda*
rights when he arrived. According to Officer Davis, Griffin
acknowledged that he understood and waived his rights, and
Officer Davis took a statement from Griffin. Officer Davis
believed that Griffin was being untruthful in his statement
and consequently arrested him for criminal contempt. Griffin
then admitted he had lied and said he wished to give another

statement. Griffin was then released. At the conclusion of the hearing, the court denied Griffin's motions to suppress the crack cocaine recovered from his vehicle and his statements to law enforcement.

2      See *People v. Huntley*, 204 N.E.2d 179 (N.Y. 1965) (a shorthand reference to the hearing held in New York on a challenge to the admissibility of statements made to law enforcement personnel).

3      See *Mapp v. Ohio*, 367 U.S. 643 (1961) (a shorthand reference to excluding evidence obtained as a result of an unconstitutional search and seizure).

 **\*2**  After rejecting a plea offer, Griffin proceeded to trial. The jury found Griffin guilty as charged. At sentencing, Griffin pled guilty to a drug charge in an unrelated pending indictment. The court sentenced Griffin to an aggregate term of 50 years' imprisonment, to be followed by 5 years of post-release supervision.

Through counsel, Griffin appealed his conviction, arguing that: 1) the trial court abused its discretion in failing to sever the counts of the indictment; 2) he was denied a fair trial because the trial court did not *sua sponte* reopen the suppression hearing following Investigator Gallup's trial testimony admitting that he threatened to arrest Griffin's wife if Griffin did not cooperate; 3) the trial court improperly allowed evidence of sexual offenses against Griffin's wife that his co-conspirators committed even though Griffin had not been charged with those crimes; 4) the evidence was legally insufficient as to the burglary, robbery, assault, criminal possession of a weapon, criminal solicitation, endangering the welfare of a child, intimidating a witness, conspiracy and menacing counts; 5) his conviction was against the weight of the evidence for the same counts and two drug counts; 6) counsel was ineffective for a number of reasons; 7) the prosecutor engaged in misconduct that deprived Griffin of a fair trial; 8) the cumulative effect of the trial error denied Griffin of his right to a fair trial; and 9) his sentence was harsh and excessive. In a reasoned opinion, the Appellate Division of the New York Supreme Court modified the judgment of conviction by reversing as not supported by legally sufficient evidence Griffin's convictions for criminal possession of a weapon and intimidating a victim or witness. *People v. Griffin*, 975 N.Y.S.2d 306, 309 (N.Y. App. Div. 2013). The appellate court unanimously affirmed the judgment in all other respects. *Id.* Griffin filed a counseled application seeking leave to appeal to the New York Court of Appeals, raising only some of the grounds unsuccessfully presented

to the Appellate Division. The Court of Appeals summarily denied leave on July 28, 2014. *People v. Griffin*, 17 N.E.3d 505, 505 (N.Y. 2014).

Griffin then filed a *pro se* motion for a writ of error *coram nobis* raising two ineffective assistance of appellate claims, neither of which are raised in the instant petition ("2014 *Coram Nobis* Motion"). The Appellate Division denied the motion without comment on June 13, 2014, *People v. Griffin*, 987 N.Y.S.2d 590, 590 (N.Y. App. Div. 2014), and the Court of Appeals summarily denied leave to appeal, *People v. Griffin*, 21 N.E.3d 572, 572 (N.Y. 2014).

Again proceeding *pro se*, Griffin moved in County Court to vacate his conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10. In that motion, Griffin raised the following claims that appear in the instant Petition: 1) the prosecutor committed misconduct by presenting false evidence and perjured testimony; and 2) newly-discovered evidence in the form of a sworn statement from Justin White, one of the participants in the home invasion, disavowing Griffin's involvement established Griffin's actual innocence. In a reasoned unpublished opinion issued on July 25, 2019, County Court denied the motion in its entirety, concluding that the prosecution had not presented false evidence or testimony and that the affidavit was "untrustworthy and inherently unreliable." Griffin sought leave to appeal the decision in the Appellate Division, but his submission was rejected because certain papers were missing. Griffin twice moved for extensions to re-submit his application for appeal, which was ultimately denied on October 18, 2019.

 **\*3**  Griffin filed the instant *pro se* Petition for a Writ of Habeas Corpus on November 30, 2019. Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1)(A). Briefing is complete, and the Petition is now before the undersigned judge for adjudication.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Griffin argues that: 1) the trial court erred in refusing to sever the charges involving the home invasion from the other counts; 2) his statement to law enforcement was involuntarily made due to "police deception;" 3) the court improperly allowed evidence that his co-defendants raped his estranged wife; 4) the evidence presented was insufficient to sustain his convictions, and the verdict was against the weight of the evidence; 5) trial counsel

2021 WL 3884217

was ineffective for failing to properly advise him as to an offered plea bargain; 6) the prosecutor committed misconduct by "[i]mproper averment during voir dire of third panel of jurors" and procuring false evidence and testimony at trial; 7) newly-discovered evidence in the form of a recantation by a jailhouse informant demonstrates his actual innocence; 8) his sentence is harsh and excessive; and 9) his right to due process was violated by "egregious conduct committed during trial." Griffin also seeks an evidentiary hearing as to all claims.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona*, 497 U.S. 639, 653 (1990) (presuming that the state court knew

and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

**\*4** In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

### A. Timeliness

Respondent urges the Court to dismiss Griffin's Petition as untimely. The AEDPA provides:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the

Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Here, the New York Court of Appeals denied Griffin's application for leave to appeal his conviction on July 28, 2014. His conviction became final 90 days later, on October 27, 2014, the conclusion of the period during which Griffin could have sought certiorari review in the United States Supreme Court. *See Williams v. Artuz*, 237 F.3d 147, 150-51 (2d Cir. 2001). It appears that he filed his CPL § 440.10 motion to vacate on September 2, 2015, after 309 days had lapsed on the one-year limitations period. The limitations period was tolled from September 2, 2015, until at least July 25, 2019, when the county court denied his § 440.10 motion. 28 U.S.C. § 2244(d)(1)(D)(2). Respondent argues that further tolling is not available to Griffin because he never filed a leave application that the Appellate Division accepted for filing. Consequently, Respondent argues that, as of September 13, 2019, when the deadline for Griffin to file a leave application expired, only 56 days remained in the limitations period, which thus would expire on November 8, 2019. Because Griffin did not file the instant Petition until November 30, 2019, [4] Respondent argues that the Petition is at least 22 days late.

[4]    Griffin is entitled to the benefit of the prison mailbox rule, an equitable rule "justified by the litigant's dependence on the prison mail system and lack of counsel to assure timely filing with the court." *Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001) (citing *Houston v. Lack*, 487 U.S. 266, 270-71 (1988)). Under that rule, the instant *pro se* Petition is deemed filed on the date that Griffin

gave it to the prison authorities for mailing, not on the date it was docketed in the Court. *See Houston*, 487 U.S. at 270-72.

*5    In his Traverse, Griffin does not dispute the factual accuracy of Respondent's statements. Although the statutory limitations period under the AEDPA may be tolled for equitable reasons, *Holland v. Florida*, 560 U.S. 631, 645 (2010), Griffin does not state any facts in his Traverse that would render equitable tolling appropriate here. He does, however, assert in the Petition that he is actually innocent of the crimes, which, if true, may overcome the Petition's facial untimeliness. *McQuiggin v. Perkins*, 569 U.S. 383, (2012) (citing *Schlup v. Delo*, 513 U.S. 298 (1995). But as discussed with respect to Griffin's actual innocence claim, Ground 7, *infra*, the evidence he submits in support is insufficient to establish his factual innocence. Accordingly, while this Court is not unmindful of the plight of unrepresented state prisoners in federal habeas proceedings, the Court must conclude that Griffin's Petition is facially untimely, and Griffin fails to satisfy the very high threshold required to overcome that untimeliness.

**B. Merits**

Moreover, even if the instant Petition were not time-barred, Griffin is not entitled to relief on them. For the reasons discussed below, the Court alternatively concludes that Griffin's claims are without merit.

**Ground 1.** *Wrongful Joinder*

Griffin first argues that the trial court erred in refusing to sever the burglary-related counts from the other counts. According to Griffin, the counts relating to the order of protection and drug possession should have been severed from the robbery and burglary counts because the burglary occurred a month after the other crimes and the inclusion of those counts resulted in "spillover prejudice." In considering this claim on direct appeal, the Appellate Division concluded that "the counts were properly joined pursuant to CPL 200.20(2)(b), and thus the court 'lacked statutory authority to grant [his severance] motion.'" *Griffin*, 975 N.Y.S.2d at 308 (citation omitted).

Griffin fares no better on federal habeas review. CPL § 200.20(2)(b) provides that two offenses are "joinable" when, "[e]ven though based upon different criminal transactions, such offenses, or the criminal transactions underlying them, are of such nature that either proof of the first offense would

be material and admissible as evidence in chief upon a trial of the second, or proof of the second would be material and admissible as evidence in chief upon a trial of the first." N.Y. CRIM. PROC. LAW § 200.20(2)(b). As an initial matter, to the extent Griffin alleges that the trial court erred under CPL § 200.20(2)(b) when it refused to sever the counts, such claim is not cognizable on federal habeas review because it implicates only the proper application of state law. *See* Swarthout, 131 S. Ct. at 863; Estelle, 502 U.S. at 67-68. In general, "[j]oinder and severance are questions left to the discretion of the trial judge; no constitutional question is involved." *Madden v. Fogg*, 501 F.Supp. 243, 246 (S.D.N.Y. 1980).

To elevate a joinder issue to one of constitutional magnitude, a petitioner must show that the denial of severance rendered his trial fundamentally unfair and hence violative of due process. *See, e.g.,* Herring v. Meachum, 11 F.3d 374, 377 (2d Cir. 1993). A habeas petitioner claiming a due process violation based upon joinder of offenses "must, to succeed, go beyond the potential for prejudice and prove that *actual* prejudice resulted from the events as they unfolded during ... trial." *Id.* at 377-78. "Substantial prejudice does not simply mean a better chance of acquittal." *United States v. Alvarado*, 882 F.2d 645, 655 (2d Cir. 1989), *overruled on other grounds by* Bailey v. United States, 516 U.S. 137 (1995). Indeed, the Second Circuit has commented that a lower court's determination that joinder does not present a risk of prejudice is "virtually unreviewable." *See* United States v. Stewart, 433 F.3d 273, 314-315 (2d Cir. 2006).

 **\*6** Here, Griffin cannot show the level of substantial prejudice required to warrant habeas relief. In his Petition and on direct appeal, Griffin summarily states that the joinder resulted in "spillover prejudice." According to Griffin, when the jury found him guilty of the home invasion, it likely "conclude[d] that if [he] committed one set of crimes, that he was deserving of punishment and probably committed the other set of crimes." But such conclusory and speculative contention falls far short of his "onerous burden," *Herring*, 11 F.3d at 378, of establishing that his trial was rendered fundamentally unfair by the joinder. Griffin does not contend that his defenses to the crime were antagonistic or that he wished to testify with respect to some counts but not others. Griffin is therefore not entitled to relief on this ground.

## Ground 2. *Involuntary Statement*
Griffin next contends that the trial court should have suppressed a statement he made to law enforcement admitting drug possession on the ground that the statement was involuntary due to the officer's deception and alleged threat to arrest CW and take Griffin's child if he refused to cooperate. As an initial matter, Respondent correctly points out that the claim is procedurally barred from federal habeas review. "[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim." *Harris*, 489 U.S. at 262. In rejecting Griffin's claim on direct appeal, the Appellate Division found that Gonzales failed to preserve his contention for appellate review. *Griffin*, 975 N.Y.S.2d at 308. The Appellate Division relied upon CPL §§ 330.30(1) and 470.05(2), New York's contemporaneous objection rule, which "provides that, with a few exceptions ... New York appellate courts will review only those errors of law that are presented at a time and in a manner that reasonably prompted a judge to correct them during criminal proceedings," *Downs v. Lape*, 657 F.3d 97, 103 (2d Cir. 2011). The record reflects that, as the Appellate Division noted, Griffin did not seek to reopen the *Huntley* hearing based on the trial testimony or move for a mistrial. *Griffin*, 975 N.Y.S.2d at 308.

New York's contemporaneous objection rule has long been considered an "adequate and independent ground" that bars federal habeas review. *See* Whitley v. Ercole, 642 F.3d 278, 292 (2d Cir. 2011); *see also* Downs, 657 F.3d at 102-04. As the record supports the Appellate Division's conclusion that Griffin failed to raise his challenge before the trial court, the Appellate Division properly applied CPL § 470.05(2), and Griffin's claim is subject to dismissal on that basis.

In any event, even if the claim were properly before this Court, Griffin would not be entitled to relief on the merits of it. The Supreme Court has held that an individual subjected to custodial interrogation by law enforcement personnel "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda*, 384 U.S. at 479. A custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444. The safeguards ensured by *Miranda* do not apply at all times, however. Spontaneous statements made by a defendant are not the product of an interrogation as defined by *Miranda*. *United States v. Vigo*, 487 F.2d 295, 300 (2d Cir. 1973); *see also* United States v. Colon, 835 F.2d 27, 28 (2d Cir. 1987) (*Miranda* inapplicable where the inculpatory statement is spontaneous and did not result from interrogation or its

functional equivalent). Moreover, a person may validly waive his right to remain silent after receiving and understanding his *Miranda* rights. *Berghuis v. Thompkins*, 560 U.S. 370, 385-86 (2010).

**\*7** Griffin argues that law enforcement "exert[ed] improper influence" to induce the statement by "threatening [Griffin] with arresting his wife and taking his child." Although threats by law enforcement may render a confession inadmissible, *Lynumn v. Illinois*, 372 U.S. 528, 534 (1963), after conducting a *Huntley* hearing, the suppression court concluded, "[T]he record of this hearing does not disclose that [Griffin] was either physically or emotionally mistreated during this interview or that the police used threats, promises, physical force or any other form of coercion or trickery," ECF No. 17-3 at 185. The trial court's determination was based on the testimony of Investigator Gallup, which county court credited, and this Court may not second guess that assessment. *See Shabazz v. Artuz*, 336 F.3d 154, 161 (2d Cir. 2003) ("Th[e] presumption of correctness [afforded a state court's factual determinations] is particularly important when reviewing the trial court's assessment of witness credibility."). Because the state court's factual finding was not unreasonable in light of the evidence before it, that finding is entitled to deference. 28 U.S.C. § 2254(e)(1); *Miller-El*, 537 U.S. at 340. Griffin does not provide evidence sufficient to rebut the presumption of correctness this Court must afford the state court's decision.

Notably, county court recognized that Gallup candidly admitted during the hearing that he had made a false statement about the police having Griffin under surveillance. The county court concluded that Gallup's false statement "did not constitute a misrepresentation that could induce a false confession."[5] Docket No. 17-1 at 185.

[5] Investigator Gallup subsequently testified at trial that he also told Griffin that his fingerprints were on the drugs, after which, Griffin admitted that he had received the drugs from an associate. Respondent concedes in its Answer to the Petition that Investigator Gallup's statement about the fingerprints was false. Ultimately, however, that false statement does not render unreasonable the state court's determination that Griffin's confession was voluntary for the same reasons discussed *nfra* with respect to the false statement about surveillance. *See also Frazier v. Cupp*, 394 U.S. 731, 739 (1969) (holding

that police misrepresentation that associate had already confessed to crime, "while relevant, [was] insufficient ... to make [petitioner's] otherwise voluntary confession inadmissible").

The Second Circuit has held that "a finding that police conduct is 'false, misleading, or intended to trick and cajole the defendant into confessing' does not necessarily render the confession involuntary." *United States v. Haak*, 884 F.3d 400, 409 (2d Cir. 2018) (quoting *United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991)). The Second Circuit has instructed:

A court must still make "specific findings ... that under the totality of the circumstances ... the defendant's will was overborne by the [police] conduct." [*Anderson*, 929 F.2d at 99]; *see United States v. Corbett*, 750 F.3d 245, 253 (2d Cir. 2014) (identifying "key" question to voluntariness is "whether the subject's will was overborne" (internal quotation marks omitted)). Such circumstances generally fall into "three sets of circumstances: (1) the characteristics of the accused, (2) the conditions of interrogation, and (3) the conduct of law enforcement officials." *Green v. Scully*, 850 F.2d 894, 901-02 (2d Cir. 1988); *see United States v. Orlandez–Gamboa*, 320 F.3d 328, 332 (2d Cir. 2003) (observing that, whether voluntariness requirement derives from Due Process Clause or Fifth Amendment right against self-incrimination, "test for voluntariness is well established and multi-faceted").

*Id.*

Under those principals, the state court's voluntariness determination is reasonable in light of the totality of circumstances, which reflects that, even after Griffin admitted that an associate had given him the drugs, he continued to deny that he had hidden the drugs in his truck, instead accusing the police or his wife of planting the drugs. His continued denial as to that fact supports that the false statements were not unduly coercive. Moreover, Investigator Gallup's testimony at the *Huntley* hearing, which the suppression court credited as truthful, reflected that Griffin was questioned in a casual manner while he was un-handcuffed, and he made his statement after being given his *Miranda* warnings. Gallup testified that he was not trying to induce a confession from Griffin, but rather was encouraging his cooperation and hoping that Griffin would give the name of his supplier and possibly serve as a confidential informant. In light of the of the totality of circumstances, the Court cannot find unreasonable the state courts' determination that

2021 WL 3884217

Griffin's will was not overborne by Investigator Gallup's conduct.

**Ground 3.** *Evidentiary Error*

**\*8** Griffin additionally avers that the trial court erred by admitting evidence that his co-conspirators raped CW. The Appellate Division rejected this claim on direct appeal, concluding that CW's testimony concerning the uncharged crimes of rape and sexual assault were admissible " 'as background material that completed the narrative of the episode,' and the court properly instructed the jury that the testimony was admitted for that limited purpose." *Griffin*, 975 N.Y.S.2d at 308 (citation omitted).

Under New York law, evidence of prior crimes or bad acts may be admitted for the purpose of showing, *e.g.*, 1) motive, 2) intent, 3) absence of mistake or accident, 4) common scheme or plan, or (5) identity, as long as its probative value outweighs the prejudicial effect. *People v. Molineux*, 61 N.E. 286, 293 (N.Y. 1901) (setting out the rule that evidence of prior bad acts cannot be used to prove that the defendant has a propensity to commit such acts, but may be used for other purposes).[6] This evidence is also admissible to serve as background information or to complete the narrative of the events. *See People v. Dennis*, 937 N.Y.S.2d 496, 498 (N.Y. App. Div. 2012).

[6]    *Cf.* FED. R. EVID. 404(b) ((1) "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.... (2) This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.").

To the extent that Griffin contends that the trial court's ruling was contrary to *Molineux*,[7] such claim presents solely an issue of state law that is not cognizable on federal habeas review. *See, e.g., Mercedes v. McGuire*, No. 08-CV-299, 2010 WL 1936227, at \*8 (E.D.N.Y. May 12, 2010) (Appellate Division's rejection of petitioner's claim that the use of uncharged crimes violated his due process rights was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent because "the Supreme Court has never held that a criminal defendant's due process rights are violated by the introduction of prior bad acts or

uncharged crimes."); *Allaway v. McGinnis*, 301 F. Supp. 2d 297, 300 (S.D.N.Y. 2004) (the Supreme Court has yet to clearly establish "when the admission of evidence of prior crimes under state evidentiary laws can constitute a federal due process violation").

[7]    *People v. Molineux*, 61 N.E. 286 (N.Y. 1901) (sets out the rule that evidence of prior bad acts cannot be used to prove that the defendant has a propensity to commit such acts, but may be used for certain other purposes); *cf.* FED. R. EVID. 404(b) ((1) "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character .... (2) This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.").

In any event, even if it were cognizable on federal habeas review, Griffin would not be entitled to relief on it. Again, with respect to the admission of prior bad acts to show a defendant's propensity to commit the charged crimes—which did not occur here—there is no clearly established federal law finding a due process violation. *See Estelle*, 502 U.S. at 75 n. 5 ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."). Nevertheless, the erroneous admission of evidence will rise to a deprivation of due process under the Fourteenth Amendment if the evidence in question, when evaluated in the context of the record as a whole, is "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would otherwise have existed on the record without it." *McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 73 (2d Cir. 2011) (quoting *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir.1985)). "In short it must have been crucial, critical, [or] highly significant." *Id.*

**\*9** Here, Griffin has not established that the challenged sexual offense evidence amounted to an evidentiary error so serious as to have denied him a fundamentally fair trial. *See Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012). The evidence of uncharged crimes was not "sufficiently material to provide the basis for [Griffin's] conviction," nor did this evidence "remove a reasonable doubt that would have existed ... without it." *McKinnon*, 422 F. App'x at 73. The trial court instructed the jury at the beginning of trial that Griffin was

not charged with these sex offenses. Upon defense objection to the prosecutor's reference to the sex crimes during her opening statement, the court instructed the jury that "there is no charge in this indictment charging [Griffin] with having committed that—those particular crimes .... Mr. Griffin is not charged with a rape or a criminal sex act ...." Viewing the evidence of the uncharged crimes in light of the entirety of the record, the Appellate Division's denial of Griffin's due process claim was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

" 'Ground 4. *Insufficiency of the Evidence/Against the Weight of the Evidence*

Griffin claims in Ground 4 that the menacing and robbery-related convictions were against the weight of the evidence, and that the evidence presented was legally insufficient to sustain those convictions. [8] As an initial matter, claims that challenge verdicts as against the weight of the evidence are not cognizable on federal habeas review. *See McKinnon*, 422 F. App'x at 75. "Unlike a sufficiency of the evidence claim, which is based upon federal due process principles, a weight of the evidence claim is an error of state law, for which habeas review is not available." *Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (citation and internal quotation marks omitted). "A weight of the evidence argument is a pure state law claim grounded in [CPL] § 470.15(5) which empowers New York state intermediate appellate court[s] to make weight of the evidence determinations." *Id.* (citation and internal quotation marks omitted). The Court therefore also denies Scott's weight of the evidence claim on that basis.

[8]    On direct appeal, the Appellate Division agreed that his convictions for third-degree criminal possession of a weapon and second-degree intimidating a victim or witness were not supported by legally sufficient evidence. *Griffin*, 975 N.Y.S.2d at 308. The Appellate Division recognized that Griffin failed to preserve that claim for appeal but nonetheless exercised its power to review it in the interest of justice, and modified the judgment accordingly. *Id.*

Griffin's insufficiency of the evidence claim, although cognizable on federal habeas review, is also without merit. As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the New York court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law ...."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

 **\*10**  In support of his claim, Griffin attacks the value of the evidence against him, arguing that the prosecution presented insufficient evidence connecting him to the home invasion-related crimes and insufficient evidence that his actions satisfied the elements of the crime of menacing. This Court, however, is precluded from either re-weighing the evidence or assessing the credibility of witnesses. *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal" and deferring to the jury's assessments of the particular weight to be accorded to the evidence and the

credibility of witnesses). Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995).

With respect to the home invasion counts, the prosecution presented vast amounts of telephone records, which corroborated the accomplice testimony of Aimee Brown, who also implicated Griffin in the commissioning of the home invasion. CW's testimony that she was scared when Griffin threatened to kill her and pushed her face into a mattress amply supports Griffin's menacing conviction. Although it might have been possible to draw a different inference from the evidence, this Court is required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S. at 326. The record does not compel the conclusion that no rational trier of fact could have found proof that Griffin was guilty of the home invasion and menacing crimes, especially considering the double deference owed under *Jackson* and the AEDPA. Griffin therefore cannot prevail on his insufficiency of the evidence claim either.

**Ground 5.** *Ineffective Assistance of Counsel*
Griffin also argues that trial counsel was ineffective for failing to adequately advise him as to the "pros and cons of accepting a plea offer." To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, Griffin must show that his counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.' " *Id.* at 123 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.' " *Id.* (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.' " *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

**\*11** The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard. *Id.* at 125.

Griffin's ineffective assistance claims must fail, however, even under the more favorable New York standard. Respondent first argues that Griffin has failed to exhaust this ineffective assistance claim. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.

*Duncan v. Henry*, 513 U.S. 364, 365 (1995). A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *Id.* at 365-66. An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used. *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005). To be deemed exhausted, a claim must also have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). Further, "when a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted); *see also Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 2001).

Here, Griffin raised three ineffective assistance claims on direct appeal.[9] The only claim that, like the claim in this Petition, relates to plea negotiations is his direct appeal claim that counsel did not discuss with Griffin "the proper sentencing parameters" Griffin faced. But that claim is substantively different than the claim here that counsel "[f]ail[ed] to advise the pros and cons of accepting a plea offer." Consequently, the instant claim is wholly unexhausted and subject to dismissal on that ground.

[9]     Griffin argued that counsel was ineffective for failing to: 1) provide proper advice regarding his sentence exposure; 2) review Investigator Gallup's July 24, 2009, interview before trial; and 3) move to reopen the suppression hearing or move to suppress his June 19, 2009, statements to Investigator Gallup based on Gallup's trial testimony acknowledging that he falsely told Griffin that Griffin's fingerprints were on the drugs. Griffin does not re-assert any of these claims in the instant Petition.

*12 It appears, however, that the claim may be based on matters outside the record, and thus Griffin potentially could still file a *coram nobis* motion in the Appellate Division on that ground, rendering it not procedurally defaulted. But even

if Griffin could still exhaust this claim in state court, the Court declines to stay the Petition and allow him to return to state court to satisfy the exhaustion requirements. *See Zarvela v. Artuz*, 254 F.3d 374, 380-83 (2d Cir. 2001). Griffin has not requested that this Court stay and hold his Petition in abeyance. Moreover, the Supreme Court has held that it is an abuse of discretion to stay a mixed petition pending exhaustion where: 1) the petitioner has not shown good cause for failing to exhaust all available state court remedies; and 2) the unexhausted claim is "plainly meritless." *Rhines v. Weber*, 544 U.S. 269, 277 (2005).

Despite Griffin's failure to exhaust his ineffective assistance claim, this Court nonetheless may deny his claims on the merits and with prejudice. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). This is particularly true where the ground raised is meritless. *See Rhines*, 544 U.S. at 277.

Although a defendant's Sixth Amendment right to counsel extends to plea negotiations, *see Padilla v. Kentucky*, 559 U.S. 356, 364 (2010) ("Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.' " (citations omitted)), the record does not indicate that Griffin was deprived of competent counsel. Griffin provides nothing more than his unsupported and conclusory statement that counsel failed to adequately discuss the offered plea with him.[10] This lack of evidentiary support is fatal to his claim. *Woodford v. Visciotti*, 537 U.S. 19, 15 (2002) (*per curiam*) (holding that state habeas petitioner carries the burden of proof); *see, e.g.*, *Powers v. Lord*, 462 F. Supp. 2d 371, 381-82 (W.D.N.Y. 2006) (laying out the general rule that "undetailed and unsubstantiated assertions [about counsel's alleged shortcomings] have consistently been held insufficient to satisfy either *Strickland* prong" (citation omitted)). "It is well-settled in this Circuit that vague and conclusory allegations that are unsupported by specific factual averments are insufficient to state a viable claim for habeas relief." *See Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 355 (N.D.N.Y. 2013). As such, a claim of ineffective assistance must contain specific factual contentions regarding how counsel was ineffective. *See Hall v. Phillips*, No. 1:04-CV-1514, 2007 WL 2156656, at *13 (E.D.N.Y. July 25, 2007) (the absence of allegations that demonstrate how counsel was ineffective is "fatal to an ineffective assistance claim on habeas" review). Consequently, Griffin is not entitled to relief on his ineffective assistance claim in any event.

10    Indeed, the record reflects that the trial court recessed the proceedings to give defense counsel time to discuss the plea offer with Griffin. Although the substance of those discussion were not placed on the record, Griffin fails to establish any reasonable probability that defense counsel failed to discuss the "pros and cons" of the offer at that time.

**Ground 6.** *Prosecutorial Misconduct*
Griffin additionally contends that the prosecutor committed misconduct by: 1) improperly asking a potential juror regarding the prosecutor's decision not to call CW's child to testify; and 2) presenting "false evidence and testimony" at trial.

Federal habeas review of prosecutorial misconduct claims is limited to the narrow issue of whether the alleged misconduct violated due process. *See Darden v. Wainwright, 477 U.S. 168, 181 (1986).* A habeas petition will be granted for prosecutorial misconduct only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 171 (quoting *Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)*). To constitute a due process violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." *Greer v. Miller,* 485 U.S. 756, 765 (1987) (quoting *United States v. Bagley, 473 U.S. 667 (1985)*). Under this standard, a petitioner must show there is a reasonable probability the error complained of affected the outcome of the trial—i.e., that absent the alleged impropriety, the verdict probably would have been different.

*13 Griffin first contends that the prosecutor improperly asked a jury panel about the prosecutor's decision not to call CW's child as a trial witness. Griffin raised this claim on direct appeal, asserting that the prosecutor's inquiry improperly vouched for the veracity of the People's version of events. The Appellate Division summarily denied the claim. *See Griffin, 975 N.Y.S.2d at 309* ("We have reviewed [Griffin's] remaining contentions and conclude that they are without merit.").

It is well-established that "[a]ttorney statements vouching for the credibility of witnesses are generally improper because they imply the existence of" evidence not before the jury. *United States v. Perez, 144 F.3d 204, 210 (2d Cir. 1998)* (quoting *United States v. Rivera, 22 F.3d 430, 438 (2d Cir.*

*1994)*). Prosecutorial "vouching," in particular, is improper because it "carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *United States v. Newton, 369 F.3d 659, 681 (2d Cir. 2004)* (quoting *United States v. Young, 470 U.S. 1, 18-19 (1985)*).

But Griffin fails to show that improper vouching occurred here. The record reflects that the prosecutor informed the jury panel that CW's daughter could have been called as an eyewitness but that the People had decided not to call her due to the trauma she experienced. The People then asked if any potential jurors would hold it against the People if she were not called. Although the prosecutor stated that the daughter "would have some evidence for you," the prosecutor did not describe what that evidence would have been. To the extent the inquiry conveyed that the daughter was traumatized by that experience, that conclusion was supported by the trial proof. Moreover, the trial court prohibited any further inquiry and immediately instructed the jury that what the lawyers say during voir dire is not evidence. Under these circumstances, the Appellate Division's rejection of this claim was neither unreasonable nor contrary to federal law.

Griffin additionally argues that the prosecution committed misconduct by eliciting perjury and relying on false evidence. Again, to be deemed exhausted, a claim must have been presented to the highest state court that may consider the issue presented. *See O'Sullivan, 526 U.S. at 845.* Because Griffin did not properly appeal the denial of his § 440.10 motion, this prosecutorial misconduct claim is unexhausted. Further, "when a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez, 510 F.3d 382, 390 (2d Cir. 2008)* (citation omitted); *see also Grey v. Hoke, 933 F.2d 117, 121 (2d Cir. 2001).* Because it appears that this unexhausted claim is based on the record, it could have been fully raised on direct appeal but was not; consequently, Griffin cannot bring a motion to vacate as to such claim. N.Y. CRIM. PROC. LAW § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when[,][a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal ...."). Accordingly, the

2021 WL 3884217

claim may be deemed exhausted but procedurally defaulted. *Clark*, 510 F.3d at 390; *Grey*, 933 F.2d at 121.

**\*14** In any event, Griffin cannot prevail on the merits of the claim either. In *Napue v. Illinois*, 360 U.S. 264, 269 (1959), the Supreme Court held "that 'a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment.' " *Jenkins v. Artuz*, 294 F.3d 284, 292 (2d Cir. 2002) (alteration omitted) (quoting *Napue*, 360 U.S. at 269). "The threshold question is whether the evidence presented was false." *Black v. Rock*, 103 F. Supp. 3d 305, 317 (E.D.N.Y. 2015) (citing *McCants v. Hallenback*, No. 13-CV-5587, 2014 WL 4638836, at \*6 (E.D.N.Y. Sept. 16, 2014)). "With respect to perjured testimony, this requires a showing that the witness gave 'false testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory.' " *Id.* (quoting *McCants*, 2014 WL 4638836, at \*6). "The petitioner has the burden of demonstrating, by a preponderance of the evidence, that the witness committed perjury." *Id.* (internal quotation marks and citation omitted). If the evidence is false or the witness committed perjury, "a conviction must be set aside if 'the prosecution knew, or should have known, of the perjury,' and 'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.' " *Smith v. Herbert*, 275 F. Supp. 2d 361, 367 (E.D.N.Y. 2003) (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)).

All of the instances cited by Griffin fail on the threshold question of veracity. Griffin first cites a letter purportedly written by Justin White that claims the author overheard a conversation between co-defendant Kelley and Aimee Burton said they were going to get rich and that they were no longer friends with Griffin. In considering this evidence on § 440.10 review, the county court found under "the totality of the circumstances" that the letter was "untrustworthy and inherently unreliable." Similarly, Griffin next refers to a 2012 affidavit by Robert Thomas in which he purports to recant his trial testimony regarding a conversation he overheard the night before the home invasion. The county court concluded that this affidavit was likely "inherently unreliable," particularly given that Thomas's trial testimony was corroborated by phone records. In short, Griffin provides no reliable evidence that would rebut the presumption of correctness this Court must afford the state court's factual determination. *See* 28 U.S.C. § 2254(e)(1); *Miller-El*, 537 U.S. at 340.

Finally, Griffin claims that Autumn Vanderzee wrote him a letter admitting that she lied at trial. Griffin does not submit that letter but rather submits an affidavit from his mother saying that she saw the letter but misplaced it. On CPL § 440.10 review, the county court found the mother's affidavit of insufficient evidentiary value to establish that the People deliberately elicited false testimony from Vanderzee, or that Vanderzee in fact lied at trial. Griffin provides no stronger evidentiary support here, and therefore the state courts' rejection of this claim is both reasonable and fully supported by the record. In sum, Griffin is not entitled to relief on any argument advanced in support of his prosecutorial misconduct claim.

**Ground 7.** *Newly-Discovered Evidence*
Griffin further asserts that newly-discovered evidence demonstrates his actual innocence. While a federal habeas petitioner may assert a claim of actual innocence to overcome a procedural bar to review, *Schlup*, 513 U.S. at 326, or to overcome the AEDPA's one-year statute of limitations, *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013), the Supreme Court has not resolved whether a non-capital prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence, *McQuiggin*, 133 S.Ct. at 1931; *see House v. Bell*, 547 U.S. 518, 554-55 (2006); *Dist. Attorney's Office v. Osborne*, 557 U.S. 52, 71-72 (2009). The Supreme Court has instead declined to answer the question, noting that where a "[p]etitioner has failed to make a persuasive showing of actual innocence[,] ... the Court has no reason to pass on, and appropriately reserves, the question whether federal courts may entertain convincing claims of actual innocence." *Herrera v. Collins*, 506 U.S. 390, 427 (1993) (O'Connor, J., concurring). Although the Second Circuit has also not ruled on whether a claim of actual innocence is cognizable on habeas review, *see Friedman v. Rehal*, 618 F.3d 142, 159 (2d Cir. 2010) (citing *Osborne*, 557 U.S. at 71, and noting that whether an actual innocence claim is cognizable is an open question), it has "come close" to granting habeas relief on grounds of actual innocence, *see DiMattina v. United States*, 949 F. Supp. 2d 387, 417 (E.D.N.Y. 2013) (citing cases).

**\*15** Assuming, but not deciding, that a freestanding actual innocence claim is cognizable in a § 2254 proceeding, the Supreme Court has described the threshold showing of evidence as "extraordinarily high." *Herrera*, 506 U.S. at 417. "The sequence of the Court's decisions in *Herrara* and *Schlup*—first leaving unresolved the status of freestanding

claims and then establishing the gateway standard—implies at the least that *Herrara* requires more convincing proof of innocence than *Schlup*." *House*, 547 U.S. at 555.

Measured against this standard, Griffin has fallen short of establishing his actual innocence. Griffin's claim is based on the purported recantations of White, Thomas, and Vanderzee, which he contends constitute newly discovered evidence. The Second Circuit has recognized that "due process is violated if a state leaves in place a criminal conviction after a credible recantation of material testimony and the recantation would 'most likely' have changed the outcome." *Quezada v. Smith*, 624 F.3d 514, 521 (2d Cir. 2010) (citing *Sanders v. Sullivan*, 863 F.2d 218, 222 (2d Cir. 1988)). However, "[i]t is axiomatic that witness recantations 'must be looked upon with utmost suspicion.' " *Haouari v. United States*, 510 F.3d 350, 353 (2d Cir. 2007) (quoting *Ortega v. Duncan*, 333 F.3d 102, 107 (2d Cir. 2003)). This rule exists because recantations upset society's interest in the finality of convictions and are very often unreliable and given for suspect reasons. *Id.* The presumption of correctness afforded to state-court findings on federal habeas review applies to "historical facts, that is, recitals of external events and the credibility of the witnesses narrating them." *Smith v. Mann*, 173 F.3d 73, 76 (2d Cir. 1999). Those findings will be overturned if the material facts were not adequately developed by the state court or if the factual determination is not adequately supported by the record. *Id.*

In this case, the state court fully developed the material facts on CPL § 440.10 review, and the record supports the county court's factual findings, as discussed in Ground 6, *supra*. Thus, no basis exists to overturn the state court's findings as to White, Thomas, or Vanderzee's testimony, and none of the alleged recantations support a claim of actual innocence here. Accordingly, Griffin is not entitled to relief on this ground.

**Ground 8.** *Harsh and Excessive Sentence*

Griffin also argues that his sentence is excessive, and the trial court failed to consider his particular needs when imposing that sentence. It is well-settled, however, that an excessive sentence claim may not be raised as grounds for federal habeas corpus relief if the sentence is within the range prescribed by state law. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *Bellavia v. Fogg*, 613 F.2d 369, 373 (2d Cir. 1979) (setting mandatory sentences is solely the province of state legislature); *Hernandez v. Conway*, 485 F. Supp. 2d 266, 284 (W.D.N.Y. 2007) (excessive sentence claim does not present a federal question cognizable on habeas review where

the sentence was within the range prescribed by state law. Griffin has never disputed, and does not dispute here, that he was sentenced within the applicable range for his offenses.

And to the extent that Griffin's claim could be construed to assert an Eighth Amendment claim of cruel and unusual punishment, he cannot prevail on that claim either. While the Supreme Court has stated that "[a] gross disproportionality principle is applicable to sentences for terms of years," it has further cautioned that it would be the "exceedingly rare" and "extreme" case which would involve a sentence which is "contrary to" or an "unreasonable application of" this principle. *Lockyer v. Andrade*, 538 U.S. 63, 72, 73 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in judgment)); 28 U.S.C. § 2254(d)(1). " '[A] reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate' because 'the decision of a sentencing [court] is entitled to substantial deference.' " *Edwards v. Marshall*, 589 F. Supp. 2d 276, 290 (S.D.N.Y. 2008) (quoting *United States v. Persico*, 853 F.2d 134, 138 (2d Cir. 1988)). Here, the 50-year aggregate sentence imposed by the trial court and subsequently affirmed by the Appellate Division "does not remotely approach the realm of grossly disproportionate punishments." *Edwards*, 589 F. Supp. 2d at 291 n.11; *see Lockyer*, 538 U.S. at 67-68, 77 (finding that, under California's Three Strikes law, a sentence of two consecutive terms of 25 years to life imprisonment for two counts of petty theft did not warrant relief under the AEDPA); *Rummel v. Estelle*, 445 U.S. 263, 285 (1980) (mandatory life sentence imposed under Texas statute upon defendant's third felony conviction, which was for obtaining $120.75 by false pretenses, did not constitute cruel and unusual punishment). Accordingly, this Court is without jurisdiction to reduce his lawful state sentence.

**Ground 9.** *Due Process Violation*

**\*16** Finally, Griffin claims that his trial was unfair due to "egregious conduct." But this bare and conclusory allegation is manifestly insufficient to warrant federal habeas relief. *See Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 355 (N.D.N.Y. 2013) ("It is well-settled in this Circuit that vague and conclusory allegations that are unsupported by specific factual averments are insufficient to state a viable claim for habeas relief."). Construing Griffin's *pro se* claim liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), Griffin may be arguing, as he did on direct appeal, that the cumulative effect of the errors alleged above warrants reversal of his conviction.

"In limited circumstances, cumulative errors may "serve as the basis for habeas corpus relief." *Brumfield v. Stinson*, 297 F. Supp. 2d 607, 621 (W.D.N.Y. 2003) (citation omitted). In order for a federal habeas court to find that cumulative errors justify habeas relief, "the alleged individual errors a petitioner seeks to aggregate [must be actual] *errors*." *Id.* (citing *Joyner v. Miller*, No. 01–Civ.–2157, 2002 WL 1023141, at *13 (S.D.N.Y. Jan. 7, 2002) (collecting cases)). Further, the petitioner must show that the errors are " 'so prejudicial that they rendered petitioner's trial ... fundamentally unfair.' " *Id.* (citation omitted). For the same reasons that the individual errors fail to show fundamental unfairness, the errors viewed cumulatively fail to demonstrate fundamental unfairness, and Griffin cannot prevail on his cumulative error claim either.

## C. Request for Evidentiary Hearing

Griffin further requests an evidentiary hearing as to all claims. The Supreme Court made clear in *Pinholster* that "review under [28 U.S.C.] § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011); *see Townsend v. Sain*, 372 U.S. 293, 312-13, 319 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *superceded in part by statute*, 28 U.S.C. 2254(e)(2) (1996). "Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Williams v. Taylor*, 529 U.S. 420, 437 (2000) (quoted with approval in *Pinholster*, 131 S. Ct. at 1401); *see Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (noting that the basic structure of federal habeas jurisdiction is designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions); *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977) ("[T]he state trial on the merits [should be] the 'main event,' so to speak, rather than a 'tryout on the road' for what will later be the determinative federal habeas hearing.") "If the state-court decision 'identifies the correct governing legal principle' in existence at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case.' " *Pinholster*, 131 S. Ct. at 1399 (quoting *Williams*, 529 U.S. at 413). As the Supreme Court noted, "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court." *Id.* Although under *Pinholster* an evidentiary hearing in a federal habeas proceeding is not absolutely precluded, *Pinholster* also made clear that the discretion to grant a request for an evidentiary

hearing is cabined by § 2254(e)(2), *id.* at 1400-01, which provides:

> **\*17** If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Griffin's request in this case does not meet that standard. Nor, based upon the record before this Court, can it be said that the state courts precluded him from developing the factual basis for his claim. *See Pinholster*, 131 S. Ct. at 1417 n.5 (Sotomayer, J., dissenting) (assuming that the majority did not intend to preclude an evidentiary hearing when the petitioner's ability to develop the facts was the fault of the state court itself). Accordingly, this Court also must deny his request for an evidentiary hearing.

## D. Certificate of Appealability

Having determined that habeas relief is not warranted, the Court must now consider whether to grant a certificate of appealability, which is required for a party to appeal a district court's decision on a § 2254 petition. *See* Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts; FED. R. APP. P. 22(b)(1). A "certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy the showing required by Section 2253(c)(2), the petitioner must show that reasonable jurists could debate whether the petition should have been resolved differently or that the issues presented are "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). Where, as here, a court has dismissed a petition or claim on procedural grounds, in addition to showing that the petition "states a valid claim

of the denial of a constitutional right," as explained above, the petitioner must also show that reasonable jurists would find debatable whether the court was correct in its procedural ruling. *Id.* at 484. This standard "requires an overview of the claims in the habeas petition and a general assessment of their merits," but a court need not determine that the petitioner would prevail on appeal. *Miller–El*, 537 U.S. at 336.

This Court found here that Griffin's coerced confession claim was procedurally barred because the New York Supreme Court deemed the claim unpreserved for appellate review. The Second Circuit has explained, however, that:

> Federal courts may address the merits of a claim that was procedurally defaulted in state court ... upon a showing of cause for the default and prejudice to the petitioner. *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S. Ct. 2497, 2506-07, 53 L. Ed. 2d 594 (1977). Cause may be demonstrated with "a showing that the factual or legal basis for a claim was not reasonably available to counsel, ... or that 'some interference by state officials' made compliance impracticable, ... [or that] the procedural default is the result of ineffective assistance of counsel." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986) (citations omitted).

**\*18** *Bossett v. Walker*, 641 41 F.3d 825, 829 (2d Cir. 1994).

Having reviewed the record thoroughly, the Court concludes that even if a reasonable jurist could find debatable whether Griffin's procedural default should be excused due to appointed counsel's failure to properly raise the coerced confession claim before the trial court by moving to reopen the *Huntley* hearing or moving for a mistrial, [11] the Court also found the instant Petition untimely. With respect to the timeliness issue, the Court must conclude that no reasonable jurist would find debatable untimeliness of Griffin's Petition. Accordingly, the Court declines to issue a certificate of appealability as to Griffin's claim that his statements to Investigator Gallup were the product of undue coercion, as well as to all other claims.

[11]   On direct appeal, Griffin alleged that trial counsel was ineffective for failing to listen to the audio of Griffin's interview with investigators before trial and failing to reopen the *Huntley* hearing after Gallup's testimony. The Appellate Division summarily denied that claim. *See Griffin*, 975 N.Y.S.2d at 309 ("We have reviewed [Griffin's] remaining contentions and conclude that they are without merit."). As aforementioned, Griffin does not challenge that determination in the instant Petition.

## V. CONCLUSION

Griffin is not entitled to relief on any ground raised in his Petition, nor is he entitled to an evidentiary hearing.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Request for an Evidentiary Hearing is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.' " (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

### All Citations

Slip Copy, 2021 WL 3884217

2014 WL 726723

2014 WL 726723
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

William NEALY, Petitioner,
v.
Dale ARTEST, Respondent.

No. 08–CV–3483 (JFB).
|
Feb. 25, 2014.

**Attorneys and Law Firms**

William Nealy, pro se.

Kathleen M. Rice, District Attorney, Nassau County, by Andrea M. DiGregorio, Mineola, NY, for Respondent.

**MEMORANDUM AND ORDER**

JOSEPH F. BIANCO, District Judge.

**\*1** William Nealy ("Nealy" or "petitioner") petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, to vacate his conviction for one count of assault in the second degree, one count of criminal possession of a weapon in the third degree, one count of resisting arrest, and one count of menacing in the third degree. Petitioner challenges his conviction on the following grounds: (1) petitioner's conviction was the result of an illegal seizure, as it was based on evidence acquired during an unconstitutional search and seizure, and arose from an arrest for which the police had no probable cause; (2) petitioner's conviction was obtained in violation of the privilege against selfincrimination because his parole officer presented evidence that should have been suppressed, and further, alleged that petitioner made an incriminating statement; (3) the prosecutor failed to disclose evidence favorable to petitioner; (4) petitioner was deprived of the effective assistance of trial counsel; (5) the prosecutor committed prosecutorial misconduct, including conspiring with the defense attorneys and a parole officer to secure an unlawful conviction, interfering with petitioner's right to counsel, committing selective and malicious prosecution, and forcing a waiver of petitioner's rights; (6) petitioner's prior conviction is unconstitutional and should not have been used against petitioner in calculating his sentence; and (7)

petitioner is actually innocent of the underlying allegations, as another individual (petitioner's nephew) confessed to the crime, and further, an eyewitness attests that petitioner was not present at the crime scene.

For the reasons set forth herein, the Court concludes that petitioner has not demonstrated any basis for habeas relief, and denies the instant petition. Specifically, petitioner has procedurally defaulted on his first, second, fifth, and sixth grounds for relief. In an abundance of caution, however, the Court considers all of petitioner's claims on the merits and concludes that none warrant habeas relief. Accordingly, the habeas petition is denied in its entirety. [1]

[1] Respondent also argues that petitioner's failure to sign his petition for a writ of habeas corpus warrants dismissal. *See* Rule 2(c)(5), 28 U.S.C. foll. § 2254 ("The petition must ... be signed under penalty of perjury by the petitioner or by a person authorized to sign it for the petitioner under 28 U.S.C. § 2242."). However, petitioner has since filed an amended, signed petition, thereby curing this defect. *See, e.g., Blake v. Johnson,* No. 10–CV–00572, 2011 WL 2117954, at *1 n. 1 (W.D.Va. May 27, 2011) (noting that court "conditionally filed the [unsigned habeas] petition and requested petitioner's signature in an amended petition, which he executed"); *Enriquez v. Calderon,* No. C01–2802 MMC (PR), 2001 WL 1456758, at * 1 (N.D.Cal. Nov. 9, 2001) (accepting amended, signed habeas petition after original, unsigned petition was dismissed without prejudice).

**I. BACKGROUND**

*A. Facts*

The following facts were adduced from the petition and documents attached thereto, as well as from the state court's trial and appellate record.

The instant petition stems from petitioner's conviction, following a jury trial, of assault in the second degree (N.Y. Penal Law § 120.05), criminal possession of a weapon in the third degree (N.Y. Penal Law § 265.02), resisting arrest (N.Y. Penal Law § 120.15), and menacing in the third degree (N.Y. Penal Law § 205.30).

According to the evidence presented by the prosecution at trial, at approximately 2:45 a.m. on April 10, 2001, petitioner slashed Donald Lanier's ("Lanier") face with a razor/box cutter outside the Bamboo Lounge in Hempstead, Nassau County. (Tr. at 349–62.) Petitioner proceeded to chase the victim's brother, Patrick Lanier ("Patrick"), swinging at him with the razor/box cutter. The altercation arose from a racial comment uttered by Patrick when he lost money in a game of dice. (*Id.* at 353.) As a result of the incident, Lanier received approximately forty stitches and suffered a three-and-one-half inch scar on the left side of his face; Patrick evaded injury. (*Id.* at 356.) Immediately following the incident, the brothers reported the occurrence to the police. (*Id* . at 363.)

**\*2** On April 15, 2001, Lanier confronted petitioner in a local bar. During this encounter, Lanier inquired as to why petitioner had cut him; petitioner, without denying the attack, asked Lanier to forget the matter. Lanier responded that he could not forget it unless petitioner agreed to engage in a fair fight to settle the dispute. (*Id.* at 393.) Petitioner refused to fight Lanier. This exchange prompted Lanier to approach a police vehicle that happened to be parked outside, and to report petitioner as his assailant from the incident that occurred on April 10, 2001. (*Id.* at 400–03.) Petitioner tried to avoid attention by slowly backing away from the scene and pulling a red bandana over his mouth. (*Id.* at 854–55.) However, once identified and approached by the officer, petitioner refused to discuss the accusation, cursed at the officer, and eventually fled on foot. (*Id.* at 856–64.)

The officer pursued petitioner. Once caught, petitioner resisted the officer's attempt to handcuff him by kicking and flailing his arms. (*Id.* at 865–70.) Additional police assistance was necessary to secure petitioner into police custody. (*Id.* at 944–50.)

At trial, Parole Officer Robert Billings ("Parole Officer Billings") testified that he had contact with petitioner regarding the April 10, 2001 incident. (*Id.* at 734–38.) Parole Officer Billings testified that petitioner had attempted to visit his parole officer, who was not in the office that day. (*Id.* at 737.) Parole Officer Billings recorded petitioner's visit on a note, which he left for petitioner's parole officer upon his return. (*Id.* at 738.) The note, which was admitted in evidence, referred to a fight between two men that occurred at the Bamboo Lounge, and stated that petitioner was stopped by a police officer, but was not arrested. (*Id.* at 738–39.) Moreover, the note mentioned that, during petitioner's meeting with Parole Officer Billings, he asked for a travel pass to South

Carolina. (*Id.* at 739.) During crossexamination, defense counsel highlighted that Parole Officer Billings did not record his encounter with petitioner on his day sheet, which is intended to serve as an additional source of verification for meetings held. (*Id.* at 758–64.)

In the course of Lanier's testimony at trial, Alfred Antoine ("Antoine") was identified as the individual who handed the razor/box cutter to petitioner. Despite petitioner's desire to have Antoine testify, neither the prosecution nor defense counsel called Antoine as a witness.

Defense counsel called Vicki Lewis ("Lewis") to testify on petitioner's behalf. During direct questioning by the defense, Lewis's past criminal activities, including shoplifting, drug possession, assault on a police officer, and violation of probation came to light. (*Id.* at 1042–46; 1087–97.) Lewis testified that she had a phone conversation with petitioner at 1:30 a.m. on the night of the incident. (*Id.* at 1049.) Lewis claimed that petitioner told her police were questioning him, but he would be leaving the scene to meet up with her as soon as he could. (*Id.*) Lewis further testified that petitioner arrived at her house around 2:30 a.m. and stayed there for the rest of the night. (*Id.* at 1050.)

**\*3** On April 24, 2001, petitioner's attorney, Michael Berger ("Berger"), waived petitioner's right to a speedy trial, speedy preliminary hearing, and speedy grand jury presentation. Shortly thereafter, Berger was relieved from representing petitioner due to a conflict of interest, and Jeff Groder ("Groder") was assigned as defense counsel. Following trial by jury, petitioner was found guilty of all of the charges brought against hi m.

### B. Procedural History

Petitioner was tried on the charges of assault in the second degree (N.Y. Penal Law § 120.05), criminal possession of a weapon in the third degree (N.Y. Penal Law § 160.15), resisting arrest (N.Y. Penal Law § 160.15), and menacing in the third degree (N.Y. Penal Law § 160.15). Prior to trial, petitioner's attorney, Groder, brought a motion pursuant to New York Criminal Procedure Law ("C.P.L.") § 30.30, claiming that petitioner's statutory speedy trial right had been violated. On February 25, 2002, this motion was denied.

### 1. Moving to Set Aside the Verdict

On April 15, 2002, following his jury conviction, Nealy moved to set aside the verdict pursuant to C.P.L. § 330.30. In this motion, petitioner alleged, *inter alia,* that the prosecution had improperly withheld information regarding the identity of a possible accomplice (Antoine). (Resp't Aff. and Mem. of Law in Supp. of Opp'n to Habeas Corpus Pet. ("Resp't Opp'n") at 4–5.; Def.'s C.P.L. § 330.30 Mot. [2]) He also asserted that newly discovered evidence created the possibility of a more favorable verdict for petitioner had it been presented at trial. (Resp't Opp'n at 5; Def.'s C.P.L. § 330.30 Mot.) Specifically, petitioner asserted that the existence of evidence that someone named Ci mmarron Patterson ("Patterson") was the person who had actually attacked Lanier. (Resp't Opp'n at 5; Def.'s C.P.L. § 330.30 Mot.) To support this claim, petitioner submitted a written statement by Patterson, in which the latter assumed responsibility for the attack on Lanier. (Resp't Opp'n at 5 .) The statement also included Patterson's statements that he had recently been discharged from a mental institution, that he cut Lanier because he felt threatened by him, and that he had informed petitioner of all of this soon after the attack. (*Id.* (citing Def.'s C.P.L. § 330.30 Mot.).)

[2]     Petitioner's first C.P.L. § 330.30 motion does not contain page numbers. Accordingly, the Court cites to the document in full, in the interest of avoiding improper designation of page numbers.

Regarding the first of these two claims (*i.e.,* that the prosecution improperly withheld information as to a potential accomplice's identity), respondent countered that the accomplice's name and location was disclosed to defense counsel prior to trial, and furthermore, that petitioner failed to show that the accomplice actually would have provided exculpatory evidence. (*Id.*) As to petitioner's second claim, respondent argued that Patterson's statements did not constitute newly discovered evidence because-in Patterson's own words-he disclosed all such information to petitioner the day after the crime, approximately ten months before trial. Moreover, the fact that Patterson had recently been released from a mental institution diminished his statements' credibility and reduced the likelihood that, had they been released during trial, the verdict might have been more favorable to petitioner. (*Id.* at 6 (citing People's Resp. to Def.'s C.P.L. § 330.30 Mot.).)

**\*4** The New York Supreme Court denied petitioner's C.P.L. § 330.30 motion on July 30, 2002, holding that the alleged accomplice's identity had been provided to defendant sufficiently before trial; Patterson's statement was not "newly discovered evidence" under C.P.L. § 330.30; and petitioner could not show that the verdict would have been more favorable to him had Patterson's statements been introduced. (*Id.* (citing County Ct.'s July 30, 2002 Decision Denying Def.'s C.P.L. § 330.30 Mot.).)

### 2. Petitioner is Deemed a Persistent Violent Felony Offender

During proceedings held on February 11, 2002, petitioner was sentenced to twentyfive years to life imprisonment for assault in the second degree, and to lesser sentences on the remaining convictions. (*Id.*) The court also deemed petitioner to be a persistent violent felony offender ("PVFO"), predicated on prior convictions from 1989 (Indictment Number 6913) and 1995 (Indictment Number 86801). (*Id.* at 6–7.)

### 3. State Court Review of Petitioner's Convictions

Petitioner appealed his conviction to the New York State Appellate Division, Second Department, raising several arguments: (1) his right to due process was violated by an incorrect C.P.L. § 710.30 notice, and further, by the prosecution's failure to disclose Police Officer Harold Gross's grand jury minutes at petitioner's hearing; (2) petitioner was entitled to a *Wade* hearing; (3) trial testimony of Detective Fiero, Police Officer Troy Wright, and Officer Harold Gross reinforced identification of the prosecution's witnesses; (4) petitioner's alleged statement to Parole Officer Billings was not an admission or confession, and should not have been admitted in evidence against petitioner at trial; (5) the prosecution failed to disclose a note that contained exculpatory evidence before trial, constituting a *Brady* violation; (6) the prosecution failed to establish probable cause for petitioner's arrest; (7) petitioner's counsel was ineffective at trial; [3] (8) dismissal of the indictment was warranted pursuant to C.P.L. §§ 190.25, 190.35, 190.55, and 210.35(5); and (9) the government committed various forms of misconduct, including prosecutorial misconduct, and selective and malicious prosecution. (Resp't Opp'n at 8.)

[3]     In support of his ineffective assistance of counsel claim, petitioner asserted that trial counsel "failed

2014 WL 726723

to call witnesses at the [pretrial] hearing on defendant's behalf." (Resp't Opp'n at 9 (quoting People's Resp. to Def.'s First C.P.L. § 440.10 Mot. at A–37 to A–82).)

Additionally, assigned appellate counsel submitted a brief on petitioner's behalf raising the following arguments: (1) admission of petitioner's statement to his parole officer constituted improperly admitted hearsay; (2) reference to petitioner's previous criminal convictions improperly prejudiced the jury; (3) the prosecution's references to gang activity created a damaging image of petitioner as a violent gang member, thereby depriving him of a fair trial; (4) the court failed to adjudicate petitioner's motion to dismiss the indictment at the end of trial; and (5) the court improperly dismissed petitioner's challenge of the jury panel without conducting a proper hearing. (Resp't Opp'n at 7–8 (citing Appellate Division Br. of Def.'s Assigned Counsel).)

**\*5** The government submitted separate briefs in response to both petitioner's *pro se* arguments and counsel's brief. The government's main position was that petitioner's claims were, for all intents and purposes, forfeited, unpreserved, or meritless. (*Id.* at 9 (citing People's Resp. to Def.'s First C.P.L. § 440.10 Mot. at A–84 to A–145).)

Petitioner's conviction was unanimously affirmed. *See People v. Nealy,* 32 A.D.3d 400 (2d Dep't 2006). In particular, the court reached the following conclusions: (1) there was sufficient evidence supporting a finding of probable cause as to petitioner's arrest; (2) evidence concerning petitioner's membership in a gang did not constitute reversible error; (3) petitioner's statements to his parole officer were properly admitted pursuant to the party admission exception to the hearsay rule; (4) the prosecutor did not commit a *Brady* violation regarding the alleged accomplice, as this information was disclosed to the defense before trial and was not exculpatory in nature; and (5) the record before the court showed that defendant had meaningful representation at trial. *Id.* at 401–03. Those claims that the court did not specifically address on the merits were dismissed as "unpreserved for appellate review." *Id.* at 403.

Petitioner then filed a *pro se* motion to vacate the judgment pursuant to C.P.L. § 440.10. (*See* Def.'s First C.P.L. § 440.10 Mot.) Petitioner argued (1) lack of a timely preliminary hearing in accordance with C.P.L. § 180.80, and (2) ineffective assistance of counsel, alleging that his attorney did not sufficiently investigate petitioner's case or locate eyewitnesses who could provide exculpatory testimony.

(*Id.*) [4] Petitioner also asserted that defense counsel's signature on the felony-hearing waiver had been forged. (*Id.*)

[4]    Petitioner's first C.P.L. § 440.10 motion does not contain page numbers. Accordingly, the Court cites to the document in full, in the interest of avoiding improper designation of page numbers.

On March 14, 2007, the court dismissed petitioner's motion. The court concluded that petitioner's argument for vacatur of conviction due to failure to receive a preliminary hearing under C.P.L. § 180.80 was without merit; petitioner's allegations of a forged document were not supported by any evidence in the record; petitioner was represented by competent counsel at all stages of his proceedings; and petitioner's argument that counsel failed to call specific witnesses at trial had no evidentiary support in the record. (*People v. Nealy,* Ind. No. 973–cv–01 (N.Y. Sup.Ct., Nassau Cnty. Mar. 14, 2007), ECF. No. 1 at 15–17.) Petitioner applied for leave to appeal the New York Supreme Court's denial of his first C.P.L. § 440.10 motion. On August 21, 2007, petitioner's request for leave to appeal was denied.

On July 30, 2007, petitioner moved under C.P.L. § 440.20 to set aside his sentence. (*See* Def.'s C.P.L. § 440.20 Mot. & Reply.) He argued that the court improperly sentenced him as a PV FO, that his counsel was ineffective at the PVFO hearing, and that his appellate counsel during the challenge to his 1995 conviction was ineffective. (Resp't Opp'n at 12–13 (citing Def.'s C.P.L. § 440.20 Mot.).) Before the court had decided petitioner's motion to set aside the sentence, however, petitioner filed a second motion under C.P.L. § 440.10. He asserted various denials of his constitutional rights, and alleged that he had not been afforded a C.P.L. § 180.80 hearing, and that he had been provided with ineffective assistance of counsel. (*Id.* at 13; *see also* Def.'s Second C.P.L. § 440.10 Motion, at 3–6.) On December 19, 2007, the court denied nearly all of petitioner's claims on procedural grounds. As to petitioner's ineffective assistance of counsel claim, the court concluded that the claim was previously addressed in a prior C.P.L. § 440.10 motion, that plaintiff had failed to show prejudice arising from counsel's alleged shortcomings, and in any event, that counsel was effective. (Resp't Opp'n at 15.) Petitioner sought leave to appeal this decision; his application was denied. (*Id.*)

**\*6** Petitioner filed a third motion under C.P.L. § 440.10, again claiming ineffective assistance of counsel, but this time, also raising a claim of newly discovered evidence.

2014 WL 726723

(*Id.*) Petitioner withdrew this motion, however, before it was considered by the court. (*Id.* at 15–16.)

In August 2008, petitioner filed his fourth motion to vacate his judgment of conviction under C.P.L. § 440.10. (*Id.* at 16.) Again, he asserted ineffective assistance of counsel, based on counsel's failure to interview Antoine, petitioner's alleged accomplice, and that he had newly discovered evidence that entitled him to vacatur of his judgment of conviction. (*Id.*) That motion was denied in December 2008. (*See* ECF No. 11.) However, petitioner did not seek leave from the Appellate Division to appeal the denial of this motion.

4. The Instant Petition

Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on August 22, 2008. Respondent filed a motion to dismiss the writ of habeas corpus petition and a memorandum of law in opposition on December 2, 2008. Petitioner submitted a reply and memorandum of law in support thereof dated February 17, 2009.

In his original habeas petition, petitioner contended that his conviction was (1) based on evidence acquired during an unconstitutional search and seizure; (2) obtained in violation of his privilege against self-incrimination because his parole officer alleged that petitioner had made an incriminating statement; (3) obtained by the prosecutor's wrongful failure to disclose favorable evidence (namely, that an alleged accomplice passed the knife to the assailant, the name of whom the prosecutor allegedly did not disclose until the eve of trial); (4) due to ineffective assistance of counsel (specifically, counsel failed to call an alibi witness favorable to the defense, but called one whom counsel knew would testify falsely and who had a criminal record); (5) the result of the prosecutor's conspiring with two defense attorneys and a parole officer, engaging in selective prosecution and malicious prosecution, and forcing defense counsel to waive petitioner's rights; and (6) generally unconstitutional because his 1995 conviction was unconstitutional.

On January 3, 2012, petitioner submitted an amended petition for writ of habeas corpus in which he raised the additional claim that he is actually innocent. On April 19, 2012, respondent submitted a response to petitioner's actual innocence claim, and on May 3, 2012, petitioner submitted his reply.

The Court has fully considered all of the submissions and arguments of the parties. It addresses each of petitioner's claims in turn.

II. DISCUSSION

Respondent argues that the instant petition should be denied because petitioner's claims do not present a basis for habeas corpus relief. For the reasons set forth below, the Court agrees and dismisses the instant petition.

A. Procedural Analysis

1. Exhaustion

**\*7** As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida,* 549 U.S. 327, 333 (2007), petitioner must fairly present his federal constitutional claims to the highest state court having jurisdiction over them, *see Daye v. Att'y Gen. of N.Y.,* 696 F.2d 186, 191 (2d Cir.1982) (en banc). Exhaustion of state remedies requires that a petitioner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry,* 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor,* 404 U.S. 270, 275 (1971)) (alteration in original) (internal quotation marks omitted).

Generally, to establish exhaustion, passage through the state courts, in and of itself, is insufficient. *See Picard,* 404 U.S. at 275. To provide the State with the necessary "opportunity," the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999); *see also Duncan,* 513 U.S. at 365–66. "A petitioner has fairly presented his claim only if he has informed the state court of both the factual and the legal premises of the claim he asserts in federal court." *Jones v. Keane,* 329 F.3d 290, 294–

95 (2d Cir.2003) (quoting *Dorsey v. Kelly,* 112 F.3d 50, 52 (2d Cir.1997)) (internal quotation marks omitted). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." *Daye,* 696 F.2d at 191; *see also United States ex rel. Rogers v. LaVallee,* 463 F.2d 185, 187 (2d Cir.1972). To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Daye,* 696 F.2d at 192.

### 2. State Procedural Requirements

Similar to a failure to exhaust a claim, a habeas petitioner's failure to satisfy a state's procedural requirements deprives the state courts of an opportunity to address the federal constitutional or statutory issues in a petitioner's claim. *Coleman v. Thompson,* 501 U.S. 722, 731–32 (1991). "[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.' " *Reyes v. Keane,* 118 F.3d 136, 140 (2d Cir.1997) (quoting *Coleman,* 501 U.S. at 735) (emphasis omitted).

**\*8** Even where a plaintiff properly exhausts his claim, however, exhaustion "does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding." *Woodford v. Ngo,* 548 U.S. 81, 93 (2006) (citing *Gray v. Netherland,* 518 U.S. 152, 162 (1996); *Coleman,* 501 U.S. at 744–51)). "[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas courts review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Gray,* 518 U.S. at 162.

The procedural bar rule in the review of applications for writs of habeas corpus is based on the comity and respect accorded to state judgments. *See House v. Bell,* 547 U.S. 518, 536 (2006). The purpose of this rule is to maintain the delicate balance of federalism by retaining a state's right to enforce its laws while maintaining its judicial procedures as it sees fit. *Coleman,* 501 U.S. at 730–31.

Once it is determined that a claim is procedurally barred under state rules, a federal court may still review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Id.* at 750. A miscarriage of justice occurs in extraordinary cases, such as a constitutional violation resulting in the conviction of an innocent individual. *Murray v. Carrier,* 477 U.S. 478, 496 (1986).

### B. Application

#### 1. Fourth Amendment Claims: Probable Cause and Legality of Seizure

Petitioner's claim that there was no probable cause for his arrest and that police illegally seized petitioner is barred from review.

It is well-settled that "[w]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell,* 428 U.S. 465, 494 (1976). The Second Circuit has further explained that, under *Powell,* "review of fourth amendment claims in habeas petitions would be undertaken in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley,* 975 F .2d 67, 70 (2d Cir.1992). Courts have described such a breakdown as occurring when the state court "failed to conduct a reasoned method of inquiry into the relevant questions of fact and law." *Id.* at 71 (citation and internal quotation marks omitted).

**\*9** Here, it is clear that New York has adequate corrective procedures for litigating Fourth Amendment claims, which are set forth in C.P.L. § 710.10 *et seq. See, e.g., Capellan,* 975 F.2d at 70 n. 1 ("[T]he 'federal courts have approved New York's procedure for litigating Fourth Amendment claims ... as being facially adequate.' " (quoting *Holmes v. Scully,*

706 F.Supp. 195, 201 (E.D.N.Y.1989)); *McPhail v. Warden, Attica Corr. Facility,* 707 F.2d 67, 69 (2d Cir.1983) (New York's procedure for litigating a Fourth Amendment claim in a criminal trial complied with requirement that state provide an opportunity to litigate such claims); *see also Blagrove v. Mantello,* 104 F.3d 350, 350 (2d Cir.1996) (where defendant's "Fourth Amendment issues were raised before the trial court in the suppression hearing and before the Appellate Division in [his] pro se brief," defendant's "Fourth Amendment argument is barred [from federal habeas review] because the issue was fully and fairly litigated in the state courts.").

It is also clear that defendant was able to take advantage of such procedures. As set forth *supra,* plaintiff raised his Fourth Amendment claims in both the lower court proceedings, and also, on appeal to the Appellate Division, which affirmed the lower court rulings. Indeed, the state court held a pretrial hearing at which petitioner was able to cross-examine the prosecution's witness, present his own evidence, and raise any legal arguments in support of his suppression motion. Thus, the record reveals no " 'disruption or obstruction of a state proceeding' typifying an unconscionable breakdown." *Capellan,* 975 F.2d at 70 (quoting *Shaw v. Scully,* 654 F.Supp. 859, 864 (S.D.N.Y.1987)).

Instead, the record clearly shows that the state court conducted a reasoned and thorough method of inquiry into the relevant facts, and that the Appellate Division, on review of petitioner's claims, affirmed the lower court's determinations. *See Nealy,* 32 A.D.3d at 401 ("[T]he People presented sufficient evidence at the hearing to demonstrate that there was probable cause.... The hearing record reveals that several days after one complainant was slashed in the face and the other complainant was threatened with being slashed, the two complainants approached police officers patrolling the parking lot of a bar and identified to the officers the defendant standing nearby as the assailant. The officers then approached the defendant.... When [they] reached the defendant and asked him to come with them, the defendant started to run away and kept running despite their orders to stop. Under these circumstances, the officers had probable cause to believe that the defendant was the complainants' assailant." (internal citations omitted)). Petitioner here does not contend that he was denied an opportunity to fully and fairly litigate his Fourth Amendment claims in the lower courts. Because the record shows, and petitioner does not contest, that petitioner did, in fact, receive a full and fair opportunity to raise his Fourth Amendment challenges, they are ineligible for habeas

relief and beyond the scope of this Court's consideration. *See Grey v. Hoke,* 933 F.2d 117, 121 (2d Cir.1991) (noting that under *Stone v. Powell,* "federal habeas corpus relief is not available on the ground that evidence produced at trial was the result of an unconstitutional search and seizure, unless the state denied the prisoner an opportunity for full and fair litigation of the claim"); *see also Jackson v. Scully,* 781 F.2d 291, 297 (2d Cir.1986) (stating that a federal habeas corpus court may not consider a Fourth Amendment claim if the state already has provided a full and fair opportunity for litigation of the same).

**\*10**  In short, having fully availed himself of New York's corrective procedures as to his Fourth Amendment claims, petitioner has had an opportunity for full and fair litigation of the claim; he therefore may not raise it on federal habeas review.

Even when a claim is procedurally barred, a federal court may still review such a claim on the merits if a petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that failure to consider the claim will result in a miscarriage of justice. *Coleman,* 501 U.S. at 749–50. Here, petitioner has provided no explanation for the default, nor has he demonstrated prejudice resulting therefrom or a miscarriage of justice. On careful consideration of the record, the Court likewise finds no such prejudice or miscarriage of justice. Accordingly, petitioner's Fourth Amendment claims are not subject to federal habeas review.

### 2. Fifth Amendment Claim

Petitioner's claim that his conviction was obtained in violation of his privilege against self-incrimination is procedurally barred. Parole Officer Billings' testimony, which led to the introduction of a note in evidence (allegedly containing an incriminating statement on the part of petitioner), was challenged on appeal; however, it was challenged as improperly admitted under the hearsay rule. *Nealy,* 32 A.D.3d at 402. Thus, petitioner's Fifth Amendment claim concerning the note and its incriminating statement is not exhausted.

Generally, a petitioner must have fairly presented his claim and exhausted its available remedies at the state court level before a federal court may grant relief on a ground raised in a habeas corpus petition. *See* 28 U.S.C. § 2254(b) & (c). Specifically, "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve

Nealy v. Artest, Not Reported in F.Supp.3d (2014)
Case 9:19-cv-00952-LEK-TWD   Document 22   Filed 07/27/22   Page 79 of 202
2014 WL 726723

federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan,* 526 U.S. at 845.

When claims in a federal habeas petition have not been exhausted, the federal court may determine that no available procedures remain in state court by which a petitioner may exhaust the claims. *See* 28 U.S.C. § 2254(b) (petition shall not be granted unless exhaustion has occurred or "there is absence of available State corrective process"); *see also Aparicio v. Artuz,* 269 F.3d 78, 90 (2d Cir.2001). "In such a case the habeas court theoretically has the power to deem the claim exhausted." *Aparico,* 269 F.3d at 90 (citing *Reyes v. Keane,* 118 F.3d 136, 139 (2d Cir.1997)). Here, petitioner no longer has any state remedies available to him with respect to Fifth Amendment claim because New York's procedural rules prevent him from raising this claim in a New York court. *See, e.g., Moss v. New York,* No. 10–CV–5840 (SJF), 2014 WL 585928, at *9 (E.D.N.Y. Feb. 12, 2014) (citing C.P.L. § 440.10(2)(c) (barring review of claims that could have been raised on direct appeal)); *see also St. Helen v. Senkowski,* 374 F.3d 181, 183 (2d Cir.2004) ("[T]he failure to have raised the claim on direct review now forecloses further collateral review in state court."); *Aparicio,* 269 F.3d at 91 ("New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal."). Thus, petitioner meets the technical requirements for exhaustion. *Coleman,* 501 U.S. at 732. However, petitioner's claims are procedurally defaulted. *See, e.g., Moss,* 2014 WL 585928, at *9 (failure to raise claims on direct appeal resulted in procedural default, barring federal habeas review).

**\*11** Where a claim is procedurally defaulted from review because it was not fairly presented to the state courts, the federal court has the authority to consider the claim only when the petitioner can establish both cause for the procedural default and actual prejudice resulting from it, or that the federal court's failure to consider the claim will result in a fundamental miscarriage of justice. *See Schlup v. Delo,* 513 U.S. 298, 318–21 (1995); *Reed v. Ross,* 468 U.S. 1, 11–13 (1984); *Grey,* 933 F.2d at 121. Petitioner has shown none of the above factors, nor does the record reflect any such elements. Thus, petitioner's Fifth Amendment claim remains procedurally barred and outside the scope of federal habeas review.

### 3. Ineffective Assistance of Counsel Claim

Respondent contends that a portion of petitioner's ineffective assistance of counsel claim-that his counsel failed to call an alibi witness-is unexhausted. (Resp't Opp. at 22.) At the time respondent filed its opposition, petitioner had raised the issue in his fourth C.P.L. § 440.10 motion, which the New York Supreme Court had not yet decided. Only several days after filing its opposition, respondent informed this Court that petitioner's motion was denied. (*See* ECF No. 11.) Nonetheless, respondent maintained that petitioner's ineffective assistance claim remained unexhausted because he failed to seek leave from the Appellate Division to appeal the decision. (*See id.*) This is incorrect. By letter dated July 27, 2009, petitioner submitted a July 15, 2009 order from the Appellate Division denying his application to appeal from the denial of his fourth C.P.L. § 440.10 motion. (*See* ECF No. 20.) Accordingly, the Court considers petitioner's ineffective assistance claim (based on his counsel's alleged failure to call an alibi witness) to be properly exhausted. *See, e.g., Ramos v. Superintendent, Sing Sing Corr. Facility,* No. 11–CV–4929 (VB), 2014 W L 243148, at *5 (S.D.N.Y. Jan. 22, 2014) (claim was properly exhausted where, even though petitioner did not exhaust claim on direct appeal, he raised it in C.P.L. § 440 motion, the state court denied the claim on the merits, and petitioner sought leave to appeal from the Appellate Division); *Anthoulis v. New York,* No. 11–CV–1908 (BMC), 2012 W L 194978, at * 3 (E.D.N.Y. Jan. 23, 2012) ("[T]o properly exhaust an ineffective assistance of counsel claim that relies on evidence outside the pretrial and trial record, petitioner must raise it as part of a motion to vacate judgment under CPL § 440.10 and then seek leave to appeal to the Appellate Division.").

### 4. Various Claims of Prosecutorial Misconduct

Petitioner's particular claims of prosecutorial alleged misconduct, including forcing a waiver of petitioner's right to a speedy trial and conspiring to secure an unlawful conviction, are procedurally barred because they were not presented in state court. *See generally O'Sullivan,* 526 U.S. at 845.

**\*12** Petitioner's claim of selective and malicious prosecution is barred from review on state procedural grounds. In fact, the Appellate Division dismissed this claim on the grounds that they were "unpreserved for appellate review." *See Nealy,* 32

A.D.3d at 403. When a state court relies on an independent and adequate state l aw, federal habeas review is foreclosed. *Glenn v. Bartlett,* 98 F.3d 721, 724 (2d Cir.1996) (finding that failure to preserve issue for appeal was adequate and independent state law ground precluding federal habeas review). This is true, even if the state court rules in the alternative on the merits of petitioner's claims. *See id.* at 724; *see also Green v. Travis,* 414 F.3d 288, 294 (2d Cir.2005) ("[E]ven when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted."). To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case," *Harris v. Reed,* 489 U.S. 255, 261 (1989), by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar," *id.* at 263 (internal quotation marks omitted).

Because the state court relied on an independent and adequate state law, petitioner's selective and malicious prosecution claim is procedurally defaulted and, therefore, may not be raised on habeas review.

### 5. The 1995 Conviction Claim

Petitioner alleges that his sentence is unconstitutional because it was partially based upon an unconstitutional 1995 conviction. He also raised this contention in his C.P.L. § 440.20 motion. The New York Supreme Court rejected the petitioner's allegations, holding the "defendant is precluded by statute from contesting the use of his 1989 and 1995 convictions as predicate convictions for his adjudication as a PVFO." (*See People v. Nealy,* Ind. No. 973N–01 (N.Y. Sup.Ct., Nassau Cnty. Dec. 19, 2007), ECF No. 1, at 21.) Where "a judgment from a state court rests on a statelaw ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision," the claim is procedurally barred in a federal habeas corpus proceeding. *Harris v. Reed,* 489 U.S. 255, 260–61 (1989). The standard set forth in *Harris v. Reed,* applied to this context, places the petitioner's 1995 conviction outside the scope of review for this Court. Furthermore, petitioner's 1995 conviction does not "implicate a fundamental miscarriage of justice." *See Schlup,* 513 U.S. at 318–21.

### 6. Summary of Procedurally Barred Claims

Grounds one, two, five, and six are procedurally defaulted. In addition, petitioner has not shown cause for default, or any resulting prejudice or fundamental miscarriage of justice such that these defaults may be overcome. Moreover, assuming *arguendo* that these claims are reviewable, the claims are patently without merit for the reasons set forth *infra.*

### B. Merits Analysis

#### 1. Standard of Review

**\*13** To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standards of review provided in 28 U.S.C. § 2254, as amended by AEDPA, which provides in relevant part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). " 'Clearly established Federal law' " is comprised of " 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.' " *Green v. Travis,* 414 F.3d 288, 296 (2d Cir.2005) (quoting *Williams v. Taylor,* 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal l aw, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams,* 529 U.S. at 412–13. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413.

Nealy v. Artest, Not Reported in F.Supp.3d (2014)

2014 WL 726723

AEDPA establishes a deferential standard of review: " 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.' " *Gilchrist v. O'Keefe,* 260 F.3d 87, 93 (2d Cir.2001) (quoting *Williams,* 529 U.S. at 411). The Second Circuit added that, while " 'some increment of incorrectness beyond error is required ... the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.' " *Id.* at 93 (alteration omitted) (quoting *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo* .' " *Dolphy v. Mantello,* 552 F.3d 236, 238 (2d Cir.2009) (quoting *Spears v. Greiner,* 459 F.3d 200, 203 (2d Cir.2006)).

### 2. Application

Petitioner has relied upon the briefs he submitted on direct appeal and in support of his C.P.L. 440.10 motions, and presents seven grounds in support of his habeas petition: (1) petitioner's conviction was the result of an illegal seizure, as it was based on evidence acquired during an unconstitutional search and seizure, and arose from an arrest for which the police had no probable cause; (2) petitioner's conviction was obtained in violation of the privilege against self-incrimination because his parole officer presented evidence that should have been suppressed, including that petitioner made an incriminating statement; (3) the prosecutor failed to disclose evidence favorable to petitioner; (4) petitioner was deprived of effective trial counsel; (5) the prosecutor committed prosecutorial misconduct, including conspiring with the defense attorneys and a parole officer to secure an unlawful conviction, interfering with petitioner's right to counsel, committing selective and malicious prosecution, and forcing a waiver of petitioner's rights; (6) petitioner's 1995 conviction is unconstitutional and should not have been used against petitioner; and (7) petitioner is actually innocent of the underlying allegations, as another individual (petitioner's nephew) confessed to the crime, and further, an eyewitness attests that petitioner was not present at the crime scene. Although petitioner procedurally defaulted most of these

claims, *see supra,* the Court addresses each of these claims in turn on the merits and discerns no basis for habeas relief.

### a. Fourth Amendment Claims

**\*14** Petitioner argues that he is entitled to habeas relief because the police lacked probable cause to arrest him for an assault that occurred five days before his arrest. For this reason, he claims that he was illegally seized. The Court disagrees.

As set forth *supra,* the Court cannot grant relief on this ground because the petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in state court. *See Grey,* 933 F.2d at 121; *Jackson,* 781 F.2d at 297. It therefore is procedurally barred for the reasons set forth above. Petitioner also has offered no justification for the default, nor has he shown prejudice or a miscarriage of justice resulting therefrom. *See Coleman,* 501 U.S. at 749–50.

However, even if this Court could review the underlying merits of petitioner's Fourth Amendment claim, it still fails because petitioner has not demonstrated either that the state court ruling was contrary to, or involved an unreasonable application of, clearly established federal law, or that it was an unreasonable determination of the facts in light of the evidence in the record.

The trial court and the Appellate Division decided petitioner's Fourth Amendment issue on the merits. Therefore, AEDPA deference applies. The state court had more than a sufficient basis to find probable cause to arrest for assault and criminal possession of a weapon. Grounds for plaintiff's arrest included, in particular: (1) information provided by Lanier to the police, including his statement that petitioner had not denied his role in assaulting Lanier, and (2) petitioner's attempted flight from police when they approached him to discuss Lanier's allegations. In short, there is nothing in the record to indicate that the state court's ruling that the police had probable cause to arrest petitioner was contrary to, or an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence presented in the state court hearing.

Accordingly, even if this Court could review petitioner's Fourth Amendment claim on the merits (which it cannot), the Court concludes that the claim lacks merit.

### b. Fifth Amendment Claims

Petitioner claims that statements he made to Parole Officer Billings (contained in a note and described by Parole Officer Billings at trial) about an encounter he had with the police were improperly submitted as evidence at trial. The note sets forth petitioner's account of the night he was allegedly stopped, searched, and questioned by the police regarding the incident at the Bamboo Lounge. Petitioner contends that his Fifth Amendment right against self-incrimination was violated by counsel's failure to suppress the evidence. Petitioner also points to inconsistencies in parole office records to discredit the accuracy of the contents of the note.

### i. Legal Standard

The Fifth Amendment's protection against self-incrimination is well-established. *See* U.S. Const. amend. V ("No person ... shall be compelled in any criminal case to be a witness against himself."). Its protections are triggered "when the accused is compelled to make a[t]estimonial [c]ommunication that is incriminating." *Fisher v. United States,* 425 U.S. 391, 408 (1976); *see also United States v. Hubbell,* 530 U.S. 27, 34 (2000).

**\*15** The Supreme Court has declared that the privilege against self-incrimination is "an important advance in the development of our liberty-'one of the great landmarks in man's struggle to make himself civilized.' " *Ullman v. United States,* 350 U.S. 422, 426 (1956). Indeed, the Fifth Amendment "reflects many of our fundamental values and most noble aspirations." *Murphy v. Waterfront Comm. of N.Y. Harbor,* 378 U.S. 52, 55 (1964), *overruled on other grounds by United States v. Balsys,* 524 U.S. 666 (1998). Thus, the rights inherent in the Fifth Amendment "must be accorded liberal construction in favor of the right [the Fifth Amendment] was intended to secure." *Hoffman v. United States,* 341 U.S. 479, 486 (1951). To that end, the Supreme Court established *"Miranda* warnings" as procedural safeguards to be offered a person in police custody, for the purpose of establishing a presumption that any subsequent statements were voluntary and free. *See generally Miranda v. Arizona,* 384 U.S. 436 (1966). The Miranda safeguards are "not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected." *Michigan v. Tucker,* 417 U.S. 433, 444 (1974). Miranda

warnings do not function to bar all confessions made by un-Mirandized defendants. For *Miranda* to be triggered, a defendant must be subjected to custodial interrogation. Outside of that setting, "[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected." *Miranda,* 384 U.S. at 478.

### ii. Application

It is clear that the statements petitioner made to Parole Officer Billings were voluntarily made and not the product of custodial interrogation. Petitioner reported to the parole office and recounted a police stop and seizure of his own volition. Accordingly, the admission in evidence of plaintiff's note to his parole office did not violate petitioner's Fifth Amendment right against self-incrimination, even though Parole Officer Billings did not read petitioner *Miranda* warnings. *Cf. United States v. Harris,* No. 12–4862–CR, 2013 WL 6641549, at \*1 (2d Cir. Dec. 18, 2013) (" 'The test for custody is an objective one: whether a reasonable person in defendant's position would have understood himself to be subjected to the restraints comparable to those associated with a formal arrest.' " (quoting *United States v. Newton,* 369 F.3d 659, 671 (2d Cir.2004))). Moreover, there is no evidence that petitioner was otherwise compelled to recount the stop and seizure. Finally, as to petitioner's objection to the admission in evidence of the contents of the note on the grounds that it was inaccurate, such a claim does not allege a violation of federal law and is therefore not cognizable on habeas review. *See, e.g., Smith v. Graham,* No. 10 CIV. 3450(JPO)(THK), 2012 WL 2428913, at \*5 (S.D.N.Y. May 7, 2012) ("Evidentiary rulings are typically within the province of state law, and are thus only cognizable under habeas review if they are 'of a constitutional magnitude.' " (quoting *Perez v. Phillips,* 210 F. App'x 55, 56 (2d Cir.2006))), *report & recommendation adopted,* 2012 W L 2435732 (S.D.N.Y. June 27, 2012).

### c. Failure of Prosecutor to Disclose Evidence Favorable to Petitioner

### i. Legal Standard

**\*16** Turning first to the alleged suppression of evidence claim, under *Brady v. Maryland,* "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either

to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). In order to prevail on a *Brady* claim, a petitioner must demonstrate that material evidence favorable to his case was not disclosed to him. *Kyles v. Whitley,* 514 U.S. 419, 438 (1995) ("[T]he prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable."). "[E]vidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *Strickler v. Greene,* 527 U.S. 263, 280 (1999) (quoting *United States v. Bagley,* 473 U.S. 667, 682 (1985)). Failure to disclose such material merits relief only if the prosecution's failure "undermines confidence in the outcome of the trial." *Kyles,* 514 U.S. at 434 (quoting *Bagley,* 473 U.S. at 678). Thus, the three elements of a *Brady* violation are that: (1) "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching"; (2) "that evidence must have been suppressed by the State, either willfully or inadvertently"; and (3) "prejudice must have ensued." *Strickler,* 527 U.S. at 281–82.

### ii. Application

Here, petitioner raised his claim regarding the prosecution's failure to disclose evidence favorable to petitioner on direct appeal. As such, petitioner has adequately exhausted his state remedies with respect to the claim. Petitioner unsuccessfully raised these claims in his appeal to the Second Department, and the New York Court of Appeals denied petitioner leave to appeal these issues. The Appellate Division specifically held that the issue was "without merit, since the information was provided to the defense before trial and was not exculpatory in nature." *Nealy,* 32 A.D .3d at 402 (citations omitted).

Under 28 U.S.C. § 2254(d)(1), where a state court's decision that there was no *Brady* violation is not "contrary to, nor an unreasonable application of, clearly established federal law," a petition for habeas corpus must be denied. *See Jones v. Artuz,* No. 97–CV–2063(NG), 2002 WL 31006171, at *6–7 (E.D.N.Y. Aug. 30, 2002) (holding that state court's *Brady* determination was not contrary to, or involve an unreasonable application of, clearly established federal l aw, and therefore, did not provide grounds for habeas relief).

In the case at hand, the state court determined that there was no *Brady* violation with respect to petitioner's claim that the prosecution was in possession of the alleged accomplice's (Antoine's) name and location, but failed to disclose it. The state court based its determination on the fact that the prosecution did in fact disclose the name and location of Antoine approximately one month before trial, giving the defense a sufficient amount of time in which to prepare use of this information. (*See* Tr. 57, 1250 ("Judge, I refer the Court and counsel again to *Rosario* material turned over at trial. I referred to this one before, to this particular one, under previously served documents ... defense informed that the defendant's accomplice may be Antoine Alfred a/k/a Antoine Morgan. That was told to [defense counsel] at least prior to the last trial date which was set over a month ago ....")); *see United States v. Douglas,* 525 F.3d 225, 245 (2d Cir.2008) (noting that *Brady* material generally must be disclosed in time for a defendant's effective use of the material at trial). Moreover, petitioner did not establish that the information pertaining to Antoine was actually "favorable" to the defense. *See Rojas v. Woods,* No. 07–Civ–6687 (DAB), 2009 WL 4639620, at *2 (S.D.N.Y. Dec. 3, 2009) (acknowledging that a " 'true *Brady* violation' " requires a showing, in part, that the evidence at issue is " 'favorable to the accused, either because it is exculpatory, or because it is impeaching' " (quoting *Strickler,* 527 U.S. at 281–82)). Lastly, petitioner did not show that the suppressed evidence was material to the finding of guilt. *See Kyles,* 514 U.S. at 433–34 (citation and internal quotation marks omitted) (stating evidence is "material" for *Brady* purposes "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different"). In sum, the state court found that the prosecution had not, in fact, suppressed the allegedly exculpatory evidence, and furthermore, that the evidence itself was neither favorable nor material to the accused. This Court agrees and concludes that habeas relief is not appropriate on this ground, as the state court's determination was neither contrary to, nor an unreasonable application of, federal law, nor was it an unreasonable determination of the facts in light of the evidence presented.

### d. Ineffective Assistance of Counsel

### i. Legal Standard

**\*17** Under the standard promulgated in *Strickland v. Washington,* 466 U.S. 668 (1984), a petitioner is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of

2014 WL 726723

reasonableness," *id.* at 688, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

The first prong requires a showing that counsel's performance was deficient. However, "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' " *Greiner v. Wells,* 417 F.3d 305, 319 (2d Cir.2005) (quoting *Strickland,* 466 U.S. at 690). The performance inquiry examines the reasonableness of trial counsel's actions under all circumstances, keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Id.* at 319 (quoting *Rompilla v. Beard,* 545 U.S. 374, 408 (2005)) (internal quotation marks omitted). In assessing performance, a court must apply a " 'heavy measure of deference to counsel's judgments.' " *Id.* at 319 (quoting *Strickland,* 466 U.S. at 691). "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord,* 77 F.3d 578, 588 n. 3 (2d Cir.1996), and " 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable,' " *id.* (quoting *Strickland,* 466 U.S. at 690). Moreover, " 'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.' " *Id.* at 588 (quoting *Strickland,* 466 U.S. at 690–91).

The second prong focuses on prejudice to the petitioner. The petitioner is required to show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. In this context, "reasonable probability" means that the errors are of a magnitude such that they " 'undermine[ ] confidence in the outcome.' " *Pavel v. Hollins,* 261 F.3d 210, 216 (2d Cir.2001) (quoting *Strickland,* 466 U.S. at 694). " '[T]he question to be asked in assessing the prejudice from counsel's errors ... is whether there is a reasonable probability that, absent the errors, the factfi nder would have had a reasonable doubt respecting guilt.' " *Henry v. Poole,* 409 F.3d 48, 63–64 (2d Cir.2005) (quoting *Strickland,* 466 U.S. at 695). Additionally, it is important to note that " '[a] n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.' " *Lindstadt v. Keane,* 239 F.3d 191, 204 (2d Cir.2001) (quoting *Strickland,* 466 U.S. at 691). Moreover, "[u]nlike the determination of trial counsel's performance under the first prong of *Strickland,* the determination of prejudice 'may be made with the benefit of hindsight.' " *Hemstreet v. Greiner,* 491 F.3d 84, 91 (2d Cir.2007) (quoting *Mayo v. Henderson,* 13 F.3d 528, 534 (2d Cir.1994)).

**\*18** This Court proceeds to examine petitioner's ineffective assistance claims, keeping in mind that the habeas petitioner bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin,* 366 F.3d 95, 100 (2d Cir.2004).

### ii. Application

Petitioner's claim of ineffective counsel is two-fold. Specifically, he alleges the following: (1) counsel did not call a witness to testify that he asserts would have been favorable to the defense; and (2) counsel called an alibi witness who not only had a criminal record, but whom counsel knew would testify falsely. Neither of these claims satisfies *Strickland* 's standard of review.

Petitioner's claim regarding defense counsel's decision against calling Antoine to the stand is without merit. First, counsel has discretion to employ the defense strategy he or she deems most appropriate. The decision whether to call (or not to call, as the case may be) a witness is a discretionary one that, under the circumstances presented here, was not unreasonable.

In order to meet the first prong of the *Strickland* test, "a defendant must show that counsel's representation 'fell below an objective standard of reasonableness' determined according to 'prevailing professional norms'.... Counsel's performance is examined from counsel's perspective at the time of and under the circumstances of trial." *Murden v. Artuz,* 497 F.3d 178, 198 (2d Cir.2007) (quoting *Strickland,* 466 U.S. at 688); *see also Davis,* 428 F.3d at 88 ("When assessing whether or not counsel's performance 'fell below an objective standard of reasonableness ... under prevailing professional norms,' *Strickland* directs us to consider the circumstances counsel faced at the time of the relevant conduct and to evaluate the conduct from counsel's point of view." (quoting *Strickland,* 466 U.S. at 688–89)). The record does not show, and petitioner does not direct the Court to, any evidence

establishing that counsel's decision against calling Antoine to the stand fell below an objective standard of reasonableness under prevailing professional norms. The most that petitioner alleges is that Antoine possessed exculpatory information and was willing to testify for the defense. In particular, petitioner suggests that Antoine's testimony might have created a dispute as to whether Antoine passed petitioner the razor blade during the incident at the Bamboo Lounge. Even if this were so, however, this does not lead to the clear conclusion that petitioner is free from guilt.

Petitioner's second claim challenging counsel's effectiveness contests his attorney's decision to call an alibi witness. However, petitioner does not show that counsel knew Lewis would testify falsely, or that Lewis was an unreasonable witness to call.

Generally, "a habeas petitioner will be able to demonstrate that trial counsel's decisions were objectively unreasonable only if there [was] no ... tactical justification for the course taken." *Lynn v. Bliden,* 443 F.3d 238, 247 (2d Cir.2006) (alteration in original) (citation and internal quotation marks omitted). Furthermore, "[a]ctions or omissions by counsel that 'might be considered sound trial strategy' do not constitute ineffective assistance." *United States v. Best,* 219 F.3d 192, 201 (2d Cir.2000) (quoting *Strickland,* 466 U.S. at 689); *see also Bell v. Miller,* 500 F.3d 149, 156 (2d Cir.2007) (explaining that, in order to show ineffective assistance, "defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy" (citation and internal quotation marks omitted)). For this reason, "[s]trategic choices made by counsel after thorough investigation ... are virtually unchallengeable ... and there is a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance." *Gersten,* 426 F.3d at 607 (citation and internal quotation marks omitted); *see also Pavel v. Hollins,* 261 F.3d 210, 216 (2d Cir.2001) (explaining that representation is deficient only if, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance" (citation and internal quotation marks omitted)). The decision of petitioner's counsel to have Lewis testify aptly falls into the trial strategy category. Petitioner points to no evidence showing that there was no tactical justification for counsel's decision to call Lewis, or that counsel's choice fell beyond the scope of reasonable professional assistance.

**\*19** As the Second Circuit has held, "[j]udicial scrutiny of a counsel's performance must be highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight." *Cox v. Donnelly,* 387 F.3d 193, 198 (2d Cir.2004) (citation and internal quotation marks omitted). In this case, the Court concludes that there is no basis to second-guess counsel's decisions. *See Eze v. Senkowski,* 321 F.3d 110, 125 (2d Cir.2003) (explaining that scrutiny is deferential because " 'it is all too tempting for a defendant to second-guess counsel's assistance after a conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable" ' (alteration omitted) (quoting *Strickland,* 466 U.S. at 689)).

In sum, the Court has "assess[ed] the impact of [trial counsel's representation] in the aggregate," *Lindstadt,* 239 F.3d at 204 (emphasis omitted), and it concludes that petitioner's claims of ineffective assistance of trial counsel fail to demonstrate a basis for relief. Specifically, petitioner's claims that counsel failed to call certain witnesses during trial and called an alibi witness who had damaging effects, do not, taken individually or cumulatively, reach the constitutional threshold of professional unreasonableness as set forth by *Strickland.*[5] Petitioner's application for habeas relief on this ground is therefore denied.

5   Because the Court concludes that petitioner has failed to establish that his counsel's representation fell below an objective standard of reasonableness, the Court need not consider the issue of prejudice. *See, e.g., Palacios v. Burge,* 589 F.3d 556, 562 (2d Cir.2009) (concluding that there was "no cause for [the court] to reach the 'prejudice prong' of the *Strickland* test where petitioner "failed to satisfy the 'performance' prong of the *Strickland* test"). Even assuming *arguendo* that petitioner satisfied the performance prong of the *Strickland* test, petitioner has failed to establish any prejudice from counsel's performance.

e. Prosecutorial Misconduct, Selective Prosecution, and Malicious Prosecution

Petitioner alleges several claims against the government (including that the prosecutor and the court interfered with petitioner's right to counsel, that the prosecutor engaged in a selective and malicious prosecution, that the

Case 9:19-cv-00952-LEK-TWD   Document 22   Filed 07/27/22   Page 86 of 202
Nealy v. Artest, Not Reported in F.Supp.3d (2014)
2014 WL 726723

prosecutor conspired with both defense attorneys to secure an unlawful conviction), as well as against his defense attorneys (including that they waived petitioner's rights, ordered Parole Officer Billings to commit perjury, and conspired with Parole Officer Billings to secure an unlawful conviction). Although some of these arguments are procedurally barred from review, all are without merit.

Concl usory allegations of impropriety are insufficient to warrant habeas corpus relief. *See generally United States v. Torres,* 129 F.3d 710, 715–17 (2d Cir.1997). Petitioner has offered no evidence of conspiracy with respect to his claim as to Parole Officer Billings or as to the prosecution and defense. Additionally, petitioner's claim that the prosecutor and the court interfered with his right to counsel is similarly vague and fails to prove improper behavior. *See generally Withrow v. Larkin,* 421 U.S. 35, 47 (1975) (stating that a party bringing a judicial misconduct claim has a "difficult burden of persuasion to carry," and "must overcome a presumption of honesty and integrity in those serving as adjudicators"). Regarding any remaining contentions petitioner may have as to prosecutorial misconduct, petitioner has failed to set forth a basis for habeas relief, providing little more than conclusory and vague assertions of misconduct. *Jones v. Poole,* No. 06–CV–7172 (NRB), 2007 WL 2456646, at * 11 (S.D.N.Y. Aug. 21, 2007) (stating that "vague and concl usory claims are not sufficient bases for habeas corpus relief"). In short, petitioner has not demonstrated that there is any merit to any of these claims.

**\*20** As to petitioner's selective and malicious prosecution claim, this claim is procedurally barred for the reasons set forth *supra,* namely, because the state court decision rests on an adequate and independent state procedural ground. *See Nealy,* 32 A.D.3d at 403 (holding that defendant's selective and malicious prosecution claim, among others, was "unpreserved for appellate review"). It therefore is outside the scope of habeas review. In any event, petitioner has failed to demonstrate that this claim has any merit.

### f. Petitioner's Prior Convictions Claim

Petitioner's 1989 and 1995 convictions caused him to be categorized as a PVFO. Petitioner challenges this in his C.P.L. § 440.20 motion, asserting that he was wrongly sentenced as a PVFO because his prior convictions were constitutionally invalid. (*See* Def.'s C.P.L. § 440.20 Mot. at 3, 6–8.) A hearing was held to determine whether petitioner should be

sentenced as a PV FO. Following the hearing, the court held that petitioner's record qualified him as a PVFO within the meaning of C.P.L. § 70.08(1)(a). Here, petitioner alleges that his sentence as a PVFO was unconstitutional because it was based, in part, upon the allegedly unconstitutional 1995 conviction.

Petitioner's claim is procedurally barred from review. The standard set forth in *Harris v. Reed*—noting the requisites for a state court's decision to be deemed procedurally barred (*i.e.,* if the decision rests on an independent and adequate state law ground)-when applied to this context, places petitioner's 1995 conviction outside the scope of review for this Court. The New York Supreme Court, relying on New York law, concluded that "defendant is precluded by statute from contesting the use of his 1989 and 1995 convictions as predicate convictions for his adjudication as a PVFO." (Decision on Def.'s C.P.L. § 440.20 Mot. at 2); *see also* C.P.L. §§ 400.15(8), 400.16(8). The Appellate Division denied petitioner leave to appeal the lower court's decision. Because the New York Supreme Court expressly concluded that petitioner's 1995 conviction claim was precluded by statute, it is barred from habeas review.

In any event, petitioner's claim is without merit. Petitioner's 1995 conviction does not "implicate a fundamental miscarriage of justice." *See generally Schlup,* 513 U.S. at 314 (citation and internal quotation mark omitted). Petitioner does not establish his innocence in regard to the prior conviction, nor has the Court found his claim of unconstitutionality to be valid. Thus, this claim does not provide a basis for habeas relief.

### g. Petitioner's Actual Innocence Claim

Petitioner asserts that he is "actually innocent" of the assault on Lanier at the Bamboo Lounge, directing the Court to information which he previously presented to the state courts following his conviction, and which he contends supports a finding of innocence. Specifically, petitioner points the Court to the following evidence: (1) an April 2002 statement made by Patterson, his nephew, shortly following his release from a mental institution, claiming that it was Patterson, and not petitioner, who committed the crime, and (2) a November 2007 statement from Shamel Howard, a fellow inmate of petitioner and prior convicted felony offender, who claims that he witnessed the incident at the Bamboo Lounge and did not recall petitioner being present at the time of the alleged

assault. (*See* Pet'r's Am. Pet. for Habeas Relief ("Am.Pet.") at 5–8.) For the following reasons, the Court concludes that petitioner fails to establish actual innocence.

**\*21** In general, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins,* 506 U.S. 390, 400 (1993). This is due to the fact that a court's role on habeas review is " 'not [to assess] the petitioners' innocence or guilt but solely [to consider] the question whether their constitutional rights have been preserved.' " *Id.* (quoting *Moore v. Dempsey,* 261 U.S. 86, 87–88 (1923)). Generally, in order for an actual innocence claim "to be credible," it must be supported by a showing of "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup,* 513 U.S. at 324. Additionally, in establishing such a claim, a petitioner must show that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Fountain v. United States,* 357 F.3d 250, 255 (2d Cir.2004) (quoting *Bousley v. United States,* 523 U.S. 614, 623 (1998)); *see also Schlup,* 513 U.S. at 327. In making such an assessment, a court on habeas review must consider "all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Schlup,* 513 U.S. at 328 (citation and internal quotation marks omitted).

Petitioner's evidence here is insufficient for purposes of establishing an actual innocence claim. To begin with, Patterson's supposed confession is not newly discovered evidence. As petitioner acknowledges in his various motions, Patterson himself states that, soon after the assault occurred, he told petitioner that Patterson committed the crime. (*See* Am. Pet. at 5.) Thus, petitioner was well aware of Patterson's confession before trial.

Moreover, Patterson's statement is not the type of reliable evidence that likely would have made it "more likely than not that no reasonable juror would have convicted him." *Fountain,* 357 F .3d at 255. Red flags concerning Patterson's credibility abound, including the facts that Patterson was petitioner's nephew, was recently released from a mental institution at the time he made the statement, and that he had a significant criminal record, including at least eight

felony charges. Lastly, the fact that Patterson failed to present himself to authorities following his alleged participation in the slashing at the Bamboo Lounge-despite knowing that petitioner had been charged with the crime-casts doubt upon the veracity of his statement. *See People v. Dawson,* 50 N.Y.2d 311, 318 (1980) ("[T]here exists a wide variety of situations in which the natural impulse of a person possessing exculpatory information would be to come forward at the earliest possible moment in order to forestall the mistaken prosecution of a friend or loved one. In such situations, the failure to speak up at a time when it would be natural to do so might well cast doubt upon the veracity of a witness's exculpatory statements at trial.").

**\*22** Regarding Howard's statement, it also lacks i ndici a of reliability necessary for purposes of establishing an actual innocence claim. Specifically, Howard, who has a lengthy criminal record, was housed in the same correctional facility building as petitioner, with various opportunities to speak with petitioner, at the time he provided the affidavit attesting to petitioner's absence the night of the incident. (*See* Resp't's Supp. Mem. of Law at 7 (citing Ex. 4, Howard's NYSID Report); *see also id.* at 8 & n. 5.) It stretches credulity to say that a fellow inmate, who also was present at the time of the Bamboo Lounge incident, came across petitioner in prison years later and recalled that petitioner was not one of the individuals present at the scene of the alleged assault.

In addition to the fact that petitioner's actual-innocence evidence consists of incredible statements with strong indicia of unreliability, the Court concludes that the prosecution's evidence of guilt here was strong. (*See id.* at 12 (citing Resp't's App. Div. Br. at 3–14).) Specifically, both the victim of the slashing and the victim's brother identified petitioner as the culprit. (Tr. 350–62; 411; 593–97; 619–20.) Additionally, when the victim, Lanier, confronted petitioner outside a bar several days following the assault, he explicitly asked petitioner why he had cut him. Petitioner made no denial of his involvement, instead stating, "could we squash it?" (*Id.* at 393.) Lastly, after Lanier approached police officers, identifying petitioner as his attacker, petitioner tried to conceal the bottom of his face and slip away; he then continued to flee from the police after he was asked about Lanier's allegations. (*Id.* at 402–03, 612.) Indeed, even petitioner's alibi, offered through a friend, was undermined by her telephone records. (*See* Resp't's Supp. Mem. of Law at 13 n. 8 (citing NCDA's App. Division Br. at 10–11, 13–14).) Thus, petitioner's evidence does not undermine the strong evidence of his guilt.

2014 WL 726723

In sum, the prosecution presented strong, credible evidence of petitioner's guilt. Petitioner's proffered proof of actual innocence does not show, in light of all the evidence, that no reasonable juror would have convicted him. Therefore, habeas relief is not available to him on this claim.

\* \* \*

Having carefully analyzed all of petitioner's claims, the Court concludes that the state court decisions challenged by petitioner were neither contrary to, nor an unreasonable application of, clearly established federal l aw, nor were they based on an unreasonable determination of the facts. Moreover, the claims that petitioner failed to raise in state court are patently without merit. Similarly, petitioner fails to establish an actual innocence claim. Accordingly, petitioner's habeas petition is denied in its entirety on the merits.

### III. CONCLUSION

For the reasons set forth herein, the Court concludes that there is no basis for habeas relief under 28 U.S.C. § 2254. Therefore, the petition is denied in its entirety. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close the case.

**\*23** SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 726723

---

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 3456958

2013 WL 3456958
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Sylvester BLAKE, Petitioner,
v.
Daniel F. MARTUSCELLO, Superintendent,
Coxsackie Correctional Facility, Respondent.

No. 10–CV–02570 (MKB).
|
July 8, 2013.

**Attorneys and Law Firms**

Sylvester Blake, Coxsackie, NY, pro se.

Diane R. Eisner, Brooklyn, NY, New York State Attorney Generals Office, New York State Attorney Generals Office, for Respondent.

***MEMORANDUM & ORDER***

MARGO K. BRODIE, District Judge.

*1 Petitioner Sylvester Blake, proceeding *pro se,* brings the above-captioned petition pursuant to 28 U.S.C. § 2254, in which he alleges that he is being held in state custody in violation of his federal constitutional rights. Petitioner's claims arise from a judgment of conviction after a jury trial in New York Supreme Court, Kings County, for attempted murder in the second degree, assault in the second degree, and criminal possession of a weapon in the second degree. Petitioner was sentenced to concurrent determinate terms of imprisonment of twenty years for attempted murder, ten years for weapon possession and seven years for assault. Petitioner appealed his conviction to the New York Appellate Division, Second Department, raising five claims: (1) the trial court erred in denying his motion to suppress statements made following his arrest; (2) the trial court erred in allowing testimony regarding the contents of a lost videotape in violation of the best evidence rule; (3) testimony pertaining to his failure to respond after Detective Hunter left his card at Petitioner's address should not have been admitted into evidence at trial; (4) his convictions were against the weight of the evidence; and (5) the sentence imposed was excessive. The Appellate Division rejected Petitioner's claims

and affirmed his conviction. *People v. Blake,* 61 A.D.3d 770, 876 N.Y.S.2d 653 (App.Div.2009). The New York Court of Appeals denied leave to appeal. *People v. Blake,* 12 N.Y.3d 923, 884 N.Y.S.2d 704, 912 N.E.2d 1085 (2009). Petitioner raises the first four of the five claims in the instant petition. For the reasons set forth below, the petition is denied.

**I. Background**

The evidence at trial showed that on January 19, 2005, at approximately 9:15 p.m., Petitioner entered Evangelista Urena's grocery store and almost immediately opened fire on Thomas Pettaway, who had entered the store a minute earlier. (Resp't App. Br. 3.) Petitioner fired several shots at Pettaway, hitting him in the leg. (*Id.*) Fifteen-year-old Jasmine Lopez, who happened to be in the store with her younger brother at the time, was also grazed by a bullet on the ankle. (*Id.*) After Petitioner and Pettaway left the store, Urena called 911. (*Id.*) Detectives responded to the scene of the incident and questioned both Pettaway and Lopez about the incident. (Pet.App.Br.5.) Lopez provided detectives with a description of Petitioner as the shooter. (*Id.* at 6, 884 N.Y.S.2d 704, 912 N.E.2d 1085.)

Petitioner was arrested on May 10, 2005, without a warrant, in a basement apartment of a private home at 58 Interboro Parkway, Brooklyn, New York. (*Id.* at 6, 33–36, 884 N.Y.S.2d 704, 912 N.E.2d 1085; Resp't App. Br. 3, 5; Opp'n Aff. ¶ 8.) Petitioner's official residence was 61 Riverdale Avenue, Brooklyn, New York. (Resp't App. Br. 5, Opp'n Aff. ¶ 8.) Petitioner made two post-arrest statements. (Pet.App.Br.6.) First, while being fingerprinted, Petitioner asked what he was being charged with, and, upon being told that it was two counts of assault, replied that "he wasn't shooting at the girl, he was shooting at the male." (*Id.;* Resp't App. Br. 3.) Second, while making a phone call from the jail cell, a detective overheard Petitioner say, "I can't believe I got bagged, somebody snitched on me. When I find out, they're gonna have problems. I was going back to Miami." (Pet.App.Br.6.) The next day, Petitioner was positively identified in a lineup by Lopez and her brother. (*Id.*)

*2 Petitioner was charged by indictment with murder in the second degree, assault in the second degree, attempted assault in the first degree, attempted assault in the second degree, reckless endangerment in the first degree, criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree. Prior to Petitioner's trial, the court held a *Dunway,*[1] *Huntley*[2] and *Wade*[3] suppression

2013 WL 3456958

hearing. (*See* Resp't App. Br 4–11; Hearing Tr. 100:4–7.) Petitioner argued that the statements made after his arrest should be suppressed because the arrest was unlawful and violated *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). [4] (Resp't App. Br 411.) The court denied Petitioner's motion to suppress and found the arrest lawful. (Hearing Tr. 107:1214.) The court made several findings, crediting the testimony of the witnesses presented by the State and finding Petitioner's testimony as not credible. (*Id.* at 100:814 .) The court found that Petitioner resided at 61 Riverdale Avenue [5] and not at 58 Interboro Parkway, where he was arrested, (*id.* 101:2025), and that Petitioner was illegally present at 58 Interboro Parkway when he was found there, (*id.* at 107:6–10). The court also found that when Petitioner was arrested at 58 Interboro Parkway in a basement apartment, the police had been told that no one was supposed to be in the apartment and the detectives entered upon hearing noises coming from behind the door, and, thus, exigent circumstances existed. (*Id.* at 102:9–24; 106:20–23.) The court further found that Petitioner made the two incriminating statements without being prompted by the detectives. (*Id.* 106:12–19.)

[1]    *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), "requires the exclusion of statements obtained as a result of an unlawful arrest made without probable cause." *McClary v. Conway,* 492 F. App'x 157, 159 (2d Cir.2012) (summary order). A hearing held pursuant to *Dunaway* addresses whether there was probable cause to support an arrest and whether post-arrest statements should be suppressed. *See Ray v. Bradt,* No. 11–CV–400, 2013 WL 1335819, at *1 n. 2 (E.D.N.Y. Feb.1, 2013); *Young v. New York,* No. 11–CV–00110, 2012 WL 6644993, at *7 n. 10 (E.D.N.Y. Dec. 20, 2012); *Theard v. Artus,* No. 09–CV–5702, 2012 WL 4756070, at *2 n. 3 (E.D.N.Y. Aug. 27, 2012), *report and recommendation adopted,* No. 09–CV–5702, 2012 WL 4757897 (E.D.N.Y. Oct. 4, 2012).

[2]    *People v. Huntley,* 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965), is a New York Court of Appeals case which addresses when a confession is voluntary. "A *Huntley* hearing is a pre-trial proceeding to determine the admissibility of a confession or admission." *Acosta v. Artuz,* 575 F.3d 177, 187 n. 3 (2d Cir.2009); *see also Raheem v. Kelly,* 257 F.3d 122, 128 (2d Cir.2001)

("[A] pretrial *Huntley* hearing [is] a proceeding to determine whether a confession should be suppressed ....").

[3]    A hearing held pursuant to *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) determines the propriety of identification procedures. *Young v. Conway,* 715 F.3d 79, 94 (2d Cir.2013) ("[A] Wade hearing deal[s] with the propriety of a lineup identification ...." (citations omitted)); *Reily v. Ercole,* 491 F. App'x 225, 228 (2d Cir.2012) (summary order) ("The purpose of a *Wade* hearing is only to determine whether there is sufficient evidence of the reliability of an identification to allow it to be introduced at trial."); *Theard,* 2012 WL 4756070, at *2 n. 3 ("A *Wade* hearing is held to determine whether identification procedures were unduly suggestive.").

[4]    Statements made pursuant to an unlawful arrest should be suppressed. *See United States v. Russell,* 501 F. App'x 67, 69 (2d Cir.2012) (summary order) (discussing suppression of post-arrest statements), *cert. denied,* No. 12–9709, 2013 WL 1499184 (May 13, 2013). In *Payton v. New York,* the Supreme Court held that absent certain exceptions, such as exigent circumstances or consent, arrests in a person's home without a warrant would be a violation of the Fourth Amendment. 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) ("In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."); *see also Montanez v. Sharoh,* 444 F. App'x 484, 486 (2d Cir.2011) (summary order) (noting that arrests in a person's home "without a warrant are presumptively unreasonable" (alteration omitted) (quoting *Payton,* 445 U.S. at 586)).

[5]    The transcript states "Riverside" and not "Riverdale" but this appears to be a mistake in the transcript, as all other sources refer to the location as "Riverdale."

Several witnesses testified at trial including the police officers involved in the investigation, Urena, Jasmine Lopez and her brother. The Lopez siblings testified that Petitioner entered the store with a scarf covering his face. (Tr. 455:11459:24, 502:2122, 505:15.) Jasmine Lopez testified that she was

able to see Petitioner's face because the scarf began to fall once he started shooting. (*Id.*) Urena and the Lopez siblings testified consistently that they saw Pettaway enter the store and observed Petitioner enter the store after him. (*Id.* at 451:13–456:11, 502:10–504:22, 669:5–674:1.) The witnesses also testified that Petitioner was quite short and chubby, rendering it unlikely that they would mistake him due to his distinct build. (*Id.* at 455:11–12, 502:21–22.) The police officers testified that during the investigation, they returned to the store to view the surveillance videotape. (Trial Tr. at 787:22–789:12; 860:415; 863:13–25; 882:23–884:2.) The videotape was viewed by Urena and the officers. (*Id.*) Detective Parsekian took the videotape from the store after viewing it and placed it in a case folder upon his return to the precinct. (*Id.* at 789:10–18.) Several months after Petitioner's arrest, officers could not find the videotape. (*Id.* at 792:2–24.) All the officers testified to the voucher process regarding the videotape and all the circumstances that may have resulted in the loss of the videotape. (*See, e.g., id.* at 790:5–792:24; 864:9–20.) No one knew what happened to the videotape. (*Id.*) The officers and Urena testified that "nothing" could be seen on the videotape due to the poor quality. (*Id.* at 719:24–720:11; 787:22–789:12; 860:4–15; 863:13–25; 882:23–884:2.)

**\*3** Detective Hunter testified about his attempts to find Petitioner at various locations, including 61 Riverdale Avenue. (Pet.App.Br.22.) He left his business card with Petitioner's son Tyrell at 61 Riverdale Avenue, and asked Tyrell to have Petitioner contact him. (*Id.* at 865:23–866:10.) Detective Hunter met with an unnamed female who had been at 58 Interboro Parkway with Petitioner. (*Id.* at 866:11867:9.) Detective Hunter learned that Petitioner had "been hiding [at 58 Interboro Parkway] for [a] couple of days." (*Id.*) Petitioner's trial attorney made several objections to Detective Hunter's testimony on relevance and hearsay grounds. (*Id.*) With one exception, the objections were overruled. (*Id.*) The trial court sustained the objection to the portion of Detective Hunter's testimony about being told that Petitioner was "hiding" at 58 Interboro Parkway. (*Id.*) At the close of Detective Hunter's testimony, Petitioner moved for a mistrial, arguing that the statements that were made by Detective Hunter were hearsay, prejudicial and irrelevant. (*Id.* at 875:24–877:11.) The trial court denied the motion and instead elected to give a curative instruction to the jury. (*Id.* at 877:10–878:25.) Petitioner made a motion for an order of dismissal at the close of the People's case. (*Id.* at 933:22934:16.) The trial court denied Petitioner's motion and found that there was

legally sufficient evidence for the case to go forward against Petitioner. (*Id.*)

Petitioner was the only witness called for the defense. (*See id.* at 940:19971:2.) Petitioner testified that he frequented the Saratoga Avenue grocery store and was there on the night in question. (*Id.*) According to Petitioner, he was there only to buy bread and immediately ran out of the store when he heard people arguing and shots being fired. (*Id.*) The jury found Petitioner guilty of attempted murder in the second degree, assault in the second degree and criminal possession of a weapon in the second degree. (*Id.* at 1087:61088:10.) Petitioner was sentenced to concurrent determinate terms of imprisonment of twenty years for attempted murder, ten years for weapon possession and seven years for assault. (Sentencing Tr. 12:25–13:25.)

Petitioner appealed to the Appellate Division, Second Department raising five claims: (1) the trial court committed error in denying Petitioner's motion to suppress the statements that were made to Detective Parsekian following his arrest because they were subsequent to an "unlawful search or seizure;" (2) the trial court erred in allowing testimony from three detectives regarding the contents of the lost videotape in violation of the best evidence rule; (3) the court abused its discretion and committed reversible error in denying Petitioner's request for a mistrial after testimony was admitted before the jury that Petitioner failed to respond to Detective Hunter after the detective left his card for Petitioner to contact him; (4) Petitioner's convictions were against the weight of the evidence; and (5) the sentence imposed upon Petitioner was excessive. (Pet.App.Br.30, 41, 45, 48, 50.) The Appellate Division, in a unanimous decision, affirmed the conviction. *People v. Blake,* 61 A.D.3d 770, 876 N.Y.S.2d 653 (App.Div.2009). The Appellate Division found that the trial court properly denied Petitioner's motion to suppress the statements. *Id.* The Appellate Division also found that the verdict of guilt was not against the weight of the evidence. *Id* The remaining contentions were found to be without merit. *Id.* The New York Court of Appeals denied leave to appeal. *People v. Blake,* 12 N.Y.3d 923, 884 N.Y.S.2d 704, 912 N.E.2d 1085 (2009).

## II. Discussion

### a. Standard of Review

**\*4** Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an application for a writ of habeas corpus by

2013 WL 3456958

a person in custody pursuant to a state court judgment may only be brought on the grounds that his or her custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner is required to show that the state court decision, having been adjudicated on the merits, is either "contrary to, or involved an unreasonable application of, clearly established Federal law" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Johnson v. Williams,* 568 U.S. ——, ——, 133 S.Ct. 1088, 1091, 185 L.Ed.2d 105 (2013); *Lafler v. Cooper,* 566 U.S. ——, ——, 132 S.Ct. 1376, 1390, 182 L.Ed.2d 398 (2012).

For the purposes of federal habeas review, "clearly established law" is defined as the "the holdings, as opposed to dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision is "contrary to," or an "unreasonable application of," clearly established law if the decision (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Id.* at 41213. In order to establish that a state court decision is an unreasonable application, the state court decision must be "more than incorrect or erroneous." *Lockyer v. Andrade,* 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). The decision must be "objectively unreasonable." *Id.* In addition, factual determinations made by the state court are presumed to be correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**b. Fourth Amendment Claim**
Petitioner argues that his arrest was without a warrant and in violation of *Payton* and that the confessions subsequent to this unlawful arrest are equally tainted and should have been suppressed. (Pet.App.Br.33–40.) The Fourth Amendment "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest," unless certain conditions exist such as probable cause and exigent circumstances. *Payton,* 445 U.S. at 576; *see also Kentucky v. King,* 563 U.S. ——, ——, 131 S.Ct. 1849, 1856, 179 L.Ed.2d 865 (2011). However, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state

prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell,* 428 U.S. 465, 494, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *see also Young v. Conway,* 715 F.3d 79, 85 (2d Cir.2013) (en banc) ("*Stone v. Powell* ... established that a state prisoner may not be granted federal habeas relief on a Fourth Amendment claim if he has had a full and fair opportunity to litigate that claim in state court."); *Palacios v. Burge,* 589 F.3d 556, 561 (2d Cir.2009) ("*Stone v. Powell,* 428 U.S. 465, 494, 96 S.Ct. 3037, 49 L.Ed.2d 1067[ ] (1976), bars us from considering Fourth Amendment challenges raised in a petitioner's petition for habeas relief ...."); *Graham v. Costello,* 299 F.3d 129, 133–34 (2d Cir.2002) ("Fourth Amendment claims are not reviewable by the federal courts when raised in a petition brought under § 2254 unless the state prisoner shows that he or she has not had a full and fair opportunity to litigate that claim in the state court."); *Cameron v. Smith,* No. 11–CV–5100, 2012 WL 1004893, at *2 (E.D.N.Y. Mar. 23, 2012) (the petitioner could not maintain a Fourth Amendment habeas claim where he "received a full hearing with all the protections that the law required"). Regardless of whether he or she took advantage of that opportunity, "the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief." *Costello,* 299 F.3d at 134.

**\*5** According to the Second Circuit, federal habeas review of Fourth Amendment claims can be reviewed in "only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley,* 975 F.2d 67, 70 (2d Cir.1992); *see also Munford v. Graham,* 467 F. App'x 18, 19 (2d Cir.2012) (summary order) (using *Capellan* standard for Fourth Amendment claims); *Pearson v. LaValley,* No. 12–CV–3386, 2013 WL 1777770, at *2 (S.D.N.Y. Apr. 25, 2013) ("[U]nder Second Circuit law, federal habeas review of *Payton* and other Fourth Amendment contentions is warranted only if the state court provides 'no corrective procedures at all to redress Fourth Amendment violations,' or if there was 'an unconscionable breakdown in that process.' " (citations omitted)); *Quinney v. Conway,* 784 F.Supp.2d 247, 263 (W.D.N.Y.2011) (quoting *Capellan* for the two part test); *Montalvo v. Annetts,* No. 02–CV–1056, 2003 WL 22962504, at *15 (S.D.N.Y. Dec. 17, 2003) (same).

2013 WL 3456958

Petitioner was given a full and fair opportunity to litigate his Fourth Amendment claim in state court, and, therefore, this Court is barred from considering Petitioner's challenge to the state court findings. New York provides criminal defendants an opportunity to litigate Fourth Amendment search and seizure issues before trial. *See* N.Y.Crim. Proc. Law §§ 710.10–70. "The Second Circuit has explicitly 'approved New York's procedure for litigating Fourth Amendment claims ... as being facially adequate.' " *Mathis v. Marshall,* No. 08–CV–3991, 2012 WL 388519, at *14 (S.D.N.Y. Jan.30, 2012) (quoting *Capellan,* 975 F.2d at 70 n. 1), *report and recommendation adopted,* No. 08–CV–3991, 2012 WL 2739873 (S.D.N.Y. July 9, 2012); *see also Quinney,* 784 F.Supp.2d at 263. The trial court conducted a full pretrial suppression hearing. (Trial Tr. 2:1–107:14.)

Petitioner does not challenge the procedures he was afforded under New York law. Instead, Petitioner raises the same argument he advanced in the state courts—that the statements he made following his arrest should have been suppressed because they were subsequent to an "unlawful search or seizure." (Pet. 5; Pet.App. Br. 30.) Petitioner argues here, as he did in state court, that the statements were subject to the exclusionary rule because they were obtained through a confession given by Petitioner after an arrest made in violation of *Payton.* (Pet.App.Br.30–31.) The Appellate Division reviewed the trial court's determination and found that "[t]he [trial] court properly denied the [Petitioner]'s motion to suppress, as the fruit of an unlawful warrantless arrest inside his home, statements he made to, or in the presence of, law enforcement officers. The record supports the hearing court's determination that the apartment where the defendant was arrested was not his residence, and that he had no reasonable expectation of privacy in it." *Blake,* 876 N.Y.S.2d at 653–54.

**\*6** Because Petitioner was given a full and fair opportunity to litigate his Fourth Amendment claim in state court and where there was no "unconscionable breakdown" in the process, the trial court's denial of Petitioner's motion to suppress his statements based on the trial court's determination of the weight and credibility of the evidence at the suppression hearing is not reviewable by this Court. *See Mathis,* 2012 WL 388519, at *14 (the petitioner's "Fourth Amendment claims [we]re not cognizable on habeas review" where his "Fourth Amendment claims were litigated fully and fairly at his suppression hearing"); *Quinney,* 784 F.Supp.2d at 263–64 (the petitioner failed to meet the two part test where "federal courts have approved

New York's procedure for litigating Fourth Amendment claims" and he had "not demonstrate[d] that he was precluded from using the corrective mechanism because of an 'unconscionable breakdown' in the system"); *Williams v. Artus,* 691 F.Supp.2d 515, 528 (S.D.N.Y.2010) ("The petitioner's Fourth Amendment challenge, however, is not reviewable in a federal habeas proceeding, because the petitioner had a full and fair opportunity to litigate his Fourth Amendment claims during a pretrial hearing based on a motion to suppress evidence."); *White v. West,* No. 04–CV–02886, 2010 WL 5300526, at *12 (E.D.N.Y. Dec. 6, 2010) (denying habeas review where the "[p]etitioner litigated his Fourth Amendment claims both at the suppression hearing and on direct appeal to [the] Second Department [and][b]y raising his Fourth Amendment claims in these state fora, petitioner demonstrated that state process was available, and indeed, that he availed himself of that process"); *Kirk,* 646 F.Supp.2d at 545 (the petitioner failed to meet the two part test where New York procedures had been found adequate and the petitioner failed to show "unconscionable breakdown," since "[m]ere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown"). The petition is therefore denied as to Petitioner's Fourth Amendment claim.

### c. Best Evidence Rule

Petitioner claims that the trial court's allowance of the testimony regarding the contents of the lost videotape violated the "best evidence rule." (Pet.App.Br.41–44.) Petitioner does not cite to the United States Constitution or any federal cases to support his claim. (Resp't Aff. 3.) The alleged violation of the "best evidence rule" is a New York evidentiary rule and not a federal claim. *Monk v. Bradt,* 778 F.Supp.2d 352, 367 (W.D.N.Y.2011) ( " '[N]ecessarily include[d]' in that category of mere state-law errors that do not warrant habeas relief are 'erroneous evidentiary rulings.' " (quoting *Hawkins v. Costello,* 460 F.3d 238, 244 (2d Cir.2006))); *Dewall v. Superintendent, Mohawk Corr. Facility,* No. 05–CV–5583, 2008 WL 3887603, at *10 (E.D.N.Y. Aug.20, 2008) ("Petitioner's claims involve state-law evidentiary matters and are not federal constitutional questions appropriate for habeas review.").

**\*7** Federal courts have habeas jurisdiction when "a person [is] in custody pursuant to the judgment of a State court *only on* the ground that he is in custody *in violation of the Constitution or laws or treaties of the United States.*" 28 U.S.C. § 2254(a) (emphasis added). The Supreme Court has "repeatedly held that federal habeas corpus relief does not

2013 WL 3456958

lie for errors of state law." *Wilson v. Corcoran,* 562 U.S. ——, ——, 131 S.Ct. 13, 16, 178 L.Ed.2d 276, (2010) (per curiam) (internal quotation marks omitted) (quoting *Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)); *see also Santone v. Fischer,* 689 F.3d 138, 148 (2d Cir.2012) ("A federal court may not issue the writ on the basis of a perceived error of state law."), *cert. denied,* —— U.S. ——, 133 S.Ct. 390, 184 L.Ed.2d 231 (2012). "Errors of state law that rise to the level of a constitutional violation may be corrected by a habeas court, but even an error of constitutional dimensions will merit habeas corpus relief only if it had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Lyons v. Girdich,* No. 02–CV–3117, 2003 WL 22956991, at *10 (E.D.N.Y. Oct.15, 2003) (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)). "For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial." *Lyons,* 2003 WL 22956991, at *11 (citing *United States v. Agurs,* 427 U.S. 97, 108, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)); *see also Mobley v. Kirkpatrick,* 778 F.Supp.2d 291, 308 (W.D.N.Y.2011) ("Claims of evidentiary error are cognizable only if the challenged holdings rendered the trial fundamentally unfair."); *Dewall,* 2008 WL 3887603 at *10 (noting that the Due Process Clause applies to evidentiary errors only when they are "so pervasive as to have denied him a fundamentally fair trial" (citing *Collins v. Scully,* 755 F.2d 16, 18 (2d Cir.1985))).

Petitioner has offered no evidence to demonstrate that his trial was "fundamentally unfair" because the store videotape was not introduced at trial. According to several trial witnesses, including the store owner, the videotape was of such poor quality that the shooter could not be properly seen. (Trial Tr. 719:24720:11, 787:22789:12, 860:415, 863:1325, 882:23–884:2.) Petitioner had been identified by two eyewitnesses —one witness identified Petitioner in a photo array prior to his apprehension and both identified him at the line-up—and Petitioner made confessional statements—one to the police and another overheard by the police. (Pet.App. Br. 5–15; 21–22.) Petitioner's counsel argued to the jury that the videotape was missing and could have given them key information in the case, and the judge gave the jury a missing evidence instruction. (Pet.App. Br. 27–29; Trial Tr. 993:11995:3, 1063:161064:5.) Thus, it cannot be said that Petitioner's trial was fundamentally unfair because of the absent videotape. The petition is denied as to Petitioner's best evidence claim.

### d. Pre-arrest Silence

**\*8** Petitioner claims that his right to silence was violated when Detective Hunter testified that the detective left his business card with Petitioner's son and Petitioner never got in touch with him. The Appellate Division addressed this claim when it classified the claim as one of the "remaining contentions" "without merit." *Blake,* 876 N.Y.S.2d at 654. The Appellate Division's finding that the claim was "without merit" is a determination on the merits of the claim, requiring AEDPA deference. *See, e.g., Reily v. Ercole,* 491 F. App'x 225, 228 (2d Cir.2012) (summary order) (applying AEDPA deference to a case where the Appellate Division found the petitioner's claim "without merit"); *Watson v. Greene,* 640 F.3d 501, 508, n. 7 (2d Cir.2011) ("Although the Appellate Division did not discuss its reasons for rejecting Watson's Confrontation Clause claim, it held that the claim was 'either ... unpreserved for appellate review, without merit, or [did] not require reversal.' That holding constitutes a decision 'on the merits' that is entitled to AEDPA deference." (alteration in original) (citations omitted)), *cert. denied,* —— U.S. ——, 132 S.Ct. 335, 181 L.Ed.2d 209 (2011); *Jimenez v. Walker,* 458 F.3d 130, 146 (2d. Cir.2006) (the Appellate Division's holding that a claim was "either unpreserved for appellate review or without merit" is a determination on the merits requiring AEDPA deference); *Howard v. Walker,* 406 F.3d 114, 12022 (2d. Cir.2005) (noting that the Appellate Division's determination that claims "are without merit" is an adjudication on the merits). The Appellate Division's holding is neither "contrary to, or involved an unreasonable application of, clearly established Federal law" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

In the present case, Detective Hunter testified to the fact that he attempted to apprehend Petitioner at his apartment, but never found him there and left his business card with Petitioner's son with a message for Petitioner to call him. (Trial Tr. 864:21866:10.) Petitioner alleges that the testimony given by Detective Hunter regarding the business card and the State's summation, alluding to the fact that Petitioner could have come forward, implicated Petitioner's silence and were improper references to Petitioner's pre-arrest silence. (Pet.App.Br.4546). As argued by Respondent, Detective Hunter did not testify to Petitioner's silence, instead he testified that he attempted to apprehend Petitioner at his residence by leaving a card with his son. (Resp't Br. 14.)

2013 WL 3456958

Petitioner claims that he had a right to remain silent prior to his arrest under the protections guaranteed by the Fifth Amendment in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Detective Hunter's testimony violated this right. Petitioner's claim is without merit. *See, e.g., Salinas v. Texas,* 570 U.S. ——, ——, 133 S.Ct. 2174, ——L.Ed.2d ——, ——, 2013 WL 2922119, at *7–8 (June 17, 2013) (in order for the protections of *Miranda* to apply to a person prior to arrest, he or she must explicitly state that he is invoking his right to remain silent); *United States v. Mavashev,* 455 F. App'x 107, 114–15 (2d Cir.2012) (summary order) (the petitioner's right to remain silent was not violated when "[n]o evidence was presented that [the petitioner] invoked his right to remain silent or in any other way refused to answer any of [the police officer's] questions"). In order for Petitioner to receive *Miranda* protections he would have had to invoke his right to remain silent under the Fifth Amendment. *See Salinas,* 570 U.S. at ——, 133 S.Ct. 2174, 2013 WL 2922119, at *7–8 ("[T]he Fifth Amendment guarantees that no one may be 'compelled in any criminal case to be a witness against himself; it does not establish an unqualified 'right to remain silent.' ").

**\*9** Petitioner has failed to establish that the determination of the Appellate Division was contrary to, or involved an unreasonable application of, clearly established federal precedent. 28 U.S.C. § 2254(d). The petition is therefore denied as to this claim.

### e. Weight of the evidence

Petitioner argues that the jury's guilty verdict was against the weight of the evidence. (Pet. 6; Pet.App. Br. 4849.) Petitioner presented this argument to the Appellate Division, which found that the "verdict of guilt was not against the weight of the evidence." *Blake,* 876 N.Y.S.2d at 653–54. For the reasons discussed below, the Court finds that Petitioner's conviction was neither contrary to, nor an unreasonable application of, clearly established federal law.

It is well settled that a "weight of the evidence" claim is distinct from a "sufficiency of the evidence" claim and is a state claim based on New York Criminal Procedure Law § 470.15(5) that is not reviewable in federal habeas proceeding. *Williams v. Bradt,* No. 10–CV–2858, 2012 WL 2914892, at *7 n. 3 (E.D.N.Y. July 17, 2012) (" 'A weight of the evidence' claim is based on state law.' The Court cannot consider a purely state law claim on federal habeas review." (citations omitted)); *Echevarria–Perez v. Burge,* 779 F.Supp.2d 326,

332–33 (W.D.N.Y.2011) ("[W]eight-of-the-evidence claim is not cognizable on federal habeas review. The 'weight of the evidence' claim asserted here derives from New York Criminal Procedure Law ('C.P.L.') § 470.15(5) ...."); *Taylor v. Poole,* 538 F.Supp.2d 612, 618–19 (S.D.N.Y.2008) ("It is well established that 'weight of the evidence' claims are not cognizable on federal habeas review, given the difference between such a challenge and that of a challenge based on the sufficiency of the evidence."); *Garrett v. Perlman,* 438 F.Supp.2d 467, 470 (S.D.N.Y.2006) ("In making a 'weight of the evidence' argument, Petitioner has not asserted a federal claim as required by 28 U.S.C. § 2254(a). Instead, he has raised an error of state law claim, for which habeas review is not available."). Even construing the petition as alleging a sufficiency of the evidence claim, however, the claims fail for the reasons stated below.

The proper inquiry for reviewing a sufficiency of the evidence claim is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Cavazos v. Smith,* 565 U.S. ——, ——, 132 S.Ct. 2, 6, 181 L.Ed.2d 311 (2011) (per curiam) (emphasis in original) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); *see also United States v. Mi Sun Cho,* No. 12–CR–1084, 2013 WL 1594173, at *2 (2d Cir. Apr.16, 2013) (per curiam) ("[T]he evidence must be viewed in the light most favorable to the government, with all reasonable inferences drawn in its favor."). A petitioner challenging the sufficiency of the evidence of his guilt in a habeas corpus proceeding "bears a very heavy burden." *Mi Sun Cho,* 713 F.3d 716, 2013 WL 1594173, at *2; *Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 811 (2d Cir.2000). "A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos,* 565 U.S. at ——, 132 S.Ct. at 3; *see also United States v. Robinson,* 702 F.3d 22, 3435 (2d Cir.2012) ("As we have often stated, this standard 'is exceedingly deferential,' to the jury's role as factfinder."), *cert. denied,* —— U.S. ——, 133 S.Ct. 1481, 185 L.Ed.2d 381 (2013); *Langston v. Smith,* 630 F.3d 310, 314 (2d Cir.2011) ("[J]udges must be highly deferential to the jury's verdict of conviction[.]"). Furthermore, a court reviewing a habeas petition must apply this standard "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Langston,* 630 F.3d at 314 (quoting *Jackson,* 443 U.S. at 324 n. 16); *see also Dixon v. Miller,* 293 F.3d 74, 79 (2d Cir.2002) ("The state court's interpretation of the proof required must be applied on collateral review to prevent

2013 WL 3456958

a violation of the Due Process Clause of the Fourteenth Amendment, which guards against convicting a defendant without proof beyond a reasonable doubt on each element of his crime."); *Quartararo v. Hanslmaier,* 186 F.3d 91, 97 (2d Cir.1999) ("A federal court must look to state law to determine the elements of the crime.").

**\*10** Petitioner was convicted under three of New York's penal statutes—New York Penal Law §§ 110.00, 120.05(2) and 265.03(1)(b). New York Penal Law § 110.00 provides that a defendant is guilty of attempt to commit a crime "when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." N.Y. Penal Law § 110.00. New York Penal Law § 120.05(2) provides that a person is guilty of assault in the second degree "when, with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument." N.Y. Penal Law § 120.05(2). New York Penal Law § 265.03(1)(b) provides that a person is guilty of criminal possession of a weapon in the second degree "when, with intent to use the same unlawfully against another ... such person possesses a loaded firearm." N.Y. Penal Law § 265.03(1)(b).

Petitioner argues that the "jury's verdict of guilty was not amply supported by the evidence" because (1) the victim was not present at trial to offer testimony regarding the incident; (2) the witnesses, Jasmine Lopez and her brother, both admitted that the shooter had a scarf covering his face; (3) the shop owner, Urena, testified that he hid behind the counter and never saw Petitioner with a gun or shoot at Pettaway; and (4) the surveillance videotape was lost by the detectives handling the case. (Pet App. Br. 49.)

Petitioner's challenge to the sufficiency of the evidence is unavailing. Although Lopez and her brother testified that Petitioner entered the store with a scarf covering his face, Lopez testified that she was able to see Petitioner's face because the scarf began to fall when he started shooting. (Tr. 455:11–459:24, 502:21–22, 505:1–5.) Urena, Lopez and her brother all testified consistently that they saw Pettaway enter the store and then observed Petitioner enter after him. (*Id.*

at 451:13456:11, 502:10504:22, 669:5674:1 .) The witnesses also testified that Petitioner was quite short and chubby, rendering it unlikely that they would mistake him due to his distinct build. (*Id.* at 455:1112, 502:2122.) Petitioner admitted during his testimony that he was in the store when the shooting took place. (*Id.* at 947:1–948:22.) Moreover, there were two post-arrest statements made by Petitioner about the shooting, although Petitioner testified he did not remember the events surrounding those statements. (*Id.* at 962:410, 969:17970:6.) Viewing the record in the light most favorable to the prosecution, and drawing all permissible inferences in the prosecution's favor, the evidence was sufficient to support the verdict. *See Phillips v. Lee,* No. 10–CV–4685, 2012 WL 847432, at \*6 (E.D.N.Y. Mar. 13, 2012) ("The evidence adduced established far more than petitioner's 'mere presence' at the crime scene."); *see also Gaskin v. Graham,* No. 08–CV–1124, 2009 WL 5214498, at \*1 (E.D.N.Y. Dec. 30, 2009) (upholding a conviction where a "rational factfinder, viewing the evidence in the light most favorable to the prosecution and drawing all permissible inferences in the prosecution's favor, could have found the" petitioner guilty); *Archer v. Fischer,* No. 05–CV–4990, 2009 WL 1011591, at \*14 (E.D.N.Y. April 13, 2009) (same). Construing Petitioner's weight of the evidence claim as a sufficiency of the evidence claim, this claim is denied.

### III. Conclusion

**\*11** For the foregoing reasons, the petition for habeas corpus pursuant to 28 U.S.C. § 2254 is denied and the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253. It is further certified pursuant to 28 U.S.C. § 1915(a) that any appeal would not be taken in good faith. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). The Clerk of Court is directed to close the case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 3456958

   © 2022 Thomson Reuters. No claim to original U.S. Government Works.

   © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 4990645

2017 WL 4990645
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Marcus WILLIAMS, Petitioner,

v.

Paul GONYEA, Superintendent, Mohawk
Correctional Facility, Respondent.

No. 9:16-cv-00460-JKS
|
Signed 10/31/2017

**Attorneys and Law Firms**

Marcus Williams, Rome, NY, pro se.

Lisa E. Fleischmann, New York State Attorney General, New York, NY, for Respondent.

MEMORANDUM DECISION

JAMES K. SINGLETON, JR., Senior United States District Judge

 **\*1** Marcus Williams, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Williams is in the custody of the New York State Department of Corrections and Community Supervision and incarcerated at Mohawk Correctional Facility. Respondent has answered the Petition, and Williams has not replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On August 4, 2011, Williams was charged with criminal possession of a weapon in the second degree. On direct appeal of his conviction, the Appellate Division of the New York Supreme Court recounted the following facts underlying the charge against Williams:

> A police captain heard gunshots, and an identified citizen then gave him a description of the shooter and his direction of flight from the area in which the gunshots

originated. Other police officers who heard the broadcast description of the shooter observed [Williams] in a driveway approximately two blocks from the scene of the shooting, and he was nervous, sweating and breathing heavily. The police observed that he matched the description of the suspect, and he fled when he saw the unmarked patrol car. [Williams] ran behind a house out of the sight of an officer who pursued him, but he emerged quickly with his hands up. Although [Williams] was frisked, no weapon was recovered from his person. He was handcuffed, and other police officers quickly recovered a gun inside a grill in the backyard of the house behind which [Williams] had run. As the police were conducting a showup identification procedure with the identified citizen, who was brought to the scene where [Williams] was detained, [Williams] spontaneously yelled out to his family nearby the name of the identified citizen and that this person had seen [Williams] shoot the gun. [Williams] was arrested and, after being advised of his *Miranda* rights, he gave an inculpatory statement to the police.

*People v. Williams*, 12 N.Y.S.3d 699, 700 (N.Y. App. Div. 2015).

The trial court subsequently held a *Huntley*[1] hearing regarding the admissibility of Williams' statements to his family before he was taken into custody by the police, premised upon Williams' claim that he was arrested without probable cause. Defense counsel argued:

> [A]t the time of the arrest, [Williams] was simply standing in a private driveway at a time when he noticed four people running at him with weapons pointed at him. He then ran in fear for his safety, stopped at the

Case 9:19-cv-00952-LEK-TWD    Document 22    Filed 07/27/22    Page 98 of 202

Williams v. Gonyea, Not Reported in Fed. Supp. (2017)

2017 WL 4990645

corner of the house, where he was then handcuffed, taken to the ground, and then actually placed in custody at that point and our position would be the officers had absolutely no probable cause at that time that [Williams] had committed a crime or was about to commit a crime or was involved in committing a crime.

[1]    *People v. Huntley*, 204 N.E.2d 179 (N.Y. 1965). The term "*Huntley* hearing" is a shorthand reference to the hearing held in New York on a challenge to the admissibility of statements made to law enforcement personnel.

**\*2**  After hearing testimony from Syracuse Police Captain John Brennan and Police Detective James Quatrone, the hearing court found that Williams was not in *Miranda* custody when he made the statement and that the statement, and the fact that police knew his grandmother lived at the house where he was found, were themselves sufficient for probable cause to put him in the police car, which then constituted *Miranda* custody. The court reasoned that the level-three intrusion [2] turned into level-four, probable cause to arrest, after Williams, without denial of his constitutional rights, made statements implicating himself as the shooter, and the police found a gun within 20 to 30 feet of Williams in his grandmother's grill.

[2]    In *People v. LaPene*, 352 N.E.2d 562 (N.Y. 1976), the New York Court of Appeals laid out a sliding scale of justifiable police intrusion, short of probable cause to arrest, which specified three distinct levels of intrusion correlating the allowable intensity of police conduct to the nature and weight of the facts precipitating the intrusion. The third level, at issue here, encompasses the statutory right provided by New York Criminal Procedure Law ("CPL") § 140.50(1), which authorizes a forcible stop and detention of a person when a police officer entertains a reasonable suspicion that the person has committed, is committing, or is about to commit a felony or misdemeanor. *See People v. Martinez*, 606 N.E.2d 951, 952 (N.Y. 1992).

On November 28, 2011, Williams appeared with counsel to plead guilty to the charge. Prior to accepting his guilty plea, the court explained that "the specific terms of the plea proposal would be if you entered a plea of guilty to criminal possession of a weapon in the second degree, I would give you if you took the offer today the lowest that I could give you, which is seven years determinate plus five years post-release supervision." Williams confirmed that he understood the terms of the deal. He additionally denied that he had received other statements or promises to influence his decision to plea guilty, and denied that he had been threatened. Williams stated that he was 32, a U.S. citizen, and could read and write English. He acknowledged that he had sufficient time to discuss his case with his attorney, and that he had no physical or mental problems that would affect his understanding of the plea proceedings. The court explained the rights he was giving up, and Williams confirmed his understanding that he was waiving those rights.

Williams answered affirmatively when asked, "Do you admit on or about July 12, 2011, in the City of Syracuse, County of Onondaga, that you possessed a loaded firearm at a place other than your home or place of business, do you admit having done that?" Williams additionally admitted that he was convicted in April 2000 of first-degree robbery for which he received a 7-year term of imprisonment, and stipulated that, based on that prior conviction, he was a second violent felony offender.

At his sentencing hearing, Williams requested to withdraw his guilty plea. Williams stated that he was not guilty and that the police wrongfully arrested him before they found the gun. Williams argued that the proof against him was not strong. The court denied the motion and imposed the agreed-upon sentence of 7 years' imprisonment followed by 5 years of post-release supervision.

Williams filed a *pro se* motion to set aside his sentence pursuant to CPL § 440.20 on the ground that he was improperly sentenced as a second violent felony offender because second-degree weapons possession was not a violent felony. The court rejected Williams' motion because Williams had a prior violent felony conviction and his current offense was also a violent felony.

**\*3**  Williams then filed a *pro se* motion to vacate his conviction pursuant to CPL § 440.10. In that motion, he argued, among other grounds not relevant to the instant Petition, that counsel was ineffective for not investigating his case and not advising him as to his "actual charge," which subsequently rendered his plea unknowing, unintelligent, and involuntary, and that the police lacked probable cause

Case 9:19-cv-00952-LEK-TWD Document 22 Filed 07/27/22 Page 99 of 202

Williams v. Gonyea, Not Reported in Fed. Supp. (2017)

2017 WL 4990645

to arrest him. In support of his motion, Williams attached affidavits from his girlfriend and a neighbor, which indicated that Williams was not outside when the shootings occurred. The County Court denied the motion on August 7, 2013. The court found that the ineffective assistance of counsel claim was barred by CPL § 440.10(2)(c) [3] and alternatively concluded that the plea record evidenced Williams' voluntary plea. The court also stated that the affidavits were not properly considered in a § 440.10 motion and, in any event, Williams had not shown that he could not have obtained this evidence with the exercise of diligence such that the evidence could not be considered "new."

[3] N.Y. CRIM. PROC. LAW § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when[,] [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal....").

Through counsel, Williams then appealed his conviction to the Appellate Division on the ground that the court erred in declining to suppress his pre- and post-*Miranda* statements because they were the product of an arrest for which the police lacked probable cause. Williams additionally filed a *pro se* supplemental brief in which he argued that: 1) the hearing court erred in finding that his arrest was supported by probable cause; 2) the evidence before the grand jury was legally insufficient; and 3) the court erred in denying his motion to withdraw his guilty plea. The Appellate Division unanimously affirmed his conviction on June 19, 2015. *Williams*, 12 N.Y.S. 3d at 701. Williams and his counsel sought leave to appeal the issues in the counseled and *pro se* briefs, which was denied without comment on September 3, 2015. *People v. Williams*, 40 N.E.3d 587, 587 (N.Y. 2015).

Williams timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on April 26, 2016. *See* 28 U.S.C. § 2244(d)(1)(A). By Court permission, Williams filed an Amended Petition (Docket No. 11), which is now before the undersigned judge for adjudication.

## II. GROUNDS RAISED

In his *pro se* Amended Petition before this Court, Williams argues that: 1) the hearing court erred in not suppressing his statement on the ground that it was obtained by an unlawful arrest that lacked probable cause; 2) the hearing court erred in concluding that the police had probable cause to arrest him; 3) the grand jury evidence was legally insufficient; and 4) the court erred in denying his motion to withdraw his guilty plea.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona*, 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

**\*4** In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*,

Case 9:19-cv-00952-LEK-TWD   Document 22   Filed 07/27/22   Page 100 of 202

Williams v. Gonyea, Not Reported in Fed. Supp. (2017)

2017 WL 4990645

459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Williams has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *United States ex rel. Catalano v. Shaughnessy*, 197 F.2d 65, 66-67 (2d Cir. 1952) (per curiam).

### IV. DISCUSSION

A. *Unlawful Search and Seizure* (Grounds 1 and 2)
Williams first claims that the trial court erred in concluding that the police had probable cause to arrest him such that his arrest was lawful and his statement was admissible. However, any challenge to the search and seizure is foreclosed by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976). Under *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim,[4]" federal habeas corpus relief will not lie for a claim that evidence recovered through an illegal search or seizure was introduced at trial. *Id.* at 482. The *Stone v. Powell* doctrine applies to all Fourth Amendment claims, including claims of illegal stops, arrests, searches, or seizures based on less than probable cause, and it applies regardless of the nature

of the evidence sought to be suppressed. *Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983) (per curiam).

4      The Fourth Amendment provides:
       The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
       U.S. CONST. amend. IV.

The Second Circuit has made clear that all *Stone* requires is that the State provide a petitioner the opportunity to litigate his Fourth Amendment claim. *See McPhail v. Warden, Attica Corr. Facility*, 707 F.2d 67, 69-70 (2d Cir. 1983). In order to receive habeas review of a Fourth Amendment claim, a petitioner must demonstrate either that the State failed to provide any "corrective procedures" by which Fourth Amendment claims could be litigated, or that the State had such procedures in place but that the petitioner was unable to avail himself of those procedures "because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). A "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process," and thus is insufficient to give this Court authority to review Fourth Amendment claims. *Id.* at 72. That New York has in place such procedures is well-settled. *See id.* at 70 & n.1. Williams has not asserted the existence of an unconscionable breakdown of that process, nor has he alleged any facts that would demonstrate such a breakdown in this case. Williams therefore cannot prevail on his challenge to the legality of the search and admission of his statement.

B. *Grand Jury Defects* (Ground 3)
**\*5** Williams additionally argues the evidence presented to the grand jury was legally insufficient. As an initial matter, it is well settled that a guilty plea represents a "break in the chain of events which has preceded it in the criminal process," and a defendant "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). " 'He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards.' " *United States v. Coffin*, 76

2017 WL 4990645

F.3d 494, 497 (2d Cir. 1996) (quoting *Tollett*, 411 U.S. at 267); *see United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003) ("It is well settled that a defendant who knowingly and voluntarily enters a guilty plea waives all non jurisdictional defects in the prior proceedings."). Because the events which give rise to this claim occurred prior to Williams' guilty plea, the claim is foreclosed by the *Tollett* bar.

Moreover, Williams' subsequent conviction forecloses any potential relief with respect to such claim. For federal constitutional purposes, a jury conviction transforms any defect in the grand jury's charging decision into harmless error because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt. *See, e.g.*, *United States v. Mechanik*, 475 U.S. 66, 67 (1986) ("[T]he petit jury's verdict of guilty beyond a reasonable doubt demonstrates *a fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted. Therefore, the convictions must stand despite the [grand jury] rule violation."). In *Lopez v. Riley*, the Second Circuit relied on *Mechanik* in holding that "[i]f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court." *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989); *see also Davis v. Mantello*, 42 Fed.Appx. 488, 490-91 (2d Cir. 2002) ("[C]laims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court." (citing cases)).

District courts in this Circuit have applied this reasoning equally to a conviction achieved by a guilty plea. *See, e.g.*, *Lloyd v. Walker*, 771 F. Supp. 570, 576-77 (E.D.N.Y. 1991) ("Having admitted to the factual basis of the charges against him upon entering a plea of guilty, any error in the proceeding which led to his indictment is ... rendered harmless, and is not a cognizable claim in a federal habeas proceeding." (internal citation omitted)); *Alston v. Ricks*, No. 01 Civ. 9862, 2003 WL 42144, at \*7 (S.D.N.Y. Jan. 7, 2003); *see also United States v. Hansel*, 70 F.3d 6, 8 (2d Cir. 1995) ("[A]ny error in the grand jury proceedings must be considered harmless in light of Hansel's guilty plea."). Williams is therefore not entitled to relief on any argument that the grand jury proceedings were defective.

C. *Rejection of Motion to Withdraw Plea* (Ground 4)
Finally, Williams contends that the court erred in refusing to allow him to withdraw his guilty plea based on actual innocence.

A defendant who offers a claim of innocence to substantiate altering his plea must overcome "the strong presumption of verity that attaches to his admissions of guilt at his plea allocution." *United States v. Hirsch*, 239 F.3d 221, 225 (2d Cir. 2001) (internal quotations and citation omitted). The Second Circuit Court of Appeals has observed that the allocution remarks "are generally treated as conclusive in the face of the defendant's later attempt to contradict them." *See Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999) (citing *United States v. Gonzalez*, 970 F.2d 1095, 1101 (2d Cir. 1992)). The district court may draw all inferences against the conclusion that the defendant is actually innocent. *See United States v. Maher*, 108 F.3d 1513, 1530 (2d Cir. 1997).

\*6 In this case, Williams did not present to the sentencing court, and does not present in his Petition, competent and reliable evidence that he is actually innocent of the crime. Rather, Williams merely argues that the evidence against him was not overwhelming. Williams thus fails to overcome his statements at his plea allocution admitting his guilt. An independent review of the record reflects that the plea was made voluntarily and intelligently, and that, contrary to Williams' subsequent assertions, the evidence against him, as detailed above, was quite strong. Williams is therefore not entitled to relief on this ground.

V. CONCLUSION

Williams is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Case 9:19-cv-00952-LEK-TWD    Document 22    Filed 07/27/22    Page 102 of 202
Williams v. Gonyea, Not Reported in Fed. Supp. (2017)
2017 WL 4990645

**All Citations**

Not Reported in Fed. Supp., 2017 WL 4990645

---

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 150414
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Douglas BLACKSHEAR, Jr., Petitioner,
v.
Edward E. DONNELLY, Respondent.

No. 9:03-CV-0450 (LEK/VEB).
|
Jan. 14, 2008.

**Attorneys and Law Firms**

Douglas Blackshear, Jr., Dannemora, NY, pro se.

Senta B. Siuda, Office of Attorney General, Syracuse, NY, for
Respondent.

### DECISION AND ORDER

LAWRENCE E. KAHN, District Judge.

 **\*1** This matter comes before the Court following a Report-
Recommendation filed on November 23, 2007 by the
Honorable Vincent E. Bianchini, United States Magistrate
Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3 of the
Northern District of New York. Report-Rec. (Dkt. No. 45).
After ten days from the service thereof, the Clerk has sent
the entire file to the undersigned, including the objections
by Petitioner Douglas Blackshear, Jr., which were filed on
January 7, 2008. Objections (Dkt. No. 48).

It is the duty of this Court to "make a de novo determination
of those portions of the report or specified proposed findings
or recommendations to which objection is made." 28 U.S.C.
§ 636(b). "A [district] judge ... may accept, reject, or modify,
in whole or in part, the findings or recommendations made
by the magistrate judge." *Id.* This Court has considered the
objections and has undertaken a de novo review of the record
and has determined that the Report-Recommendation should
be approved for the reasons stated therein.

Accordingly, it is hereby
**ORDERED,** that the Report-Recommendation (Dkt. No. 45)
is **APPROVED** and **ADOPTED** in its **ENTIRETY;** and it
is further

**ORDERED,** that the Petition for Habeas Corpus (Dkt. No. 1)
is **DENIED** and **DISMISSED;** and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all
parties.

**IT IS SO ORDERED.**

### REPORT AND RECOMMENDATION

VICTOR E. BIANCHINI, United States Magistrate Judge.

#### I. INTRODUCTION

Petitioner Douglas Blackshear, Jr., acting *pro se,* commenced
this action seeking habeas corpus relief pursuant to 28 U.S.C.
§ 2254. Petitioner is an inmate at the Clinton Correctional
Facility. In 1998, he was convicted in a New York State
court of five counts of Burglary in the Second Degree and
five counts of Petit Larceny and was sentenced to a term
of imprisonment. Petitioner contends that his conviction was
imposed in violation of his constitutional rights and should
therefore be vacated.

This matter was referred to the undersigned by the Honorable
Norman A. Mordue, Chief United States District Judge,
pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is presently
before this Court for a report and recommendation. (Docket
No. 44).

#### II. BACKGROUND

**A. Facts**

The following factual summary is derived from the state court
records. During September, October, and November of 1997,
various burglaries were committed in the City of Syracuse,
New York. On November 4, 1997, in the evening, Petitioner
was arrested by Syracuse Police Officers pursuant to a parole
violation warrant and for resisting arrest. (Exhibit 7)[1] (T[2]
at 132, 164). Petitioner was also wanted for questioning in
connection with the burglaries and was taken to the Syracuse
Police Department for processing. (*Id.*).

Case 9:19-cv-00952-LEK-TWD    Document 22    Filed 07/27/22    Page 104 of 202
Blackshear v. Donnelly, Not Reported in F.Supp.2d (2008)
2008 WL 150414

1    References preceded by "Exhibit" are to the state court records provided by Respondent in these proceedings attached to their answer at Docket Number 28.

2    References preceded by "T" are to the transcript pages of Petitioner's trial.

Detective Christopher DePerno provided the *Miranda* [3] warnings and Petitioner waived his rights and agreed to speak with the detective. (T at 140-142). During the course of this interrogation, Petitioner agreed to take the police officers on a tour of the various burglary locations. (T at 146). Once they returned to the police station, Detective DePerno provided *Miranda* warnings for a second time and used a "Rights Waiver Form" signed by Petitioner to document the fact that he was issued his warnings. (T at 142-144). Petitioner then gave a voluntary statement. (T at 148).

3    *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**\*2** The next morning, on November 5, 1997, Petitioner was interviewed by Detective James Solan of the Onondaga County Sheriff's Department. (T at 162-164). Detective Solan verified that Petitioner understood his rights and Petitioner agreed to speak with him and then took Detective Solan on a tour of the places he admitted to burglarizing. (T at 168-171). After returning to the Onondaga County Sheriff's Department, Petitioner declined to give another written statement. (T at 176). However, Detective Solan prepared an affidavit regarding his investigation and interview of Petitioner regarding the burglaries.

On February 4, 1998, an Onondaga County Grand Jury returned Indictment Number 98-0082-1, which charged Petitioner with Burglary in the Second Degree, in violation of New York Penal Law ("NYPL") § 140.25(2); [4] and Petit Larceny, in violation of NYPL § 155.25 as further defined in § 125.25(1). On May 5, 1998, the original indictment was superseded by Indictment Number 98-384-1, charging Petitioner with eighteen counts, including five counts of Burglary in the Second Degree, in violation of NYPL § 140.25(2); and five counts of Petit Larceny, in violation of NYPL § 155.25, as further defined in § 125.25(1). [5]

4    Unless otherwise indicated, all references to the NYPL are to McKinney 1998.

5    Copies of the superseding indictment were not provided to the Court, therefore, the Court is unable to list the other charges listed in the indictment.

**B. State Trial Court Proceedings**

The Honorable John J. Brunetti, Onondaga County Court Judge, presided over Petitioner's trial proceedings. On May 11, 1998, after a hearing relating to the original indictment, Judge Brunetti granted Petitioner's motion to suppress his original verbal and written statements to the Syracuse Police. (Exhibit 1). Judge Brunetti found that the People failed to sustain their burden to establish probable cause to support the arrest and detention. (*Id.*).

On July 14, 1998, a second suppression hearing was held with respect to the superseding indictment. On July 17, 1998, Judge Brunetti denied Petitioner's motion to suppress the oral statements made to Detective Solan on November 5, 1997. (Exhibit 4). Judge Brunetti found that the statements were not excluded by the doctrine of collateral estoppel because his statements to Detective Solan were "not within the scope of the original [suppression] hearing." (*Id.* at 7). The trial court found that Petitioner's statements were voluntary and not the product of an illegal detention. However, Judge Brunetti granted Petitioner's speedy trial motion to dismiss six counts of the indictment. (*Id.*).

Thereafter, Petitioner waived his right to a jury trial. (Exhibit 9). The trial before Judge Brunetti began on October 6, 1998 and concluded on October 8, 1998. Petitioner was represented by Frank Scibilia, Esq. Judge Brunetti granted Petitioner's motion to dismiss two additional counts from the indictment based upon a lack of sufficient evidence. (T at 203-205). On October 8, 1998, Judge Brunetti found Petitioner guilty of five counts of burglary and five counts of petit larceny.

On November 30, 1998, Petitioner was sentenced as a persistent violent felony offender to twenty (20) years to life for each of his convictions of Burglary in the Second Degree, to run concurrently to each other, and he was given an unconditional discharge for his conviction for five counts of Petit Larceny. (S at 6). [6] Therefore, Petitioner's total aggregate sentence was twenty (20) years to life.

6    References preceded by "S" are to the transcript pages of Petitioner's sentencing proceedings found

in Exhibit 14 attached to Respondent's answer at
Docket Number 28.

## C. State Appellate Proceedings

**\*3** Petitioner, represented by Shirley K. Duffy, appealed
his conviction to the Appellate Division, Fourth Department,
of the New York State Supreme Court. Petitioner asserted
four arguments before the Appellate Division: (1) that he was
denied the right to a fair and impartial proceeding because
the trial judge allegedly assumed the role of the prosecutor
during trial; (2) that the doctrine of collateral estoppel should
have been applied by the trial court to preclude the admission
of Detective Solan's trial testimony concerned Petitioner's
statements to the police; (3) that the statement of Detective
Solan should have been suppressed; and (4) that the delay
in holding the second *Huntley* [7] hearing and subsequent trial
deprived Petitioner of his right to due process by speedy trial.
(Exhibit 28). [8] Thereafter, Petitioner moved to stay his direct
appeal before the Appellate Division pending the completion
of his CPL § 440.10 motion before the trial court. (Exhibit
17). Petitioner's request was denied by the Appellate Division
on November 16, 1999. (Exhibit 23).

[7]    A hearing pursuant to *People v. Huntley,* 15 N.Y.2d
       72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965), is
       held to determine the voluntariness of a criminal
       defendant's statements to the police.

[8]    Exhibit 28 refers to Petitioner's brief on direct
       review to the New York State Appellate Division,
       Fourth Department.

Petitioner filed his first CPL § 440.10 motion to vacate his
conviction on September 13, 1999. (Exhibit 15). Petitioner
asserted five arguments in support of his first § 440.10
motion: (1) that he could not have validly waived his right
to counsel; (2) that he was illegally seized by the Onondaga
County Sheriff's Department; (3) that his oral statement
obtained by Detective Solan should have been suppressed
due to the failure to administer *Miranda* warnings; (4) there
was an unnecessary delay in arraignment; and (5) that his
oral statement should have been suppressed on the grounds
that it was not attenuated from the Sheriff's illegal search and
seizure. On October 27, 1999, the trial court denied his motion
to vacate. (Exhibit 20).

Petitioner then filed a second motion pursuant to CPL §
440.10 on November 11, 1999. (Exhibit 21). Petitioner argued

that he was denied effective assistance of trial counsel due to
trial counsel's failure to object to the admission of Detective
Solan's affidavit. (*Id.*). On November 23, 1999, the trial court
denied this motion, holding that the claim Petitioner raised
could have been found in the trial record and raised on direct
appeal. (Exhibit 24).

In a decision issued on September 29, 2000, the
Appellate Division affirmed Petitioner's conviction. *People
v. Blackshear,* 275 A.D.2d 966, 715 N.Y.S.2d 189 (4th Dep't
2000). The appeals court found that Petitioner failed to
preserve his speedy trial and judicial misconduct claims. *Id.*

On October 17, 2000, Petitioner applied for leave to appeal
to the Court of Appeals. Petitioner asserted only three of
the four issues he raised before the Appellate Division,
specifically: (1) that the doctrine of collateral estoppel should
have been applied by the trial court to preclude the admission
of Detective Solan's statement at trial; (2) that the statement of
Detective Solan should have been suppressed; and (3) that the
delay in holding the second *Huntley* hearing and subsequent
trial deprived Petitioner of his right to due process by speedy
trial. (Exhibit 37). Petitioner's application for leave to appeal
to the Court of Appeals was later denied on February 5, 2001.
*People v. Blackshear,* 94 N.Y.2d 954 (2000).

**\*4** On October 20, 2000, Petitioner also moved for re-
argument before the Appellate Division, Fourth Department.
On December 27, 2000, the Fourth Department denied
Petitioner's motion for re-argument. *People v. Blackshear,*
738 N.Y.S.2d 253 (4th Dep't 2000). On February 25, 2001,
Petitioner sought leave to appeal the denial of his re-argument
motion, which was denied on August 8, 2001. *People v.
Blackshear,* 96 N.Y.2d 916, 732 N.Y.S.2d 632, 758 N.E.2d
658 (2001).

On April 19, 2001, Petitioner filed a third motion pursuant
to CPL § 440.10. Petitioner argued that the trial court denied
him due process of law when it allowed Detective Solan's
affidavit into evidence. On April 27, 2001, the trial court
denied Petitioner's motion again because the issue could have
been raised on direct appeal.

On June 19, 2002, Petitioner filed a fourth motion pursuant to
CPL § 440.10, arguing that his trial counsel was ineffective
for his failure to assert a Speedy Trial Motion on the
remaining counts of the superseding indictment. (Exhibit 57).
On July 29, 2002, the trial court found that Petitioner was
procedurally barred from raising this issue, because he could

have raised it on direct appeal. The trial court also found the claim to be without merit because there was no valid claim for speedy trial for trial counsel to assert.

On May 17, 2002, Petitioner, proceeding *pro se,* filed a writ of error *coram nobis* with the Appellate Division, Fourth Department. Petitioner raised eight claims in support of the writ: (1) that his appellate counsel failed to properly investigate viable issues to submit on appeal; (2) that appellate counsel failed to properly raise the issue that Petitioner was denied his right to counsel after his initial arrest by the Syracuse Police; (3) that appellate counsel failed to raise that his constitutional rights were violated when he was not given his Miranda warnings prior to Detective Solan questioning him; (4) that appellate counsel failed to raise issues of collateral estoppel; (5) that appellate counsel failed to raise the issues that he was illegally seized and arrested by the Onondaga County Sheriff's Department; (6) that appellate counsel failed to raise the issue that Detective Solan's statement should have been suppressed because it was not attenuated from Petitioner's illegal arrest; (7) that appellate counsel failed to raise the issue that his verdict was against the weight of the evidence; and (8) that he was denied effective assistance of counsel when counsel who was assigned for his appeal withdrew without filing an *Anders* [9] brief and his appeal was filed by a student working towards taking the New York State bar exam. (Exhibit 51). Petitioner's motion was denied by the Appellate Division on October 1, 2002. *People v. Blackshear,* 298 A.D.2d 1008, 751 N.Y.S.2d 801 (4th Dep't 2002). Petitioner's application for leave to appeal the denial was denied by the Court of Appeals on February 27, 2003. *People v. Blackshear,* 99 N.Y.2d 612, 757 N.Y.S.2d 822, 787 N.E.2d 1168 (2003).

[9]   In Petitioner's Memorandum of Law at Exhibit 51, he cites to the United States Supreme Court case of *Anders v. State of Cal.,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

**D. Federal Habeas Corpus Proceedings**

 **\*5**  Petitioner, proceeding *pro se,* commenced this action on April 2, 2003, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Western District of New York. (Docket No. 1).

On April 11, 2003, this action was transferred to the United States District Court for the Northern District of New York. (Docket No. 4). In his Petition, Petitioner asserts six grounds

for habeas relief: (1) that he was denied his constitutional right under the Fifth Amendment by the failure of Detective Solan to administer *Miranda* warnings before questioning him; (2) that his rights were violated under the doctrine of collateral estoppel; (3) that he was illegally seized and arrested by the Onondaga County Sheriff's Department; (4) that Detective Solan's statement should have been suppressed because it was not attenuated from his illegal arrest; (5) that his conviction was not supported by legally sufficient evidence; and (6) that he received ineffective assistance of trial and appellate counsel. (Docket No. 1 and 10).

Thereafter, Respondent made motion to dismiss the Petition as untimely. (Docket No. 14 & 15). On November 17, 2003, the Honorable Gustave DiBianco, United States Magistrate Judge, wrote a Report and Recommendation denying the motion, which recommendation was later adopted by the Honorable Lawrence E. Kahn, United States District Judge, on June 25, 2004. (Docket No. 18 & 22).

Respondent then filed submissions in opposition to the Petition. (Docket No. 28). Petitioner filed his Traverse on November 12, 2004. (Docket No. 30). Respondent filed further submissions and Petitioner filed a supplemental traverse in May of 2005. (Docket Nos. 31, 32).

For the reasons stated below, this Court recommends that the Petition be DISMISSED.

### III. DISCUSSION

**A. Federal Habeas Corpus Standard**

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits." 28 U.S.C. § 2254(d); *Sellan v. Kuhlman,* 261 F.3d 303, 309-10 (2d Cir.2001). The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan,* 261 F.3d at 313 (quotation omitted). The Second Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA. *Id.* at 312-313.

2008 WL 150414

Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> **\*6** (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

While both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, *Whitaker v. Meachum,* 123 F.3d 714, 715 n. 1 (2d Cir.1997), AEDPA also requires a Petitioner to rebut that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *LanFranco v. Murray,* 313 F.3d 112, 117 (2d Cir.2002). A presumption of correctness applies to findings by both state trial and appellate courts. *Galarza v. Keane,* 252 F.3d 630, 635 (2d Cir.2001); *Whitaker,* 123 F.3d at 715 n. 1.

In *Williams v. Taylor,* 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law. A state court decision is "contrary to clearly established federal law ... if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." *Id.*

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." *Id.*

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to

state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted).

## B. Petitioner's Claims

As set forth above, Petitioner asserts six claims in support of his Petition. This Court will discuss each claim in turn. [10]

[10]  Respondent attempts to reassert arguments regarding the timeliness of the Petition. (Docket No. 28 at 12). However, in the interest of judicial economy and for the reasons set forth in Judge DiBianco's previous Report and Recommendation (Docket No. 18), later adopted by Judge Kahn (Docket No. 22), addressing this issue, as well as the fact that the Petition is without merit, the Court will assume the Petition is timely and proceed to discuss the merits. The Court notes that the previous decision discussed the issue of retroactivity that Respondent raises now. *See* (Docket No. 18). Respondent also argues that Petitioner's claims one, three, five and six are procedurally barred, however; also in the interest of judicial economy, and because Petitioner's claims are without merit, the Court will discuss the merits of each claim in turn.

### 1. Claim One-*Miranda* Warnings

Petitioner asserts that the affidavit written by Detective Solan after his interview of Petitioner should have been suppressed due to Detective Solan's failure to issue additional *Miranda* warnings to Petitioner continuing the interview.

Petitioner acknowledges that he was given *Miranda* warnings hours earlier by a Syracuse Police officer, and that Detective Solan confirmed that he had been advised of his rights and understood them. (Docket No. 10 at 1). However, Petitioner argues that Detective Solan's reminder warning was incomplete and his affidavit should therefore have been suppressed.

**\*7** It is undisputed that Petitioner was in custody when he was interviewed by Detective Solan. As such, the questions presented are whether Detective Solan properly informed Petitioner of the *Miranda* warnings and whether Petitioner knowingly, intelligently and voluntarily waived his rights.

2008 WL 150414

After conducting a suppression hearing, the trial court concluded that Petitioner's statements "were voluntary beyond a reasonable doubt and not the product of any unlawful detention." (Exhibit 7, at p. 8). In support of this conclusion, the trial court noted the evidence that Petitioner was provided with verbal and written *Miranda* warnings and that Detective Solan discussed the warnings with Petitioner and obtained assurances from Petitioner that he had received the warnings and was willing to continue with the interview. (Exhibit 7, at p. 3, 4, 7).

The trial court's findings were based upon an extensive development of the record via a suppression hearing involving the testimony of multiple witnesses and introduction of documentary evidence. As such, the trial court's factual findings are entitled to a presumption of correctness and the Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. *Nelson v. Walker,* 121 F.3d 828, 833-34 (2d Cir.1997); *see also Towndrow v. Kelly,* 98-CV-0509, 2000 WL 33743385, at *4 (N.D.N.Y. Dec.20, 2000) ("Factual findings relevant to the voluntariness of a habeas petitioner's confession made by the state court are entitled to the presumption of correctness; a petitioner is required to rebut this presumption by clear and convincing evidence.").

This Court finds that Petitioner has failed to meet this burden and that the state court's findings are entitled to the presumption of correctness provided pursuant to 28 U.S.C. § 2254(e)(1). Indeed, as noted above, Petitioner admits the essential facts, *i.e.* that he was initially given his *Miranda* warnings and that Detective Solan confirmed that Petitioner had been advised of his rights before questioning him. (Docket No. 10 at 1).

It is well settled that *Miranda* does not require any kind of "talismanic incantation" in order to satisfy its procedural safeguards. *California v. Prysock,* 453 U.S. 355, 359, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981). With respect to the question of whether and when renewed *Miranda* warnings are necessary, the Supreme Court has declared that a court should look to the "totality of the circumstances." *Wyrick v. Fields,* 459 U.S. 42, 47-48, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982).

In *Fields,* the defendant had voluntarily, knowingly and intelligently waived his Fifth Amendment right to have counsel present at his polygraph examination. Once the test concluded, the police continued to question the defendant

about the results. The defendant moved to suppress his post-polygraph statements on the basis that he should have received renewed *Miranda* warnings. The Supreme Court disagreed, reasoning that the defendant "validly waived his right to have counsel present at 'post-test' questioning, unless the circumstances changed so seriously that his answers no longer were voluntary, or unless he no longer was making a 'knowing and intelligent relinquishment or abandonment' of his rights." *Id.* at 47, 459 U.S. 42, 103 S.Ct. 394, 74 L.Ed.2d 214 (quoting *Edwards v. Arizona,* 451 U.S. 477, 482, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)). Rather than focusing narrowly on the time that had elapsed, the Supreme Court evaluated the totality of the circumstances to determine whether renewed *Miranda* warnings were necessary.

**\*8** In the present case, this Court finds that the state court's consideration of the relevant facts and circumstances and its resulting determination that renewed warnings were unnecessary was neither contrary to clearly established federal law, as determined by the Supreme Court, nor an unreasonable determination of the facts in light of the evidence presented. Accordingly, this Court concludes that Petitioner is not entitled to habeas relief on this claim and it should be DISMISSED.

### 2. Claim Two-Collateral Estoppel

In Petitioner's second claim for relief, he asserts that his constitutional rights were violated when the prosecution re-litigated issues from his prior indictment in this case. After an initial suppression hearing, the trial court found that collateral estoppel prevented the prosecution from re-litigating the issues of lawfulness of Petitioner's arrest by the Syracuse Police Department and removal to the police department on a parole violation warrant, as well as the delay in his arraignment for that arrest. (Exhibit 4 at p. 7). Petitioner asserts that the prosecution proceeded to violate that order by entering the testimony of a Syracuse Police Officer at his second suppression hearing because the police officer testified as to issues surrounding Petitioner's arrest by the Syracuse Police. (Docket No. 10 at 3).

The doctrine of collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson,* 397 U.S. at 443, 90 S.Ct. 1189, 25 L.Ed.2d 469; *accord,* e.g., *Dowling v. United States,* 493 U.S. 342, 356, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990).

Case 9:19-cv-00952-LEK-TWD   Document 22   Filed 07/27/22   Page 109 of 202
Blackshear v. Donnelly, Not Reported in F.Supp.2d (2008)
2008 WL 150414

Collateral estoppel acquired constitutional dimension when the Supreme Court held in *Ashe* that the doctrine is embodied in the Fifth Amendment guarantee against Double Jeopardy and is applicable to the States through the Fourteenth Amendment. *Ashe,* 397 U.S. at 445-46, 90 S.Ct. 1189, 25 L.Ed.2d 469. Collateral estoppel differs from Double Jeopardy in that constitutional jeopardy may attach long before the jury has rendered a verdict, whereas collateral estoppel applies only when there has been a final judgment.

Moreover, constitutional Double Jeopardy usually relates only to subsequent prosecutions involving the same offense. *See Dowling,* 493 U.S. at 356, 110 S.Ct. 668, 107 L.Ed.2d 708 (citing *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 571, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977)). Collateral estoppel is broader in scope in that it prohibits the state from re-litigating ultimate facts resolved in the defendant's favor by the prior acquittal. *Id.* (citing *Ashe,* 397 U.S. at 445-446, 90 S.Ct. 1189, 25 L.Ed.2d 469).

In addition to being protected against retrial for the "same offense," the defendant thus is protected by the doctrine of collateral estoppel against prosecution for an offense that requires proof of a fact found in his favor in a prior proceeding. *Id.* (noting that *Ashe* "significantly expanded the protection to which a defendant is constitutionally entitled after an acquittal by holding that the Double Jeopardy Clause incorporates the doctrine of criminal collateral estoppel").

\*9 In this case, the trial court found that while the issues of Petitioner's arrest were collaterally estopped from being re-litigated, it also found that the prosecution was permitted to litigate the issues of voluntariness, adequacy of *Miranda* rights issue, and "other issues relative to the defendant's alleged conversation with Sheriff's Department investigators, as those issues were not within the scope of the original hearing." (Exhibit 4 at p. 7). The introduction of the Syracuse Police Officer's testimony at the second suppression hearing did not violate the doctrine of collateral estoppel and was necessary to provide background information and explain why Petitioner was at the police department and other facts that supported the admissibility of Detective Solan's statement, which had not previously been litigated and therefore not collaterally estopped.

Moreover, compelling policy considerations disfavor Petitioner's collateral estoppel claim. In the civil context, courts readily apply the collateral estoppel doctrine in an endeavor to ensure the integrity of the judicial system and provide finality to litigants. *Johnson v. Watkins,* 101 F.3d at 795 (citing *People v. Aguilera,* 82 N.Y.2d 23, 30, 603 N.Y.S.2d 392, 623 N.E.2d 519 (1993)). However, while the integrity of the judicial system is equally important in criminal cases, collateral estoppel "is less liberally applied in criminal cases than in civil actions, because 'considerations peculiar to the criminal process may outweigh the need to avoid repetitive litigation.' " *Pinkney v. Keane,* 920 F.2d at 1096 (citing *People v. Plevy,* 52 N.Y.2d 58, 64, 436 N.Y.S.2d 224, 417 N.E.2d 518 (1980)).

Given that issues of public safety and the rights of individual defendants are at stake in criminal matters, concern with reaching the correct result inevitably must outweigh the efficiency concerns that might otherwise favor application of the collateral estoppel doctrine. *See Standefer v. United States,* 447 U.S. 10, 25, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980).

Accordingly, Petitioner's second claim for habeas relief should be DISMISSED.

### 3. Claim Three-Petitioner's Alleged Illegal Arrest by the Onondaga Sheriff

In Petitioner's third claim for habeas relief, he alleges that his arrest by the Onondaga County Sheriff was illegal and in violation of his Fourth Amendment rights. Specifically, Petitioner asserts that his arrest was not based on probable cause and therefore his statement to Detective Solan should have been suppressed.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. However, in *Stone v. Powell,* 428 U.S. 465, 482, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Supreme Court held that "where the State has provided an *opportunity* for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." (emphasis added).

\*10 Following *Stone,* the Second Circuit developed a "litmus test to discern when a state prisoner has been denied an opportunity for full and fair litigation of his fourth amendment claims." *Capellan v. Riley,* 975 F.2d 67, 69-71

(2d Cir.1992) (citing *Gates v. Henderson,* 568 F.2d 830 (2d Cir.1977) (en banc)).

The Second Circuit has concluded that review of Fourth Amendment claims presented by habeas petitioners would be undertaken in only one of two instances: (a) if the State provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (b) if the State has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an "unconscionable breakdown in the underlying process." *Id.* (quoting *Gates,* 569 F.2d at 840 and citing *McPhail v. Warden Attica Correctional Facility,* 707 F.2d 67, 70 (2d. Cir.1983)).

"The federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y.Crim. Proc. Law § 710.10 *et seq.* (McKinney 1984 & Supp.1988), as being facially adequate.' " *Capellan,* 975 F.2d at 70 n. 1 (quoting *Holmes v. Scully,* 706 F.Supp. 195, 201 (E.D.N.Y.1989) and citing *Gates,* 568 F.2d at 837 & n. 4; *Shaw v. Scully,* 654 F.Supp. 859, 864 (S.D.N.Y.1987)).

In the present case, Petitioner's claim that Onondaga County Sheriff lacked probable cause with respect to his seizure was raised and reviewed before the trial court. (Exhibit 7 at 5, Exhibit 12 at 5). Petitioner also raised this claim in his first CPL § 440.10 motion to vacate judgment before the trial court. The trial court considered and denied the motion. (Exhibit 20) (citing CPL § 440.10(3)(b) & (c)). Thereafter, Petitioner was denied leave to appeal that decision by the Appellate Division. Subsequently, Petitioner's application to the New York Court of Appeals was denied. (Exhibit 35).

Accordingly, New York State clearly provided corrective procedures to address Petitioner's Fourth Amendment claim. *See Ferron v. Goord,* 255 F.Supp.2d 127, 131-32 (W.D.N.Y.2003) (holding that petitioner's "various applications before the trial and appellate state courts challenging the search warrant clearly show that he was given an opportunity for a 'full and fair' litigation of his Fourth Amendment claims.").

Therefore, the sole question presented with respect to this claim is whether there was an "unconscionable breakdown" in the corrective process provided by New York State. This Court finds that Petitioner has failed to establish that an "unconscionable breakdown" occurred.

Petitioner asserts that the state court erroneously decided his motion to suppress Detective Solan's statement, and he seems to be requesting that this Court conduct a *de novo* factual review of his claims. This relief, however, is expressly forbidden by the *Stone v. Powell* doctrine. as the Second Circuit has explained many times:

**\*11**  As the Second Circuit has explained many times, a petitioner's mere dissatisfaction or disagreement with the outcome of a suppression motion is not sufficient to establish that an "unconscionable breakdown" occurred in the existing process in violation of the petitioner's Fourth Amendment rights under the Constitution. *Capellan,* 975 F.2d at 71 ("[T]o the extent that [petitioner] claims that the Appellate Division erred in its ruling ..., this would not give us authority to review his claims since a mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process.") (emphasis supplied); *Gates v. Henderson,* 568 F.2d at 840 (*"Stone v. Powell ...* holds that we have no authority to review the state record and grant the writ simply because we disagree with the result reached by the state courts.").

The Second Circuit has explicitly rejected the possibility of interpreting *Stone v. Powell* to require the reviewing court to focus on the correctness of the state court's corrective procedures for adjudicating Fourth Amendment claims, rather than on the existence and application of the corrective procedures themselves.

According to the Second Circuit, to subject a habeas petitioner's previously litigated Fourth Amendment claims to further federal review would be to assume, "implicitly at least, that state courts were not responsible forums in which to bring constitutional claims such as is presented herein." *Capellan,* 975 F.2d at 71. *Stone v. Powell,* however, "expressly discouraged" it from making such an assumption. *Id.* (citing *Powell,* 428 U.S. at 493-94 n. 35) ("[W]e are unwilling to assume that there now exists a general lack of appropriate sensitivity to constitutional rights in the trial and appellate courts of the several States.").

Here, as noted above, Petitioner took full advantage of the available state process by presenting his Fourth Amendment claim at both the suppression hearings and in his post-trial C.P.L. § 440.10 motion. A petitioner's mere disagreement with the outcome of the state courts' rulings "is not the equivalent of an unconscionable breakdown in the state's corrective process." *Capellan,* 975 F.2d at 72; *accord,* e.g.,

*Watkins v. Perez,* No. 05 Civ. 477(GEL), 2007 WL 1344163, *23 (S.D.N.Y. May 30, 2007) (holding that without more, rejection by state appellate court of petitioner's Fourth Amendment claims, is not an "unconscionable breakdown" in the state's corrective process; noting that a "habeas court cannot grant relief simply because it may disagree with the state court's resolution of the claim"); *Huntley v. Superintendent,* No. 9:00CV191, 2007 WL 319846, at *8 (N.D.N.Y.Jan.30, 2007); *Gonzalez v. Superintendent, Sullivan Corr. Fac.,* 761 F.Supp. 973, 977 (E.D.N.Y.1991) (rejecting habeas petitioner's claim that state court denied his request for a probable cause hearing insufficient facts asserted to warrant such a hearing was "unconscionable breakdown" in the process afforded by the state; petitioner was provided, as mandated by *Stone,* with a full and fair opportunity to litigate his fourth amendment claim in the state courts and "[t]he fact that petitioner was denied his request for such a hearing does not, in and of itself, affect the legitimacy of the state process").

 *12 Under these circumstances, the doctrine of *Stone v. Powell* precludes *de novo* review of state court fact-finding on a Fourth Amendment issue. Accordingly, the Court recommends that Petitioner's Fourth Amendment claims relating to suppression of his statement to Detective Solan based upon the alleged lack of probable cause be DISMISSED.

### 4. Claim Four-Suppression of Statement to Detective Solan

Petitioner asserts that his oral admissions made to Detective Solan should have been suppressed because they were not attenuated from the prior arrest by the Syracuse Police that the trial court found to be illegal. Petitioner contends that the trial court's failure to suppress his oral statements to Detective Solan violated his Fourth Amendment rights.

For the reasons discussed above with respect to Petitioner's third claim for habeas relief, this Court finds that Petitioner was afforded with a full and fair opportunity to litigate this Fourth Amendment claim before state courts and, as such, this claim is not cognizable on habeas review and should therefore be DISMISSED. *Stone,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067.

### 5. Claim Five-Sufficiency of the Evidence

In Petitioner's fifth claim for habeas relief, he essentially asserts that if Detective Solan's testimony were not admitted into evidence, there would not have been sufficient evidence to convict him. He attempts to reargue the suppression of Detective Solan's statement and testimony. (Docket No. 10 at 5-6). Petitioner claims that without Detective Solan's testimony, none of the prosecution's witnesses placed him at the scenes of the burglaries. (*Id.*). For the reasons discussed above, Petitioner is not entitled to habeas relief based upon the admission of Detective Solan's testimony and to the extent Petitioner is reasserting that claim, it should be DISMISSED.

With respect to Petitioner's assertion that the evidence was insufficient, a habeas petitioner challenging the sufficiency of the evidence bears "a very heavy burden." *Ponnapula v. Spitzer,* 297 F.3d 172, 179 (2d Cir.2002) (quotation marks omitted); *Einaugler v. Supreme Court of New York,* 109 F.3d 836, 840 (2d Cir.1997) (quotation marks omitted). A habeas challenge to the sufficiency of the evidence "does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' " *Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (quoting *Woodby v. INS,* 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966)). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (emphasis in original).

Thus, a habeas court must uphold a conviction unless, upon the record evidence adduced at trial, no rational trier of fact could have found that the prosecution established the defendant's guilt beyond a reasonable doubt. *See id.; accord Ponnapula,* 297 F.3d at 179 ("[W]e review the evidence in the light most favorable to the State and [hold that] the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial.").

 *13 Petitioner was found guilty of committing Burglary in the Second Degree, in violation of NYPL § 140.25(2). "A person is guilty of burglary in the second degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when: ... (2) The building is a dwelling." (N.Y.PL § 140.25(2)).

The evidence at trial established that various apartments or "dwellings" were burglarized and Detective Solan's testimony established that Petitioner admitted to committing

2008 WL 150414

the burglaries. In sum, viewing the evidence in the light most favorable to the prosecution, Petitioner has failed to establish that no rational trier of fact could have found him guilty beyond a reasonable doubt. *Ponnapula,* 297 F.3d at 179; *see also Maldonado v. Scully,* 86 F.3d 32, 35 (2d Cir.1996) (dismissing habeas claim because assessments of the weight of the evidence or the credibility of witnesses are for the jury or trial court and not grounds for reversal on appeal; stating that it must defer to the trier of facts' assessments of both of these issues). Accordingly, Petitioner's fifth claim for habeas relief should be DISMISSED.

### 6. Claim Six-Effective Assistance of Trial and Appellate Counsel

Petitioner argues that both his trial counsel and appellate counsel were ineffective. Petitioner claims that his trial counsel failed to move to have Detective Solan's statement suppressed at trial. Petitioner claims that his appellate counsel was ineffective because his assigned counsel did not prepare his appeal but that his appeal was prepared by a law clerk with *pro hac vice* status. [11] Petitioner argues that the appellate attorney/law clerk failed to preserve by raising critical issues on direct appeal.

[11]    Although it is unclear from the record, Petitioner asserts that the law clerk was a law student awaiting her bar results. It would seem improper to confer to a person who is not a member of the bar *"pro hac vice"* status. Respondent does not dispute appellate counsel's *pro hac vice* status. (Docket No. 28 at 25). In any event, as discussed below, Petitioner was not prejudiced by appellate counsel's representation because his claim is meritless.

To prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a habeas petitioner must satisfy a two-part test. First, the petitioner must demonstrate that counsel's performance was so deficient that counsel was not functioning as "counsel" within the meaning of the Sixth Amendment to the Constitution. *Id.* at 688. In other words, a petitioner must show that his attorney's performance "fell below an objective standard of reasonableness." *Id.*

Second, the petitioner must show that counsel's deficient performance prejudiced him. *Id.* at 694. To establish the "prejudice" prong of the *Strickland* test, a petitioner must

show that a "reasonable probability" exists that, but for counsel's error, the outcome of the trial would have been different. *Id.* at 694. The issue of prejudice need not be addressed, however, if a petitioner is unable to demonstrate first that his counsel's performance was inadequate. "[T]here is no reason for a court deciding an ineffective assistance claim to ... address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

**\*14** As discussed above, the admission of Detective Solan's statement and testimony did not violate Petitioner's constitutional rights and, as such, Petitioner cannot demonstrate prejudice as a result of his trial counsel's alleged ineffectiveness.

With respect to his appellate counsel, Petitioner asserts that critical issues were not raised on appeal. Specifically, Petitioner claims that the issues of *Miranda* warnings, Fourth Amendment violations, attenuation, weight of the evidence, and ineffective assistance of trial counsel were not raised and therefore unpreserved by his appellate counsel.

Failure to raise an argument on appeal constitutes ineffective assistance of counsel only when the omitted issue is clearly stronger and more significant than those presented. *See id.* (citing *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir.1986)). To establish the requisite level of prejudice resulting from appellate counsel's shortcomings, a petitioner must establish that there is a reasonable probability that the omitted "claim would have been successful before the [state's highest court]." *Id.* (quoting *Claudio v. Scully,* 982 F.2d 798, 803-05 (2d Cir.1992)); see also *People v. La Hoz,* 131 A.D.2d 154, 158, 520 N.Y.S.2d 386 (App.Div. 1st Dept.1987) ("The burden lies with those raising the issue to rebut the presumption that counsel has been effective. The mere existence of an unraised issue will not suffice. A defendant must show that had the issue been raised a greater likelihood would exist that the judgment of appeal would have been reversed, or at least, modified. The right of appeal only guarantees review, not reversal."), *appeal dism'd* 70 N.Y.2d 1005, 526 N.Y.S.2d 940, 521 N.E.2d 1083 (N.Y.1988).

In the present case, Petitioner has not demonstrated that there is a likelihood that his conviction would have been reversed or modified if appellate counsel had raised the issues advanced by Petitioner. Indeed, for the reasons discussed above, the claims in question are lacking in merit. As such, Petitioner cannot establish prejudice as a result of his appellate counsel's decision not to raise the claims. *See Brunson v. Tracy,* 378

2008 WL 150414

F.Supp.2d 100, 113 (E.D.N.Y.2005) ("Appellate counsel's decision was therefore simply not ineffective, but prudent, as the raising of this frivolous argument may well have distracted from other, more meritorious issues urged by appellate counsel.").

Accordingly, Petitioner's sixth claim for habeas relief should be DISMISSED.

## IV. CONCLUSION

For the reasons stated above, the Court recommends Douglas Blackshear's petition for a writ of habeas corpus pursuant to 28 U.S .C. § 2254 be denied and that the Petition be dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not issue. *See* 28 U.S.C. § 2253(c)(2) (1996).

## V. ORDERS

Pursuant to 28 USC § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**\*15 ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this**

Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *F.D.I.C. v. Hillcrest Associates,* 66 F.3d 566 (2d. Cir.1995); *Wesolak v. Canadair Ltd. .,* 838 F.2d 55 (2d Cir.1988); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/ or evidentiary material *which could have been, but were not,* presented to the Magistrate Judge in the first instance. *See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 150414

---

End of Document                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 5446979
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Peter GOMEZ, Petitioner,

v.

Mark MILLER, Superintendent, Green

Haven Correctional Facility [1], Respondent.

[1]
Mark Miller, Superintendent, Green Haven
Correctional Facility, is substituted for Mark
Royce. Fed. R. Civ. P. 25(c).

9:19-CV-1571 (TJM)
|
Signed November 20, 2021
|
Filed 11/22/2021

**Attorneys and Law Firms**

PETER GOMEZ, Petitioner pro se, 15-A-3674, Green Haven
Correctional Facility, P.O. Box 4000, Stormville, NY 12582.

HON. LETITIA JAMES, Attorney for Respondent, OF
COUNSEL: PAUL B. LYONS, ESQ., Ass't Attorney General,
New York State Attorney General, 28 Liberty Street, New
York, NY 10005.

**DECISION and ORDER**

Thomas J. McAvoy, Senior, United States District Judge

**I. INTRODUCTION**

**\*1** Petitioner Peter Gomez ("Petitioner") seeks federal
habeas corpus relief pursuant to 28 U.S.C. § 2254. Dkt.
No. 1 ("Petition"). On January 22, 2021, with the Court's
permission, Petitioner filed a Second Amended Petition. Dkt.
No. 24 ("Sec. Am. Pet."). On January 26, 2021, the Court
directed Respondent to answer the Second Amended Petition.
Dkt. No. 25. Respondent opposed the petition. Dkt. No. 28,
Memorandum of Law in Opposition; Dkt. No. 29, Answer;
Dkt. No. 30, State Court Records. Petitioner filed a traverse
(Dkt. No. 32) and a supplemental traverse (Dkt. No. 34).

For the reasons that follow, the habeas petition is denied and
dismissed.

**II. RELEVANT BACKGROUND**

**A. Indictment**
In April 2014, an Albany County grand jury returned
a four-count indictment charging Petitioner with criminal
possession of a controlled substance in the first degree,
criminal possession of a controlled substance in the third
degree, criminal sale of a controlled substance in the first
degree, and operating as a major trafficker. SR. at 14-18. [2]
The charges arose from Petitioner's possession of cocaine
with intent to sell in Cohoes, New York on March 18, 2014.
*Id.* Police executed a search warrant for the search of a 2010
black Nissan and recovered four clear plastic bags containing
cocaine. *Id.* at 138-139, 143.

[2]
"SR" refers to the state court record, found at Dkt.
No. 30-1. "TR" refers to the transcripts of the
suppression, plea, and sentencing hearings, found
at Dkt. No. 30-2. Citations to the submissions refer
to the pagination generated by CM/ECF, the Court's
electronic filing system.

**B. Suppression Hearing**
In May 2014, Petitioner filed a pre-trial counseled omnibus
motion. SR. at 115-151. Of relevance herein, Petitioner
sought a *Huntley* and *Dunaway-Mapp* [3] hearing related to
tangible property recovered from a search of his vehicle and
his oral statements. *Id.* The trial court scheduled a *Huntley* and
*Dunaway-Mapp* hearing (hereinafter "suppression hearing")
to resolve the motions. *Id.* at 159.

[3]
A pretrial hearing pursuant to *People v. Huntley,*
15 N.Y.2d 72 (1965), is held to determine the
voluntariness of inculpatory statements made by a
criminal defendant to law enforcement officers. *See*
*Huntley,* 15 N.Y.2d at 77–78. A *Dunaway* hearing
is used to determine whether an arrest is supported
by probable cause. *Dunaway v. New York,* 442
U.S. 200, 99 S.Ct. 2248 (1979). A *Mapp* hearing
is a hearing to determine whether suppression of
evidence obtained pursuant to a search or seizure
by police officers is constitutionally warranted. *See*
*Mapp v. Ohio,* 367 U.S. 643 (1961).

The suppression hearing was held in Albany County Court on
June 27, 2014 and July 10, 2014. TR. at 118. Petitioner was
represented at the suppression hearing by retained counsel,
Attorney Cheryl Coleman. *Id.*

At the hearing, Inv. Missenis, an investigator assigned to the Community Narcotics Enforcement Team and employed with the State Police for over 24 years, was called to testify. TR. at 22-23. Inv. Missenis submitted an application for a search warrant to Cohoes City Court Judge Van Ullen on March 14, 2014. *Id.* at 24-25. In the application, Inv. Missenis outlined his investigation that led to the application to search a 2007 white Audi AQ7 bearing New York registration GLC-7699. *Id.* at 28-29, SR. at 147. In the sworn application, Inv. Missenis claimed he received information for an unnamed confidential informant ("CI") that Petitioner distributed large quantities of cocaine. SR. at 146–151. The CI reported Petitioner was expected to arrive in Cohoes on March 14, 2014 and that he drove "a couple different vehicles, a white Audi Q7" and "a black Nissan Sentra" with a New Jersey registration, owned by Petitioner's girlfriend. *Id.* at 148; TR. at 43. The black Nissan was not the target of the warrant because Inv. Missenis did not know the license plate number. TR. at 29, 44. Judge Van Ullen signed the warrant on March 14, 2014. SR. at 145. Inv. Missenis attempted to execute the warrant, but Petitioner did not arrive in Cohoes on March 14, 2014, in any vehicle. TR. at 13, 43.

**\*2** Inv. Missenis later learned from the CI that Petitioner would arrive "a few days later." TR. at 52-54. Inv. Missenis testified that, on March 18, 2014, at approximately 5:30 p.m., Petitioner arrived on Lincoln Avenue in Cohoes, NY in a black Nissan. *Id.* at 31. Inv. Missenis and Investigator Vardeen approached the driver's side of the vehicle and Vardeen "pulled out her gun." *Id.* at 40. Petitioner "ran off," but was apprehended within minutes, handcuffed and transported to the police station. *Id.*

After Petitioner was detained, Inv. Missenis submitted an application for a search warrant for a 2010 black Nissan with New Jersey registration H39DCY to Judge Van Ullen. TR. at 30-31. In the application, Inv. Missenis referred to the March 14, 2014 application and warrant. *Id.* at 44; SR. at 141. Inv. Missenis averred, "[i]t should be noted that a couple of minutes before the traffic stop, CS-1 contacted your affiant and advised that Peter Gomez was in the area of 27 Lincoln Ave with the delivery of cocaine." SR. at 142. Judge Van Ullen signed the warrant on March 18, 2014. *Id.* at 139. Inv. Missenis executed the search warrant and recovered two plastic bags from the trunk containing a 2.2-pound brick of powder cocaine. TR. at 35-36.

The prosecution also called Investigator Robert Marrero ("Inv. Marrero") to testify. TR. at 58. Inv. Missenis called Inv. Marrero on March 18, 2014 to speak with Petitioner because "they assumed he didn't speak any English." *Id.* at 59-60. Inv. Marrero did not tell Petitioner he was under arrest and, to Marrero's knowledge, no one else told Petitioner he was under arrest. *Id.* at 68-60. Inv. Marrero and Petitioner engaged in "small talk," in English and Spanish, at the State Police barracks in Latham. *Id.* at 61. At that time, Petitioner was in handcuffs and "chained to a wall." *Id.* at 71. During the conversation, Petitioner asked, in English, "what was going on" and Inv. Marrero responded "I really don't know" but explained to Petitioner that he was taken into custody because he ran from the vehicle. TR. at 62, 74. Petitioner then asked if there was a warrant on his vehicle and Inv. Marrero responded, "I don't know." *Id.* at 62, 75.

The trial court rendered a written decision denying Petitioner's motion to suppress. SR. at 163-169. The trial court concluded, "[t]he information submitted in the March 14, 2014 search warrant application was clearly incorporated by reference into the second search warrant application." *Id.* at 167. The trial court continued, "the prior search warrant application was both available to the City Court Judge and sufficiently fresh in the Judge's memory so that he could accurately assess it[ ]" and further, the prior search warrant application was "available to [the City Court Judge] in a form which could be reviewed at a later date." *Id.* Accordingly, the trial court concluded that the March 18, 2014 search warrant was not defective and denied Petitioner's motion to suppress the tangible evidence. *Id.* at 167-168. The trial court also denied Petitioner's motion to suppress his statements regarding a warrant for his vehicle finding, "although the conversation clearly took place in a custodial setting," the statements were "spontaneous and unprompted by any inquiry." SR. at 167-168.

### C. Supplemental Indictment

On October 7, 2014, Petitioner filed a counseled Order to Show Cause to dismiss Counts Two, Three, and Four of the indictment. SR. at 170-183. The trial court granted the motion, in part, and dismissed Counts Three and Four, with leave to re-present. *Id.* at 192. On January 23, 2015, the grand jury returned an indictment charging Petitioner with criminal sale of a controlled substance in the first degree and operating as a major trafficker. *Id.* at 18-19. This indictment was consolidated with the original indictment. *Id.* at 199.

**D. Plea and Sentencing Proceedings**

**\*3** On July 24, 2015, Petitioner and his counsel appeared in Albany Supreme Court for a hearing. TR. at 81. At the commencement, the trial court acknowledged that the People extended a plea offer to Petitioner; Petitioner would plead guilty to an A-II felony of criminal sale of a controlled substance in the second degree, in full satisfaction of the indictment, in exchange for a sentence of twelve years, five years post-release supervision, and a waiver of Petitioner's right to appeal. *Id.* at 81-82. Petitioner's counsel indicated he wished to accept the plea. *Id.* at 82.

Petitioner was placed under oath. TR. at 82. Petitioner stated he had enough time to discuss the case and plea agreement with his counsel. *Id.* at 85. Petitioner represented he could understand English and the proceedings, and had not taken any medication or drugs which would impair his thinking. *Id.* at 84-85. The court then explained the myriad of trial rights to which Petitioner was entitled and agreed to waive as a condition of the plea agreement. TR. at 86-87. Petitioner also stated he had not been promised anything or threatened into pleading guilty. *Id.* at 88. Petitioner was presented with, and signed, a waiver of appeal form. *Id.* at 90-91.

The court engaged in a colloquy with Petitioner whereupon he admitted to knowingly and unlawfully selling cocaine in excess of one-half ounce or more on March 18, 2014. TR. at 93-94. When the trial judge asked Petitioner if he had questions for the court, Petitioner "asked for a weekend" with his children. *Id.* at 95. The court responded, "I was willing to allow you to turn yourself in on Monday if you plead to the A-I with a possible sentence of up to 24 years." *Id.* at 96. The court stated that the plea offer was "A-II and you would plea to it today and be put in today." *Id.* Petitioner agreed. *Id.*

On September 4, 2015, Petitioner was sentenced as a second felony offender to a twelve-year determinate sentence followed by five years post-release supervision. TR. at 110.

On September 8, 2015, Petitioner's counsel filed a notice of appeal. SR. at 11.

**E. Direct Appeal**

On September 1, 2017, Petitioner filed a counseled brief and appendix in the Appellate Division, Third Department ("AD"). SR. 223-432. The issues raised by Petitioner in his direct appeal to the AD included: (1) the validity of his guilty plea and waiver of appeal; (2) the trial court erred in denying

Petitioner's motion to suppress the tangible evidence and his statements; and (3) the trial court imposed a harsh and excessive sentence. *Id.* at 229. The AD dismissed Petitioner's direct appeal on May 1, 2018. *People v. Gomez*, 162 A.D.3d 1311 (3d Dep't 2018).

First, the AD noted Petitioner's challenge to the voluntariness of his guilty plea was unpreserved for review and "defendant made no statements during the plea colloquy to trigger the narrow exception to the preservation requirement[.]" *Gomez*, 162 A.D.3d at 1312. Next, the AD agreed that Petitioner's appeal waiver was invalid. *Id.* Third, the AD concluded the trial court appropriately denied Petitioner's motion to suppress Petitioner's statement "because it was spontaneous and not elicited by police interrogation[.]" *Id.* Similarly, the AD found the trial court properly denied suppression of the cocaine seized from Petitioner's car because the police "incorporate[d] by reference the prior search warrant application into the subsequent application[.]" *Id.* The AD reasoned, "the earlier information was given under oath to the same judge, who had a copy available to him and it was fresh in his memory, having been submitted only four days earlier." *Gomez*, 162 A.D.3d at 1312. The AD found the confidential informant to be reliable noting that the informant previously provided information to the police in another investigation, and his information was supported by text messages, which were seen by the officer who applied for the search warrant. *Id.* Finally, given the nature of the crime and Petitioner's criminal history, the AD concluded that the sentence was not harsh or excessive. *Id.*

**\*4** The New York State Court of Appeals denied Petitioner's application for leave to appeal the AD's decision on January 14, 2019. SR. at 458.

**F. Motion to Vacate Judgment**

On February 21, 2018, while Petitioner's direct appeal was pending, he filed a pro se motion to vacate his conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10 on the grounds that: (1) the trial court lacked jurisdiction because a laboratory report was not filed with the court pursuant to CPL § 715.50 [4] ; and (2) trial counsel was ineffective for: (a) failing to request a *Darden* [5] hearing; (b) failing to investigate the information in the search warrant application and affidavits; (c) failing to demand the identity of the confidential informant; (d) making inappropriate admissions in the omnibus motion; (e) failing to move to dismiss the indictment based upon CPL § 715.50; and (f)

unilaterally waiving Petitioner's right to testify before the grand jury. SR. at 459-480.

4    CPL § 715.50 provides, in pertinent part: "[...] in every felony case involving the possession or sale of a dangerous drug, the head of the agency charged with custody of such drugs, or his designee, shall within forty-five days after receipt thereof perform or cause to be performed an analysis of such drugs, such analysis to include qualitative identification; weight and quantity where appropriate. Within ten days after the report of such analysis is received by such agency, the head thereof or his designee shall forward a copy thereof to the appropriate district attorney and inform him of the location where the subject drugs are being held."

5    A *Darden* hearing is used to challenge the actual existence and reliability of any confidential informer who provided information that served as the basis for probable cause for a defendant's arrest. *See Daly v. Lee*, No. 11-CV-3030, 2014 WL 1349076, at *15 (E.D.N.Y. Apr. 4, 2014) (citing *Darden v. NY*, 34 N.Y.2d 177, 180 (1974)).

The People opposed Petitioner's § 440 motion. SR. at 545-549.

On July 2, 2018, the Albany Supreme Court denied Petitioner's § 440 motion. SR. at 551-553. The court first found Petitioner's jurisdictional claims to be without merit and held, "[t]he Court has not been persuaded that jurisdiction over the case and defendant would be in any way divested by the language of CPL § 715.50 and/or any of defendant's allegations about laboratory reports." *Id.* at 551-552. Second, citing to § 440.10(2)(b) [6], the trial court denied Petitioner's first five ineffective assistance of counsel claims holding that "sufficient facts appear on the record with respect to the ineffective assistance issue to permit adequate review thereof on appeal[.]" *Id.* The court also found that the sixth ground lacked merit. *Id.* The state court noted, "to the extent defendant has raised any additional ineffective assistance claims that are outside the record, the Court finds such arguments to be wholly conclusory and insufficient to warrant 440.10 relief and/or a hearing." *Id.* The court concluded, "[d]efendant's remaining arguments and requests for relief have been considered and found to be wholly lacking in merit." SR. at 522.

6    CPL § 440.10(2)(b) provides in pertinent part that a court may deny a motion to vacate a judgment when "[t]he judgment is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal."

**\*5** Petitioner filed an application for permission to appeal. SR. at 554-659. The AD denied Petitioner's request. *Id.* at 661.

### III. SECOND AMENDED PETITION

Petitioner contends he is entitled to federal habeas relief because (1) his plea was involuntary; (2) the search warrant lacked probable cause; (3) the trial court lacked jurisdiction; and (4) his retained counsel was constitutionally ineffective. Dkt. No. 24; Dkt. No. 25 at 3.

### IV. DISCUSSION

#### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. §§ 2254(d)(1), (2); *Cullen v. Pinholster*, 563 U.S. 170, 180-81, 185 (2011); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)).

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.' " *Nevada v. Jackson*, 569 U.S. 505, 508-509 (2013) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Metrish v. Lancaster*, 569 U.S. 351, 358 (2013) (explaining that success in a habeas case

2021 WL 5446979

premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.' ") (quoting *Richter*, 562 U.S. at 103).

Additionally, the AEDPA foreclosed "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 567 U.S. 37 (2012) (per curiam) (quoting *Renico*, 559 U.S. at 779). A state court's findings are not unreasonable under § 2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro*, 550 U.S. at 473.

Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "clear and convincing evidence." *Schriro*, 550 U.S. at 473-74 (quoting § 2254(e)(1)). "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015). Finally, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]" *Johnson v. Williams*, 568 U.S. 289, 301 (2013).

**B. Petitioner's Guilty Plea**
 **\*6** Petitioner contends his guilty plea was not made knowingly and intelligently due to the "coercive conduct of the trial court[.]" Dkt. No. 24 at 2. Respondent did not address this claim in the memorandum of law in opposition.

A federal court is precluded from issuing a writ of habeas corpus if an adequate and independent state-law ground justifies the petitioner's detention. *See Wainwright v. Sykes*, 433 U.S. 72, 81 (1977). Accordingly, "[f]ederal courts generally will not consider a federal issue in a case if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007) (citing *Lee v. Kemna*, 534 U.S. 362, 375 (2002)). This results in a state-law procedural default. *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *see also Harris v. Reed*, 489 U.S.

255, 262 (1989) ("[A] federal claimant's procedural default precludes federal habeas review ... only if the last state court rendering a judgment in the case rests its judgment on the procedural default.").

This analysis applies with equal force "whether the independent state law ground is substantive or procedural...." *Garvey*, 485 F.3d at 713 (citing *Lee*, 534 U.S. at 375). Pursuant to this analysis, a state law ground is generally adequate where "it is firmly established and regularly followed in the state;" however, "in certain limited circumstances, even firmly established and regularly followed state rules will not foreclose review of a federal claim if the application of the rule ... [wa]s exorbitant." *Id.* at 713-14 (internal quotation marks omitted) (citing *Lee*, 534 U.S. at 376).

Here, the AD held that Petitioner's challenge to the voluntariness of his plea was unpreserved because he did not make a proper postallocution motion. *Gomez*, 162 A.D.3d at 1311-1312.

> New York courts routinely and regularly require defendants to make a motion ... to withdraw their guilty plea or to vacate the judgment in order to preserve for appeal any claim relating to the validity of the plea itself ... the Appellate Division's reliance on the state procedural rule ... constitutes both an adequate and independent ground for its decision.

*Snitzel v. Murry*, 371 F.Supp.2d 295, 301 (W.D.N.Y. 2004) (citing cases); *see also Irvis v. Haggat*, No. 9:12-CV-1538 (FJS/TWD), 2015 WL 6737031, at *8-9 (N.D.N.Y. Nov. 3, 2015) ("Habeas courts in this Circuit have recognized that failure to move to withdraw a guilty plea or move to vacate a judgment of conviction constitutes an independent and adequate state procedural rule barring federal habeas review of claims challenging the voluntariness of a plea....") (citing cases).

While Petitioner filed a § 440 motion, the Petitioner challenged the court's jurisdiction and the assistance of counsel, not the validity of the plea itself. SR. at 459-480. In fact, Petitioner never argued that the plea was invalid,

2021 WL 5446979

instead focusing on his counsel's failure to investigate, failure to move to dismiss the indictment, and waiver of Petitioner's right to testify before the grand jury. *Id.* Filing a § 440 motion alone is not enough to preserve an involuntary plea claim; instead, the motion must actually allege said claim. *See Brown v. Rivera*, No. 9:05-CV-1478 (RFT), 2008 WL 2559372, at *2–*3 (N.D.N.Y. June 23, 2008) (dismissing petition as procedurally barred where petitioner's 440 motion "asserted several claims of ineffective assistance of counsel, however, none of those claims concerned [counsel's] failure to preserve this involuntary plea claim."). Therefore, this represents an independent and adequate state rule resulting in a procedural default of Petitioner's claim.

**\*7** Procedurally defaulted claims are not subject to habeas review unless a petitioner shows cause for the default and actual resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice, i.e., that he or she is actually innocent. *House v. Bell*, 547 U.S. 518, 536-39 (2006); *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014); *see Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (" '[A]ctual innocence' means factual innocence, not mere legal insufficiency.") (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). To establish cause, petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *Coleman*, 501 U.S. at 753. If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) (referring to the "cause-and-prejudice standard"); *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985).

Here, the petition neither alleged nor does the record support any contentions of cause or actual innocence. Moreover, the fact that Petitioner admitted his guilt indicates that no fundamental miscarriage of justice will occur if the procedural bar is applied. *See Carpenter v. Unger*, Nos. 9:10-CV-1240 (GTS/TWD), 9:12-CV-0957 (GTS/TWD), 2014 WL 4105398, at *38 (N.D.N.Y. Aug. 20, 2014) (accepting recommendation to dismiss habeas petition as procedurally barred because, in the absence of any other evidence to the contrary, petitioner's admission of guilt in his plea allocution undercut any claims of actual innocence); *Brown*, 2008 WL 2559372, at *3 (holding that "[i]n light of Petitioner's ... admissions, it is difficult to envision a meritorious claim

of innocence with respect to his conviction," therefore the Court's "decision not to consider [petitioner's] claim would not result in a fundamental miscarriage of justice.").

Because cause has not been established, no discussion of prejudice is necessary. Thus, there is nothing that can save Petitioner's procedurally defaulted claim: habeas relief is precluded.

In any event, even if this claim was not defaulted, no relief would issue. In order to comply with constitutional due process protections, a guilty plea must be knowing, voluntary and intelligent. *See U.S. v. Ruiz*, 536 U.S. 622, 628-689 (2002) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)); *Brady v. United States*, 397 U.S. 742, 748 (1970). "The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the [petitioner]." *Ferrer v. Superintendent*, 628 F.Supp.2d 294, 304 (N.D.N.Y. 2008) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quotation marks omitted)).

> Applying this standard, to establish that a criminal defendant's guilty plea was knowingly, intelligently, and voluntarily entered the court must find, based upon the record of the relevant plea proceedings, that he or she 1) was competent to proceed and was fully aware of the nature of the charges faced; 2) had a rational and factual understanding of the proceedings; and, 3) was cognizant of the constitutional protections relinquished upon entry of the plea.

*Capra v. LeClair*, No. 9:06-CV-1230 (GTS/DEP), 2010 WL 3323676, at *9 (N.D.N.Y. Apr. 12, 2010) (citing *Oyague v. Artuz*, 393 F.3d 99, 106 (2d Cir. 2004)).

In evaluating whether a plea was knowing and voluntary, a court may consider, "among other things, [petitioner's] allocution statements." *Carpenter*, 2014 WL 4105398, at *19 (citing *U.S. v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997)).

**\*8** [T]he representations of the [petitioner], his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also Padilla v. Keane*, 331 F.Supp.2d 209, 217 (S.D.N.Y. Aug. 19, 2004) ("Where ... [petitioner] ... has explicitly stated in his allocution that he fully understands the consequences of his plea and that he has chosen to plead guilty after a thorough consultation with his attorney, a district court on habeas review may rely on [petitioner's sworn statements and hold him to them.").

"It is not coercion if a defendant pleads guilty to avoid a harsher sentence." *Spikes v. Graham*, No. 9:07-CV-1129 (DNH/GHL), 2010 WL 4005044, at \*7 (N.D.N.Y. July 14, 2010) (citing *Brady v. United States*, 397 U.S. 742, 752–53 (1970)), *report and recommendation adopted*, 2010 WL 3999474 (N.D.N.Y. Oct. 12, 2010). "While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'-and permissible-'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.' " *Id.* (citations omitted).

During the plea hearing, the trial judge commented that Petitioner was charged with "a number of A-I felonies in the indictment" and despite those charges, Petitioner's counsel was "able to secure" a plea to an A-II felony. TR. at 85. When asked if he had questions of the court, Petitioner and the trial judge engaged in the following dialogue:

THE DEFENDANT: Not a question. But, like, you see that when I give myself up today I just asked for a weekend with my kids on Monday. I would be back on Monday. I'm ready to give myself up.

THE COURT: I already informed Miss Coleman and I'm sure she informed you, sir, I was more than happy to allow you to have the weekend to think about it and come back, or plea today to the A-I and come back. Ms. Coleman indicated that you were asking to plead to the A-II and you were willing to plead to it today and be put in.

THE DEFENDANT: I know. I figured that you would be concerned about me probably running, because I just figured you thought -- I thought that you would doubt that I would come in after I cop out to the A-I but I am just giving you the faith that I'm willing to give myself up today.

THE COURT: I was willing to allow you the weekend. Again, you knew we were on today and knew you were scheduled to start trial on Monday. I was willing to allow you to turn yourself in on Monday if you plead to the A-I with a possible sentence of up to 24 years. Ms. Coleman came back and indicated that you would prefer to plea to the A-II and you would plea to it today and be put in today. That is the plea bargain. Do you want to avail yourself of that plea bargain?

TR. at 96. Petitioner indicated that he wished to take the plea and had no further questions. *Id.*

A review of the transcript reveals that the judge explained the alternatives facing Petitioner without threatening or coercive language. *See Grimes v. Lempke*, No. 9:10-CV-68 (GLS/RFT), 2014 WL 1028863, at \*12 (N.D.N.Y. Mar. 14, 2014) (citing *United States ex rel. McGrath v. LaVallee*, 348 F.2d 373, 377 (2d Cir. 1965) ("The mere explanation of the alternatives facing the defendant ... does not support the habeas corpus petitioner's allegations that the judge tricked and coerced (him) into pleading guilty by means of false assurances of consideration and a shorter sentence and fear inducing language.") (internal quotation marks omitted)). Further, Petitioner's admissions during the plea hearing belie his claim that his plea was not knowingly entered. Petitioner's assurances that counsel explained the charges and options to him and that he understood the rights he was giving up by pleading guilty and the consequences of his plea, including his appeal waiver, *see* TR. at 85-91, are entitled to the "weighty presumption[s] favoring the veracity of a defendant's sworn

plea of guilty[.]" *Doe v. Menefee*, 391 F.3d 147, 173 (2d Cir. 2004); *see also Blackledge*, 431 U.S. at 74.

**\*9** Therefore, Petitioner's claim for habeas relief, on this ground, is denied.

### C. Fourth Amendment Claim

Petitioner argues the search warrant and application were defective and evidence seized pursuant to the warrant should have been suppressed. Dkt. No. 24 at 5. This claim is not cognizable on federal habeas review.

In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494-95; *see Pina v. Kuhlmann*, 239 F.Supp.2d 285, 289 (E.D.N.Y. 2003) ("It is well settled that [Fourth Amendment] claims are not cognizable for habeas corpus review where a State has provided a full and fair opportunity to litigate this issue."). As long as the state provides an opportunity to litigate a petitioner's Fourth Amendment claim, "it matters not whether the petitioner actually 'took advantage of the State's procedure.' " *Welch v. Artus*, No. 1:04-CV-0205, 2007 WL 949652 at *19 (W.D.N.Y. 2007) (quoting *Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002)).

Following *Stone*, review of Fourth Amendment claims in habeas petitions is proper only if: (1) the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (2) the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in that process. *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992) (citing *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977)); *see Ramdeo v. Phillips*, No. 1:04-CV-1157, 2007 WL 1989469 at *27 (E.D.N.Y. Jul. 9, 2007).

Petitioner cannot and does not contend that New York failed to provide a corrective procedure to redress his alleged Fourth Amendment claim. New York's corrective procedure for Fourth Amendment violations, codified at CPL § 710.10 *et seq.*, is facially adequate. *See* CPL § 710; *Capellan*, 975 F.2d at 70 n. 1. Under CPL § 710, a defendant may move to suppress evidence he claims was unlawfully obtained when he has "reasonable cause to believe that such [evidence] may be offered against him in a criminal action." *Huntley*

*v. Superintendent, Southport Corr. Fac.*, No. 9:00-CV-191 (DNH/GHL), 2007 WL 319846 at *7 (N.D.N.Y. Jan. 30, 2007) (quoting CPL § 710.20).

The record reflects that Petitioner took full advantage of his opportunity to completely adjudicate this matter in state court. *See* TR. at 18-79 (suppression hearing transcript). At the conclusion of the suppression hearing, a Decision and Order, with a detailed discussion of the facts and analysis of the relevant law, was issued. SR. at 163-169. The decision was examined on direct appeal by the AD. *Gomez*, 162 A.D.3d. at 1312.

Nor do Petitioner's claims demonstrate an unconscionable breakdown in the state's corrective process. An "unconscionable breakdown in the state's process must be one that calls into serious question whether a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society." *Cappiello v. Hoke*, 698 F.Supp. 1042, 1050 (E.D.N.Y. 1988) (noting such examples as bribing of trial judge, government's knowing use of perjured testimony, or use of torture to extract a guilty plea), *aff'd*, 852 F.2d 59 (2d Cir. 1988); *accord Capellan*, 975 F.2d at 70 (observing that "unconscionable breakdown" must entail some sort of "disruption or obstruction of a state proceeding"). The focus of the inquiry regarding whether there has been an "unconscionable breakdown" must be on "the existence and application of the corrective procedures themselves" rather than on the "outcome resulting from the application of adequate state court corrective procedures." *Capellan*, 975 F.2d at 71; *see Graham*, 299 F.3d at 134. Nothing in the record supports a finding that there was an unconscionable breakdown in the corrective process in this case.

**\*10** To the extent that Petitioner argues he was not afforded a full and fair opportunity to litigate his Fourth Amendment claim because the trial court failed to entertain a *Darden* hearing and his counsel was ineffective, *see* Dkt. No. 24 at 5; Dkt. No. 32 at 9, 18, that claim is insufficient to establish the sort of unconscionable breakdown necessary for the Court to address Petitioner's Fourth Amendment claims. *See Crenshaw v. Superintendent, Five Points Corr. Fac.*, 372 F.Supp.2d 361, 370 (W.D.N.Y. 2005) (finding the petitioner's "assertions that the state courts were incorrect and defense counsel incompetent do not constitute the sort of 'breakdown' referred to in *Gates v. Henderson*" that would permit habeas review of a Fourth Amendment claim); *Ferron v. Goord*, 255 F.Supp.2d 127, 132 (W.D.N.Y. 2003)

2021 WL 5446979

(rejecting the *Darden* argument in the context of Fourth Amendment claims); *Brown v. Donelli*, No. 05-CV-6085, 2009 WL 3429785, at \*4 (W.D.N.Y. Oct. 16, 2009) (holding that the trial court's failure to grant a *Darden* hearing was not an "unconscionable breakdown")*; Shaw v. Scully*, 654 F.Supp. 859, 865 (S.D.N.Y. 1987) ("Where petitioners have either taken advantage of an opportunity to present Fourth Amendment claims or deliberately bypassed the procedure ... courts within this circuit have refused to equate ineffective assistance of counsel with unconscionable breakdown.") (citations omitted); *Allah v. LeFevre*, 623 F.Supp. 987, 991-92 (S.D.N.Y. 1985) (rejecting a habeas claim that ineffective assistance of counsel can constitute an "unconscionable breakdown", stating that "it is plain from the majority opinion in *Gates* that the Court of Appeals had something other than ineffective assistance of counsel in mind when it speculated that an unconscionable breakdown in state process might permit federal habeas review.").[7]

[7]   The ineffective assistance of counsel claim is analyzed, *infra*, under *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984), *Vasquez v. New York*, No. 17-CV-697, 2020 WL 2859007, at \*6 (S.D.N.Y. Feb. 27, 2020) (reasoning that *Stone* does not bar an independent consideration of the ineffective counsel claim) (citations omitted), *report and recommendation adopted*, 2020 WL 1271363 (S.D.N.Y. Mar. 16, 2020).

Finally, Petitioner cannot circumvent *Stone* with the claim that his due process rights were violated during the suppression hearing. *See* Dkt. No. 32 at 11; *see Ferron*, 255 F.Supp.2d at 133 (holding that the plaintiff's "attempt to [...] end-run around *Stone's* clearly established barrier to habeas review by 'transmogrifying' his barred Fourth Amendment claim into a due process claim must fail.") (citations omitted).

Accordingly, Petitioner's Fourth Amendment claim is barred by *Stone*, and Ground One of the petition is therefore dismissed.

### D. Jurisdiction

Petitioner contends that the trial court lacked jurisdiction because the prosecution failed to present a certified laboratory report to the grand jury and trial court. Dkt. No. 24 at 7. Respondent argues that the claim is not cognizable, precluded by Petitioner's guilty plea, and meritless. Dkt. No. 28 at 25-26.

Petitioner raised this argument in his § 440 motion. SR. at 476-480. The trial court rejected the argument finding, "[t]he Court has not been persuaded that jurisdiction over the case and defendant would be in any way divested by the language of CPL § 715.50 and/or any of defendant's allegations about laboratory reports." *Id.* at 552.

"It is well-settled that a claim involving an error in a grand jury proceeding is not cognizable upon federal habeas review" because "[t]here is no federal constitutional right to a grand jury" and "any defect in the grand jury proceeding is cured by [a] petitioner's subsequent conviction." *Zimmerman v. Superintendent Conway*, No. 10-CV-1393, 2013 WL 12379648, at \*23 (S.D.N.Y. May 7, 2013) (rejecting argument that trial court erred when it failed to dismiss the indictment on the ground that the petitioner was presented to the grand jury in shackles and surrounded by corrections officers) (internal quotation marks and citations omitted), *report and recommendation adopted sub nom.*, 2018 WL 6413144 (S.D.N.Y. Dec. 6, 2018); *see also Bingham v. Duncan*, No. 01-CV-1371, 2003 WL 21360084, at \*4 (S.D.N.Y. June 12, 2003) ("[C]laims of error relating to state grand jury proceedings are not cognizable on federal habeas review, since '[t]he right to testify before a grand jury is a state statutory right, and is not of constitutional dimension.' ") (quoting *Green v. Artuz*, 990 F.Supp. 267, 273 (S.D.N.Y. 1998)).

**\*11** Further, once a defendant pleads guilty in open court, he or she may not "thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea" because the plea "represents a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see also United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003) (per curiam) ("It is well settled that a defendant who knowingly and voluntarily enters a guilty plea waives all non-jurisdictional defects in the prior proceedings."). Here, Petitioner attempts to avoid the *Tollett* doctrine by framing his challenge as a jurisdictional defect and claims the trial court was not provided with evidence that the "substance" acquired was "in fact [a] narcotic drug (cocaine)." Dkt. No. 24 at 7. Regardless of Petitioner's characterization of the challenge, the alleged failure to produce a "certified laboratory analysis report" is a state procedural defect, not a constitutional issue, and thus, waived by Petitioner's guilty plea. *See Ariola v. LaClair*, No. 07-CV-57 (GLS/VEB), 2008 WL 2157131, at \*14 (N.D.N.Y. Feb. 20, 2008) (holding that jurisdictional challenges related to CPL § 730.30 relate to New York State

law and fail to allege federal constitutional issues) *report and recommendation adopted*, 2008 WL 2157130 (N.D.N.Y. May 20, 2008).

In any event, Petitioner's allegation that the grand jury and trial court did not receive the reliable evidence that the substance was cocaine lacks merit. Inv. Missenis testified before the grand jury and averred that he "field tested" the "white powder substance" recovered from Petitioner's trunk and "preliminarily identif[ied]" the substance as approximately 1324 grams of cocaine. SR. at 502. Inv. Vardeen also testified before the grand jury and averred that her field testing of the substance was also positive for cocaine. *Id.* at 508.

During the suppression hearing, Inv. Missenis testified that, based upon his training and experience, the powder substance recovered from Petitioner's vehicle was powder cocaine. TR. at 35. Additionally, Petitioner's statements to the Court during the plea hearing belie his assertions:

THE COURT: Sir the indictment as amended for the purposes of a plea reads and charges you as follows. That on or about March 18, 2014 at approximately 5:40 p.m. while on Lincoln Avenue, City of Cohoes, County of Albany, State of New York you did knowingly and unlawfully sell one or more preparations, compounds, mixtures, or substances containing a narcotic drug. And the preparations, compounds, mixtures or substances are an aggregate weight of one-half ounce or more; to wit, at that time, on that date and location you did sell to another person more than one-half ounce of a controlled substance. That controlled substance being cocaine. Is that, in fact, the case sir?

THE DEFENDANT: Yep.

THE COURT: Did you know that it was in a weight in excess of one-half ounce or more?

THE DEFENDANT: Yeah.

THE COURT: And did you know that it was illegal and against the law to sell cocaine?

THE DEFENDANT: Yep.

TR. at 93-94.

Accordingly, Ground Two of the petition is therefore dismissed.

### E. Ineffective Assistance of Counsel

Petitioner contends that his counsel was ineffective because (1) she allowed him to "plead to a completed crim[inal] ... sale when neither an actual or even an 'attempted' sale of drugs ever occurred;" (2) she failed to advise Petitioner of a viable "agency" defense [8] ; and (3) she allowed Petitioner to plea before examining the laboratory report. Dkt. No. 24 at 8-10. Respondent argues Petitioner's claim related to counsel's failure to review the laboratory report is unexhausted. Dkt. No. 28 at 15-24. Respondent further contends Petitioner's claims are foreclosed by his guilty plea and lack merit. *Id.*

[8]     Petitioner asserts he could not raise this issue on direct appeal because "[d]efense counsel had never informed petitioner of such outcome determinative defense before plea or at sentence." Dkt. No. 24 at 9.

### 1. Exhaustion

An application for a writ of habeas corpus may not be granted until a petitioner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A), (B)(I), (ii). To satisfy the exhaustion requirement, a petitioner must do so both procedurally and substantively. Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in a federal habeas corpus petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Substantive exhaustion requires that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted). In other words, petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

**\*12** In the Order denying Petitioner's § 440 motion, the trial court listed Petitioner's challenged acts/omissions of his counsel as follows: (1) failure to request a *Darden* hearing; (2) failure to investigate the search warrant application and affidavits; (3) failure to demand the identity of the

CI; (4) presenting untrue and inappropriate admissions in the omnibus motion; (5) failure to move to dismiss the indictment; and (6) unilaterally waived Petitioner's right to testify before the grand jury. SR. at 552.

The exhaustion inquiry focuses on "whether the factual issue was presented to the state courts in a posture allowing full and fair consideration. Where such consideration was given the issue by the state courts, the federal district court will presume the correctness of the state court's factual determinations." *Smith v. Atkins*, 678 F.2d 883, 885 (10th Cir. 1982) (citing *Sumner v. Mata*, 449 U.S. 539 (1981)). While Respondent is correct that the "exact issue" of whether the Petitioner's counsel was ineffective for failing to produce the laboratory report was not argued in the § 440 motion, this Court need not make a determination with respect to whether the claim is properly exhausted because, Petitioner could still present his unexhausted claim to the state courts by filing a successive CPL § 440.10 motion. There is no time limit in which an individual must bring a section 440.10 motion, and the statute specifically states that a motion to vacate may be made "[a]t any time after the entry of a judgment[.]" CPL § 440.10(1).

Section 2254 "prohibits federal courts from granting relief to an applicant who has not exhausted the remedies available in the courts of the State," but allows "federal courts to deny the petition, regardless of whether the applicant exhausted his state court remedies." *Abuzaid v. Mattox*, 726 F.3d 311, 321 (2d Cir. 2013) (emphasis in original, internal quotation marks omitted) (citing 28 U.S.C. § 2254(b)(1)(A), (b)(2)). Unexhausted claims may be denied on the merits if the claims are "plainly meritless" (*Rhines v. Weber*, 544 U.S. 269, 277 (2005)) or "patently frivolous." *McFadden v. Senkowski*, 421 F.Supp.2d 619, 621 (W.D.N.Y. 2006); *see* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Because Petitioner's claims fail under either standard, the Court will dispose of them.

## 2. Legal Effect of Guilty Plea

Petitioner's ineffective assistance of counsel claims are foreclosed by his guilty plea. "In the context of a guilty plea, a petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the petitioner would not have pleaded guilty and instead would have exercised his or her right to trial." *Beckary v. Chappius*, No.

1:11-CV-0850, 2012 WL 3045691, at *9 (W.D.N.Y. July 25, 2012) (citing *Hill*, 474 U.S. at 58-59). A petitioner is limited to "attack[ing] the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within acceptable standards." *Id.* (internal quotation marks and citations omitted).

Any claims "which involve counsel's pre-plea actions and do not affect the voluntariness of the plea itself [are] waived by [a] voluntary, knowing, and intelligent guilty plea." *Beckary*, 2012 WL 3045691, at *10. Here, Petitioner's ineffective assistance claims are waived because, as previously discussed, Petitioner's plea was knowing, intelligent, and voluntary, and these claims involve pre-plea actions. *See U.S. v. Gregg*, 463 F.3d 160, 164 (2d Cir. 2006) ("a guilty plea ... conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue[.]"); *Smith v. Burge*, No. 03 CIV.8648, 2005 WL 78583, at *11 (S.D.N.Y. Jan. 12, 2005) (finding that counsel's alleged failure to advise the petitioner of possible defense prior to entry of his guilty plea to be a "pre-plea ineffective assistance claim"); *Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) (holding that the "assertion that an effective lawyer would have successfully obtained dismissal of his case, does not relate to the process by which [the defendant] agreed to plead guilty"); *Wimes v. Conway*, 10–CV–601T, 2011 WL 5006762, at *3 (W.D.N.Y. Oct. 20, 2011) (finding the petitioner's claim that his counsel was ineffective for failing to investigate certain evidence barred from review because the claim did not relate to the voluntariness of his guilty plea); *Hill v. West*, 599 F.Supp.2d 371, 392 (W.D.N.Y. 2009) (holding ineffective-assistance-of-counsel claims relating to pre-plea events, such as the failure to investigate and acquisition of discovery material, were effectively waived under *Tollett* because the petitioner's guilty plea was voluntary).

## 3. Merits

*13 Even assuming the claim survived Petitioner's valid plea, no relief would issue. To demonstrate constitutionally ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of professional reasonableness, and but for counsel's alleged errors, the result of the proceedings would have been different, and as a result, petitioner suffered prejudice. *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *Premo v.

2021 WL 5446979

*Moore*, 562 U.S. 115, 121-22 (2011). The standard "must be applied with scrupulous care" in habeas proceedings, because such a claim "can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or in pretrial] proceedings[.]" *Premo*, 562 U.S. at 122. "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Richter*, 562 U.S. at 110 (quoting *Strickland*, 466 U.S. at 687) (internal quotation marks and further citation omitted). A petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Even if petitioner can establish that counsel was deficient, he still must show that he suffered prejudice. *Id.* at 693-94.

Demonstrating constitutionally ineffective assistance of counsel is "never an easy task ... [and] establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Premo*, 562 U.S. at 122 (citations and internal quotation marks omitted); *Burt v. Titlow*, 571 U.S. 12, 19 (2013) (noting that "AEDPA erects a formidable barrier" to federal habeas review of claims that have been adjudicated in state court). When reviewing a state court's decision under section 2254, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable– a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal quotation marks and citation omitted). Federal habeas courts "must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)" because "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable." *Richter*, 562 U.S. at 105. Instead, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

The *Strickland* test applies "to challenges to guilty pleas based on ineffective assistance of counsel." *Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012) (quoting *Hill*, 474 U.S. at 58). To establish prejudice in this instance, petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Petitioner raised ineffective assistance of counsel claims in his § 440 motion. While Petitioner did not include the specific grounds asserted in this habeas petition, the trial court stated, "to the extent defendant has raised any additional ineffective assistance claims that are outside the record, the court finds said arguments to be wholly conclusory and insufficient to warrant 440.10 relief or a hearing." SR. at 552. The court concluded, "[d]efendant's remaining arguments and requests for relief have been considered and found to be wholly lacking in merit." SR. at 522. The trial court's finding constitutes an adjudication on the merits rendering the AEDPA standard of review applicable with regard to that claim. *Francolino v. Kuhlman*, 365 F.3d 137, 141 (2d Cir. 2004); *Beckham v. Miller*, 366 F.Supp.3d 379, 388 (E.D.N.Y. 2019) (citing *Cavazos v. Smith*, 565 U.S. 1, 7, 9 (2011) (per curiam)), *appeal dismissed*, 2019 WL 4061513 (2d Cir. Aug. 6, 2019).

Counsel's alleged failure to present an agency defense is insufficient to establish ineffective assistance of counsel. "A defense attorney cannot be deemed ineffective for failing to pursue an unmeritorious defense or application." *Dark v. Crowley*, No. 6:16-CV-6432, 2020 WL 6291420, at *8 (W.D.N.Y. Oct. 27, 2020) (citing, *inter alia, United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995)). Here, the record lacks evidence suggesting that Petitioner's counsel acted without "reasonable professional judgment" in declining to pursue an agency defense. Moreover, Petitioner has not demonstrated that he would have refused to plead guilty and gone to trial if his attorney prepared an agency defense. *See Rodriguez v. Mitchell*, No. 95 CV 2496, 1996 WL 705451, at *2 (E.D.N.Y. Nov. 26, 1996).

**\*14** Petitioner was a second felony offender charged with two counts of criminal possession of a controlled substance, one count of criminal sale of a controlled substance and operating as a major trafficker and faced a possible sentence of up to 24 years. TR. at 96. Petitioner has failed to show that counsel's representation was deficient, much less that he suffered prejudice as a result. Counsel made an omnibus motion, cross examined the prosecution's witnesses, and filed a motion to dismiss the indictment. SR. at 191-193. Counsel negotiated a favorable plea deal for the intentional actions which Petitioner allocuted he engaged in. Petitioner was permitted to plead to one count in satisfaction of the entire indictment with a notable reduction in the amount of prison time to which Petitioner would be subjected. The record establishes counsel informed Petitioner of the advantages and disadvantages of pleading guilty. During the plead proceeding, Petitioner indicated he had been adequately advised by his counsel, had enough time to talk to her about

the plea proceedings. Petitioner also stated he was satisfied with the representation he received:

> THE COURT: Ms. Coleman was able to secure for you a plea to an A-II felony despite the fact that you are charged with a number of A-I felonies in the indictment. She has also been able to secure for you a plea offer that would result in a maximum period of incarceration of 12 years with five years post-release supervision.
>
> As a result of her efforts in that regard it would be my understanding that you are highly satisfied with her representation. Is that the case?
>
> THE DEFENDANT: I am satisfied.

TR. at 85-86.

Accordingly, the actions of counsel in securing the plea failed to meet the second *Strickland* prong as said actions were anything but prejudicial.

Thus, it appears that Petitioner benefitted substantially from counsel's representation. Consequently, Petitioner's claim of ineffective assistance of counsel must fail.

### F. Additional Grounds for Habeas Relief in Reply Papers

Petitioner asserted the following additional grounds for relief in his traverse and supplemental traverse: (1) his counsel was ineffective for failing to request a *Darden* hearing; (2) the prosecution failed to disclose the laboratory report, which was a *Brady* violation; and (3) the prosecutor presented false testimony to the grand jury. *See* Dkt. Nos. 32 and 34.

"[C]ourts have observed that a traverse, or reply, is not a proper vehicle for raising additional grounds for habeas relief, and claims raised for the first time in such a pleading have been considered as not properly before the court." *Lee v. Greene*, No. 9:05-CV-1337 (GTS/DEP), 2010 WL 5779440, at *5 (N.D.N.Y. Dec. 15, 2010) (citing Rules Governing Section 2254 Cases in the United States District Courts, Rule 2(c)(1)), *report and recommendation adopted*, 2011 WL 500673 (N.D.N.Y. Feb. 10, 2011). "To raise additional grounds, a petitioner must file an amended petition to provide adequate notice to the state of additional claims." *Howard v. Graham*, No. 9:05-CV-1582 (LEK/DRH), 2008 WL 3925466, at *1 (N.D.N.Y. Aug. 20, 2008) (citing *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994)).

Here, Petitioner filed a petition (Dkt. No. 1), an amended petition (Dkt. No. 7), and a second amended petition (Dkt. No. 24). The aforementioned claims were not raised in any of the petitions. Moreover, Petitioner did not indicate to the Court, prior to filing his traverse or supplemental traverse, that he intended to assert new or additional claims. Therefore, Respondent was not afforded an adequate opportunity to address these additional claims and those claims are rejected. *Howard*, 2008 WL 3925466, at *1; *see also Parker v. Smith*, 858 F.Supp.2d 229, 233 (N.D.N.Y. 2012) (refusing to address new arguments raised in the traverse that were not in the petition because a traverse or reply is not the proper pleading (in) which to raise additional grounds for habeas relief) (citations omitted); *Parker v. Duncan*, No. 9:03-CV-0759 (LEK/RFT), 2007 WL 2071745, at *6 (N.D.N.Y. July 17, 2007), *aff'd*, 255 Fed. App'x 565 (2d Cir. 2007).

Even assuming the grounds were properly before the Court, the claims lack merit. Petitioner's claim related to counsel's failure to request a *Darden* hearing is procedurally barred. *See* N.Y. CPL § 440.10(2)(b); *Kimbrough v. Bradt*, 949 F.Supp.2d 341, 359 (N.D.N.Y. 2013) ("It is well-settled in this Circuit that section 440.10(2)(b) can provide an adequate and independent state law ground on which to deny habeas relief.") (citing, *inter alia, Holland v. Irvin*, 45 Fed. App'x 17, 20 (2d Cir. 2002)). The allegations related to the failure to disclose the laboratory report lack merit. *See* Part IV(D), *supra*; *Vasquez v. Stinson*, No. CV 96-1917, 1997 WL 469990, at *7 (E.D.N.Y. June 17, 1997) (reasoning that, to warrant a reversal of a conviction based upon a deprivation of due process under *Brady*, the petitioner must establish that the evidence in a laboratory report is sufficiently exculpatory).

**\*15** Finally, as discussed *supra*, errors in grand jury proceedings are not cognizable on federal habeas review. *See* Part IV(D), *supra*.

### V. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the Clerk of the Court shall amend the caption to substitute Mark Miller for Mark Royce; and it is further

**ORDERED** that the second amended petition, Dkt. No. 24, is **DENIED AND DISMISSED** in its entirety; and it is further

**ORDERED** that no Certificate of Appealability ("COA") shall issue because petitioner failed to make a "substantial

2021 WL 5446979

showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires; [9] and it is further

[9]    *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling,

*and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2021 WL 5446979

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

2005 WL 3159657

2005 WL 3159657
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Robert SIMPSON, Petitioner,
v.
UNITED STATES OF AMERICA, Respondent.

No. 5:03-CV-691, 5:00-CR-373.
|
Nov. 25, 2005.

**Attorneys and Law Firms**

Robert Simpson, [1] Syracuse Pavilion, Syracuse, New York, Petitioner pro se.

[1]
The Bureau of Prisons recently informed the Court that Petitioner is no longer confined at Ray Brook FCI. Rather, he is at Syracuse Pavilion in Syracuse, New York, with a tentative release date in late November 2005.

The United States Attorney, Syracuse, New York, for Respondent, John M. Katko, AUSA, of counsel.

MEMORANDUM-DECISION AND ORDER

SCULLIN, Chief J.

I. BACKGROUND [2]

[2]
The Court has derived the background information relating to this action from the materials that the parties submitted in conjunction with the present civil proceeding, *Simpson v. United States,* 5:03-CV-691 ("Action No. 03-CV-691"), as well as the underlying criminal action, *United States v. Sugamele,* 5:00-CR-373 ("Action No. 00-CR-373").

**\*1** On July 31, 2000, a federal grand jury indicted Petitioner Robert Simpson and charged him with various criminal acts. *See* Action No. 00-CR-373, Dkt. No. 1 ("Indictment"). On August 3, 2000, Petitioner appeared before then-Magistrate Judge Gary L. Sharpe, at which time he was arraigned and a not guilty plea was entered on his behalf. *See* Action No. 00-

CR-373, Dkt. No. 6. After reviewing the financial affidavit that Petitioner filed in accordance with the Criminal Justice Act in the underlying criminal matter, then-Magistrate Judge Sharpe determined that Petitioner was eligible for court-appointed counsel; therefore, he directed the Office of the Federal Public Defender for the Northern District of New York to file a Notice of Appearance on Petitioner's behalf. *See* Action No. 00-CR-373, Dkt. No. 10. Assistant Federal Public Defender David G. Secular, Esq. ("Mr. Secular" or "assigned counsel") thereafter entered an appearance in that criminal action on Petitioner's behalf. *See* Action No. 00-CR-373, Dkt. No. 18.

By letter dated March 15, 2001, Mr. Secular advised Assistant United States Attorney John Katko ("AUSA Katko") that, although defense counsel wanted to "resolve" the criminal matter pending against his client, Mr. Secular was nevertheless "troubled over the requirement" that the Government had imposed in the proposed plea agreement that Petitioner plead guilty both to the narcotics conspiracy and to the § 924(c) count [3] asserted in the Indictment. *See* Action No. 03-CV-691, Dkt. No. 21. AUSA Katko subsequently informed Mr. Secular in a letter that, notwithstanding Mr. Secular's concerns, the Government intended to pursue the firearms charge against Petitioner. *See* Action No. 03-CV-691, Dkt. No. 22. In that letter, AUSA Katko also requested that defense counsel inform the Government no later than March 27, 2001, whether his client intended to enter into a plea agreement concerning the charges that the Government had brought against him. *See id.* Petitioner subsequently executed a plea agreement in which he pled guilty to Counts One and Three of the Indictment in full satisfaction of all charges brought against him in that accusatory instrument. *See* Action No. 00-CR-373, Dkt. No. 37 ("Plea Agreement"). In that Plea Agreement, Petitioner specifically pled guilty to (1) conspiring to distribute and possessing with intent to distribute cocaine, cocaine base/ crack cocaine and marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count One), and (2) knowingly using or carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Three). *See* Plea Agreement at ¶ 2. Petitioner also acknowledged that he had been thoroughly advised of his rights to appeal his conviction and sentence, and that he fully understood such rights, but that he was, among other things, "knowingly and expressly waiv[ing] all rights, conferred by 18 U.S.C. § 3742, to appeal any sentence of imprisonment of 180 months or less." *See id.* at ¶ 14. [4]

2005 WL 3159657

3    Section 924(c) of Title 18 of the United States Code prohibits the knowing use or carrying of a firearm "during and in relation to any ... drug trafficking crime." 18 U.S.C. § 924(c).

4    Section 3742 of Title 18 of the United States Code authorizes a defendant to file a notice of appeal in the district court for review of an otherwise final sentence if, among other things, the sentence (1) was imposed in violation of law, (2) was imposed as a result of an incorrect application of the United States Sentencing Guidelines, or (3) was greater than the sentence specified in the applicable guideline range. See 18 U.S.C. § 3742(a)(1)-(3).

**\*2** On March 30, 2001, this Court presided over a hearing relating to the Plea Agreement into which Petitioner had entered with the Government. At that hearing, Petitioner indicated that he was satisfied with the advice and representation that he had received from Mr. Secular in conjunction with the criminal matter. See Transcript of Change of Plea, dated March 20, 2001 ("Plea Tr."), Action No. 03-CV-691, Dkt. No. 23, at 4. Petitioner thereafter acknowledged that he (1) had thoroughly reviewed the substance of the Plea Agreement with his attorney, (2) understood everything contained in that agreement, and (3) did not have any questions about anything contained within that document. See Plea Tr. at 5. After Mr. Secular advised the Court of the actions he had undertaken to ensure that Petitioner understood all the terms and conditions of the Plea Agreement, this Court advised Petitioner of the consequences of his pleading guilty to Counts One and Three of the Indictment. See id. at 5-7. The Government then placed the factual basis for the guilty plea on the record-the accuracy of which Petitioner expressly acknowledged. See id. at 8. This Court then specifically noted that, pursuant to the terms of his Plea Agreement, Petitioner was waiving his right to appeal any sentence of imprisonment of 180 months or less. See id. at 9. Since the record established that Petitioner was fully capable of knowingly and voluntarily entering his plea, this Court accepted his guilty plea to the First and Third Counts in the Indictment. See id. at 11-12.

On April 22, 2001, this Court signed a stipulation that permitted Mr. Secular to withdraw as Petitioner's counsel and that noted the appearance of Randel A. Scharf, Esq. ("Mr. Scharf" or "retained counsel") on Petitioner's behalf. See Action No. 00-CR-373, Dkt. No. 95.

On June 21, 2001, the Probation Office for the Northern District of New York prepared a Pre-Sentence Investigation Report relating to Petitioner, which, as revised on March 28, 2002, indicated that Petitioner's base offense level for his crimes was 30. See Action No. 03-CV-691, Dkt. No. 25 ("Revised PSR") at ¶ 22.[5] That report further noted that Petitioner's total offense level under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") should be reduced to 27 after crediting Petitioner with a two-point reduction for his acceptance of responsibility together with a one point reduction due to his timely notification to the authorities of his intention to plead guilty to the charges. See Revised PSR at ¶ 30. Since Petitioner's criminal history category was determined to be I, see id. at ¶ 40, that report noted that Petitioner was subject to a range of imprisonment under the Guidelines of between 70-87 months as to Count One, together with a consecutive 60-month term of imprisonment for his conviction on Count Three of the Indictment, see id. at ¶ 71.

5
      Petitioner had been incorrectly charged with-and pled guilty to-possessing with intent to distribute more than 50 grams of cocaine base/ crack cocaine. See Indictment, Count One; see also Plea Agreement at ¶ 7; Plea Tr. at 11. However, laboratory analysis of the crack cocaine that Petitioner had sold to the confidential informant ultimately revealed that the substance weighed only 45.4 grams. See Revised PSR at attached (unnumbered) 19. Therefore, the Probation Office revised the PSR so that it accurately reflected the quantity of crack cocaine attributable to Petitioner. See Revised PSR at ¶ 22.

By letter dated March 28, 2002, the Government filed a downward departure motion with the Court pursuant to U.S.S.G. § 5K1.1 based upon the substantial assistance that Petitioner had provided to law enforcement agents. See Action No. 00-CR-373, Dkt. No. 104. This Court thereafter sentenced Petitioner to a term of imprisonment of eighteen months on Count One, together with a consecutive, twenty-eight month term of imprisonment regarding his conviction on Count Three. See Transcript of Sentencing, dated June 4, 2002 ("Sentencing Tr."), Action No. 03-CV-691, Dkt. No. 24, at 14-15. This Court then suggested that Petitioner attempt to gain acceptance to and successfully complete the Comprehensive Residential Drug Treatment Program that the Bureau of Prisons ("BOP") offered. See id. at 15-16. Petitioner thereafter began serving his sentence at the Federal

2005 WL 3159657

Medical Center in Devins, Massachusetts. *See* Action No. 00-CR-373, Dkt. No. 116.

**\*3** Petitioner filed a Motion to Vacate, Set Aside or Correct his sentence in this District on June 3, 2003. *See* Action No. 03-CV-691, Dkt. No. 1 ("Motion to Vacate"). Petitioner thereafter filed two motions to amend his Motion to Vacate, *see* Action No. 03-CV-691, Dkt. Nos. 3, 9; however, by Order dated October 7, 2003, this Court denied both of those applications without prejudice. *See* Action No. 03-CV-691, Dkt. No. 10.

On November 24, 2003, Petitioner filed a renewed motion to amend his petition, together with supporting exhibits and a memorandum of law in support of that application. *See* Action No. 03-CV-691, Dkt. Nos. 11-13. This Court granted that request, *see* Action No. 03-CV-691, Dkt. No. 14, after which Petitioner's Amended Motion to Vacate was filed in this civil action. *See* Action No. 03-CV-691, Dkt. No. 15 ("Amended Motion to Vacate").

On June 21, 2004, the Government filed a response in opposition to Petitioner's Amended Motion to Vacate. *See* Action No. 03-CV-691, Dkt. No. 18 ("Resp.Mem."). On April 14, 2005, Petitioner filed a submission he entitled "Traverse to Government's Response, and Memorandum of Points and Authorities." *See* Action No. 03-CV-691, Dkt. No. 30 ("Traverse"). In that application, Petitioner raised numerous new claims, which he had not previously asserted in this action. *See id.* In response to that submission, the Government argued, among other things, that Petitioner's "Traverse" amounted to another motion to amend his previously amended § 2255 application and urged this Court to "exercise its discretion in this matter and put a halt to the incessant filings by [Petitioner]." *See* Action No. 03-CV-691, Dkt. No. 28.

## II. DISCUSSION

A. Traverse / Motion to Amend
This Court first considers Respondent's claim that Petitioner's Traverse is, in fact, another application to amend his Amended Motion to Vacate.

Although Petitioner claims that his Traverse is "limited to responding to the Governments [*sic*] brief," *see* Cover Sheet to Traverse, it is clear that in this submission Petitioner not only reiterates the arguments he previously asserted in support

of his Amended Motion to Vacate but also raises numerous new legal theories in support of his petition. *See, generally,* Traverse. Since that portion of Petitioner's submission is properly viewed as a request to file another amended Motion to Vacate in this action, this Court considers, as a preliminary matter, whether it should grant that application.

Petitioner dated his original Motion to Vacate on May 30, 2003, just shy of one year from the date on which the judgment of conviction which Petitioner challenges in this action was entered. *Compare* (original) Motion to Vacate at 7 *with* Action No. 00-CR-373, Dkt. No. 107. In July, 2003, Petitioner filed a motion to amend that pleading. *See* Action No. 03-CV-691, Dkt. No. 3. On September 17, 2003, before this Court had ruled on Petitioner's original motion to amend, he filed a second motion to amend his motion to vacate. *See* Action No. 03-CV-691, Dkt. No. 9. On October 7, 2003, this Court denied both of Petitioner's pending motions to amend without prejudice to Petitioner submitting a single, renewed motion to amend in this action, together with a copy of a proposed amended pleading. *See* Action No. 03-CV-691, Dkt. No. 10, at 4. [6] In that Order, this Court specifically advised Petitioner that he was required to "include all the claims he wishe[d] this Court to consider as a basis for awarding relief herein in the proposed amended pleading submitted along with" any motion to amend filed in response to the Order. *See id.*

[6]     In denying Petitioner's motions to amend without prejudice, this Court noted that neither of the motions to amend that Petitioner had filed had contained proposed amended pleadings and that he appeared to rely upon a proposed pleading attached to a motion to expand the record as the operative pleading in this civil action. *See* Action No. 03-CV-691, Dkt. No. 10, at 3-4.

**\*4** The following month, Petitioner filed his third motion to file an amended petition herein. *See* Action No. 03-CV-691, Dkt. No. 11. In an Order dated February 23, 2004, this Court granted that application, *see* Action No. 03-CV-691, Dkt. No. 14, after which Petitioner's Amended Motion to Vacate was filed in this action. Nearly *ten months after* the Government filed its opposition papers to Petitioner's Amended Motion to Vacate, *see* Resp. Mem., Petitioner submitted his Traverse. *See* Action No. 03-CV-691, Dkt No. 30. In that submission, Petitioner now seeks to assert the following additional claims in support of his request for habeas relief: (1) the Indictment was defective in several respects and failed to provide him

2005 WL 3159657

with adequate notice of the charges against him, *see* Traverse at 2-5; (2) trial counsel's pretrial investigation concerning the drug evidence on which the Indictment was based was inadequate, *see id.* at 5, 23; (3) he was not aware of the sentencing consequences of his guilty plea, *see id.* at 7-8; (4) his plea is invalid because it was entered into under "mental coercion and ... duress" arising out of the "over stated drug amount" alleged in the Indictment, *see id.* at 8; (5) the provision in the Plea Agreement that provided that he waived any appeal of a sentence of 180 months or less is "unconstitutional," *see id.* at 9-11; (6) Mr. Scharf rendered ineffective assistance by failing to petition the Court for a psychological examination of Petitioner pursuant to 18 U.S.C. § 4247(b), *see id.* at 25; (7) Mr. Scharf's untimely request for a downward departure in Petitioner's sentence precluded this Court from properly considering that application, *see id.* at 25-26; (8) assigned counsel's improper delay in filing a motion to withdraw as counsel prevented the Probation Department from timely providing a copy of the Revised PSR to Mr. Scharf, *see id.* at 26; (9) Mr. Scharf failed to review the contents of the Revised PSR with him, *see id.;* and (10) he was not advised of his *Miranda*[7] rights at the time of his arrest, after the Indictment was returned against him, or subsequent to his incarceration, *see id.* at 41-42.

[7]   *Miranda v. Arizona,* 384 U.S. 436 (1966).

The Rules Governing § 2255 Proceedings for the United States District Courts provide, among other things, that "[t]he Federal Rules of Civil Procedure ... to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules." Rule 12 of the Rules Governing § 2255 Proceedings for the United States District Courts; *see also* 28 U.S.C. § 2242 at ¶ 3 (habeas petitions "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"). Although Rule 15(a) of the Federal Rules of Civil Procedure requires that leave to amend be "freely given," the Second Circuit has specifically held that district courts

> may deny that leave where necessary to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive. *Littlejohn,* 271 F.3d at 363; *see also Jones v. N.Y. State Div. of Military & Naval Affairs,* 166 F.3d 45, 50 (2d Cir.1999) (holding that district court may deny leave to amend on grounds of futility). *This discretion*

> *safeguards against the possibility that Rule 15's amendment procedures will be exploited by petitioners for the purpose of undermining the rules designed to prevent abuse of the writ, regardless of the procedural posture of the case at the time the motion to amend is brought.*

**\*5** *Ching v. United States,* 298 F.3d 174, 180 (2d Cir.2002) (emphasis added) (footnote omitted).

Additionally, the Supreme Court has determined that undue delay on the part of the movant in bringing a motion to amend is a proper basis for denying such an application. *See Foman v. Davis,* 371 U.S. 178, 182 (1962).

The chronology of the present action, as outlined above, reveals that Petitioner has unduly delayed the filing of what amounts to a *de facto* motion to amend. He waited more than twenty-two months after he commenced this action to file that application and nearly twenty-one months after he filed his original motion to amend before submitting such a request. Many of the ten claims that Petitioner now seeks to assert for the first time in this action are based on matters contained in the record. Furthermore, he could have raised all of the newly-asserted arguments in any of his prior motions to amend. Finally, as noted above, in October, 2003-eighteen months *before* Petitioner filed the present request to amend his Motion to Vacate again-this Court *specifically advised* Petitioner that he was to include *all* the claims he wished this Court to consider as a basis for awarding relief in this action in the proposed amended pleading submitted along with his (third) motion to amend. *See* Action No. 03-CV-691, Dkt. No. 10, at 4. Although Petitioner filed a motion to amend together with a proposed pleading and other supporting documents the following month, *see* No. 03-CV-691, Dkt. Nos. 11-13, nowhere in his proposed pleading did Petitioner assert any of the claims he now seeks to assert in this action through his Traverse.

The Second Circuit has sagely noted that "[c]ourts are not obliged to entertain needless or piecemeal litigation; nor should they adjudicate a motion or petition whose purpose is to vex, harass or delay." *Ching,* 298 F.3d at 179 (citing *McCleskey v. Zant,* 499 U.S. 467, 485, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991)). Therefore, for all of the above-stated reasons, this Court denies what appears to be Petitioner's

2005 WL 3159657

newest request to file another amended motion to vacate in this action. Accordingly, this Court will not consider the claims that Petitioner raised for the first time in his Traverse as a basis for awarding him relief in this action, and, therefore, the Amended Motion to Vacate which Petitioner filed on February 23, 2004, is the operative pleading in this matter.

B. Substance of Amended Motion to Vacate

*1. Ineffective Assistance of Counsel*

Respondent initially argues that, because Petitioner waived his right to appeal any sentence of 180 months or less as a condition of his plea agreement and because that waiver is valid and enforceable, this Court should dismiss the present action. *See* Resp. Mem. at 9-10. Alternatively, Respondent contends that the claims that Petitioner raises in the Amended Motion to Vacate are without merit. *See id.* at 14-33.

**\*6** "[A] plea agreement containing a waiver of the right to appeal is not enforceable where the defendant claims that the plea agreement was entered into without effective assistance of counsel." *United States v. Hernandez,* 242 F.3d 110, 113-14 (2d Cir.2001) (citations omitted). Thus, an appellate waiver does not bar collateral challenges concerning the propriety of the plea agreement itself or the effectiveness of counsel in advising a defendant to enter into that plea agreement. *See, e.g., Frederick v. Warden, Lewisburg Corr. Facility,* 308 F.3d 192, 196-97 & n. 6 (2d Cir.2002); *see also United States v. Monzon,* 359 F.3d 110, 118-19 (2d Cir.2004) (waiver of right to appeal is not enforceable when "the waiver was the result of ineffective assistance of counsel"); *Santana v. United States,* No. 04 Civ. 1111, 2005 WL 180932, *3 (S.D.N.Y. Jan. 26, 2005)* ("waivers [of appellate rights] are unenforceable where the asserted ground for challenging the sentence is ineffective assistance of counsel in connection with plea negotiations or the agreement itself." (citation omitted)). This Court must therefore consider Petitioner's claim that he received the ineffective assistance of counsel in conjunction with the underlying criminal matter despite his appellate waiver.

In determining whether a criminal defendant received ineffective assistance of counsel, federal district courts must consider (1) whether trial counsel's representation fell below an objective standard of reasonableness measured by the prevailing professional norms and (2) whether the petitioner was prejudiced by counsel's performance, i.e., whether there is a reasonable probability that, but for counsel's performance, the outcome of the proceeding would have been different. *See Strickland v. Washington,* 466 U.S. 668, 688-90, 694

(1984); *United States v. Levy,* 377 F.3d 259, 264 (2d Cir.2004) (citations omitted); *United States v. Champion,* 234 F .3d 106, 109 (2d Cir.2000) (quotation omitted); *United States v. Gordon,* 156 F.3d 376, 379 (2d Cir.1998) (*per curiam* ) (citations omitted).

Petitioner asserts numerous theories in support of his claim that his counsel rendered ineffective assistance. [8] Specifically, he argues that assigned and/or retained counsel (1) failed to provide the Court with information concerning Petitioner's post-offense, pre-indictment rehabilitation, *see* Amended Motion to Vacate, Ground One; (2) improperly permitted Petitioner to plead guilty to a crime he did not commit without the benefit of a binding plea agreement, *see id.,* Ground Five; (3) neglected to present evidence of Petitioner's diminished mental capacity and history of mental illness to this Court, *see id.,* Ground Six; (4) failed to advise Petitioner of his right to appeal, *see id.,* Ground Seven; (5) admitted "both aggravating and false facts" in the sentencing memorandum he filed with the Court and "dehumanize[d]" Petitioner at his sentencing by referring to "derogatory information" and "false and inflammatory matters," *see id.,* Ground Eight; and (6) labored under a conflict of interest, *see id.,* Ground Nine.

[8]   In several of the claims that Petitioner asserted in his Amended Motion to Vacate, he failed to specify whether he was addressing his ineffective assistance claims to the performance of his assigned counsel or to the performance of his retained counsel. *See, e.g.,* Amended Motion to Vacate at Grounds One, Seven, and Eight. Construing Petitioner's *pro se* pleading liberally, this Court has considered that Petitioner is asserting all such claims against both his assigned counsel and his retained counsel.

*a. Petitioner's Post-offense, Pre-indictment Rehabilitation*

**\*7**   Petitioner initially faults counsel for failing to advise the Court of Petitioner's post-offense, pre-indictment rehabilitation in support of a downward departure motion "under 5k1.9, 5k2.0"[sic ]. [9] *See* Amended Motion to Vacate, Ground One. [10]

[9]   There is no Section 5K1.9 of the Guidelines. U.S.S.G. § 5K2.0 is the Policy Statement of the Sentencing Commission concerning Grounds

Case 9:19-cv-00952-LEK-TWD   Document 22   Filed 07/27/22   Page 133 of 202
Simpson v. U.S., Not Reported in F.Supp.2d (2005)
2005 WL 3159657

for Upward and Downward Departures under the Guidelines.

10    Since this claim only challenges the sentence that this Court imposed on Petitioner, it appears to be addressed solely to the performance of his retained counsel.

However, because post-offense rehabilitation is not a factor specifically mentioned in the Guidelines, a downward departure in sentencing is warranted on that basis only if, "after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole," the court concludes that the individual's post-offense rehabilitation takes the case out of the "heartland" of typical cases. *United States v. Kim,* 313 F.Supp.2d 295, 301-02 (S.D.N.Y.2004) (citing *Koon,* 518 U.S at 96, 116 S.Ct.2035) (footnote omitted). In determining whether aspects of a case fall outside the heartland of cases, a sentencing court " 'must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing." ' *United States v. Thorn,* 317 F.3d 107, 125 (2d Cir.2003) (quoting *Koon v. United States,* 518 U.S. 81, 98, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)) (other citation omitted). Furthermore, "departures based on grounds not mentioned in the Guidelines [are] 'highly infrequent." ' *Koon v. United States,* 518 U.S. 81, 97 (1996) (quotation omitted); *see also United States v. Sentamu,* 212 F.3d 127, 136 (2d Cir.2000) (citations omitted); *Kim,* 313 F.Supp.2d at 302 (citations and footnote omitted).

To support his claim that his attorney rendered ineffective assistance in failing to move for a downward departure due to Petitioner's post-offense rehabilitation, Petitioner argues that, after he committed the subject offenses, he obtained a Class A commercial driver's license. *See* Amended Motion to Vacate, Ground One. He argues that his procurement of that license has afforded him the possibility of a "strong economic future" and constitutes grounds for a downward departure application. *See id.*

Although attainment of that license may well be admirable and prove beneficial to Petitioner in the future, it was plainly insufficient to warrant his counsel filing an application for a downward departure based upon post-offense rehabilitation. *See, e.g., United States v. Middleton,* 325 F.3d 386, 389-90 (2d Cir.2003) (petitioner's successful participation in substance abuse program and continued gainful employment insufficient to warrant downward departure in sentence); *Soares v. United States,* 66 F.Supp.2d

391, 411 (E.D.N.Y.1999) (§ 2255 motion alleging ineffective assistance due to counsel's failure to seek downward departure in light of petitioner's "procurement of steady employment, his financial assistance to his parents, and his engagement to be married" denied; such post-offense conduct not so "extraordinary" as to warrant a downward departure in sentence).

**\*8**  The record establishes that Petitioner's post-offense conduct did not warrant a downward departure motion on that basis at the time of his sentencing. Therefore, it was not objectively unreasonable for Mr. Scharf to have refrained from filing such an application. Moreover, since this Court would not have granted that request had Mr. Scharf filed one, retained counsel's failure to file that application clearly did not prejudice Petitioner.

*b. Propriety of Plea Agreement*

In his fifth ground for relief, Petitioner argues, among other things, that his guilty plea was "both involuntary and unknowingly made due to Counsel's misinformation" regarding the issue of whether Petitioner's conduct ran afoul of § 924(c). *See* Amended Motion to Vacate, Ground Five. Specifically, Petitioner contends that, because his attorney failed to "accurately and persistently argue the lack of application of the 924(c) charge," he eventually pled guilty to that charge despite the fact that he did not violate that statute. *See id.* Included within this claim is Petitioner's argument that his attorney failed to secure a binding plea agreement in the underlying criminal case. *See id.*

Although not clearly stated in his Amended Motion to Vacate, Petitioner appears to argue that the selling of a firearm in conjunction with his sale of narcotics was insufficient to satisfy the "during and in relation to" requirement of § 924(c). *See* Amended Motion to Vacate at (attached) 6; *see also* Traverse at 11-20. However, in *Smith v. United States,* 508 U.S. 223 (1993), the Supreme Court squarely held that using a firearm in a guns-for-drugs trade constitutes "using" a firearm within the meaning of § 924(c)(1) and that the use of a firearm is "in relation to" a drug trafficking offense where the gun is an integral part of the transaction. *Id.* at 237-38 (citations omitted); [11] *see also United States v. Cox,* 324 F.3d 77, 83 (2d Cir.2003) ("it is settled that one who *tenders* a firearm as barter for drugs is 'using' it within the meaning of Section 924(c)(1)")

11    Subsequent to *Smith,* the Supreme Court decided *Bailey v. United States,* 516 U.S. 137 (1995). In that case, the Supreme Court held that the mere placement of a firearm for protection at or near the site of a drug crime or its proceeds was not sufficient to support a conviction for "use" under the active-employment reading of that word. *See Bailey,* 516 U.S. at 144. However, as then-Chief Judge Thomas J. McAvoy of this District observed, the Court's reasoning in *Bailey* did not overrule *Smith.* To the contrary, the *Bailey* Court explicitly noted that its interpretation " '[was] not inconsistent with *Smith." ' Bakic v. United States,* 971 F.Supp. 697, 701 (N.D.N.Y.1997) (quoting *Bailey,* 516 U.S. at ___, 116 S.Ct. at 508).

Petitioner admitted in his Plea Agreement that he met with a confidential informant in Dewitt, New York, on September 17, 1998, and that he, along with his co-defendant Matthew Sugamele, sold a .38 caliber revolver, ammunition and one-quarter pound of marijuana to the confidential informant in exchange for $540.00 in U.S. currency. *See* Plea Agreement at 7; *see also* Plea Tr. at 8. Thus, it is clear that Petitioner could have properly been prosecuted on the § 924(c) charge. *See Cox,* 324 F.3d at 83; *see, e.g., United States v. Moore,* 54 F.3d 92, 101 (2d Cir.1995) (denying appellate claim challenging sufficiency of evidence as to § 924(c) conviction; "gun facilitated the drug distribution conspiracy because it was used as compensation for drug services rendered"); *Bakic,* 971 F.Supp. at 701 (denying § 2255 motion challenging § 924(c) conviction; agreement to trade twenty rifles, two cases of ammunition, and $2,250 cash in exchange for one-half pound of methamphetamine and one-half pound of cocaine supported that conviction); *see generally Smith,* 508 U.S. at 237-38.

 *9    Moreover, as noted above, in negotiating the terms of the Plea Agreement with the Government, Mr. Secular fully explored the issue of whether the Government would abandon its request that Petitioner plead guilty to the § 924(c) count. *See* Action No. 03-CV-691, Dkt. No. 21. When AUSA Katko informed Mr. Secular that the Government insisted that a plea agreement include a guilty plea to the § 924(c) charge, *see* Action No. 03-CV-691, Dkt. No. 22, counsel conferred with Petitioner who ultimately agreed to plead guilty to the firearms charge. *See* Affidavit of David Secular, Esq., dated June 17, 2004, at ¶ 8 (reproduced as attachment to Resp. Mem.). Thus, the record clearly establishes that Mr. Secular pursued, albeit unsuccessfully, the possibility of Petitioner entering into a Plea Agreement concerning the Indictment

without his client pleading guilty to the § 924(c) charge. Since Petitioner has not established that counsel's actions relating to those negotiations were objectively unreasonable, the Court denies this aspect of his Amended Motion to Vacate. *See Fernandez v. United States,* No. 05 Civ. 1843, 02CRIM47903, 2005 WL 700961, *1-*2 (S.D.N.Y. Mar. 28, 2005) (denying ineffective assistance claim asserted in § 2255 action; facts at plea colloquy established that the petitioner was guilty of committing 18 U.S.C. § 924(c) crime to which she pled guilty); *see, e.g., Hill v. Lockhart,* 474 U.S. 52, 56-58 (1985) (criminal defendant represented by counsel possesses right to make a reasonably informed decision to accept or reject a plea offer); *Boria v. Keane,* 99 F.3d 492, 496 (2d Cir.1996) (" '[a] defense lawyer in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable" ' (quotation omitted)); *Gordon,* 156 F.3d at 379-80 (criminal defendants have right to effective assistance of counsel during the course of plea negotiations).

As to Petitioner's claim that his attorney failed to negotiate a binding plea agreement with the Government in the underlying criminal matter, *see* Amended Motion to Vacate, Ground Five, the Court finds this claim to be specious in light of the fact that he pled guilty before this Court pursuant to an executed Plea Agreement that was binding on both him and the Government. *See* Action No. 00-CR-373, Dkt. No. 37; *see also* Plea Tr. at 4-5 (Court discussing with Petitioner the Plea Agreement he executed and pursuant to which he intended to enter guilty plea).

Accordingly, the Court concludes that this theory does not afford any basis for the relief he seeks herein.

### c. Diminished Capacity

In a portion of his fifth ground for relief, as well as the sixth ground for relief, in his Amended Motion to Vacate, Petitioner argues that counsel improperly failed to present evidence of Petitioner's diminished capacity to the Court. *See* Amended Motion to Vacate, Grounds Five, Six.

Initially, this Court notes that it is not entirely clear whether Petitioner now claims that his alleged diminished capacity should invalidate his guilty plea in its entirety because his plea was not knowingly and intelligently made, *see* Amended Motion to Vacate, Ground Six, or whether Petitioner is alleging that his retained counsel failed to argue Petitioner's diminished capacity as a basis for a downward departure in Petitioner's sentence, *see* Amended Motion to Vacate, Ground

2005 WL 3159657

Five. Therefore, this Court will construe this claim liberally as asserting both of these grounds.

*(1) Capacity to Plead Guilty to Charges in Indictment*

**\*10** In opposing this aspect of Petitioner's Amended Motion to Vacate, Respondent has provided the Court with a second affidavit that Petitioner's assigned counsel executed in which he stated that "[a]t no point during [his] representation of [Petitioner] did [counsel] come to believe that [Petitioner] was operating under a mental disease or defect that rendered him incapable of understanding the allegations and to decide what was the best course of action to take." *See* Action No. 03-CV-691, Dkt. No. 29, Affidavit of David Secular, Esq., dated April 12, 2005, at ¶ 3. Mr. Secular further declared in that affidavit that he believed that Petitioner "was able to fully understand the nature and consequences of the proceedings against him and was able to assist [counsel] in evaluating any defenses that [Petitioner] may have [had]." *Id.*

Petitioner has not presented any evidence which disputes Mr. Secular's testimony regarding Petitioner's ability to understand the nature and consequences of the proceedings against him in the underlying criminal matter. Additionally, Petitioner's responses to this Court's questions throughout the hearing in which he pled guilty to the above-referenced charges did not suggest, in any way, that Petitioner labored under a diminished capacity. *See* Plea Tr. at 2-12. Since Petitioner has not established that at the time he pled guilty he suffered from any mental disease or defect which resulted in any diminished capacity, he has not demonstrated that his assigned counsel wrongfully failed to present evidence of Petitioner's diminished capacity to the Court during the criminal proceeding below.

*(2) Failure to Seek Downward Adjustment Due to Diminished Capacity*

Alternatively, if the Court considers this claim to allege that Petitioner's retained counsel wrongfully failed to seek a downward adjustment at sentencing due to Petitioner's diminished capacity, *see, e.g.,* Amended Motion to Vacate, Ground Five, the Court notes that Section 5K2.13, a Policy Statement of the Guidelines, provides, in pertinent part, that "[a] downward departure [under the Guidelines] may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense...." U.S .S.G. § 5K2.13. To warrant a downward departure on this basis, a

party must establish the following: (1) significantly reduced mental capacity that was not the result of the voluntary use of drugs and (2) a causal link between that reduced capacity and the party's actions in committing the charged offense. *See Simmons v. United States,* Nos. 5:04 CV 539, 5:05 CR 318, 2005 WL 2033473, \*5 (N.D.N.Y. Aug. 22, 2005) (quotation and other citation omitted).

Petitioner has not established that at the time he committed the offenses to which he pled guilty he was suffering from a significantly reduced mental capacity. Therefore, it was not objectively unreasonable for his attorney to have refrained from filing a motion seeking a downward departure based upon that reason at the time of Petitioner's sentencing. Accordingly, the Court concludes that Petitioner is not entitled to the relief he seeks on this theory.

*d. Right to Appeal*

**\*11** Petitioner next faults counsel for failing to advise him of his purported right to file an appeal with the Second Circuit. [12] *See* Amended Motion to Vacate, Ground Seven. However, this argument appears to overlook the fact that Petitioner waived his right to appeal any sentence of imprisonment of 180 months or less. *See* Plea Agreement at ¶ 14. As noted above, this Court specifically referenced that appellate waiver during the plea colloquy, *see* Plea Tr. at 9, as did Petitioner's retained counsel at Petitioner's sentencing. *See* Sentencing Tr. at 18. Since that appellate waiver was valid, Petitioner is precluded from now claiming that counsel was ineffective in failing to advise him of any purported right to pursue an appeal. *See Colon v. United States,* Nos. 05 Civ. 2690, 04 CRIM. 0014, 2005 WL 2088412, \*2 (S.D .N.Y. Aug. 29, 2005) ("Petitioner's claim that counsel's assistance was ineffective because he failed to file an appeal notwithstanding a valid waiver of the right to appeal is frivolous and is rejected"); *see also Pianello v. United States,* Nos. 05CIV5686, 04CRIM0014, 2005 WL 1773681, \*3 (S.D.N.Y. July 26, 2005); *Defex v. United States,* No. 97-CV-1891, 1998 WL 812572, \*4 (E.D.N.Y. May 19, 1998) (claim that attorney wrongfully failed to advise the petitioner of his right to appeal "baseless" where he waived any appellate rights and where the petitioner was reminded during plea allocution that he was foregoing his right to appeal under terms of plea agreement); *see, e.g., Murgas v. United States,* No. 99-CV-1723, 2002 WL 553462, \*4 (N.D.N.Y. Apr. 10, 2002) (failure to file a notice of appeal cannot be seen as objectively unreasonable in light of the petitioner's express agreement to waive his right to appeal (citation omitted)).

2005 WL 3159657

12        Petitioner appears to assert this claim against both his assigned and his retained counsel.

Thus, neither assigned nor retained counsel acted in an objectively unreasonable manner in failing to advise Petitioner of his claimed right to appeal because he had explicitly waived that right. Furthermore, because his appellate waiver was fully enforceable, Petitioner could not demonstrate any prejudice attributable to counsels' allegedly wrongful conduct. Accordingly, the Court concludes that this theory does not afford Petitioner any basis for the relief he seeks herein.

### e. Sentencing Memorandum and Hearing

In his eighth ground for relief, Petitioner argues that his retained counsel did not adequately represent him at sentencing. Specifically, he contends that the sentencing memorandum that Mr. Scharf filed contained "aggravating and false facts," and that, at sentencing, counsel "managed to further Dehumanize the Petitioner, through both derogatory information [and] with false and inflammatory facts pertinent to the Petitioner and his Family." *See* Amended Motion to Vacate at (attached) 7 (typeface in original).

Respondent argues that this aspect of Petitioner's Amended Motion to Vacate "is devoid of specific facts to support the claim," thereby rendering it "difficult to ascertain the actual basis for the claim and how he was harmed by it." *See* Resp. Mem. at 31. Alternatively, Respondent contends that the claim is without substance. *See id.* at 31-32.

 **\*12** Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, provides, in pertinent part, that motions to vacate shall "specify all the grounds for relief available to the moving party; state the facts supporting each ground...." Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts. Petitioner has clearly failed to comply with the foregoing Rule. For example, although he alleges that retained counsel presented "false facts" in his sentencing memorandum, *see* Amended Motion to Vacate at (attached) 7, Petitioner has wholly failed to specify which of the numerous statements contained in that memorandum were false or misleading in any way. Nor does Petitioner provide the factual basis for this claim in his Traverse.

A petitioner bears the burden of proving that he is entitled to relief under § 2255. *See Mittal v. United States,* Nos. 02

Civ. 8449, 98 CR. 1302, 2005 WL 2036023, *7 (S.D.N.Y. Aug. 24, 2005) (citation omitted); *Parsons v. United States,* 919 F.Supp. 86, 88-89 (N.D.N.Y.1996) (citation omitted). Petitioner's failure to provide specific facts supporting this aspect of his Amended Motion to Vacate represents a failure on his part to satisfy this burden. Thus, this Court could deny this portion of Petitioner's application on this basis alone. *See, e.g., Barnett v. United States,* 870 F.Supp. 1197, 1201 (S.D.N.Y.1994) (court should deny motion to vacate where the petitioner failed to state ground on which he sought relief and failed to state facts substantiating such claim). However, in light of Petitioner's *pro se* status, this Court has reviewed both the sentencing memorandum that retained counsel prepared in the underlying criminal matter, together with the sentencing transcript, in an attempt to ascertain whether Petitioner might be entitled to habeas relief on this theory.

Retained counsel sought to have this Court reduce Petitioner's sentence based upon a finding that there existed "aggravating or mitigating circumstance[s] of a kind, or to a degree, not adequately taken into consideration" in the formulation of the Guidelines. *See* Action No. 00-CR-373, Dkt. No. 105 ("Sentencing Mem."), at (unnumbered) 4-5. In support of that claim, Mr. Scharf included a detailed discussion regarding Petitioner's history of sexual abuse, mental illness, and alcohol and drug abuse. *See id.* at (unnumbered) 6-10. At sentencing, counsel briefly reiterated some of those same arguments in offering a possible explanation for Petitioner's criminal conduct. *See* Sentencing Tr. at 6-8.

Since counsel sought a downward departure for Petitioner based upon the difficulties he had experienced in his life, it was not objectively unreasonable for counsel to provide such information to this Court in support of the requested departure. *See, e.g., United States v. Ruff,* 998 F.Supp. 1351, 1361-62 (M.D.Ala.1998) (recognizing authority to grant downward departure in defendant's sentence due to his history of being victim of sexual abuse (citation omitted)); *United States v. Artim,* 944 F.Supp. 363, 366-68 (D.N.J.1996) (discussing factors, including prior sexual abuse of perpetrator, that district courts may consider when determining whether to grant downward departure motion).

 **\*13** Moreover, since the "false and inflammatory facts" concerning Petitioner and his family that Mr. Scharf presented to the Court in conjunction with Petitioner's sentencing did not adversely affect the sentence that this Court imposed on him, Petitioner was not prejudiced, in any way, by the

2005 WL 3159657

disclosures that retained counsel made to this Court regarding the foregoing. Accordingly, the Court concludes that this theory does not afford Petitioner any basis for the relief he seeks herein.

### f. Conflict of Interest

Petitioner's final theory upon which he relies to support his claim of ineffective assistance appears to assert a claim that his retained counsel labored under a conflict of interest; however, this claim is nearly incomprehensible. In support of this claim, Petitioner states that

[c]ounsels [sic] conflict of interest is based on counsels [sic] own personal motivation, to as Mr. Scharf put it, "To Help Me, Help My Self". Counsels [sic] intention was to use my opportunity to cooperate, By [sic] having me introduced to a previous client's former associates who have criminal involvement with a Presiding Judge. Who [sic] counsel had a personal grievance with. The Governments [sic] lack of interest in my cooperation regarding this offer to assist the Government, was based on my previous failed efforts. Therefor [sic] lead to a lack of devotion towards the interests of the Petitioner by, Randy Scharf.

*See* Amended Motion to Vacate at (attached) 8.

Petitioner's reply memorandum does not clarify the substance of this claim in any way. *See, generally,* Traverse.

In opposing the present application, the Government filed Mr. Scharf's affidavit in which he addressed Petitioner's claim of ineffective assistance. *See* Action No. 03-CV-691, Dkt. No. 26, Affidavit of Randy Scharf, dated May 24, 2004 ("Scharf Aff."). In that affidavit, Mr. Scharf shed some light on the apparent factual basis for this aspect of Petitioner's ineffectiveness claim. Specifically, Mr. Scharf stated that

> [w]ith respect to the substance of the supporting facts, I can only surmise that [Petitioner] is referring to the meeting we had with AUSA Katko and the agents in which we brainstormed on various ways in which [Petitioner] might be able to continue to cooperate with the government. Many different options and possibilities were discussed at that meeting, but no concrete plan was able to be reached, largely because

the government did not believe that [Petitioner] had the desire to cooperate further with the government. Reference to a possibly corrupt judge was made in passing as one of the possible ways in which [Petitioner] might be able to help himself, but it was quickly realized by all parties present that it was too vague and speculative an idea to pursue further.

*See* Scharf Aff. at ¶ 13.

There are three levels of conflicts of interest that a court must consider in evaluating a Sixth Amendment claim alleging such a conflict: "(1) a *per se* conflict requiring automatic reversal without a showing of prejudice; (2) an actual conflict of interest that carries a presumption of prejudice; and (3) a potential conflict of interest that requires a finding of both deficient performance by counsel and prejudice...." *United States v. John Doe No. 1,* 272 F.3d 116, 125 (2d Cir.2001) (citation omitted).

**\*14** In conjunction with this action, Petitioner has not presented any evidence to support his claim that his retained counsel suffered from a *per se,* actual or potential conflict of interest. Rather, the only evidence that addresses this issue is Mr. Scharf's sworn declaration to the effect that he undertook the conduct on which this aspect of Petitioner's claim is based in an attempt to ensure that the Government filed a downward departure motion prior to sentencing. [13] *See* Scharf Aff. at ¶ 13 (noting that he and the Government undertook the actions to which Petitioner referred to ensure that they had "do[ne] everything that we could to get [Petitioner] to help himself by cooperating further in this matter"). Petitioner has not contested the substance of Mr. Scharf's affidavit in any way or otherwise presented evidence to support his claim that his retained counsel labored under a *per se,* actual or potential conflict of interest at the time that he represented Petitioner. Accordingly, the Court rejects this final theory upon which Petitioner bases his claim of ineffective assistance of counsel.

[13]    As noted above, AUSA Katko ultimately filed that application, which this Court granted at the time of Petitioner's sentencing. *See* Action No. 00-CR-373, Dkt. No. 104; Sentencing Tr. at 14-15.

2005 WL 3159657

*2. Disparity in Sentencing*

In his second ground for relief, Petitioner argues that he and his co-defendants were found "guilty of similar conduct" and notes that his criminal history category was lower than that of his co-defendant, *see* Amended Motion to Vacate at (attached) 5; *see also* Traverse at 27-35. He contends that, in conjunction with his sentencing, the prosecutor improperly diminished his level of cooperation with the Government thereby exposing him to a longer term of imprisonment. *See* Amended Motion to Vacate at (attached) 5. He argues that, as a result of the foregoing, he was wrongfully denied a downward departure identical to the one that his co-defendant received.[14] *See* Amended Motion to Vacate at (attached) 5. Petitioner contends that, if his counsel had made that downward departure application, the length of his sentence would have been reduced by twenty-four months. *See id.; see also* Traverse at 27-35.

[14]    Petitioner did not specify whether this aspect of his Amended Motion to Vacate challenges his sentence compared with the sentence that the Court imposed on his co-Defendant Sugamele or the one that the Court imposed on his co-Defendant Kenneth Suressi, the third individual named in the Indictment along with Petitioner. *See* Amended Motion to Vacate, Ground Two. However, in his Traverse, Petitioner appears to argue that this claim relates to his co-Defendant Sugamele. *See* Traverse at 27-30. Additionally, the Government did not file any downward departure motion as to Defendant Suressi, *see* Action No. 00-CR-373, Dkt. No. 111, and this Court eventually sentenced Defendant Suressi to a prison term of 87 months, *see* Action No. 00-CR-373, Dkt. No. 113, a period of time substantially longer than the combined sentence of 46 months that Petitioner received. Thus, this Court has considered this ground as one alleging an improper sentencing disparity between Petitioner and his co-Defendant Sugamele.

Initially, this Court finds that, because Petitioner waived his right to appeal the sentence that this Court ultimately imposed on him and that appellate waiver is valid, that waiver bars his second ground for relief. However, the Court also concludes that this ground is substantively without merit.

In the underlying criminal matter, the Government moved for a three-level downward departure as to Defendant Sugamele based upon his substantial assistance to the Government, *see* Action No. 00-CR-373, Dkt. No. 97, yet it only sought a two-level downward departure based upon Petitioner's assistance to the Government. *See* Action No. 00-CR-373, Dkt. No. 104. Contrary to Petitioner's claims, however, the record establishes that there was no improper disparity between the sentence that this Court imposed on his co-Defendant Sugamele and the one that this Court imposed on him. Rather, the record reflects that Defendant Sugamele began cooperating with law enforcement agents well before Petitioner began providing such assistance to the authorities. Specifically, in its sentencing memorandum regarding Defendant Sugamele, the Government noted that Defendant Sugamele had admitted his criminal involvement in the matter from the "outset," that he was the first individual named in the Indictment who cooperated with the Government, and that he "began cooperating with the authorities soon after his arrest." *See* Action No. 00-CR-373, Dkt. No. 97, at 3.

**\*15** In sharp contrast to Defendant Sugamele's efforts, the Government noted at Petitioner's change of plea that it might not file *any* downward departure motion regarding Petitioner; in fact, AUSA Katko noted on the record at that proceeding that

> at this time ... it's not clear whether [Petitioner's] done enough to have a substantial assistance [motion filed] but we're-it's my fervent hope that he pulls through and gets something to help himself and to help his sentence and so the cooperation's there-the cooperation agreement's there but it's not clear whether he's going to get it yet or not. [To Petitioner:] Do you understand that?

*See* Plea Tr. at 9.

Petitioner then acknowledged that he understood AUSA Katko's statement regarding the fact that the Government might not file a substantial assistance motion on Petitioner's behalf due to his lack of cooperation. *See id.* AUSA Katko also mentioned Petitioner's lack of cooperation with the Government at Petitioner's sentencing hearing. Specifically, the prosecutor noted at that time that, although Petitioner had been afforded "every opportunity in the world to cooperate," his cooperation with the Government had not "pan[ned]

2005 WL 3159657

out." *See* Sentencing Tr. at 12. [15] Thus, it is clear that the "sentencing disparity" about which Petitioner now complains was not improper in any way. *See, e.g. United States v. Featherstone,* No. 86 CR. 861, 1988 WL 142472, *3 (S.D.N.Y. Dec. 27, 1988)* (noting that "extent, nature and timing" of criminal defendant's cooperation properly resulted in the petitioner receiving sentence higher than that of co-defendants in Indictment).

[15]    AUSA Katko opined that Petitioner's lack of cooperation through that point in time appeared to the Government to be "a pattern of [Petitioner's]. He doesn't realize the severity of the problems until it is too late...." *See* Sentencing Tr. at 12.

Petitioner has not offered any evidence, in either his Amended Motion to Vacate or in his Traverse, to establish that his level of cooperation was not adequately reflected in the downward departure motion that Respondent filed. Accordingly, the Court denies Petitioner's second ground for relief on the merits.

*3. Failure to Take Mitigating Factors Into Consideration*
Petitioner next argues that this Court failed to consider the "unique constellation of mitigating factors" that existed with respect to him in fashioning his sentence. *See* Amended Motion to Vacate, Ground Three. In support of this claim, Petitioner contends that (1) his criminal conduct was "aberrant," (2) he possessed a defense of "imperfect/ progressive entrapment" to the charges, and (3) he played a "mitigating role" in the offense. *See id.*

This Court finds that not only does Petitioner's appellate waiver bar his third ground in support of his Amended Motion to Vacate but also this ground for relief is without merit.

In the Sentencing Memorandum that he filed on behalf of Petitioner, retained counsel argued that "the unique constellation of mitigating factors," including Petitioner's diminished capacity, the fact that Petitioner's criminal conduct was "truly aberrant when viewed in the context of his entire life," and his physical vulnerability should he be sent to prison warranted a downward departure in Petitioner's sentence. *See* Sentencing Mem. at (unnumbered) 5-11. This Court reviewed that submission prior to pronouncing its sentence on Petitioner. *See, e.g.,* Sentencing Tr. at 3. Thus, the portion of Petitioner's third ground for relief that argues that this Court did not consider the aberrant nature of his crime is fundamentally flawed.

*16 Next, although it appears that district courts in this Circuit may properly consider an "imperfect entrapment" argument as a basis for a downward departure motion, *see United States v. Bala,* 236 F.3d 87, 91-93 (2d Cir.2000), a departure on such a ground is only warranted where the defendant establishes that his criminal conduct was the result of "aggressive encouragement of wrongdoing" on the part of the Government sufficient to "remove [the defendant's] case from the 'heartland of the applicable Guideline.' " *Bala,* 236 F.3d at 92 (quoting *United States v. Bonnet-Grullon* 212 F.3d 692, 700 (2d Cir.2000)). Neither the factual basis for the plea discussed in Petitioner's Plea Agreement nor the basis for the plea placed on the record on the date that he pled guilty to Counts One and Three in the Indictment, afforded any basis for this Court to properly consider-much less grant-a downward departure in Petitioner's sentence based upon an imperfect entrapment defense. *See, e.g.,* Plea Agreement at 6-8; Plea Tr. at 8.

With respect to Petitioner's claim that this Court improperly failed to downwardly depart in his sentence pursuant to U.S.S.G. § 3B1.2 due to the minor role he purportedly played in the subject offenses, [16] the Court finds that the facts that Petitioner admitted in his Plea Agreement reveal that a downward adjustment in his sentence under this provision of the Guidelines would have been inappropriate. Specifically, under his Plea Agreement, Petitioner admitted that on September 17, 1998, he drove himself and co-Defendant Sugamele to a local restaurant to sell marijuana and a handgun to an individual who proved to be a confidential informant. *See* Plea Agreement at 6-7. Additionally, Petitioner admitted that, after co-Defendant Sugamele sold the confidential informant $350.00 worth of marijuana on September 25, 1998, Petitioner placed a call to that individual and encouraged him to "call [Petitioner] if he need[ed] anything else." *See id.* at 7-8. Finally, Petitioner and his co-Defendant Sugamele met with the confidential informant on October 9, 2000, and again on October 22, 2000, and sold him illegal narcotics worth approximately $3,000.00. *See id.* at 8.

[16]    Under U.S.S.G. § 3B1.2, entitled "Mitigating Role," a district court may, based upon a defendant's role in the offense, decrease his offense level by four levels where the defendant was a minimal participant in any criminal activity, *see* U.S.S.G. § 3B1 .2(a); by two levels if the defendant was a minor participant in the criminal activity, *see* U.S.S.G. § 3B1.2(b); or by three levels "[i]n

cases falling between" the foregoing categories. *See* U.S .S.G. § 3B1.2; *see also United States v. Carpenter,* 252 F.3d 230, 234-35 (2d Cir.2001) (citations omitted).

Courts have applied a "minor role" adjustment under the Guidelines to "any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, cmt. n. 3. In addition, courts have found such an adjustment appropriate if the defendant is "substantially less culpable than the average participant." *Id.; Carpenter,* 252 F.3d at 234-35. In this vein, the Second Circuit "ha[s] held that a defendant may not receive a minor role adjustment solely because [he] 'played a lesser role than h[is] co-conspirators[;] to be eligible for a reduction, the defendant's conduct must be "minor" ... as compared to the average participant in such a crime.' " *United States v. Castano,* 234 F.3d 111, 113 (2d Cir.2000) (quotation omitted).

**\*17** Petitioner's role in the subject criminal offenses, as he admitted in his Plea Agreement, establishes that it would have been inappropriate for this Court to reduce his offense level based on his alleged mitigating role in the offense. Accordingly, in light of the foregoing, the Court denies Petitioner's third ground for relief.

*4. Petitioner's Participation in the BOP's Drug Treatment Program*
In his fourth ground for relief, Petitioner claims that the Court should correct his sentence because, at the time of sentencing, it was under the mistaken impression that he would be eligible for early release upon his successful completion of the BOP's Drug Treatment Program. *See* Amended Motion to Vacate at (attached) 6. Petitioner argues that, because the BOP subsequently informed him that he was not eligible to participate in that program due to his firearms conviction, this Court should correct his sentence because of its "apparent misunderstanding" concerning BOP regulations relating to its Drug Treatment Program. *See id.*

Respondent argues that the Court's statements regarding the BOP's Drug Treatment Program at the time of Petitioner's sentencing constituted a mere recommendation that Petitioner participate in that program. *See* Resp. Mem. at 23. Moreover, Respondent contends that, because this Court did not rely upon the statement it made regarding Petitioner's participation in that program in fashioning Petitioner's sentence, the Court should deny this aspect of Petitioner's Amended Motion to Vacate. *See id.* In support of its position, Respondent relies

principally upon the Supreme Court's decision in *United States v. Addonizio,* 442 U.S. 178 (1979). *See* Resp. Mem. at 23-26. [17]

[17]    In *Addonizio,* the Supreme Court held that a party may not properly bring an action pursuant to 28 U.S.C. § 2255 if the claimed sentencing error was "based not on any objectively ascertainable error but on the frustration of the subjective intent of the sentencing judge." *Addonizio,* 442 U.S. at 187.

Although Petitioner's waiver of his right to appeal bars this ground for the relief he seeks, the Court notes that this ground is also without substance. Specifically, the record reflects that, *after* imposing sentence on Petitioner, this Court stated that it was

going to recommend that [Petitioner] be allowed to participate in the Bureau of Prisons Comprehensive Residential Drug Treatment Program.

If you are accepted into that program, and if you complete it successfully, you will be able to reduce your time further in prison, but more importantly, you will be developing some lifelong skills to deal with substance and alcohol and other types of drug abuse as well as some skills to deal with making good choices in life.

*See* Sentencing Tr. at 15-16.

This Court is well aware that the ultimate decision as to whether an inmate will be accepted into the BOP's Drug Treatment Program rests with the BOP. Although the Court encouraged Petitioner to apply for admission into that program, it is clear that the Court merely *recommended* that Petitioner *be allowed* to participate in that program, *after* it imposed sentence on Petitioner. [18] *See* Sentencing Tr. at 15. Thus, this Court clearly indicated at Petitioner's sentencing that his successful completion of the BOP's program-and any potential reduction in his prison term related to same-was neither guaranteed nor a condition of his sentence. To the contrary, this Court merely recommended that Petitioner consider applying for admission into the BOP's Drug Treatment Program primarily because of the life skills he might obtain as a result of his successful completion of that program. *See id.*

[18]    The Court notes that the sentence that it imposed on Petitioner reflected a substantial downward

departure from the imprisonment range of 130 months to 147 months to which Petitioner was subject in light of his convictions. *Compare* Sentencing Tr. at 14 *with* Revised PSR at ¶ 71.

**\*18** The Court clearly did not base Petitioner's sentence, in any way, on an assumption that he would be accepted into the BOP's Drug Treatment Program or that he would necessarily successfully complete that program and thereby reduce his sentence. Thus, even considering the substance of Petitioner's fourth ground for relief, the Court finds it to be without merit. *See, e.g., Alvarez v. Scully,* No. 91 CIV. 6651, 1993 WL 15455, *8 (S.D.N.Y. Jan. 11, 1993) (habeas relief unavailable where "there is no indication that [court] relied on misinformation in the sentencing procedure"), *aff'd without op.,* 23 F.3d 397 (2d Cir.1994); *Cf. Moore v. Scully,* 956 F.Supp. 1139, 1149 (S.D.N.Y.1997) (court's mistaken belief at sentencing regarding the defendant's involvement in prior crime did not entitle the petitioner to habeas relief, the information "clearly was not material, and the Court's mention of it was harmless"). Accordingly, the Court denies Petitioner's fourth ground for relief

### 5. Validity of Plea

In his fifth ground for relief, Petitioner argues that his guilty plea was both involuntary and not knowingly made. *See* Amended Motion to Vacate at (attached) 6. Specifically, he contends that his plea is invalid because (1) it was based upon "Counsel's misinformation" and because (2) he did not violate § 924(c). *See id.* Although this claim appears to be rooted in the ineffective assistance claim already discussed, the Second Circuit has emphasized that courts within this Circuit are to construe a *pro se* litigant's papers liberally. *See Marmolejo v. United States,* 196 F.3d 377, 378 (2d Cir.1999) (per curiam) (construing application for certificate of appealability filed in § 2255 application as a notice of appeal); *Fleming v. United States,* 146 F.3d 88, 90 (2d Cir.1998) ("Just as *pro se* complaints 'must be liberally construed' ... a district court must review a *pro se* petition for collateral relief 'with a lenient eye, allowing borderline cases to proceed' " (internal quotations and other citations and footnote omitted)); *see Parke v. United States,* Nos. 5:97-CV-526, 92 CR 035, 2004 WL 437464, *2 (N.D.N.Y. Feb. 17, 2004) ("this court must afford [petitioner], as a *pro se* litigant, a liberal reading of his papers, and interpret them 'to raise the strongest arguments that they suggest' " (quotation omitted)). Therefore, in addition to considering this claim as an argument in support of his ground alleging ineffective

assistance, this Court will also construe this claim for relief as one challenging the validity of Petitioner's guilty plea.

To the extent that Petitioner's appellate waiver and/or his failure to assert this claim in a direct appeal of his conviction do not procedurally bar this ground, the Court finds that the transcript of Petitioner's change of plea belies any claim that he did not knowingly, voluntarily and intelligently enter his guilty plea to Counts One and Three of the Indictment. *See* Plea Tr. at 2-11. At that hearing, Petitioner stated that he (1) had thoroughly reviewed the Plea Agreement with his attorney, (2) understood everything contained in that agreement, and (3) had no questions whatsoever about anything contained in the Plea Agreement. *See* Plea Tr. at 5. The answers that Petitioner provided to the Court at that proceeding did not suggest, in any way, that his guilty plea was anything other than one "made voluntarily after proper advice and with full understanding of the consequences." *E.g., Kercheval v. United States,* 274 U.S. 220, 223 (1927); *see also Pujols v. United States,* No. 03 Civ. 1474, 2004 WL 1418024, *2 (S.D.N.Y. June 23, 2004) (quotation and other citation omitted).

**\*19** Since Petitioner has not presented any evidence to support his claim challenging the validity of his guilty plea, this Court concludes that such a claim is without substance. Accordingly, the Court also denies this portion of Petitioner's fifth ground on the merits.

### III. CONCLUSION

After carefully reviewing the file in this matter, the parties' submissions, the applicable law, and for the reasons stated herein, the Court hereby

ORDERS that the Clerk of the Court amend the Court's Docket in this case to reflect Petitioner's new address: Syracuse Pavilion, 701 Erie Boulevard East, Syracuse, New York 13210; and the Court further

ORDERS that Petitioner's request to amend his Amended Motion to Vacate, *see* Action No. 03-CV-691, Dkt. No. 30, is DENIED; and the Court further

ORDERS that Petitioner's Amended Motion to Vacate, *see* Action No. 03-CV-691, Dkt. No. 15, is DENIED in its entirety; and the Court further

2005 WL 3159657

ORDERS that the Clerk of the Court serve a copy of this Order on the parties by electronic or regular mail.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 3159657

---

End of Document                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 2967633

628 F.Supp.2d 294
United States District Court,
N.D. New York.

Alex FERRER, Petitioner,

v.

SUPERINTENDENT, Respondent.

No. 9:05–CV–1010 (NAM).
|
July 25, 2008.

**Synopsis**
**Background:** Following affirmance of his conviction in state
court for attempted second degree burglary, and affirmance of
denial of post-conviction relief, 16 A.D.3d 913, 791 N.Y.S.2d
721, petitioner sought federal habeas relief.

**Holdings:** The District Court, Norman A. Mordue, Chief
Judge, held that:

[1] prosecution's alleged withholding of evidence could not
constitute *Brady* violation;

[2] petitioner was not entitled to habeas relief on his claim that
his guilty plea was product of illegally obtained confession;

[3] plea was knowingly, intelligently, and voluntarily made;

[4] petitioner was prohibited from obtaining habeas relief on
claims that arose out of matters that occurred prior to entry
of plea;

[5] petitioner was not entitled to habeas relief on claim that
state court wrongfully denied his application to withdraw
plea;

[6] petitioner was not entitled to vacatur of plea based upon
trial judge's failure to conduct competency hearing after entry
of plea; and

[7] trial counsel did not provide ineffective assistance.

Petition denied.

West Headnotes (34)

**[1]    Habeas Corpus** 🔑 Federal Review of State
or Territorial Cases

A federal court engaged in habeas review is not
charged with determining whether state court's
determination was merely incorrect or erroneous,
but instead whether such determination was
"objectively unreasonable." 28 U.S.C.A. §
2254(d).

**[2]    Habeas Corpus** 🔑 Federal Review of State
or Territorial Cases

"Objectively unreasonable," within meaning
of Antiterrorism and Effective Death Penalty
Act (AEDPA), means some increment of
incorrectness beyond error is required in order to
grant federal habeas application. 28 U.S.C.A. §
2254(d).

**[3]    Criminal Law** 🔑 Constitutional obligations
regarding disclosure

**Criminal Law** 🔑 Impeaching evidence

To prove *Brady* violation, a habeas petitioner
must establish that: (1) evidence at issue
was favorable to accused, either because it
was exculpatory or could have impeached
prosecution witness, (2) evidence was
suppressed by prosecution, either willfully or
inadvertently, and (3) prejudice ensued from
withholding. 28 U.S.C.A. § 2254.

**[4]    Criminal Law** 🔑 Test results; demonstrative
and documentary evidence

Palm print found on ceramic bowl located
in burglary victim's residence inculpated,
rather than exculpated, defendant, and thus
prosecution's alleged withholding of that
evidence could not constitute *Brady* violation, in
burglary prosecution.

**[5]**  **Criminal Law**  ⟶  Right to remain silent

**Criminal Law**  ⟶  Right to counsel

**Criminal Law**  ⟶  Use of statement

Under *Miranda*, a person questioned by law enforcement officers after being taken into custody or otherwise deprived of his freedom of action in any significant way must first be warned that he has right to remain silent, that any statement he does make may be used as evidence against him, and that he has right to presence of an attorney, either retained or appointed. U.S.C.A. Const.Amend. 5.

**[6]**  **Criminal Law**  ⟶  What constitutes voluntary statement, admission, or confession

In considering, for *Miranda* purposes, whether a defendant has voluntarily provided statement to police, district courts are to consider "totality of the circumstances," including evidence of police coercion, length of interrogation, the defendant's maturity and education, and whether police failed to advise defendant of his rights to both remain silent and to have counsel present during custodial interrogation. U.S.C.A. Const.Amend. 5.

**[7]**  **Criminal Law**  ⟶  Coercion

In determining whether a statement was coerced, for *Miranda* purposes, a district court must examine whether a defendant's will was overborne by circumstances surrounding giving of confession, taking into consideration totality of all surrounding circumstances, both characteristics of accused and details of interrogation.

**[8]**  **Habeas Corpus**  ⟶  Waiver of rights; exhaustion, bypass, or default

**Habeas Corpus**  ⟶  Admissibility of Evidence;  Arrest and Search

Under Antiterrorism and Effective Death Penalty Act (AEDPA), a state court's factual findings at suppression hearing are presumed to be correct,

and the petitioner has burden of overcoming that presumption by clear and convincing evidence; however, ultimately legal questions, such as whether the petitioner has effectively waived his federal constitutional rights in a proceeding, are governed by federal standards. 28 U.S.C.A. § 2254(e)(1).

**[9]**  **Constitutional Law**  ⟶  Voluntariness, compulsory testimony, and self-incrimination in general

**Criminal Law**  ⟶  Necessity of showing voluntary character

A coerced or otherwise involuntary statement may never be used for any purpose; any criminal trial use against a defendant of his involuntary statement is denial of due process of law. U.S.C.A. Const.Amend. 14.

**[10]**  **Habeas Corpus**  ⟶  Confessions, declarations, and admissions

State court's determination that petitioner voluntarily waived his *Miranda* rights when he provided inculpatory statement to law enforcement officials was neither contrary to, nor unreasonable application of, *Miranda* and its progeny, and thus petitioner was not entitled to habeas relief on his claim that his plea of guilty to attempted second degree burglary was product of illegally obtained confession. 28 U.S.C.A. § 2254(d).

**[11]**  **Constitutional Law**  ⟶  Pleas

Due Process Clause of United States Constitution requires affirmative showing that a defendant's plea is entered both knowingly and voluntarily before trial court may accept plea. U.S.C.A. Const.Amend. 14.

2 Cases that cite this headnote

**[12]**  **Criminal Law**  ⟶  Voluntary Character

Longstanding test for determining validity of guilty plea is whether plea represents voluntary

2008 WL 2967633

and intelligent choice among alternative courses of action open to the defendant.

5 Cases that cite this headnote

**[13]    Habeas Corpus    🗝  Arraignment and Plea**

On collateral review, a federal habeas court may only vacate guilty plea where the petitioner can establish that plea was not made knowingly and voluntarily. 28 U.S.C.A. § 2254(d).

8 Cases that cite this headnote

**[14]    Criminal Law    🗝  Ascertainment by court; advising and informing accused**

Defendant's plea of guilty to attempted second degree burglary was knowingly, intelligently, and voluntarily made, and thus was valid; trial court engaged in extensive colloquy with defendant wherein he was fully appraised of charges against him and rights he was waiving by pleading guilty, as well as benefits he would obtain through guilty plea.

**[15]    Constitutional Law    🗝  Pleas**

There is no specific series of questions that a state court judge must ask in course of plea allocution in order to satisfy due process; due process requires only that courts provide safeguards sufficient to insure the defendant what is reasonably due in circumstances. U.S.C.A. Const.Amend. 14.

**[16]    Criminal Law    🗝  Ascertainment by court; advising and informing accused**

There is no requirement that state court judges follow uniform mandatory catechism of pleading defendants.

**[17]    Habeas Corpus    🗝  Arraignment and Plea**

State court's rejection of petitioner's claim that his plea of guilty to attempted second degree burglary was unlawfully induced and involuntarily made was neither contrary to, nor

unreasonable application of, relevant Supreme Court precedent, and thus petitioner was not entitled to federal habeas relief as to that claim.

**[18]    Habeas Corpus    🗝  Guilty plea**

Petitioner was prohibited from obtaining federal habeas relief on claims that arose out of matters that occurred prior to entry of valid guilty plea. 28 U.S.C.A. § 2254(d).

**[19]    Habeas Corpus    🗝  Arraignment and Plea**

A state judge's denial of motion to withdraw guilty plea is generally not subject to habeas corpus review unless plea was not entered intelligently or voluntarily. 28 U.S.C.A. § 2254(d).

3 Cases that cite this headnote

**[20]    Habeas Corpus    🗝  Plea**

In considering habeas claim that request to withdraw guilty plea was wrongfully denied, federal courts must consider fact that decision of whether to allow the petitioner to withdraw plea is committed to discretion of trial judge. 28 U.S.C.A. § 2254(d).

1 Cases that cite this headnote

**[21]    Habeas Corpus    🗝  Arraignment and Plea**

Petitioner failed to present federal habeas court with persuasive evidence that supported his claim that he was innocent of crime to which he pled guilty, namely, attempted second degree burglary, and thus petitioner was not entitled to habeas relief on claim that state court wrongfully denied his application to withdraw guilty plea. 28 U.S.C.A. § 2254(d).

1 Cases that cite this headnote

**[22]    Habeas Corpus    🗝  Plea**

Sworn statements made in connection with guilty plea carry strong presumption of verity, and a federal habeas court reviewing belated claim of

innocence which contradicts prior, valid plea must draw all permissible inferences in favor of government and against the petitioner. 28 U.S.C.A. § 2254(d).

7 Cases that cite this headnote

**[23]** **Habeas Corpus** 🔑 Plea

Trial judge who addressed the petitioner during course of taking guilty plea, and who had benefit of observing his demeanor at that time, is in better position than federal habeas court, reviewing cold record, to judge credibility of belated claim of innocence which contradicts prior, valid guilty plea.

6 Cases that cite this headnote

**[24]** **Criminal Law** 🔑 Right to plead guilty; mental competence

Under New York law, trial judge was not required to conduct hearing regarding defendant's competency, and thus defendant, who pled guilty to attempted second degree burglary, was not entitled to vacatur of guilty plea based upon judge's failure to conduct such hearing after entry of plea. N.Y.McKinney's CPL § 730.30(2).

**[25]** **Habeas Corpus** 🔑 Review; Post-Conviction Relief and New Trial

Federal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings. 28 U.S.C.A. § 2254(d).

9 Cases that cite this headnote

**[26]** **Habeas Corpus** 🔑 Exhaustion of State Remedies

A federal district court may not grant habeas petition of state prisoner unless it appears that applicant has exhausted remedies available in courts of state. 28 U.S.C.A. § 2254.

**[27]** **Habeas Corpus** 🔑 Availability of Remedy Despite Procedural Default or Want of Exhaustion

**Habeas Corpus** 🔑 Cause and prejudice in general

Federal habeas courts may only consider substance of procedurally forfeited claims where the petitioner can establish both cause for procedural default and resulting prejudice, or alternatively, that fundamental miscarriage of justice would occur absent federal court review. 28 U.S.C.A. § 2254.

**[28]** **Habeas Corpus** 🔑 Availability of Remedy Despite Procedural Default or Want of Exhaustion

"Fundamental miscarriage of justice" exists, as would allow federal habeas review of procedurally defaulted claim, where constitutional violation has probably resulted in conviction of one who is actually innocent. 28 U.S.C.A. § 2254.

**[29]** **Habeas Corpus** 🔑 Cause and prejudice in general

Petitioner failed to establish either cause to excuse procedural default of his claim that he was denied his right to allocution at sentencing, in burglary prosecution, or actual innocence, as would allow federal habeas review of that claim. 28 U.S.C.A. § 2254.

**[30]** **Criminal Law** 🔑 Plea

To establish actual prejudice, as element of claim for ineffective assistance, in context of guilty plea, a defendant must prove that there is reasonable probability that he would not have pleaded guilty and would have insisted on going to trial. U.S.C.A. Const.Amend. 6.

**[31]** **Habeas Corpus** 🔑 Assistance of counsel

Petitioner's unsupported allegations in his application for federal habeas relief that his trial counsel's conduct was deficient were insufficient to overcome presumption that counsel acted reasonably. U.S.C.A. Const.Amend. 6.

[32]    **Criminal Law** 👉 Preparation for trial
   **Criminal Law** 👉 Plea

Defense counsel's conduct in burglary prosecution was not deficient, as element of claim for ineffective assistance; counsel negotiated very favorable plea deal and there was nothing to indicate that counsel was unprepared or failed to investigate facts of case or defendant's prior conviction, mental health history, or educational history. U.S.C.A. Const.Amend. 6.

1 Cases that cite this headnote

[33]    **Criminal Law** 👉 Plea

Defense counsel's alleged failure, in burglary prosecution, to investigate facts of case and defendant's prior conviction, mental health history, and educational history, file omnibus motion, or search for drug use history did not prejudice defendant, as element of claim for ineffective assistance; there was no reasonable probability that defendant would not have pled guilty and would have insisted on going to trial but for claimed deficiencies of counsel. U.S.C.A. Const.Amend. 6.

[34]    **Habeas Corpus** 👉 Certificate of probable cause

Federal habeas petitioner failed to make substantial showing of denial of constitutional right, as required for issuance of certificate of appealability. 28 U.S.C.A. § 2253(c), (c)(1, 2).

**Attorneys and Law Firms**

**\*298** Alex Ferrer, Pine City, NY, pro se.

Hon. Andrew Cuomo, Office of the Attorney General, State of New York, Frederick H. Wen, Esq., Assistant Attorney General, of Counsel, New York, NY, for Respondent.

**MEMORANDUM–DECISION AND ORDER**

NORMAN A. MORDUE, Chief Judge.

**I.** *Background*

   **A.** *State Court Proceedings*

 **\*\*1** The state court records reflect that at approximately 2:30 a.m. on August 21, 2001, Margaret Frost was awoken by an ambulance outside her home in Binghamton, New York. *See* Transcript of Suppression Hearing (4/17/02) ("Suppression Tr.") at pp. 28–29. As she woke up, she noticed an individual standing in her bedroom, approximately ten feet away from her. *Id.* at p. 29. When she confronted him, he put a jacket over his head and flashed a light in her eyes. *Id.* at pp. 29–30. She then informed him that she was going to call the police, and, as a result, he ran out of the residence through its back door. *Id.* at p. 31.

After he fled, Frost discovered that several items from her home had been misplaced or missing, including a ceramic bowl and $50.00 from her purse. *Id.* at pp. 41–43. She promptly called the police, and, when law enforcement officials arrived, they discovered a backpack that contained numerous documents bearing the name of petitioner, *pro se* Alex Ferrer on Frost's front porch. *Id.* at p. 6. Ferrer was then identified as a suspect, and on August 24, 2001, the police located him and brought him to the police station for questioning. **\*299** *Id.* at pp. 8–9. Upon arriving at that location, he was advised of his *Miranda* rights. [1] Suppression Tr. at p. 11. He then indicated that he was willing to talk with the officers without the benefit of counsel, and eventually admitted his involvement in the incident which occurred at Frost's residence. *Id.* at pp. 15–19.

[1]    *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

By Indictment Number 01–619, a Broome County grand jury charged Ferrer with one count of burglary in the second degree, contrary to N.Y. Penal Law § 140.25(1)(d).

On April 17, 2002, Broome County Court Judge Patrick H. Mathews presided over a suppression hearing, after which he

issued a decision which denied Ferrer's suppression motion in all respects. *See* Suppression Tr. at p. 82.

Ferrer's jury trial on the charge commenced on April 23, 2002, with Judge Mathews presiding. *See* Transcript of Trial and Change of Plea (4/23/02) ("April Tr.") at p. 2. After the jury was selected, a luncheon recess was held, during which time the prosecutor received permission from the trial court to compare a palm print found on Frost's ceramic bowl with a palm print taken from Ferrer. April Tr. at pp. 73–74. A comparison of those two prints yielded a "positive match." *Id.* at pp. 74–75. Upon being advised of that development, Ferrer indicated to his attorney that he wished to accept the prosecutor's previous offer to allow Ferrer, a second violent felony offender, to enter a guilty plea to the charge of attempted second degree burglary in satisfaction of the charge against him in the Indictment, as well as a potential perjury charge. *Id.* at p. 79–80.

The County Court then engaged in a colloquy with him regarding the proposed plea, after which Judge Mathews accepted Ferrer's guilty plea to the attempted burglary charge.[2] *Id.* at p. 83.

[2]     The substance of that colloquy is discussed more fully *post* in conjunction with petitioner's challenge to the validity of his plea.

**2** On May 30, 2002, the date on which Ferrer was scheduled to be sentenced, Judge Mathews, after having reviewed various *pro se* requests of Ferrer, ordered him to undergo a psychiatric examination pursuant to New York Criminal Procedure Law ("CPL") § 730.30. That exam was conducted by two psychiatrists, and, although the contents of those reports were not placed on the trial record, the record reflects that Ferrer was found to be competent. *See* Decision and Order of Judge Mathews (6/9/03) ("June, 2003 Decision") at p. 5.

On July 30, 2002, Ferrer appeared with counsel for sentencing. *See* Transcript of Sentencing of Alex Ferrer (7/30/02). At that proceeding, Ferrer claimed that he was not guilty of the crime to which he pleaded guilty because his palm print could not have been on the ceramic bowl, which he claimed had fallen on the floor. *Id.* at p. 2. Notwithstanding that comment, the court sentenced Ferrer, pursuant to the terms of the plea bargain, to a determinate term of five years imprisonment, followed by five years of post-release supervision. *Id.* at p. 3.

On March 10, 2003, before his appeal was perfected, Ferrer filed a *pro se* motion to vacate his conviction pursuant to CPL § 440.10. *See* Dkt. No. 22, Exh. A ("CPL Motion"). In that application, Ferrer claimed, *inter alia,* that: i) he was forced to testify before the grand jury in "shackles;" ii) perjurious testimony was presented to the grand jury; iii) the manner in **\*300** which he was questioned was constitutionally infirm; iv) the grand jury panel lacked "ethnic minorities;" and v) he received the ineffective assistance of trial counsel. *See* CPL Motion. The prosecutor opposed that application, and Judge Mathews thereafter denied such request without a hearing. *See* June, 2003 Decision.

Ferrer's direct appeal was thereafter perfected, and, in his brief, appellate counsel argued that: i) Ferrer was entitled to withdraw of his guilty plea because he received the ineffective assistance of trial counsel; and ii) the County Court erred by not granting Ferrer new counsel and then ordering a competency hearing under the CPL. That appeal was opposed by the district attorney, and, after consolidating Ferrer's direct appeal with his appeal of the denial of his CPL Motion, the New York State Supreme Court Appellate Division, Third Department, unanimously affirmed both Ferrer's conviction and the denial of the CPL Motion. *See People v. Ferrer,* 16 A.D.3d 913, 791 N.Y.S.2d 721 (3d Dept.2005). Ferrer, through counsel, sought leave to appeal the Appellate Division's decision, however in a decision dated July 7, 2005, New York's Court of Appeals denied his leave application. *People v. Ferrer,* 5 N.Y.3d 788, 801 N.Y.S.2d 809, 835 N.E.2d 669 (2005).

### B. *This Action*

Ferrer filed a *pro se* petition in this District seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on August 10, 2005. Before any response to that pleading was filed by the respondent, Ferrer filed an amended petition in which he asserts numerous grounds for relief. *See* Dkt. No. 18 ("Am. Pet.").[3] In that pleading, Ferrer asserts that: i) the prosecutor failed to disclose *Brady*[4] evidence to Ferrer; ii) his incriminating statement was obtained in violation of his *Miranda* rights; iii) his guilty plea was unlawfully induced and involuntarily made; iv) the district attorney suborned perjurious testimony at both the grand jury proceeding and the suppression hearing; v) he was improperly forced to testify in "shackles" before the grand jury that ultimately indicted him; vi) the panel for the grand jury was "unconstitutionally selected and impaneled;" vii) the County Court erred in

refusing to grant Ferrer's motion to withdraw his plea; viii) the trial court wrongfully failed to allow Ferrer to testify in support of his claim that he was not competent to plead guilty to the charge; ix) the County Court erred by denying Ferrer his right to an allocution at his sentencing; and x) he received the ineffective assistance of trial counsel. *See* Am. Pet.; *see also* Traverse (Dkt. No. 26) ("Traverse"); Memorandum of Law in Support of Amended Petition (Dkt. No. 36).

3      As will be seen, some of the grounds asserted in the petition are legally redundant or allege multiple legal theories in support of a particular ground for relief. After having reviewed the submissions provided by Ferrer, the Court has found it appropriate to address the merits of his petition by reference to the legal theories raised by petitioner, rather than by the particular ground in which he has asserted such claims.

4      *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

 **3  The Office of the Attorney General for the State of New York, acting on respondent's behalf, has filed a response in opposition to Ferrer's application. Dkt. No. 22. Attached to that response was a memorandum of law requesting dismissal of the amended petition ("Resp. Mem."). In his memorandum, respondent claims that Ferrer is procedurally barred from asserting some of his claims for relief and that, in any event, the claims raised in the  *301  amended petition are without merit. *See* Resp. Mem. After he filed his Traverse, Ferrer filed additional exhibits, together with a supplemental letter and brief in further support of his amended pleading. *See* Dkt. Nos. 29, 33 and 34. This Court has considered the above-referenced documents in conjunction with its review of the amended petition, which is currently before this Court for disposition. 5

5      In accordance with General Order No. 32, this Court rescinds the prior reference of this action to Magistrate Judge Gustave J. DiBianco.

## II. *Discussion*

### A. *Standard of Review Applicable to Ferrer's Claims*
The April, 1996 enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA") brought about significant new limitations on the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254. In discussing this deferential standard, the Second Circuit noted in *Rodriguez v. Miller,* 439 F.3d 68 (2d Cir.2006) that:

> a federal court may award habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the adjudication resulted in an outcome that: (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Rodriguez,* 439 F.3d at 73 (quoting 28 U.S.C. § 2254(d)); *see also DeBerry v. Portuondo,* 403 F.3d 57, 66 (2d Cir.2005); *Miranda v. Bennett,* 322 F.3d 171, 177–78 (2d Cir.2003); *Boyette v. Lefevre,* 246 F.3d 76, 88 (2d Cir.2001). In providing guidance concerning application of this test, the Second Circuit has noted that:

> [A]state court's decision is "contrary to" clearly established federal law if it contradicts Supreme Court precedent on the application of a legal rule, or addresses a set of facts "materially indistinguishable" from a Supreme Court decision but nevertheless comes to a different conclusion than the Court did. [*Williams v. Taylor,* 529 U.S. 362,] at 405–06, 120 S.Ct. 1495 [146 L.Ed.2d 389 (2000) ]; *Loliscio v. Goord,* 263 F.3d 178, 184 (2d Cir.2001).... [A] state court's decision is an "unreasonable application of" clearly established federal law if the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts" of the case before it. *Williams,* 529 U.S. at 413, 120 S.Ct. 1495.

*Thibodeau v. Portuondo,* 486 F.3d 61, 65 (2d Cir.2007); *see also Williams v. Artuz,* 237 F.3d 147, 152 (2d Cir.2001) (citing *Francis S. v. Stone,* 221 F.3d 100, 108–09 (2d Cir.2000)).

 **4  [1]   [2]   Significantly, a federal court engaged in habeas review is not charged with determining whether the state court's determination was merely incorrect or erroneous, but instead whether such determination was "objectively unreasonable." *Williams,* 529 U.S. at 409, 120 S.Ct. 1495; *see also Sellan v. Kuhlman,* 261 F.3d 303, 315 (2d Cir.2001). Objectively unreasonable in this context means " 'some increment of incorrectness beyond error is required' " in order to grant a federal habeas application. *Earley v. Murray,* 451 F.3d 71, 74 (2d Cir.2006) (quoting *Francis S.,* 221 F.3d at 111).

### B. Review of Ferrer's Claims

### 1. Brady Violation

Ferrer argues that his conviction must be overturned because the prosecutor **\*302** withheld evidence that was favorable to the defense until after the jury was selected, thereby violating his right to a fair trial. *See* Am. Pet., Ground One. Specifically, he asserts that the prosecutor withheld evidence concerning the palm print found on the ceramic bowl "for nine (9) months and suddenly mention[ed] it for the first time ever after the selection of the jury." Traverse; Point Three.

[3]   In *Brady,* the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady,* 373 U.S. at 87, 83 S.Ct. 1194. To prove a *Brady* violation, a habeas petitioner must establish that: 1) the evidence at issue was favorable to the accused, either because it was exculpatory or could have impeached a prosecution witness; 2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and 3) prejudice ensued from the withholding. *Moore v. Illinois,* 408 U.S. 786, 794–95, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972); *see also Strickler v. Greene,* 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

In discussing the first element of a *Brady* claim, the Second Circuit has noted that "[e]vidence is favorable to the accused if it either tends to show the accused is not guilty or impeaches a prosecution witness." *Boyette,* 246 F.3d at 90 (citing *United States v. Bagley,* 473 U.S. 667, 674, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)); *see also Strickler,* 527 U.S. at 281, 119 S.Ct. 1936.

[4]   In the case *sub judice,* the evidence that petitioner asserts was wrongfully withheld by the prosecution—the palm print found on the victim's ceramic bowl—*inculpated,* rather than exculpated, Ferrer. *See* April Tr. at pp. 74–75. Thus, he has plainly not established that the subject evidence was favorable to his defense.

A habeas petitioner must satisfy all three elements of a *Brady* claim to prevail on such a claim. *Hughes v. Phillips,* 457 F.Supp.2d 343, 359 (S.D.N.Y.2006) (citing *Leka v. Portuondo,* 257 F.3d 89 (2d Cir.2001)). Since Ferrer has not demonstrated the first required element of his *Brady*

claim, the Third Department's decision denying this claim, *see Ferrer,* 16 A.D.3d at 914–15, 791 N.Y.S.2d 721, is neither contrary to, nor represents an unreasonable application of, *Brady* and its progeny. Petitioner's *Brady* claim is therefore denied.

### 2. Admissibility of Incriminating Statement

**\*\*5** Ferrer also claims that his guilty plea must be vacated because it was the product of an illegally obtained confession. *See* Am. Pet., Ground Two; Traverse, Point One. In support of this assertion, Ferrer asserts that law enforcement officials were aware that he was represented by counsel in another criminal matter at the time he was questioned, but that they failed to consult with such attorney before questioning Ferrer, and instead resorted to "coercion, deception and trickery" to extract a confession from him. Am. Pet., Ground Two; Traverse, Point One. Petitioner also asserts that he had "mental issues," and was in need of "psychiatric medication" while being questioned, but that those facts were ignored by the police. *Id.*

[5]   [6]   [7]   [8]   [9]   Under *Miranda,* "a person questioned by law enforcement officers after being 'taken into custody or otherwise deprived of his freedom of action in any significant way' must first 'be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.' " *Stansbury v.* **\*303** *California,* 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (quoting *Miranda,* 384 U.S. at 444, 86 S.Ct. 1602). In considering whether a party has voluntarily provided a statement to the police, courts are to consider the "totality of the circumstances," including evidence of police coercion, the length of the interrogation, the defendant's maturity and education, and whether the police failed to advise the defendant of his rights to both remain silent and to have counsel present during the custodial interrogation. *Withrow v. Williams,* 507 U.S. 680, 693–94, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993); *see also Colorado v. Spring,* 479 U.S. 564, 573, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987). [6]  In determining whether a statement was coerced, a court must "examine[ ] 'whether a defendant's will was overborne' by the circumstances surrounding the giving of a confession[,] ... tak[ing] into consideration 'the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation.' " *Dickerson v. United States,* 530 U.S. 428, 434, 120 S.Ct. 2326, 147

L.Ed.2d 405 (2000) (quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). Under the AEDPA, a state court's factual findings at a suppression hearing are presumed to be correct, and the petitioner has the burden of overcoming that presumption by clear and convincing evidence. *See Sorto v. Herbert,* 364 F.Supp.2d 240, 242–43 (E.D.N.Y.2004) (citing 28 U.S.C. § 2254(e)(1)); *James v. Walker,* No. 99–CV–6191, 2003 WL 22952861, at *6 (E.D.N.Y. Aug. 28, 2003), *aff'd,* 116 Fed.Appx. 295, 297 (2d Cir.2004). However, "ultimately legal questions, such as whether a defendant has effectively waived his federal constitutional rights in a proceeding, are governed by federal standards." *Oyague v. Artuz,* 393 F.3d 99, 104 (2d Cir.2004).

6    A coerced or otherwise involuntary statement may never be used for any purpose: "*any* criminal trial use against a defendant of his *involuntary* statement is a denial of due process of law...." *Mincey v. Arizona,* 437 U.S. 385, 398, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (emphasis in original).

[10]    This Court has reviewed the transcript of the suppression hearing over which Judge Mathews presided. *See* Suppression Tr. The evidence adduced at the suppression hearing supports the trial court's conclusion that Ferrer voluntarily agreed to provide the incriminating statement to the police after he was advised of his *Miranda* rights. [7] *See, e.g.,* Suppression Tr. at pp. 80–81. Nor has he established that he was threatened, coerced, tricked or otherwise improperly persuaded into providing the incriminating statement. Since the salient evidence demonstrates that Ferrer voluntarily waived his *Miranda* rights when he provided the statement to law enforcement officials, *e.g., Oyague,* 393 F.3d at 104, this Court finds that the Appellate Division's decision rejecting this claim, *see Ferrer,* 16 A.D.3d at 914–15, 791 N.Y.S.2d 721, is nether contrary to, nor represents an unreasonable application of, *Miranda* and its progeny. Ferrer's *Miranda* claims are therefore denied.

7    This Court also agrees with Judge Mathews that Ferrer was not in custody at the time he was originally questioned by law enforcement officials, and that therefore he could properly be questioned (under New York law) by the police even if they were aware that he was represented by an attorney on an unrelated criminal matter. *E.g., People v. Bing,* 76 N.Y.2d 331, 559 N.Y.S.2d 474, 558 N.E.2d 1011 (1990) (*passim* ).

### 3. *Guilty Plea*

#### a. *Validity of Guilty Plea*

**\*\*6** Ferrer also asserts that his guilty plea was unlawfully induced and not voluntarily **\*304** made. *See* Am. Pet., Ground One. In a related claim, Ferrer argues that his guilty plea was "illegal" because the Court never specifically asked him whether he understood the charge that had been brought against him, or whether he was under the influence of narcotics at the time of the plea. *See* Traverse, Point Four.

[11]    [12]    [13]    The Due Process Clause of the United States Constitution requires an affirmative showing that a defendant's plea is entered both knowingly and voluntarily before the trial court may accept the plea. *See Godinez v. Moran,* 509 U.S. 389, 400, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993); *Salas v. United States,* 139 S.Ct. 322, 324 (2d Cir.1998), *cert. denied,* 524 U.S. 956, 118 S.Ct. 2377, 141 L.Ed.2d 744 (1998). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (quoting *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)); *see also Boykin v. Alabama,* 395 U.S. 238, 242–43, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) (United States Constitution requires that guilty plea be knowingly and voluntarily entered); *Parke v. Raley,* 506 U.S. 20, 29, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992) (plea is valid when it is both knowingly and voluntarily made). On collateral review, a court may only vacate a guilty plea where the petitioner can establish that the plea was not made knowingly and voluntarily. *See Salas,* 139 F.3d at 324; *Tejeda v. United States,* No. 99 CIV. 2948, 1999 WL 893275, at *4 (S.D.N.Y. Oct. 18, 1999); *Ramirez v. Headley,* No. 98 CIV. 2603, 1998 WL 788782, at *5 (S.D.N.Y. Nov. 10, 1998).

[14]    The transcript of the April proceeding at which Ferrer ultimately pleaded guilty to the attempted burglary charge reveals the following:

MR. FRITZSCH: [8] He's indicating he wishes to take the offer, your Honor.

8    Ferrer's trial attorney was Craig Fritzsch, Esq.

THE COURT: He does want to take the offer?

MR. FRITZSCH: Yeah.

THE COURT: Okay. All right.... Do you want to step up before the bench? All right. This matter is before the bench now. And as I understand the offer, the People are willing to accept an offer to attempted burglary in the second degree and that would be in full satisfaction of this indictment and it would cover other matters presently pending, as well as a potential perjury charge. What are the other matters pending as you know them?

MR. FERRI: [9] Judge, there's a pending felony for assault in the second degree, as well as some misdemeanors attached to it out of an incident that occurred at the jail. Additionally, there's several misdemeanors pending in the City of Binghamton. I know there's two petit larcenies pending. I think there might be a criminal possession of stolen property, I believe another couple charges pending, as well. There's also, he's doing a sentence on two violations of conditional discharge.

[9]    The Assistant District Attorney who prosecuted the case was Stephen Ferri, Esq.

* * * * * *

THE COURT: Then there would be potential for [a] perjury prosecution both on the grand jury testimony and the suppression hearing testimony?

**7   MR. FERRI: That's correct, Judge.

*305   THE COURT: And you're willing to take one plea to attempted burglary in the second degree to cover all these matters?

MR. FERRI: Yes, as long as the mandatory sentence of five years determinate is imposed.

THE COURT: And there would be a post-release supervision of five years?

MR. FERRI: Yes.

THE COURT: Now, Mr. Ferrer, is this what you want to do today?

THE DEFENDANT: Yes.

THE COURT: And do you understand that you're not required to plead guilty, no one can force you to plead guilty? Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If you plead guilty today, you're going to give up a number of valuable rights under the law. You're going to give up your right not to incriminate yourself and your right to remain silent, your right to have a trial, trial by a jury, if you wanted it. At a trial, the District Attorney would have to call witnesses, introduce evidence and prove you're guilty beyond a reasonable doubt, all of the witnesses against you would be cross-examined by your lawyer, you could call witnesses and you could testify. Now, if you plead guilty, you give up all these rights. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, the allegation against you is that on the 21st day of August, 2001, you did knowingly enter, remain unlawfully in a dwelling with intent to commit a crime in the dwelling, and the allegation is you went into the residence of [Ms.] Frost ... and you went in there with the intent to commit a crime inside. Do you admit those facts?

THE DEFENDANT: Yes.

THE COURT: Are you pleading guilty freely and voluntarily?

THE DEFENDANT: Yes.

THE COURT: Has anyone forced you or pressured you in any way in order to get you to plead guilty?

THE DEFENDANT: No.

THE COURT: And do you consider yourself guilty of this crime as I've just discussed the facts with you?

THE DEFENDANT: Yes.

THE COURT: Has anyone promised you anything other than what we've discussed here in court today to get you to plead guilty?

THE DEFENDANT: No.

THE COURT: And are you—

MR. FRITZSCH: Your Honor, he did have a question of me at counsel table as to what the effect of the state prison sentence would be on the consecutive county years that he's serving pursuant to the sentence from Judge Lehmann. It's my understanding that the county sentences would merge into the state sentence. And I wanted to put that on the record, that he did have that question of me, your Honor.

THE COURT: All right. That is correct, they will merge. All right? Now, are you satisfied with Mr. Fritzsch, the time he's taken to discuss the case with you and the advice that he's given you?

THE DEFENDANT: Yes.

THE COURT: And you consider yourself guilty of this crime as I've discussed the facts with you and as you heard Ms. Frost testify to the facts, that is, that you went into the home without authority or permission and **306** you went in there with the intent to steal something.

**8** THE DEFENDANT: Yes.

THE COURT: Do you consider yourself guilty of this crime?

THE DEFENDANT: Yes.

THE COURT: And you engaged in that conduct?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions of me before I decide whether to accept the plea from you or not?

THE DEFENDANT: No.

THE COURT: All right. I'm willing to accept your offer to plead guilty. With regard to the crime of attempted burglary in the second degree, how do you plead?

THE DEFENDANT: Guilty.

THE COURT: I'm going to adjourn sentencing now....

April Tr. at pp. 78–84.

The above establishes that the County Court engaged in an extensive colloquy with Ferrer wherein he was fully apprised of the charges against him, the rights he was waiving by pleading guilty, as well as the benefits Ferrer would obtain through his guilty plea. Nothing before the Court suggests that the plea was not knowingly, intelligently and voluntarily made.

[15]    [16]    Although petitioner now faults the trial court for not expressly asking Ferrer whether he understood the charges that were being brought against him, and whether he was under the influence of narcotics, *see* Traverse, Point Four, these claims:

> appear[ ] to overlook the firmly established principle that "there is no specific series of questions that a state court judge must ask in the course of a plea allocution in order to satisfy due process. Due process requires only that the courts provide safeguards sufficient to insure the defendant what is reasonably due in the circumstances."

*White v. Walker,* No. 01–CV–0238, 2007 WL 169702, at *14 (N.D.N.Y. Jan. 18, 2007) (Sharpe, J., adopting Report–Recommendation of Magistrate Judge David E. Peebles) (quoting *Hanson v. Debois,* No. 03 CIV. 5671, 2004 WL 540267, at *6 (S.D.N.Y. Feb. 13, 2004)) (other citation omitted). As Magistrate Judge Peebles noted in *White,* there is no "requirement that County Court judges follow a uniform mandatory catechism of pleading defendants." *White,* 2007 WL 169702, at *14 (internal quotation marks and citations omitted).

[17]    Ferrer's responses to the questions asked of him at the above proceeding established, *inter alia,* that he: i) was aware of the details of the plea agreement into which he had entered with the District Attorney and the numerous criminal matters that would be resolved by the guilty plea (April Tr. at pp. 78–80); ii) knew the length of the prison sentence he would receive if his guilty plea was accepted by the court (*id.* at p. 79); iii) was aware that such sentence also included a five year term of post-supervision release (*id.* at pp. 79–80); iv) was waiving numerous rights by pleading guilty to the charge (*id.* at pp. 80–81); v) admitted that he unlawfully entered Frost's residence on August 21, 2001 with the intent to commit a crime therein (*id.* at p. 81); vi) was freely and voluntarily pleading guilty (*id.*) and vii) was, in fact, guilty of the crime. *Id.* Ferrer's responses to the questions posed to him by Judge Mathews throughout the above-cited colloquy, as well as his specific inquiry as to whether the agreed upon sentence would run concurrent with an unrelated sentence that

had already been imposed on him (*see id.* at p. 82), belie his current suggestion that he was under the influence of narcotics **\*307** or otherwise incapable of knowingly, intelligently and voluntarily entering into the guilty plea. [10] Thus, Ferrer has not established that the Third Department's decision denying this claim, *see Ferrer,* 16 A.D.3d at 914–15, 791 N.Y.S.2d 721, is either contrary to, or represents an unreasonable application of, relevant Supreme Court precedent. Petitioner's habeas claims challenging the validly of the plea, including those which assert that the plea was "illegal," are accordingly denied. [11]

[10]   Petitioner has offered no proof that he was under the influence of any narcotics on the day he entered the plea.

[11]   Ferrer's supplemental claim that the trial court's failure to specifically reference the post-release supervision aspect of his sentence at the time of the guilty plea rendered the plea invalid, *see* Dkt. No. 36, is meritless. As noted above, Ferrer plainly acknowledged that aspect of the plea bargain at the colloquy cited above. *See* April Tr. at pp. 79–80. Regardless, because "there is no clearly established Supreme Court precedent that a defendant must be advised of mandatory post-release supervision prior to entering a guilty plea," *Sanchez v. Keller,* No. 06–CIV–3370, 2007 WL 4927791, at \*7 (S.D.N.Y. Dec. 4, 2007) (Report–Recommendation), *adopted,* 2008 WL 461593 (S.D.N.Y. Feb. 15, 2008), Ferrer is unable to demonstrate that Judge Mathews unreasonably applied Supreme Court precedent in denying this claim challenging the validity of his guilty plea. *See* Attachment to Dkt. No. 34, *see, e.g., Sanchez,* 2007 WL 4927791, at \*8.

#### b. *Claims Barred in Light of Valid Guilty Plea*

**\*\*9**   In *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), the Supreme Court observed:

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett,* 411 U.S. at 267, 93 S.Ct. 1602; *see Blackledge v. Perry,* 417 U.S. 21, 29–30, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) ("a person complaining of ... antecedent constitutional violations ... is limited in a federal habeas corpus proceeding to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases") (internal quotations and citations omitted).

[18]   As noted above, this Court has concluded that Ferrer's guilty plea is valid. Consequently, he is prohibited from obtaining habeas relief on claims that arise out of matters that occurred prior to the entry of that plea. Therefore, his claims that the detectives who testified before the grand jury and at the suppression hearing provided perjurious testimony, *see* Traverse, Point Two, must be denied. Additionally, his ground for relief in which he argues that he was improperly forced to testify in shackles before a grand jury that was unconstitutionally selected and impaneled, *see* Am. Pet. at attached p. 7, is similarly barred in light of the valid guilty plea into which he entered. *See E.g., Alston v. Ricks,* No. 01 Civ. 9862, 2003 WL 42144, at \*7 (S.D.N.Y. Jan. 7, 2003) ("a guilty plea extinguishes the ability of a habeas petitioner to raise a claim regarding misconduct before a grand jury").

#### 4. *Denial of Motion to Withdraw Guilty Plea*

Petitioner additionally argues that the County Court wrongfully denied his timely request to withdraw his guilty plea. *See* Petition, Ground Four; Traverse, Point Five.

**\*308** [19]   [20]   A state judge's denial of a motion to withdraw a guilty plea is generally not subject to habeas corpus review unless the plea was not entered intelligently or voluntarily. *Martuzas v. Reynolds,* 983 F.Supp. 87, 94 (N.D.N.Y.1997) (Pooler, D.J.) (citation omitted); *Coddington v. Langley,* 202 F.Supp.2d 687, 703 (E.D.Mich.2002) ("there is no federal right to withdraw one's guilty plea, so it is not a cognizable claim in a petition for habeas corpus without a showing that petitioner was denied fundamental fairness") (citation omitted). Moreover, in considering such a habeas claim, federal courts must consider the fact that the decision of whether to allow a defendant to withdraw a guilty plea is

2008 WL 2967633

committed to the discretion of the trial judge. *Heron v. People, State of New York,* No. 98 Civ. 7941, 1999 WL 1125059, at *6 (S.D.N.Y. Dec. 8, 1999).

 **[21]** In the present case, Ferrer has not presented either evidence or persuasive arguments which suggest that he is innocent of the charge to which he pleaded guilty.

 **\*\*10** **[22]** **[23]** Ferrer's post-plea claims of innocence contradict the statements that he made under oath at the guilty plea hearing in which he admitted to the crime. Those sworn statements "carry a strong presumption of verity," and a court reviewing a belated claim of innocence must draw all permissible inferences in favor of the government and against the defendant. *See United States v. Maher,* 108 F.3d 1513, 1530 (2d Cir.1997) (quoting *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)). Additionally, the trial judge who addressed the defendant during the course of taking the guilty plea, and who had benefit of observing his demeanor at that time, is in a better position than a federal district court, reviewing a cold record, to judge the credibility of a belated claim of innocence which contradicts a prior, valid guilty plea. *Maher,* 108 F.3d at 1531; *see also United States v. Lasky,* 23 F.Supp.2d 236, 243 (E.D.N.Y.1998).

As discussed more fully above, this Court has determined that Ferrer entered into that plea knowingly, intelligently and voluntarily. Since he has not presented this Court with persuasive evidence that supports his claim that he is innocent of the crime to which he pleaded guilty, he is not entitled to federal habeas relief on his claim that the trial court wrongfully denied petitioner's application to withdraw his guilty plea.

### 5. *Competency Hearing*

Petitioner next argues that on May 30, 2002, the County Court directed Ferrer to undergo a mental competency exam pursuant to CPL § 730, but that after the court received the medical findings relating to that exam, it "neglected to address the issue on the record or allow the petitioner an opportunity to prove or disprove his competency." Traverse, Point Six.

 **[24]** The record establishes that the County Court *sua sponte* ordered Ferrer to undergo a psychiatric examination after his plea and before he was sentenced after that court received correspondence from Ferrer following his guilty plea. *See* Transcript of Proceeding before Judge Mathews (5/30/02)

at p. 2. Two psychiatrists then conducted independent examinations of Ferrer, and both of those doctors found that he was not an incapacitated person. *E.g., Ferrer,* 16 A.D.3d at 914, 791 N.Y.S.2d 721.

CPL § 730.30, the statute under which the psychiatric examination of Ferrer was ordered (*see Ferrer,* 16 A.D.3d at 914, 791 N.Y.S.2d 721), provides, in salient part:

> When the examination reports submitted to the court show that each psychiatric examiner is of the opinion that the **\*309** defendant is not an incapacitated person, the court *may,* on its own motion, conduct a hearing to determine the issue of capacity.... If no motion for a hearing is made, the criminal action against the defendant must proceed.

CPL § 730.30(2) (emphasis added). Since Judge Mathews was not required to conduct a hearing regarding Ferrer's competency under the CPL, it is patent that Ferrer is not entitled to the vacatur of his guilty plea based upon that court's failure to conduct such hearing.

 **\*\*11** **[25]** Moreover, this ground for relief appears to overlook the well-settled precept that " '[f]ederal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings.' " *See Falas v. Phillips,* No. 03 Civ. 4839, 2004 WL 1730289, at *13 (S.D.N.Y. Aug. 3, 2004) (Gorenstein, M.J.) (denying habeas claim that trial court wrongfully denied CPL § 440 motion without hearing) (quoting *Diaz v. Greiner,* 110 F.Supp.2d 225, 235 (S.D.N.Y.2000)), *adopted, Falas v. Phillips,* 2005 WL 756886 (S.D.N.Y. Apr. 1, 2005); *see also Jones v. Spitzer,* No. 01 Civ. 9754, 2003 WL 1563780, at *52 (S.D.N.Y. Mar. 26, 2003) (failure to hold hearing regarding CPL motion cannot form basis for habeas relief) (citing *Diaz* ) (other citations omitted); *Smith v. Lacy,* No. 01 CIV. 4318, 2002 WL 826825, at *7 (S.D.N.Y. Apr. 30, 2002) (claim that county court violated petitioner's due process rights by failing to comply with procedural requirements of CPL "lack[ed] the necessary constitutional component for federal habeas corpus review").

In light of the foregoing, Ferrer's claim that he is entitled to federal habeas relief because the trial court failed to conduct a hearing relating to petitioner's competency is unavailing. [12]

[12]     Petitioner does not appear to claim that the trial court erred in failing to conduct a competency hearing *prior to* the entry of the guilty plea. Any such claim would be without merit because the record established that Ferrer had the ability to consult with his lawyer with a reasonable degree of rational understanding, and possessed a rational as well as factual understanding of the proceedings against him, at the time of his plea. *See Cooper v. Oklahoma,* 517 U.S. 348, 354, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996); *see also Godinez,* 509 U.S. at 401 n. 12, 113 S.Ct. 2680; *Pate v. Robinson,* 383 U.S. 375, 385, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) (due process requires that a competency hearing be held when the facts or events presented to the court raise a *bona fide* doubt regarding a defendant's competency); *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

### 6. Inadequate Allocution at Sentencing

Petitioner also argues that he was denied his right to an allocution at sentencing. Am. Pet., Ground Five. He specifically argues that the trial judge wrongfully deprived petitioner of his right to "speak his mind," as well as his ability to contest errors that may have existed in the pre-sentence report provided to Judge Mathews, at the time of his sentencing. Traverse, Point Six.

[26]     It is well settled that a federal district court " 'may not grant the habeas petition of a state prisoner unless it appears that the applicant has exhausted the remedies available in the courts of the State ....' " *Shabazz v. Artuz,* 336 F.3d 154, 160 (2d Cir.2003) (quoting *Aparicio v. Artuz,* 269 F.3d 78, 89 (2d Cir.2001) (other citation omitted); *see also Ellman v. Davis,* 42 F.3d 144, 147 (2d Cir.1994).

Respondent argues that Ferrer has not exhausted his claim regarding his right to an allocution at his sentencing because he failed to raise any federal claim relating to this issue in his CPL Motion. *See* Resp. Mem. at p. 15. Petitioner concedes this **\*310** fact in his traverse. *See* Traverse at pp. 7–8. This claim is therefore "deemed exhausted" for purposes of petitioner's habeas application. *St. Helen v. Senkowski,* 374

F.3d 181, 183–84 (2d Cir.2004); *Spence v. Superintendent, Great Meadow Correctional Facility,* 219 F.3d 162, 170 (2d Cir.2000). Although it is "deemed exhausted," it is also procedurally defaulted. *See Aparicio,* 269 F.3d at 90 (citing *Coleman v. Thompson,* 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)); *see also Spence,* 219 F.3d at 170.

[27]  [28]     Federal courts may only consider the substance of procedurally forfeited claims where the petitioner can establish *both* cause for the procedural default and resulting prejudice, or alternatively, that a fundamental miscarriage of justice would occur absent federal court review. [13] *Dixon,* 293 F.3d at 80–81 (citing *Coleman* ); *St. Helen,* 374 F.3d at 184 ("[i]n the case of procedural default (including where an unexhausted claim can no longer proceed in state court), [federal courts] may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent' ") (quoting *Bousley v. United States,* 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)) (other citations omitted); *see generally Murray v. Carrier,* 477 U.S. 478, 495–96, 106 S.Ct. 2678, 91 L.Ed.2d 397 (1986); *King v. Greiner,* 210 F.Supp.2d 177, 182 (E.D.N.Y.2002) (court is precluded from considering unexhausted claims "unless petitioner can establish cause to excuse the default and prejudice, or actual innocence"); *Lora v. West,* No. 04 Civ. 1902, 2005 WL 372295, at *9 (S.D.N.Y. Feb. 17, 2005) (citations omitted); *Morales v. Sabourin,* No. 00 Civ. 8773, 2002 WL 32375006, at *11 (S.D.N.Y. Apr. 30, 2002).

[13]     A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Dixon v. Miller,* 293 F.3d 74, 81 (2d Cir.), *cert. denied,* 537 U.S. 955, 123 S.Ct. 426, 154 L.Ed.2d 305 (2002).

**\*\*12** [29]     Ferrer appears to suggest that he did not intend to assert his claim regarding his ability to address the court at sentencing as an independent ground for federal habeas relief. *See* Traverse at pp. 7–8 (suggesting that he mentioned such claim because the habeas form he completed directed him to specify all grounds he had raised in state court, rather than all claims he was asserting in this federal action). Regardless, he has plainly not established cause for his default, despite having filed various documents after the respondent noted that such claim was unexhausted. Additionally, because this Court has concluded that Ferrer's guilty plea is valid, and no evidence before the Court suggests that he is actually innocent

of the attempted burglary charge, he cannot now seek safe harbor from the denial of this ground based upon a claim of actual innocence. Accordingly, any claim challenging the manner in which Ferrer's sentencing hearing was conducted must be denied as procedurally barred.

### 7. Ineffective Assistance

In his final claim, Ferrer argues that he received the ineffective assistance of trial counsel. *See* Am. Pet., Ground Five. In support of this assertion, he claims that his attorney:

> neglected to investigate the facts of the case, prior conviction, mental health history, educational history, failed to file an Omnibus motion, or search for drug use history.

Am. Pet., Ground Five.

The Sixth Amendment to the United States Constitution provides that: "[i]n all **\*311** criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const., Amend. VI. To establish a violation of this right to the effective assistance of counsel, a habeas petitioner must show both: i) that counsel's representation fell below an objective standard of reasonableness, measured in the light of the prevailing professional norms; and ii) resulting prejudice that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 688–90, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Wiggins v. Smith,* 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established in *Strickland* ).

[30] Establishing deficient performance requires petitioner to overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *see also Jackson v. Leonardo,* 162 F.3d 81, 85 (2d Cir.1998). To establish actual prejudice in the context of a guilty plea, petitioner must prove that " 'there is a reasonable probability that ... he would not have pleaded guilty and would have insisted on going to trial.' " *Roe v. Flores–Ortega,* 528 U.S.

470, 485, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) (quoting *Hill,* 474 U.S. at 59, 106 S.Ct. 366); *Larweth v. Conway,* 493 F.Supp.2d 662, 670 (W.D.N.Y.2007) (citing *Hill* ).

**\*\*13** [31] [32] Initially, the Court notes that Ferrer's unsupported allegations that counsel's conduct was deficient are insufficient to overcome the presumption that counsel acted reasonably. *E.g., Campbell v. Greene,* 440 F.Supp.2d 125, 149 (N.D.N.Y.2006) (McCurn, S.J.) (citations omitted). Next, the Court notes that there is no record support for Ferrer's contention that his trial counsel was unprepared, or which supports his apparent claim that his mental health and/or drug use prevented him from effectively pleading guilty to the charge. Petitioner's claim that no omnibus motion was filed on his behalf is belied by the fact that the trial court conducted a suppression hearing in response to defense counsel's motion. *See, E.g.,* Suppression Tr. at p. 74 (prosecutor noting for the record that he "oppose[d] the defense motion to suppress the statements). Furthermore, matters relating to Ferrer's prior convictions were addressed by defense counsel both during the Court's pretrial *Sandoval* hearing, [14] *see* Transcript of Pretrial Hearing before Judge Mathews (4/22/02), as well as at the change of plea. *See* April Tr. Petitioner's claims alleging ineffective assistance, therefore, lack substance.

[14] *People v. Sandoval,* 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974).

[33] Finally, in the criminal matter below, the Appellate Division observed that trial counsel "negotiated a very favorable plea deal" for Ferrer, and was persuaded that "counsel's conduct [was] anything but ineffective." *Ferrer,* 16 A.D.3d at 914–15, 791 N.Y.S.2d 721. The relatively favorable disposition of the criminal charges pending against Ferrer (as well as the potential perjury charge referenced by Judge Mathews during the plea allocution) buttresses the determination of the state courts that the conduct of Ferrer's attorney was not objectively unreasonable. *Dunn v. Senkowski,* No. 03–CV–0364, 2007 WL 2287879, at \*10 (N.D.N.Y. Aug. 7, 2007) (McCurn) (citing *Seifert v. Keane,* 74 F.Supp.2d 199, 206 (E.D.N.Y.1999) ("[g]iven the favorable nature of petitioner's plea, **\*312** the court cannot say that counsel's performance was deficient") (footnote and citations omitted), *aff'd,* 205 F.3d 1324 (2d Cir.2000)).

Ferrer has not demonstrated that there is a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial but-for the claimed deficiencies

of his counsel. Since he has not demonstrated that the Third Department's decision denying this appellate claim, *see Ferrer,* 16 A.D.3d at 914–15, 791 N.Y.S.2d 721, is either contrary to, or represents an unreasonable application of, *Strickland* and its progeny, this final claim in his amended petition must be denied.

### III. *Certificate of Appealability*

Finally, the Court notes that 28 U.S.C. § 2253(c)(1) provides in relevant part that:

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court .... [15]

[15] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." *See* Fed.R.App.P. 22(b).

**\*\*14** **[34]**    A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Since Ferrer has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter.

**WHEREFORE,** after having reviewed the state court record, the documents submitted by the parties in conjunction with this action, the applicable law, and for the reasons discussed herein, it is hereby

**ORDERED** that the amended petition filed by Ferrer, as supplemented by him as noted above, is **DENIED** and **DISMISSED,** and it is further

**ORDERED** that the state court records not filed herein be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of this Memorandum–Decision and Order filed by any party), and it is further

**ORDERED** that the Clerk of the Court serve a copy of this Decision and Order upon the parties by regular or electronic mail.

A Certificate of Appealability shall not be issued by this Court.

**IT IS SO ORDERED**

**All Citations**

628 F.Supp.2d 294, 2008 WL 2967633

---

    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2022 Thomson Reuters. No claim to original U.S. Government Works.    16

🚩 KeyCite Yellow Flag - Negative Treatment

Distinguished by   United States v. Delgado,   S.D.N.Y.,   February 13, 2018

⚠ KeyCite Overruling Risk - Negative Treatment

Overruling Risk   Daire v. Lattimore,   9th Cir.(Cal.),   February 9, 2016

2015 WL 1402133
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Devon MILLINGTON,

v.

William LEE, Respondent.

No. 11 Civ. 499(LGS)(DCF).
|
Filed Aug. 14, 2014.
|
Signed March 26, 2015.

*OPINION AND ORDER*

LORNA G. SCHOFIELD, District Judge.

**\*1** Petitioner Devon Millington brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for murder in the first degree (the "Petition"). This case was referred to the Honorable Debra Freeman for a report and recommendation (the "Report"). The Report was filed on August 14, 2014, and recommends that the writ be granted on Petitioner's claim of ineffective assistance of counsel because his counsel misinformed him about the maximum possible sentence after trial. In particular, the Report recommends that the prosecution be directed to re-extend its plea offer to Petitioner and, assuming Petitioner accepts the plea offer, present it to the trial court.

On August 28, 2014, Respondent filed a letter under seal explaining that the prosecution had agreed to re-extend plea offer to Petitioner as recommended in the Report. Respondent requested, with Petitioner's consent, that further action on the writ be stayed pending the outcome of re-extending the plea offer. Respondent explained that he would withdraw his objections to the Report, filed on the same day as the letter, if Petitioner successfully repleaded in state court.

By letter from Petitioner dated March 3, 2015, the parties informed the Court that Petitioner had successfully repleaded as recommended in the Report. Respondent withdrew his objections and the parties consented to the Court "affirming Judge Freeman's Report and Recommendation."

A reviewing court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The district court "may adopt those portions of the report to which no 'specific, written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Adams v. N.Y. State Dep't of Educ.,* 855 F.Supp.2d 205, 206 (S.D.N.Y.2012) (citing Fed.R.Civ.P. 72(b), *Thomas v. Arn,* 474 U.S. 140, 149 (1985)).

The factual and legal bases underlying the well-considered Report are neither clearly erroneous nor contrary to law. Accordingly, the Report is ADOPTED in its entirety. The Petition is GRANTED in part and DISMISSED in part.

As to Petitioner's ineffective assistance of counsel claim, Petitioner has met the standards for relief set forth in 28 U.S.C. § 2254(d)(1) and (2). He was denied his Sixth Amendment right to effective assistance of counsel, and is thus entitled to a writ of habeas corpus, pursuant to 28 U.S.C. § 2254(a). Therefore, a writ of habeas corpus is GRANTED as further described in the Report. The parties agree that this writ has been satisfied. Petitioner's remaining claims are DISMISSED.

The Clerk of Court is directed to close this case.

SO ORDERED.

DEVON MILLINGTON,

Petitioner,

-against-

WILLIAM LEE, Superintendent, Green Haven Correctional Facility,

Respondent.

**REPORT AND RECOMMENDATION AND ORDER**

[DEBRA FREEMAN](), United States Magistrate Judge.

**\*2  TO THE HONORABLE LORNA G. SCHOFIELD, U.S.D.J.:**

Petitioner Devon Millington ("Petitioner") seeks a writ of habeas corpus under [28 U.S.C. § 2254](), following his conviction in state court, upon a jury verdict, of murder in the first degree. (*See* Petition Under [28 U.S.C. § 2254]() for a Writ of Habeas Corpus by a Person in State Custody, dated Jan. 18, 2011 ("Petition" or "Pet.") (Dkt.1).) Petitioner is currently incarcerated in the Green Haven Correctional Facility in Stormville, New York, where he is serving a sentence of life imprisonment without parole. (*See id.* ¶ 3.)

Petitioner raises two claims: First, he claims that he received ineffective assistance of trial counsel because (a) his counsel failed to investigate potentially mitigating evidence, and (b) in the context of advising him about a plea offer, his counsel gave him erroneous advice regarding the maximum sentence he could face if convicted at trial. Second, Petitioner asserts that the state court, in post-conviction proceedings, violated his due process rights by failing to conduct an evidentiary hearing on his ineffective-assistance-of-counsel claims. (*See id.* ¶¶ 15–17 .)

For the reasons set forth below, I recommend that Petitioner's due process claim be dismissed as not cognizable on habeas review. I further recommend, however, that a writ of habeas corpus be granted on his ineffective-assistance claim, to the extent that claim relates to the advice given to Petitioner during plea discussions. While Petitioner's challenge to his counsel's purported failure to investigate cannot survive scrutiny, this Court is persuaded that, in the context of advising Petitioner regarding a plea offer, Petitioner's counsel in fact misinformed Petitioner of the maximum sentence he could receive after trial. This Court is further persuaded that counsel's erroneous advice led Petitioner to reject a plea offer that was made by the prosecution and would likely have been accepted by the trial court, which resulted in Petitioner's being sentenced, after trial, to a substantially longer prison term (life without parole) than he would have received under the terms of the plea offer (18 years to life). Under these circumstances, a writ of habeas corpus is warranted; specifically, the prosecution should be directed to re-extend the plea offer to Petitioner and then, assuming Petitioner accepts it, to present it to the state trial court.

*BACKGROUND*

**A. *Factual Background***

The evidence presented by the prosecution at Petitioner's trial showed that, in the early morning hours of July 20, 2000, Petitioner and his co-defendants, Michael Suarez ("Suarez") and Anthony Stallings ("Stallings") robbed Bill and Bob's Sports Bar in the Bronx, where they had been drinking and getting high. (*See* Record on Appeal of State Court Proceedings ("Record" or "R.") (Dkt.10), at 1639–41 [1] (People's Exhibit 24 (Written Statement of Devon Millington, dated Oct. 7, 2000)).) During the course of the robbery, Petitioner shot and killed the bartender, Everard "Erik" Gerrald ("Gerrald"). (*See id.*)

[1]      Unless otherwise noted, citations to the state court record refer to the document control numbers stamped on the bottom of each page.

**\*3**  The police arrested Petitioner on October 7, 2000. (*See id.* at 74.) Petitioner gave written and videotaped statements to the police, confessing to the crimes. (*Id.* at 1639–41; 1642–48 (People's Exhibit 25 (Transcript of Video Statement of Devon Millington, recorded Oct. 7, 2000 [2] )).) On October 12, 2000, a grand jury indicted Petitioner, Suarez, and Stallings for a number of crimes, including second-degree murder, and also indicted Petitioner for first-degree murder. (*See id.* at 4–9 (Indictment, dated Oct. 12, 2000).) Petitioner's father, Roy MiUington ("Roy"), retained John Nicholas Iannuzzi, Esq. ("Iannuzzi") to act as Petitioner's defense counsel. (Declaration of Bari L. Kamlet, Esq., in Opposition to Petition for a Writ of Habeas Corpus, dated June 2011 ("Kamlet Decl.") (Dkt.9), Ex. 17 (Affidavit of Roy Millington, sworn to Sept. 14, 2009 ("Roy Aff.")) ¶ 1.)

[2]      The exhibit itself indicates that the video statement was recorded on October 7, 2006 (*see* R. at 1642), which cannot be correct, as the exhibit was introduced at Petitioner's trial in 2002. According to the testimony of a police detective, the video was recorded on October 7, 2000, the same day Petitioner made his written statement. (*See id.* at 82–83.)

**B. *Procedural History***

**1. *Suppression Hearing, Trial, and Direct Appeal***

On April 9, 2001, Iannuzzi filed a motion seeking, *inter alia,* to suppress Petitioner's confessions as involuntarily made. (*See* R. at 10–11.) The Honorable Robert H. Straus, J.S.C., of the Bronx County Supreme Court, held a hearing on January 3–4, 2002, and determined that Petitioner's statements to the police, including his written and videotaped statements, would be admissible against him at trial. (*See id.* at 24–255; Court Ex. 2 (Dkt.31), at 1–48. [3] )

[3]     Court Ex. 2 consists of pages of the state court proceedings that were missing from the Record; the exhibit was introduced by the parties at an evidentiary hearing held by this Court, as described below. (*See* Section II(B)(2)(b)(i), *infra.*) For ease of reference, citations to Court Ex. 2 are to the page numbers of the document stamped onto it when filed on the docket.

Petitioner's trial, which was also conducted before Justice Straus, began on January 15, 2002. (*See* R. at 256.) The prosecution introduced, *inter alia,* Petitioner's confessions and Suarez's testimony. (*Id.* at 599–746 (testimony of Michael Suarez); 1639–41 (written statement); 1642–48 (videotaped statement) .) During his testimony, Suarez acknowledged that he had accepted a plea bargain in which he would plead guilty to robbery in the first degree, testify against Petitioner, and receive a sentence of 14 years in prison. (*See id.* at 602–03.)

Petitioner took the stand in his own defense and disavowed his prior confessions, claiming that he did not participate in any crime, that he did not remember anything from the night in question, and that the police had drafted his written statement and coerced him into signing it. (*See id.* at 1191–98.) Iannuzzi called Dr. Ronald Hoffman as an expert in the field of forensic toxicology to give his opinion on the effect of Petitioner's drug use, during the night before and the day of his confessions, on the reliability of those confessions. (*See id.* at 1004.)

On January 28, 2002, the jury returned a verdict against Petitioner of guilty of murder in the first degree (*see id.* at 1383–85), and, following a sentencing hearing on April 2, 2002, Justice Straus sentenced Petitioner to life imprisonment without parole (*see* Kamlet Decl., Ex. 11 (Transcript of Sentence, conducted Apr. 2, 2002 ("Sentence Tr.")), at 35).

**\*4**  Iannuzzi continued to represent Petitioner on direct appeal (*see* Kamlet Decl., Ex. 1), challenging his conviction and sentence on various grounds that are not relevant here (*see id.* at 54). The Appellate Division unanimously affirmed

Petitioner's conviction and sentence on February 22, 2007. *See People v. Millington,* 830 N.Y.S.2d 143 (1st Dep't 2007). On June 14, 2007, the New York Court of Appeals denied Petitioner leave to appeal from the Appellate Division's decision. *See People v. Millington,* 9 N.Y.3d 848 (2007).

#### 2. *State Collateral Proceedings*

Represented by new counsel, Andrea G. Hirsch, Esq. ("Hirsch"), Petitioner applied to the Appellate Division for a writ of error *coram nobis* on September 8, 2008, alleging that Iannuzzi had provided ineffective assistance of appellate counsel. (*See* Kamlet Decl. ¶ 9 & Ex. 18.) Petitioner argued that many of the claims that Iannuzzi had raised on appeal were baseless, and that, as appellate counsel, Iannuzzi had failed to raise the claim that he, himself, was ineffective in his role as trial counsel. (*See id* .) On May 7, 2009, the Appellate Division denied Petitioner's application (*see* Kamlet Decl., Ex. 3), and, on October 30, 2009, the Court of Appeals denied leave to appeal (*see* Kamlet Decl., Ex. 4).

Meanwhile, on October 15, 2009, Petitioner, again through Hirsch, also filed a motion pursuant to Section 440.10 of the New York Criminal Procedure Law, claiming ineffective assistance of trial counsel due to Iannuzzi's alleged failures (1) to investigate Petitioner's background and to have him examined by a psychiatrist prior to entering into plea negotiations and sentencing, and (2) to advise Petitioner properly with respect to accepting a plea offer. (*See* Kamlet Decl., Ex. 5 (Notice of Motion to Vacate Judgment and Set Aside Sentence, dated Oct. 15, 2009; Affirmation of Andrea G. Hirsch, Esq., dated Oct. 15, 2009; Memorandum of Law, dated Oct. 15, 2009 ("Pet. § 440.10 Mem.")).)

Among the documents Petitioner submitted to the state court, in support of his Section 440.10 motion, were his own affidavit (Letter to the Court from Assistant District Attorney ("ADA") Bari L. Kamlet, dated July 26, 2011 ("Kamlet Ltr.") (Dkt.33), Ex. 3 (Affidavit of Devon Millington, sworn to Sept. 15, 2009 ("Pet.Aff."))), an affidavit by his brother Errol Millington ("Errol") (Kamlet Decl., Ex. 16 (Affidavit of Errol Millington, sworn to Aug. 26, 2009 ("Errol Aff."))), an affidavit by his father (Roy Aff.), and a letter from a psychiatrist, Dr. Eric Goldsmith ("Goldsmith") (*see* Kamlet Decl., Ex. 9 (Letter from Eric Goldsmith, M.D. to Andrea G. Hirsch, Esq., dated Oct. 14, 2009 ("Goldsmith Ltr."))).

Much of the documentation Petitioner submitted on his Section 440 .10 motion related to purportedly mitigating evidence that Petitioner claimed his trial counsel, Iannuzzi,

2015 WL 1402133

had failed to develop. This documentation included, *inter alia*, evidence of an incident of boyhood sexual abuse that Petitioner had experienced and a lengthy history of drug and alcohol dependency, which, according to Goldsmith, had reached the point where, for Petitioner, substance abuse was "no longer a choice." (Goldsmith Ltr., at 4. [4] ) Goldsmith opined that, in order to cope with the trauma that followed the early incident of sexual abuse, Petitioner "began drinking heavily and using drugs to self-medicate," and that "the drugs and alcohol were so debilitating that, when [Petitioner] was in an emotionally charged situation and intoxicated[,] he was so disinhibited that he was unable to effectively apply the necessary emotional brakes." (*Id.*) Commenting on a view expressed by the sentencing judge that Petitioner appeared to lack regret for his actions, Goldsmith further opined that Petitioner's apparent "emotional detachment" was indicative of "chronic posttraumatic symptoms." (*Id.* at 5.)

[4]     The Court has assigned consecutive pages numbers to Goldsmith's letter for ease of reference.

**\*5** In connection with his claim regarding the plea advice that Iannuzzi allegedly gave him, Petitioner stated in his affidavit that Iannuzzi had told him that the maximum sentence he could face if convicted was 25 years to life in prison. (*See* Pet. Aff. ¶ 8.) Petitioner also stated that, at some point, Iannuzzi told him that he was attempting to negotiate a 15–year sentence for Petitioner under a plea deal, but that the prosecution was only offering 20 years to life. (*See id.*) Petitioner further maintained that, "[j]ust before trial," the prosecutor offered a plea deal of 18 years to life, but Iannuzzi "discouraged" Petitioner from accepting that deal, telling Petitioner: " '18 to life, 25 to life, what's the difference?' " (*Id.*) Petitioner informed the court that, after conducting his own legal research, he told Iannuzzi that he believed he could be sentenced to "natural life," but, according to Petitioner, Iannuzzi insisted that 25 years to life was the maximum. (*Id.*) Petitioner claims that he "followed Iannuzzi's advice" not to accept the plea deal "because [he] thought [Iannuzzi] knew best." (*Id.*) Petitioner requested an evidentiary hearing so that the trial court could make credibility determinations and findings of fact regarding his post-conviction claims. (*See* Pet. § 440.10 Mem., at 11.)

In opposition to Petitioner's Section 440.10 motion, Respondent submitted, *inter alia*, an affirmation by ADA Daniel McCarthy ("McCarthy") (Kamlet Decl., Ex. 10 (Affirmation of Daniel T. McCarthy, Esq., dated Feb. 24, 2010 ("McCarthy Aff."))) and an affirmation by Iannuzzi (*id.*,

Ex. 12 (Affirmation of John Nicholas Iannuzzi, Esq., dated Feb. 24, 2010 ("Iannuzzi Aff."))). In his affidavit, McCarthy stated that "had trial counsel informed [him] of [Petitioner's] background, and provided [him] with Dr. Goldsmith's report, [he] would not have viewed that information as a basis to extend any plea offer to [Petitioner]." (McCarthy Aff. ¶ 2.) Further, despite the fact that the transcript of a pre-trial proceeding contained a representation to the court, made by one of McCarthy's colleagues, that "McCarthy says the offers have been made, to be accepted or not" (*see* Kamlet Ltr., Ex. 21 (Transcript of Calendar Call, conducted Dec. 3, 2001 ("12/3/01 Tr."), at 2), McCarthy stated in his affidavit to the trial court that he "d[id] not recall" extending a plea offer to Petitioner (McCarthy Aff. ¶ 2). Similarly, Iannuzzi stated that he "d [id] not recall" conversations with the prosecution regarding a plea offer (Iannuzzi Aff. ¶ 5), and that he had no recollection of specific conversations with Petitioner or of discouraging Petitioner from accepting a plea offer (*id.* ¶¶ 3, 6).

The state court denied Petitioner's Section 440.10 motion in its entirety on November 22, 2010, without holding the evidentiary hearing that Petitioner had requested. (*See* Kamlet Decl., Ex. 6 (Decision and Order of the Supreme Court, dated Nov. 22, 2010 ("Section 440.10 Opinion")).) The court stated, in relevant part:

**\*6** Taking all the evidence before this Court into consideration, the Court finds no basis to conclude that trial counsel's representation of [Petitioner] was ineffective. Applying the standard enunciated in *People v. Baldi,* 54 N.Y.2d 137 (1981), this Court concludes: 1) despite the overwhelming evidence of guilt, [Iannuzzi] presented a well grounded defense; and 2) that [Iannuzzi] exhibited a "reasonable competence" in his representation of [Petitioner]. As stated in *Baldi,* "[a]n attorney who presents a well grounded but unsuccessful defense will not be held to have provided ineffective assistance of counsel, and thus a defendant will not be entitled to a vacatur of his conviction on such basis."

(Section 440.10 Opinion, at 4.)

On January 6, 2011, Petitioner requested leave to appeal to the Appellate Division from the denial of his Section 440.10 motion. (*See* Kamlet Decl., Ex. 7.) On April 14, 2011, the Appellate Division summarily denied leave to appeal. (*See* Kamlet Decl., Ex. 8.)

**C.** *Federal Habeas Petition*

Petitioner filed the instant habeas petition *pro se* on January 18, 2011, [5] asserting the same claims that he raised in his Section 440.10 motion. (*See* Pet. ¶¶ 15–17.)

[5]    Although the Court's docket reflects a filing date of January 21, 2011 for the Petition (Dkt.1), a *pro se* prisoner's papers are deemed filed when they are handed over to prison officials for forwarding to the Court. *See Houston v. Lack,* 487 U.S. 266, 270 (1988). Thus, in the absence of evidence to the contrary, the Court will deem the Petition to have been filed on January 18, 2011, the date Petitioner signed it. *See, e.g., Rhodes v. Senkowski,* 82 F.Supp.2d 160, 165 (S.D.N.Y.2000).

On June 20, 2011, Respondent filed an opposition to the Petition. (*See* Kamlet Decl. & attached Memorandum of Law, dated June 2011 (Dkt.9).) Shortly thereafter, on July 4, 2011, Hirsch filed a notice of appearance on Petitioner's behalf. (*See* Dkt. 12.) On October 6, 2011, Petitioner, through Hirsch as counsel, filed his reply papers. (*See* Petitioner's Reply to the State's Opposition Papers ("Pet.Reply") (Dkt.15).)

**D.** *This Court's Preliminary Findings and Evidentiary Hearing*

By Order dated November 13, 2013 (the "November Order") (Dkt.21), this Court found that an evidentiary hearing before the Court would be both permissible under the law and warranted, with respect to Petitioner's particular claim that, during plea negotiations, his counsel had given him materially erroneous information regarding his potential maximum sentence, and, based on that erroneous information, counsel had discouraged Petitioner from accepting a plea. (*See* Section II(B)(2)(a), *infra.*) This Court held such an evidentiary hearing on January 22, 2014, to develop the record with respect to that aspect of Petitioner's ineffective-assistance claim. As explained below, certain further documentary evidence was introduced, and the Court heard testimony from Petitioner, Roy, Errol, and Iannuzzi. (*See generally* Transcript of Proceedings, conducted Jan. 22, 2014 ("Habeas Hr'g Tr .") (Dkt.22).)

*DISCUSSION*

**I.** *APPLICABLE LEGAL STANDARDS*

**A.** *Statute of Limitations*

The Antiterrorism and Effective Death Penalty Act ("AEDPA") requires habeas petitions to be filed within one year of the latest of four dates, the relevant one in this case being "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Here, Petitioner's habeas petition was timely filed.

**\*7** Petitioner's judgment of conviction was entered on January 28, 2002. (*See* R. at 1383–85.) On February 22, 2007, the Appellate Division affirmed, *see People v. Millington,* 830 N.Y.S.2d 143 (1st Dep't 2007), and on June 14, 2007, the Court of Appeals of New York denied Petitioner leave to appeal, *see People v. Millington,* 9 N.Y.3d 848 (2007). Petitioner's conviction became final 90 days later, on September 12, 2007, when the time for seeking certiorari expired. *See Saunders v. Senkowski,* 587 F.3d 543, 547 (2d Cir.2009) ("[T]he limitations period for state prisoners therefore begins to run only after the denial of certiorari or the expiration of time for seeking certiorari." (internal quotation marks and citation omitted)); 28 U.S.C. § 2101(c) (providing 90 days to seek certiorari with the United States Supreme Court).

On September 8, 2008—362 days after his conviction became final-Petitioner filed his motion for a writ of error *coram nobis,* tolling the statute of limitations. *See* 28 U.S.C. § 2244(d)(2). On May 7, 2009, the Appellate Division denied that motion (*see* Kamlet Decl., Ex. 3), and the Court of Appeals denied leave to appeal on October 30, 2009 (*see id.,* Ex. 4).

In the meantime, Petitioner additionally filed, on October 15, 2009, a Section 440.10 motion in Bronx County Supreme Court. (*See* Kamlet Decl., Ex. 5.) The Section 440.10 motion also tolled the statute of limitations. *See, e.g., King v. Greiner,* No. 02cv5810 (DLC), 2003 WL 57307, at \*1 (S.D.N.Y. Jan. 7, 2003). The Bronx County Supreme Court denied Petitioner's Section 440.10 motion on November 22, 2010, [6] but the notice of entry was not mailed to Petitioner until December 9, 2010. (*See* Kamlet Deck, Ex. 7.)

[6]    The Petition incorrectly states that Bronx County Supreme Court denied the Section 440.10 motion on November 22, 2009. (*See* Pet. ¶ 10.) The decision itself indicates the date as November 22, 2010. (*See* Section 440.10 Opinion, at 4.)

On January 6, 2011, Petitioner filed a motion, which was deemed timely, for leave to appeal the denial of his Section 440.10 motion (*see* Kamlet Decl., Exs. 7, 8; 22 N.Y.C.R.R. § 600.8(d)(1) (appeals to the Appellate Division due "30 days after service of the order upon the applicant")), continuing to toll the statute of limitations. *See Evans v. Chavis,* 546 U.S. 189, 191 (2006); *Bethea v. Girdich,* 293 F.3d 577, 578 (2d Cir.2002); *Wilkins v.. Kirkpatrick,* No. 06cv2151 (SCR) (LMS), 2009 WL 3644082, at *7 (S.D.N.Y. Nov. 4, 2009).

On January 18, 2011, prior to the decision on his Section 440.10 appeal, Petitioner filed the instant Petition. As the one-year statute of limitations thus ran for only 362 days, the Petition was timely filed.

### B. *Exhaustion*

As a general matter, a federal court may not consider a petition for a writ of habeas corpus unless the petitioner has exhausted the remedies available in the state courts. 28 U.S.C. § 2254(b)(1) (A); *see also Baldwin v. Reese,* 541 U.S. 27 (2004); *Picardv. Connor,* 404 U.S. 270, 275 (1971). To satisfy the exhaustion requirement, a habeas petitioner must have "fairly presented" his claims to the state courts, thereby affording those courts the ' "opportunity to pass upon and correct' alleged violations of ... prisoners' federal rights." *Picard,* 404 U.S. at 275 (quoting *Wilording v. Swenson,* 404 U.S. 249, 250 (1971)). A petitioner may accomplish this in several ways, including by citing relevant provisions of the federal Constitution in his appellate brief, *see Davis v. Strack,* 270 F.3d 111, 122–23 (2d Cir.2001), or by relying on "pertinent federal cases employing constitutional analysis," *Rustici v. Phillips,* 308 F. App'x 467, 469 (2d Cir.2009) (internal quotation marks and citation omitted).

**\*8**  Aside from setting out the federal nature of his claims, the petitioner must also, for purposes of the exhaustion requirement, present those claims to "the highest court of the pertinent state." *Larocco v. Senkowski,* 65 F. App'x 740, 742 (2d Cir.2003); *Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir.1994) (citation omitted). In New York, for a claim that can be raised on direct appeal, a petitioner must first appeal his conviction to the Appellate Division and then seek "further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal." *Galdamez v. Keane,* 394 F.3d 68, 74 (2d Cir.2005). A request for leave to appeal to the Court of Appeals may be made by a letter submission that encloses the briefs and other documents that were before the lower courts. *See id.* A court will deem the exhaustion requirement satisfied where the "fair import" of the total

application suggests a request for review of the constitutional claims raised in those submissions. *Id.* at 75–77.

To exhaust a claim raised before the state trial court in a collateral post-conviction motion, as in a motion made pursuant to Section 440.10 of the New York Criminal Procedure Law, the petitioner must seek leave to appeal the denial of the motion. *See Ture v. Racette,* No. 9:12–cv–01864–JKS, 2014 WL 2895439, at *4 (N.D.N.Y. June 26, 2014) (claim unexhausted where petitioner did not seek to appeal denial of Section 440.10 motion); *see also Klein v. Harris,* 667 F.2d 274, 283–84 (2d Cir.1981); *Ramos v. Walker,* 88 F.Supp.2d 233, 234 n. 3 (S.D.N.Y.2000) (noting that "[a]n order denying a Section 440.10 is appealable to the intermediate appellate court by leave of a judge thereof granted under Section 460.15[,] ... [although] [t]here is no provision in New York law for an appeal to the Court of Appeals from an order denying leave to appeal from an order denying a Section 440.10 motion" (internal citations omitted)).

In this case, Petitioner raised his ineffective-assistance-of-counsel claim in a postconviction Section 440.10 motion brought before the trial court. (*See* Kamlet Decl., Ex. 7 (Memorandum of Law), at 6–7.) He raised the claim in federal terms, by relying on federal cases employing constitutional analysis. (*See id.*) In then seeking leave to appeal to the Appellate Division, Petitioner reiterated this claim and also expressly argued that, by denying him a hearing on his motion, the trial court had "violated his constitutional right to due process and his derivative right to a full and fair hearing." (*See id.* (Affirmation of Andrea G. Hirsch, Esq., dated Jan. 6, 2011), at 8.) Thus framed, Petitioner's constitutional claims were "fairly presented" to the state courts. *See Baldwin,* 541 U.S. at 29.

As noted above, however, Petitioner did not wait for the Appellate Division to rule on his application for leave to appeal, before he filed his habeas petition in this Court. Rather, relying on dicta in *Pace v. DiGuglielmo,* 544 U.S. 408 (2005), Petitioner suggested in his Petition that, in light of the fact that the statute of limitations had nearly expired (with only three days left to run), he was entitled to file a federal petition "protectively." (Pet., at 1; *see also Pace,* 544 U.S. at 416 (noting that a prisoner trying in good faith to exhaust state remedies may avoid the "predicament" of having his federal habeas petition time-barred "by filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies

Case 9:19-cv-00952-LEK-TWD    Document 22    Filed 07/27/22    Page 165 of 202
Millington v. Lee, Not Reported in F.Supp.3d (2015)
2015 WL 1402133

are exhausted").) More specifically, Petitioner filed prior to the full exhaustion of his claims in order to ensure that they would not become time-barred if a decision by the Appellate Division were to end the statutory tolling of the AEDPA limitations period before he could file in this Court. (*See* Pet., at 1.) Given that Petitioner was not mailed notice of the trial court's decision on his Section 440.10 motion for more than two weeks after that decision was issued, it was reasonable for Petitioner to fear a similar lapse in time before he received the decision of the Appellate Division. Indeed, if there were any delay in mailing—or even if notice was mailed promptly but took three days to reach him—then Petitioner would likely miss his deadline to file a federal habeas petition. (*See id.* (Petitioner stating: "If ... I were to wait to file this petition until after I received a decision from the New York Appellate Division ... and I then filed this petition, the petition would be untimely.").)

**\*9** Under the particular circumstances presented, it was within this Court's discretion to stay these proceedings and hold them in abeyance pending full exhaustion of Petitioner's claims. In particular, a stay was warranted because (1) Petitioner had made substantial efforts to exhaust his claims prior to commencing this proceeding, (2) he had good cause for filing the Petition when he did, given realistic concerns about the running of the statute of limitations, and (3) at least one of his claims appeared to be a strong one. *See Rhines v. Weber,* 544 U.S. 269, 276–79 (2005) (describing guidelines for courts' exercise of discretion in staying habeas proceedings). Certainly, this is not a case in which a petitioner sought to "drag[ ] out indefinitely [his] federal habeas review." *Id.* In fact, approximately three months after Petitioner filed his "protective" Petition, his application for leave to appeal to the Appellate Division was denied (*see* Kamlet Decl., Ex. 8), eliminating any concern that review of Petitioner's claims by this Court would deprive the state courts of the first opportunity to consider them.

Thus, to the extent necessary for the sake of the record, this Court finds that it was appropriate for Petitioner to have filed a "protective" petition to avoid the risk of forfeiting his claims, and grants his application for a stay, *nunc pro tunc* to the date the Petition was filed. *See Pace,* 544 U.S. at 416; *see also Panetti v. Quarterman,* 551 U.S. 930, 945–46 (2007) (noting that, in interpreting AEDPA's requirements, the purposes of the statute and the practical effects of precedent should be considered, and that "[t]his is particularly so when petitioners 'run the risk' under the proposed interpretation of 'forever losing their opportunity for any federal review of their

unexhausted claims' ") (quoting *Rhines* )); *Haynes v. Ercole,* No. 08–CV–3643 (JFB), 2009 WL 580435, at \*1 (E.D.N.Y. Mar. 6, 2009) (finding good cause for staying habeas petition where petitioner had filed a ' "protective habeas' to ensure its timeliness"); *Brown v. Ebert,* No. 05cv5579 (DLC)(KNF), 2006 WL 1273830, at \*2–3 (S.D.N.Y. May 9, 2006) (finding that petitioner had shown good cause for failing to exhaust his claims, in part because he followed the procedure set forth in *Pace* by filing a "protective" petition).

### C. *Standard of Review*

Under AEDPA, federal courts owe substantial deference to the decisions of state courts, where the state courts have adjudicated constitutional claims on the merits. *See* 28 U.S.C. § 2254(d) (2006); *see also Sellan v. Kuhlman,* 261 F.3d 303, 311 (2d Cir.2001) (" 'Adjudicated on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.").

AEDPA establishes a standard of review that is, by design, "difficult to meet." *Harrington v. Richter,* 131 S.Ct. 770, 786 (2011). A federal court may only issue a writ of habeas corpus if the state court adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Further, a state court's factual findings are presumed to be correct and can only be overcome by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**\*10** The requirement that federal law be "clearly established" limits petitioners to citing the "holdings, as opposed to the dicta of [the] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin,* 549 U.S. 70, 74 (2006) (quoting *Williams v. Taylor,* 529 U.S. 362, 412 (2000) ("*Terry Williams* ")). A state court decision is not "contrary to" clearly established federal law unless it either (1) applies a rule that is "antithetical" to Supreme Court precedent, or (2) "confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision" and arrives at a different result. *Terry Williams,* 529 U.S. at 405–06; *Rosario v. Ercole,* 601 F.3d 118, 123 (2d Cir.2010). For a decision to be an "unreasonable application" of clearly established law, a state court must correctly identify the governing legal principle, but then apply that principle

unreasonably to "a set of facts different from those of the case in which the principle was announced." *Lockyer v. Andrade,* 538 U.S. 63, 76 (2003). An "unreasonable application" of clearly established law within the meaning of AEDPA is not merely an incorrect application of clearly established law. Rather, it is an application "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter,* 131 S.Ct. at 786–87.

Similarly, a state court's factual determinations are not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen,* 558 U.S. 290 (2010). A state court's factual determinations may only be rebutted by clear and convincing evidence, *see* 28 U.S.C. § 2254(e)(1), and a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding," *Miller–El v. Cockrell,* 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(d) (2)). These standards, however, while "demanding," are "not insatiable," *Miller–El v. Dretke,* 545 U.S. 231, 240 (2005), and "[d]eference does not by definition preclude relief," *id.* (quoting *Cockrell,* 537 U.S. at 340). A factual determination may be unreasonable if it "cannot reasonably be reconciled" with the record before the state court. *Jones v. Murphy,* 694 F.3d 225, 235 (2d Cir.2012).

## II. *PETITIONER'S CLAIMS*

### A. *Due Process Violation*

This Court cannot review Petitioner's claim that, by failing to hold an evidentiary hearing during post-conviction proceedings to resolve his ineffective-assistance claims, the trial court violated his due process rights. (*See* Pet. ¶ 17.) In this circuit, such a claim is not cognizable in a federal habeas proceeding. *Word v. Lord,* 648 F.3d 129, 131 n. 5, 132 (2d Cir.2011) (holding, *per curiam,* that "alleged errors in a postconviction proceeding are not grounds for § 2254 review because federal law does not require states to provide a post-conviction mechanism for seeking relief," while acknowledging that two other circuits had rejected such a *per se* rule); *see also Diaz v. Greiner,* 110 F.Supp.2d 225, 235 (S.D.N.Y.2000) (noting that "federal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings" (internal quotation marks and citation omitted)). Accordingly, I recommend that this claim be dismissed.

### B. *Ineffective Assistance of Trial Counsel*

**\*11** For purposes of AEDPA, the standard enunciated in *Strickland v. Washington,* 466 U.S. 668 (1984), has generally been accepted as "clearly established federal law" for determining whether, under the guarantees of the Sixth Amendment, a criminal defendant has received constitutionally effective assistance of counsel. *See, e .g., Terry Williams,* 529 U.S. at 391. To prevail on an ineffective-assistance claim under *Strickland,* a defendant must show that: (1) counsel's performance "fell below an objective standard of reasonableness" in light of prevailing professional norms; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 688, 694. The New York state constitutional standard, explicated in *People v. Baldi,* 54 N.Y.2d 137 (1981), differs in some ways from the federal constitutional standard under *Strickland,* but not in material respects, for purposes of analysis under AEDPA, *see Rosario,* 601 F.3d at 126 (holding that "the New York state standard for ineffective assistance of counsel is not contrary to [federal law]"); *Lindstadt v. Keane,* 239 F.3d 191, 198 (2d Cir.2001) (*Baldi* "is not 'diametrically different, opposite in character or nature, or mutually opposed' to" federal standards (quoting *Terry Williams,* 529 U.S. at 405)).

Here, the last-reasoned decision of the state courts (*i.e.,* the decision of the trial court, on Petitioner's Section 440.10 motion) rejected Petitioner's ineffective-assistance claims on the merits by finding that, under *Baldi,* the state court had "no basis to conclude that trial counsel's representation of [Petitioner] was ineffective." (Section 440.10 Opinion.) While the state court did not address the specifics of Petitioner's claims about the deficiencies in Iannuzzi's performance, and even though *Baldi* was a state-law case, the court's express reliance on *Baldi* is sufficient to deem Petitioner's federal constitutional claims to have been "adjudicated on the merits," 28 U.S.C. § 2254(d), such that this Court's review of Petitioner's ineffective assistance of counsel claim is governed by AEDPA, *see Rosario,* 601 F.3d at 126; *Lindstadt,* 239 F.3d at 198 (2d Cir.2001); *Watkins v. Perez,* No. 05cv477 (GEL), 2007 WL 1344163, at \*8 (S.D .N.Y. May 7, 2007) (noting that a New York court " 'adjudicates' a federal ineffective-assistance claim 'on the merits if it applies or simply cites *Baldi'* " ).

### 1. *Counsel's Alleged Failure to Investigate Petitioner's Background*

Petitioner contends that his trial counsel failed to conduct an adequate investigation into potentially mitigating circumstances in Petitioner's background, and that, if counsel had investigated thoroughly, then he would have been able to negotiate a more favorable plea bargain or to obtain a more lenient sentence after trial. (*See* Pet. ¶¶ 15, 17.) Petitioner cannot prevail on this claim because, as a threshold matter, he cannot show that it is "clearly established" by the holdings of the Supreme Court that a criminal defense attorney has a constitutional duty to investigate mitigating evidence, except with respect to capital sentencing. Further, even if such a duty were found to exist, and even if Iannuzzi were found to have failed to fulfill that duty, Petitioner cannot show that he suffered prejudice as a result, as required under *Strickland.* Thus, this Court cannot conclude that the state court's rejection of this aspect of Petitioner's ineffective-assistance claim was contrary to, or constituted an unreasonable application of, clearly established federal law.

### a. *Failure to Show a Violation of "Clearly Established Federal Law"*

**\*12** While *Strickland* itself constitutes "clearly established federal law," *see Terry Williams,* 529 U.S. at 391, and although the very conduct at issue in *Strickland* was counsel's failure to investigate matters relevant to sentencing, *see* 466 U.S. at 690, *Strickland* was a capital case. The Supreme Court expressly reserved opinion as to whether the standards of conduct that it was articulating should apply in a non-capital context. *See id.* at 686 (noting that the Court "need not consider the role of counsel in an ordinary sentencing, which may involve informal proceedings and standardless discretion in the sentencer, and hence may require a different approach to the definition of constitutionally effective assistance"). Subsequent to *Strickland,* whenever the Supreme Court has specifically clarified the extent of counsel's duty to investigate, it has done so in the context of capital sentencing proceedings. *See, e.g., Rompilla v. Beard,* 545 U.S. 374 (2005); *Wiggins v. Smith,* 539 U.S. 510 (2003); *Terry Williams,* 529 U.S. at 362. This has caused the Second Circuit to observe that it is "by no means clear" that defense counsel has a constitutional duty to investigate mitigating evidence, *except* in the context of capital sentencing. *U.S. v. Herrera,* 186 F. App'x 109, 112 (2d Cir.2006) (summary order). Other courts have reached similar conclusions. *See, e.g., Davis v. Grigas,* 443 F.3d 1155, 1158 (9th Cir.2006) (noting that "there is no clearly established federal law as determined by the Supreme Court in this context [of counsel's performance in non-capital sentencing]" (internal citation omitted)); *Flores v. Ercole,* No. 09–CV–602 (DLI), 2010 WL 3951048, at \*8 (E.D.N.Y. Oct. 7, 2010) (questioning "whether the issue of counsel's meaningful representation at sentencing is cognizable on habeas review").

The Supreme Court has directed that "garden-variety applications" *of Strickland to* new and varied factual circumstances do not produce new constitutional rules, *Chaidez v. U.S.,* 133 S.Ct. 1103, 1107 (2013), but it has also cautioned that "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error," *White v. Woodall,* 134 S.Ct. 1697, 1706 (2014) (emphasis in original; internal citation omitted). Given the precedent cited above, it is difficult for this Court to conclude that examining the adequacy of defense counsel's investigation of potentially mitigating evidence, in the context of a non-capital case, would merely be a "garden-variety application" *of Strickland.* It is thus difficult to see how Petitioner could meet his burden, under AEDPA, of demonstrating that the state court's denial of his ineffective-assistance claim was contrary to, or represented an unreasonable application of, "clearly established federal law." 28 U.S.C. § 2254(d).

### b. *Failure to Show the Prejudice That Strickland Would Require*

**\*13** Even if the *Strickland* standard were applicable to Petitioner's claim regarding his trial counsel's alleged failure to investigate, Petitioner would be unable to meet that standard. In particular, regardless of whether his counsel's investigation was deficient, Petitioner cannot show that any such deficiency resulted in actual prejudice. *See Strickland,* 466 U.S. at 697 (holding that both prongs of the test for ineffective assistance must be satisfied, and that, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed"); *Parker v. Ercole,* 666 F.3d 830, 834 (2d Cir.2012) (noting that the court "need only consider the second prong" of *Strickland* to resolve the petitioner's ineffective-assistance-of-counsel claim).

Petitioner claims that if his counsel, Iannuzzi, had investigated adequately, then Iannuzzi would have discovered that, as a young child, Petitioner had once been subjected to sexual abuse by his older half-brother; that it was difficult for Petitioner to speak about that incident; that he had attempted suicide on three occasions during his youth; that he had experienced difficulty in school; that he had heavily abused

2015 WL 1402133

drugs and alcohol from an early age; and that he had fought often and engaged in reckless behavior. (*See* Pet. Aff. ¶¶ 2–5.) According to Petitioner, had Iannuzzi uncovered this information, he would have been obligated to have Petitioner examined by a psychiatrist, who (like Goldsmith) would then have been able to show that Petitioner's drug abuse —supposedly his method of self-medicating to cope with his past molestation—was beyond his control, and that his reckless and aggressive behavior, including his participation in the robbery and shooting for which he was convicted, was directly linked to the same childhood abuse. (*See* Pet. Reply, at 63–65.)

As an initial matter, Petitioner has not demonstrated that a diligent investigation by Iannuzzi would necessarily have led to the retention of a psychiatrist and the presentation of that psychiatrist's findings either to the prosecution, in connection with plea discussions, or to the court, in connection with sentencing. Rather, based on some of the potentially damaging information that an investigation would apparently have revealed-such as the extent of Petitioner's substance abuse and past pattern of reckless behavior (*see* Goldsmith Ltr., at 2–5)—counsel might have made a strategic decision not to obtain a psychiatrist's report, or not to present one, if obtained. As the Supreme Court stated in *Strickland*, "[e]ven the best criminal defense attorneys would not defend a particular client in the same way," and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." 466 U.S. at 689–90.

More critically, the record does not support Petitioner's hypothesis that additional information about his background and a psychiatric report like the one prepared by Goldsmith would have made a difference to either the prosecutor or the sentencing judge, resulting in a more favorable outcome to him. Petitioner has offered nothing but speculation to rebut the prosecutor's unequivocal statement, placed before the state court in opposition to Petitioner's Section 440.10 motion, that, had trial counsel informed him of Petitioner's background and provided him with the same psychiatrist's report that Petitioner ultimately obtained, he "would not have viewed that information as a basis to extend any plea offer to [Petitioner]." (McCarthy Aff. ¶ 2.)

**\*14** Similarly, Petitioner cannot avoid the comments made by the court at sentencing, which suggest that such information would likely have made little, if any, difference to the outcome. The sentencing judge, who was already aware

from the pre-sentence report that Petitioner had a history of substance abuse (*see* Sentence Tr., at 12–13), stated that, in his view, Petitioner's drug use was not a mitigating factor, but rather an aggravating factor, because "it's a choice to throw away restraints and to do whatever you please with other people" (*id.* at 31–32). The judge further indicated that he had formed, at trial, an impression of Petitioner as someone who "sought to hide behind drug use as some sort of explanation for taking the life of an innocent person." (*Id.* at 32.) Perhaps most importantly, the court stated:

[W]hat stands out in my mind as possibly the most significant factor is the fact that [Petitioner] shot Mr. Gerrald in the head three times. Not once to initially drop him to the ground, and that would have been enough and perhaps he would have lived, perhaps not, but then to in effect complete an execution of Mr. Gerrald by firing two more shots into his head, which guaranteed his death for no reason except just overall mean spiritedness, anger, whatever you want to call it, personal choice, gratification, it was done....

He has committed the act of a person filled with whether it's anger, hatred, greed, it makes no matter, because he did what he did. He won't own up to it. He tried to evade responsibility and he was unsuccessful in that....

[U]nder all the circumstances I don't feel that any other sentence is justified but the most severe sentence for the most severe crime, murder of an innocent person during the course of a robbery. And what sells it for me are the three bullets in the head. That's what separates [Petitioner's] act from that of someone else who may be a murderer, but who I might find in him some sparks of sadness over the occasion or regret or mistake or whatever. I don't find any of that here.

(*Id.* at 33–35.)

Petitioner contends that a psychiatrist could have explained the nature of Petitioner's drug and alcohol dependency, and thereby refuted the judge's suggestion that Petitioner had made a conscious "choice" to act without restraint. Without the benefit of hindsight knowledge of the court's comments at sentencing, however, there can be no assurance that a psychiatrist would even have thought to address that particular point. Moreover, even Goldsmith, whom Petitioner eventually retained in connection with his Section 440.10 motion, and who was able to review and attempt to address all of the sentencing judge's remarks, never opined that

Case 9:19-cv-00952-LEK-TWD    Document 22    Filed 07/27/22    Page 169 of 202
Millington v. Lee, Not Reported in F.Supp.3d (2015)
2015 WL 1402133

Petitioner's denials of his involvement in the killing were connected to his childhood abuse or any other mitigating aspect of his background. (*See* Goldsmith Ltr., at 5.) Yet it was this failure to accept responsibility, combined with the deliberate nature of Petitioner's firing two more bullets into Gerrard's head, after he was already on the ground, that the judge found "separate[d]" Petitioner's crime from other murders. (Sentence Tr., at 35.) [7]

[7]    While Petitioner now faults Iannuzzi for his own false trial testimony, claiming that Iannuzzi advised him to lie under oath, and for his lies to the probation officer during his pre-sentence interview, claiming that Iannuzzi failed to prepare him (*see* Kamlet Decl., Ex. 5 (Memorandum of Law, at 16 n. 5)), even these contentions could be viewed as further attempts by Petitioner to blame others and avoid taking responsibility for his conduct.

**\*15** Finally, as noted above, some of the evidence that, according to Petitioner, would have been viewed by the court as lessening his culpability, could equally well have been viewed as aggravating. For example, among the information reported by Goldsmith was that Petitioner described himself as a person who got into fights with strangers, was easily provoked, and had lots of confrontations, including a knife fight in which he had been stabbed in the neck. (*See* Goldsmith Ltr., at 2.) While the court may have accepted that Petitioner's history of recklessness and violence stemmed from his childhood abuse, it may also have considered such an admitted history to counterbalance his lack of documented prior criminal activity.

For all these reasons, while it is possible that Petitioner would have received a more lenient plea offer or sentence if additional mitigating evidence had been discovered, there could certainly be "fairminded disagreement" about whether, under *Strickland,* a more favorable result was reasonably probable. *See Richter,* 131 S.Ct. at 786–87. Accordingly, even if *Strickland* should be found to apply in the context presented, this Court cannot conclude that the state court's rejection of Petitioner's challenge to the adequacy of his trial counsel's investigation was "contrary to," or an "unreasonable application of," *Strickland. See* 28 U.S.C. § 2254(d). Thus, Petitioner cannot satisfy his burden under AEDPA, and this portion of Petitioner's ineffective-assistance claim should be dismissed.

### 2. *Counsel's Alleged Failure, During Plea Discussions, To Advise Petitioner Correctly of the Maximum Sentence He Could Face at Trial*

As noted above, this Court held an evidentiary hearing on the question of whether Iannuzzi advised Petitioner ineffectively during plea negotiations. Based on the evidence adduced at that hearing, this Court concludes that Petitioner has a meritorious habeas claim that warrants relief.

### a. *This Court's Preliminary Determination of an AEDPA Violation, and Subsequent Holding of an Evidentiary Hearing*

The first question that was presented to this Court, with respect to Petitioner's claim that his counsel misadvised him of his potential sentence, was whether the state court's denial of this claim violated Section 2254(d) of AEDPA. That question needed to be answered based on the record that was before the state court, without any further development of the facts by this Court. *See Cullen v. Pinholster,* 131 S.Ct. 1388, 1398 (2011). Based on the troubling affidavits and pre-trial transcripts that Petitioner placed before the trial court on his Section 440.10 motion and the lack of any meaningful rebuttal by the State, this Court made a preliminary finding that the trial court had, indeed, either unreasonably applied *Strickland to* Petitioner's claim, in violation of Section 2254(d)(1), or, by rejecting Petitioner's claim without a hearing, made an unreasonable determination of the facts in light of the evidence in the record, in violation of Section 2254(d)(2). (*See* November Order.)

**\*16** Attached to this Report and Recommendation is a copy of the Court's fairly lengthy November Order, which is fully incorporated herein by reference. Although this Court will not repeat all of its reasoning herein, a brief summary is warranted. In short, this Court found that, in rejecting Petitioner's claims on the merits, the trial court could only have decided one of two things: either that Petitioner's version of the facts, as presented by affidavit to that court, was true; or that some or all of it was false. (*See id.* at 11.) If the trial court accepted Petitioner's recitation of facts as *true* (in other words, if the court accepted that Iannuzzi misinformed Petitioner of the maximum sentence that he could receive, if convicted, and that Petitioner rejected a plea offer as a result of this misinformation), then the trial court's rejection of Petitioner's ineffective-assistance claim constituted an unreasonable application of *Strickland* to those facts, in violation of 28 U.S.C. § 2254(d)(1). (*See* November Order, at 12–13; *see also Lafler v. Cooper,* 132 S.Ct. 1376 (2012)

Case 9:19-cv-00952-LEK-TWD    Document 22    Filed 07/27/22    Page 170 of 202

(finding a violation of *Strickland* where the petitioner had rejected a plea offer based on his attorney's deficient advice).) If, on the other hand, the trial court, without a hearing, found that some or all of Petitioner's alleged facts were *false,* then the trial court's finding could not "reasonably be reconciled" with the limited record that was then before it, resulting in violation of 28 U.S.C. § 2254(d)(2). (*See* November Order, at 13–19; *see also Jones,* 694 F.3d at 235 & n. 1.) Accordingly, for the reasons stated in the Court's November Order, this Court made a preliminary determination that Petitioner had demonstrated a violation of Section 2254(d).

That determination, however, did not resolve the underlying issue of Petitioner's entitlement to habeas relief, as the record before the trial court was too limited to enable this Court to ascertain whether Petitioner had, in fact, received ineffective assistance of counsel and was thus being held "in custody in violation of the Constitution ... of the United States." 28 U.S.C. § 2254(a). As the lack of factual development was not due to any fault of Petitioner's, but rather to the failure of the state court to hold a hearing, it was permissible for this Court to hold the necessary evidentiary hearing to make credibility determinations and to resolve any conflicts in the evidence, *see Williams v. Taylor,* 529 U.S. 420, 429 (2000) ("*Michael Williams*"); *cf.* 28 U.S .C. § 2254(e)(2), and this Court held such a hearing on January 22, 2014.

**b.** *Findings of Fact, Based on the Evidence Before This Court*

At the evidentiary hearing before this Court, Petitioner generally testified credibly, in a manner that was materially consistent with the affidavit he had submitted in connection with his Section 440.10 motion. Iannuzzi also testified credibly, but his testimony tended more to corroborate Petitioner's account of the facts than to refute it, and new documentary evidence submitted by Respondent also tended to support Petitioner's version of events. After considering all of the presented evidence, as well as the demeanor of the witnesses, this Court makes the following findings of fact:

**i.** *Plea Offer*

**\*17** *First, this Court finds that the prosecution initially extended to Petitioner, through Iannuzzi, an offer of a sentence of 20 years to life, and t hen, shortly before trial, an offer of 18 years to life, in exchange for Petitioner's plea of guilty to murder in the second degree.*

This Court's finding that an 18–to–life plea offer was eventually extended to Petitioner, before trial, is supported by Petitioner's testimony, which was not only unrefuted by any witness with knowledge, but which was largely corroborated by both the minutes of pre-trial proceedings and the trial judge's own notes.

When Petitioner first attested to having received a plea offer of 18 years to life (*see* Pet. Aff. ¶ 8), both the prosecutor and Petitioner's own trial counsel denied any recollection of this or, indeed, of *any* plea discussions. The lead prosecutor, McCarthy, stated by affidavit that he did not recall "extending any plea offer" to Petitioner (McCarthy Aff. ¶ 2), and Petitioner's trial counsel, Iannuzzi, stated by affidavit that he neither recalled having any conversations with the prosecution about a plea offer, nor conveying to Petitioner an offer of either 20 years to life or 18 years to life (Iannuzzi Aff. ¶ 5). As noted above, however, Petitioner submitted to the trial court a transcript of a pre-trial calendar call reflecting that, according to one of McCarthy's colleagues, "offers" in the case "ha[d] been made." (12/3/01 Tr ., at 2.) More importantly, additional evidence obtained by habeas counsel, prior to the hearing in this Court, confirmed that the prosecution had in fact extended an offer to Petitioner-eliminating any doubt as to whether the "offers" referred to in the pre-trial transcript might have been made only to Petitioner's co-defendants.

Specifically, at the hearing before this Court, the parties stipulated that, if called to testify, the trial judge would state that he took notes regarding Petitioner's case, that he retained those notes, and that, according to those notes, a plea offer of "Murder 2 with 20 to life" had been extended to Petitioner, with the possibility of "18 or 19 to life." (Habeas Hr'g Tr., at 2–3; Court Ex. 1 (Dkt.30).) In addition, the parties introduced previously missing pages of the state court transcript, which included colloquy on the record among Iannuzzi, McCarthy, and the court, confirming that, as of about two weeks before Petitioner's trial, the prosecution had made Petitioner a plea offer, but that the offer was not acceptable to Petitioner.[8] (*See* Habeas Hr'g Tr., at 4–5; Court Ex. 2, at 38–39.) According to this transcript, Iannuzzi stated to the Court that he was "sure" that, "over the weekend," McCarthy would "reconsider" the prosecution's position. (*See* Habeas Hr'g Tr., at 7–8; Court Ex. 2, at 39.) Taking this evidence together, it is fully consistent with the testimony given by Petitioner, in which he asserted that the prosecution had first offered him a deal of 20 years to life and then, "[r]ight before trial," reduced the offer to 18 years to life. (Habeas Hr'g Tr., at 14; *see* Pet. Aff. ¶ 8.) Further, the fact that Petitioner memorialized his account by

Millington v. Lee, Not Reported in F.Supp.3d (2015)
Case 9:19-cv-00952-LEK-TWD    Document 22    Filed 07/27/22    Page 171 of 202
2015 WL 1402133

affidavit, before learning of the judge's notes, speaks to the trustworthiness of his account.

8    In his post-hearing brief, Petitioner indicates that the date when this colloquy took place was January 3, 2002 (Petitioner's Post–Hearing Letter Brief, dated Feb. 14, 2014 ("Pet.Ltr.Br.") (Dkt.25), at 6), but Respondent's counsel represented that it took place on the last day of the pre-trial hearing (*see* Habeas Hr'g Tr., at 5), which was January 4, 2002 (*see* R. at 213). The one-day discrepancy would not alter this Court's analysis of Petitioner's claim, as in either case, the exchange took place after Suarez pleaded guilty on January 2, 2002 (*see* Pet. Ltr. Br., at 6; State Court File Jacket ("File Jacket") (Dkt.25–1) (showing the date of disposition on Suarez's guilty plea as "1–2–02"); Respondent's Post–Hearing Letter Brief, dated Feb. 13, 2014 ("Resp.Ltr.Br.") (Dkt.26), at 3) and prior to the commencement of Petitioner's trial (*see* R. at 256).

**\*18** While now forced to concede that "an offer was extended to [P]etitioner at some point" (Resp. Ltr. Br., at 2), Respondent nonetheless argues that the details of the offer are insufficiently established and that, for various reasons, Petitioner should not be considered credible. Among other things, Respondent points out that the trial judge's notes also reflect that Petitioner, for his part, was seeking a plea with a sentence of 15 years to life, which conflicts with Petitioner's testimony that, to his understanding, Iannuzzi was trying to negotiate a determinate sentence for him of a "flat" 15 years. (Resp. Ltr. Br., at 3; *see also* Habeas Hr'g Tr., at 26–27.) The similarity of the accounts strikes this Court as more remarkable than their differences. Prior to the hearing, Petitioner was the only person to state affirmatively that Iannuzzi had sought to negotiate any plea deal on his behalf, let alone to specify a desired 15–year term. (*See* Pet. Aff. ¶ 8.) Whether Iannuzzi was trying to negotiate a determinate 15–year sentence, as Petitioner seems to have believed, or an indeterminate sentence of 15 years to life, as the judge's notes suggest, does not affect this Court's assessment of Petitioner's credibility on the key question of what offer was actually extended to him. Although Respondent is correct that no documentary evidence precisely confirms that the prosecution eventually offered Petitioner a plea deal of 18 years to life (which was only reflected as a possible future offer in the trial judge's notes) (*see* Resp. Ltr. Br., at 3), the Court nevertheless finds Petitioner's testimony on this point to be both genuine and generally consistent with the trial court's

notes and the comments made by the parties on the record, and accepts it as fully credible.

As to the other terms of the plea offer, Petitioner testified that, had he accepted the plea offer, he would have pleaded guilty to murder in the second degree, and that, as he understood it, there were no other material terms of the bargain. (*See* Habeas Hr'g Tr., at 17.) Again, the trial judge's notes support Petitioner's testimony, as they included a notation that the initial offer was for a plea to "Murder 2," and the notes did not reference any other terms. (*See* Court Ex. 1.) Based on the structure of the New York Penal Law, it would have made sense for a deal of 18 years to life to have been based on a plea to second-degree murder, given that such a sentence would not have satisfied the minimum sentencing requirement for first-degree murder. *See* N.Y. Pen. L. § 70.00(3)(a)(i) (eff. until July 22, 2004) (dictating minimum prison term for first-degree murder to be "not less than twenty years" and minimum term for other class A–I felonies, such as second-degree murder, to be "not ... less than fifteen years") .[9] Finally, the fact that second-degree murder would have been among the most serious offenses to which Petitioner could have pleaded guilty, and thus not necessarily in his self-interest, buttresses Petitioner's credibility on this point, especially where Petitioner knew that his co-defendant Suarez had pleaded guilty to the lesser crime of robbery.

9    For both first- and second-degree murder, the statutory maximum term of the sentence would have been life imprisonment, but life without parole could only have been imposed for murder in the first degree. *See* N.Y. Pen. L. §§ 70.00(2)(a), (5); 125.25; 125.27.

### ii. *Erroneous Advice by Counsel*

**\*19** *Second, this Court finds that Petitioner's counsel informed him, erroneously, that the maximum sentence he could face, if convicted, would be 25 years to life in prison (as opposed to life without parole).*

As in the affidavit he submitted to the trial court on his Section 440.10 motion, Petitioner testified before this Court that, based on his own research, he had told Iannuzzi that he thought he could receive a sentence of "natural life" on a charge of first-degree murder, but Iannuzzi had informed him that he was wrong, and that the maximum sentence he could receive after trial was instead 25 years to life. (*See* Habeas Hr'g Tr., at 12–13, 21.) This testimony by Petitioner became

entirely believable after Iannuzzi took the stand and testified to his own recollection of events.

Iannuzzi's testimony on the stand was somewhat confused and disjointed, but, considered in its entirety, it painted a picture of the circumstances in which he came to offer incorrect advice to Petitioner. As background, this Court takes judicial notice of the fact that, in 1995, the New York state legislature made certain amendments to the state penal, criminal procedure, and related laws, including, *inter alia,* expanding the definition of first-degree murder to include an intentional killing committed during any of certain enumerated felonies, allowing for a sentence of life imprisonment without parole upon conviction for first-degree murder, and restoring the death penalty as a sentencing option. *See* 1995 Sess. Law News of N.Y. Ch. 1 (S.2850, A.4843) (McKinney's). Iannuzzi testified that, at the time that these statutes were amended, he attended a training program relating to the amendments, but the program covered, as he described it, "[m]ostly death." (Habeas Hr'g Tr., at 60; *see also id.* ("It was concentrated on death and the handling of actual death cases.").) According to Iannuzzi, the aspect of the amendment that allowed for a sentence of life imprisonment without parole was "not really" dealt with at the training he attended. (*Id.*) Rather, he testified that "[t]he course was dealing mainly with death. They didn't deal very much with cases where death wasn't involved." (*Id.*)

Iannuzzi recalled that Petitioner's case, which commenced in 2000, "was being handled as murder 1 until such time as the district attorney determined that it was not to be a death penalty" case (*id.* at 65), and that "once [he] got a determination from the District Attorney's office that murder 1 was not in the picture" (*id.),* he "thereafter ... more or less handled [the case] as if it were a murder 2" (*id.).* Indeed, from the totality of Iannuzzi's testimony, it appears that, in the wake of the restoration of the death penalty, he largely equated first-degree murder with capital murder. In this context, Iannuzzi testified that, while he could not recall any specific conversations that he had with Petitioner, he was "sure" that he "would have told [Petitioner]" that the maximum sentence he faced was 25 years to life in prison (*id.* at 64)-*i.e.,* the maximum sentence that was then available for second-degree murder, *see* N.Y. Pen. L. § 70.00(3)(i) (eff. until July 22, 2004), *not* first-degree murder, for which Petitioner was still being prosecuted.

**\*20** While Respondent argues that Iannuzzi was an experienced criminal defense lawyer who would not have

been likely to make such a mistake (*see* Resp. Ltr. Br., at 8), and attempts to cast his testimony as that of a zealous advocate "falling on his sword" for Petitioner (*id.* at 8–9), Iannuzzi testified that he had not tried a first-degree murder case since well before the 1995 amendments (*see* Habeas Hr'g Tr., at 59 (testifying that he had tried such a case in 1964 and 1965)). It appears that, between the date of the statutory amendments in 1995 and Petitioner's case in 2000, Iannuzzi had not represented any client who had been charged with first-degree murder and who had therefore faced a potential sentence of life without parole. It is thus entirely credible that such a sentence would not have been part of Iannuzzi's usual frame of reference for homicide cases. In fact, Iannuzzi confirmed that he "wasn't focusing on" the possibility that Petitioner would receive a sentence of life without parole until the jury reached its verdict. (*Id.* at 68.) Iannuzzi testified credibly that it was only at or after that point that the sentence "became something [he] focused on more," when "suddenly [he] had to deal with life without parole." (*Id.*) Given this testimony, it seems that Petitioner's potential sentence of life imprisonment without parole caught Iannuzzi by surprise.

In the hearing conducted by this Court, Respondent's counsel asked Iannuzzi directly whether he would have told Petitioner that the maximum sentence he could face upon conviction was 25 years to life imprisonment, when Petitioner's maximum sentencing exposure was actually life without parole. In response, Iannuzzi testified: "It would be hard for me to tell him that he would be facing 25 to life if he was facing life without parole unless it was something that I didn't discuss with him until later in the case, after the verdict came in and then we had to deal with the possibility at that point." (*Id.* at 69.) Taking Iannuzzi's hearing testimony as a whole, this Court finds that, once the prosecution decided not to pursue the death penalty, Iannuzzi began to think of the case as a second-degree murder case, informed Petitioner accordingly that his maximum sentence was 25 years to life, and failed to realize—let alone to communicate to Petitioner —that Petitioner was actually facing a sentence of life without parole until after he was convicted.

### iii. *Likelihood That Petitioner Would Have Accepted the Plea Offer and That It Would Have Been Presented to the Court*

*Third, this Court finds that there is a reasonable probability that, if not for counsel's erroneous advice, Petitioner would have accepted the plea offer of 18 years to life, that the*

*prosecution would not have withdrawn the offer, and that it would have been presented to the trial court.*

As in his earlier affidavit, Petitioner testified before this Court that Iannuzzi had discouraged him from taking the plea offer that was extended because it was not substantially different from the maximum sentence that Iannuzzi believed Petitioner would face if convicted. (*See* Habeas Hr'g Tr., at 15 ("Right before trial when we started saying that we were about to select our jury, I was telling him, what about the offer, you know. And he had told me, 18 years to life, 25 years to life, what's the difference.").) The Court credits this testimony, especially in light of Iannuzzi's evident confidence, at the time of trial, in the strength of Petitioner's defense. (*See id.* at 71 (Iannuzzi testifying that, as Petitioner was intoxicated at the time of the crime, "[h]e couldn't possibly have had intent [to commit the crime]").) If Iannuzzi thought that Petitioner had a strong defense that could be presented to a jury, and that the plea deal did not provide Petitioner with a significant benefit over the sentence that he would face if convicted at trial, then Iannuzzi might well have thought that accepting the plea would not have been in Petitioner's best interest. [10] Even so, though, Petitioner testified that he *did* seriously consider accepting the 18–years–to–life offer, because he was "a little nervous." (*Id.* at 13.) He also testified that he had no doubt that he would have accepted the offer, had he known that he could be sentenced to life imprisonment without parole. (*Id.* at 15.)

[10]    It seems likely that Iannuzzi thought that, if convicted and sentenced (whether based on a plea or a jury verdict), Petitioner would not readily be granted parole, such that any indeterminate sentence could effectively result in life imprisonment and, for that reason, would not be a favorable deal. (*See* Habeas Hr'g Tr., at 47 (Errol recounting that Iannuzzi had "expressed that he wanted to go to trial because any sentencing with life at the end of it would be considered life in prison ...").)

**\*21**  Respondent argues that, as a sentence of 18 years to life would have been significantly more favorable than 25 years to life (as Petitioner acknowledged in the hearing before this Court (*see id.* at 26)), Petitioner should have been interested in the plea offer even if he had believed that 25 years to life was the maximum sentence he faced at trial (Resp. Ltr. Br., at 5); from this, Respondent suggests that the fact that Petitioner rejected the offer implies that he did not want a plea deal at all, but rather an acquittal (*id.*). The Court notes

the inherent difficulty of discerning between what someone would do differently now, with perfect hindsight, and what someone would have done at the time, with competent legal advice, but no certainty as to the eventual outcome of the trial. Nonetheless, this Court is persuaded that Petitioner was, in fact, interested in a plea; that he followed his attorney's advice that the plea offer was not favorable, given Petitioner's available defenses and his supposed maximum potential exposure at trial; and that, had Petitioner understood his actual sentencing exposure (an issue on which he had pressed Iannuzzi before trial), he would have made a different risk calculation.

Further, there is nothing in the record to suggest that, had Petitioner accepted the plea offer, the prosecution would have withdrawn it before trial. The record is clear that an offer to Petitioner remained on the table on January 4, 2002 (*see* Court Ex. 2), less than two weeks before his trial was to commence (*see* R. at 256). Even Suarez's agreement, two days earlier, to plead guilty and cooperate as a prosecution witness against Petitioner had not caused the prosecution to withdraw the offer to Petitioner. (*See* File Jacket.) Given that, as of January 4, 2002, the prosecutor was still keeping the trial court apprised of the status of plea negotiations with Iannuzzi, the record gives every indication that any plea offer accepted by Petitioner would have been presented by the prosecution to the court.

### iv. *Likelihood That the Trial Court Would Have Accepted the Offer's Terms and Imposed a Sentence Less Severe Than the Sentence Petitioner Ultimately Received*

*Fourth, this Court finds that there is a reasonable probability that the state court would have accepted the terms of the plea offer, had it been presented to the court, and that Petitioner would have t hen received a less severe sentence than the one he received after trial.*

Absolutely nothing in the record suggests that the trial court would not have accepted a guilty plea by Petitioner to second-degree murder, with an agreed sentence of 18 years to life. The trial judge specifically stated, at a pre-trial calendar call: "The case can always be disposed of if that's what the attorneys and their clients and the People wish to do." (12/3/01 Tr., at 6.) Moreover, before the prosecution extended its final plea offer to Petitioner, the trial judge made note of the prosecution's extant offer of 20 years to life, as well as the possibility that the prosecution would, in the future, offer a deal of 18 or 19 years to life, without giving any indication that such a

2015 WL 1402133

potential future offer would be unacceptable. (*See* Court Ex. 1.)

**\*22**  Neither party contends that the judge disapproved, at any time, of any offer of which the court was made aware. In fact, Suarez—the only one of Petitioner's co-defendants to accept a plea offer—pleaded guilty to a lesser charge of robbery in the first degree and received a shorter sentence of 14 years in prison. (*See* File Jacket.) The notations in the court file suggest that those terms, which were less severe than the terms offered to Petitioner, both as to the crime and as to the sentence, were accepted by the trial court. (*See id.*) It thus appears reasonably probable that the trial court would have similarly accepted the terms of Petitioner's plea bargain and sentenced him, accordingly, to a prison term of 18 years to life, a sentence that is obviously less severe than the sentence of life without parole that Petitioner received after his conviction at trial.

### c. *Conclusions of Law as to Whether Habeas Writ Should Issue*

This Court has already reasoned that, by rejecting Petitioner's ineffective-assistance-of-counsel claim without a hearing, the state court either (1) unreasonably applied *Strickland* to Petitioner's claim, or (2) made an unreasonable determination of the facts in light of the record before it. (*See generally* November Order; 28 U.S.C. § 2254(d)(1), (2).) Under these circumstances, "no deference is due" to the state court's decision, under AEDPA. *Pan etti,* 551 U.S. at 948. Rather, the Court must determine, *de novo,* whether Petitioner is in fact being held "in custody in violation of the Constitution or laws or treaties of the Unites States." 28 U.S.C. § 2254(a).

While there is no constitutional right to a plea bargain, *Weatherford v. Bursey,* 429 U.S. 545, 561 (1977), there is a constitutional right to the effective assistance of counsel at the plea-bargaining stage, *see Missouri v. Frye,* 132 S.Ct. 1399 (2012); *Padilla v. Kentucky,* 559 U.S. 356 (2010); *Hill v. Lockhart,* 474 U.S. 52 (1985), and the *Strickland test* generally applies to ineffective assistance claims arising out of that stage, *see Cooper,* 132 S.Ct. at 1384.

Under the first prong of the *Strickland test,* an attorney has "a professional obligation to adequately inform [his] client about the considerations that are relevant to [his] client's decision to accept or deny a plea bargain," *Davis v. Greiner,* 428 F.3d 81, 88 (2d Cir.2005), which means that "counsel must communicate to the defendant the terms of the plea offer, and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed," *Purdy v. United States,* 208 F.3d 41, 44 (2d Cir.2000) (internal citation omitted). "[G]rossly underestimating [the defendant's] sentencing exposure" constitutes a breach of an attorney's duty "to advise his client fully on whether a particular plea to a charge appears desirable." *U.S. v. Gordon,* 156 F.3d 376, 380 (2d Cir.1998) (internal citations omitted). Thus, in *Gordon,* where the attorney erroneously advised his client that he faced a maximum of 120 months incarceration if convicted, when in fact he faced a sentencing range from 210 to 262 months, the attorney's conduct was found to fall "below an objective standard of reasonableness." *Id.*

**\*23**  To establish the "prejudice" necessary to satisfy the second prong of *Strickland,* a petitioner must also demonstrate that "the outcome of the plea process would have been different with competent advice." *Cooper,* 132 S.Ct. at 1384. Specifically, a petitioner who chose not to accept a plea offer must show that, "but for the ineffective advice of counsel[,] there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the [petitioner] would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 1385.

Here, as set out above, this Court has found that Iannuzzi misrepresented Petitioner's maximum sentencing exposure as 25 years to life in prison, when, in fact, Petitioner faced a maximum potential sentence of life imprisonment without parole. This is sufficient to satisfy *Strickland's* requirement that counsel's performance in advising Petitioner during plea negotiations "fell below an objective standard of reasonableness" in light of prevailing professional norms. *Strickland,* 466 U.S. at 688; *see Gordon,* 156 F.3d at 380.

Moreover, this Court has found that, had Petitioner been given correct information by his counsel, he would have accepted an offer by the prosecution to plead guilty to second-degree murder and serve a sentence of 18 years to life in prison, the prosecution would not have withdrawn the offer, and the trial court would likely have accepted the parties' plea deal and sentenced Petitioner in accordance with its terms. Under these circumstances, Petitioner has also met his burden, under *Strickland,* to demonstrate prejudice from Iannuzzi's deficient

advice. A conviction for murder in the second degree, by way of a plea, would have been inherently less severe than a conviction for murder in the first degree. *See, e.g., People v. Granger,* 187 N.Y. 67, 73 (1907) (referring to murder in the first degree as a "greater offense" than murder in the second degree). More significantly, a prison sentence of 18 years to life would have been, on its face, much less severe than the sentence that Petitioner received after trial-life imprisonment without the possibility of parole. *See Solem v. Helm,* 463 U.S. 277, 297 (1983) (referring to life imprisonment without possibility of parole as "far more severe" than a life sentence with the possibility of parole); *Graham v. Florida,* 560 U.S. 48, 69–70 (2010) (referring to life imprisonment without parole as "the second most severe penalty permitted by law," after the death penalty).

This Court concludes that Petitioner was deprived of the effective assistance of counsel during plea negotiations, in violation of the Sixth Amendment, *see Cooper,* 132 S.Ct. at 1384, and that federal habeas relief should therefore be granted. As noted by the Supreme Court in *Cooper,* the proper remedy in these circumstances is to direct the prosecution to re-extend its final plea offer to Petitioner (*i.e.,* its offer to agree to a prison sentence of 18 years to life, in exchange for Petitioner's plea of guilty to murder in the second degree), and, assuming Petitioner accepts it, to present the plea deal to the state trial court. *See Cooper,* 132 S.Ct. at 1391; *see also* Resp. Ltr. Br., at 10 n. 2. Accordingly, I recommend that a writ of habeas corpus be granted, to that extent.

### *CONCLUSION*

**\*24**  For the foregoing reasons, Petitioner's application to stay these proceedings and hold them in abeyance pending the exhaustion of his claims (*see* Dkt. 1) is hereby granted, *nunc pro tunc* to the date of the Petition.

As to the resolution of Petitioner's habeas claims, I respectfully recommend that, with respect to Petitioner's claim that he received ineffective assistance of counsel in connection with a plea offer, the Court

(1) find that Petitioner has met the standards for relief set forth in 28 U.S.C. § 2254(d)(1) and/or (2);

(2) find that Petitioner has demonstrated that he was denied his Sixth Amendment right to the effective assistance of counsel, and that he is thus entitled to a writ of habeas corpus, pursuant to 28 U.S.C. § 2254(a); and

(3) grant Petitioner habeas relief accordingly, to the extent of directing the prosecution to re-extend the 18–years–to–life plea offer and to present any resulting plea deal to the state trial court.

I further recommend that the remaining claims pleaded in the Petition be dismissed. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed.R.Civ.P. 6 (adding three days for service by mail). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Lorna G. Schofield, United States Courthouse, 40 Foley Square, Room 201, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Schofield. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn,* 474 U.S. 140, 155 (1985); *IUE AFL–CIO Pension Fundv. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 58 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

### ORDER

Petitioner Devon Millington ("Petitioner"), who, as a result of his conviction by a jury for the crime of murder in the first degree, is currently serving a term of life in prison at the Green Haven Correctional Facility in Stormville, New York, challenges his conviction and sentence in a petition for a writ of habeas corpus under 28 U.S.C. § 2254. The case has been referred to the undersigned for a report and recommendation, but, for the reasons discussed below, this Court has determined that it must hold an evidentiary hearing prior to issuing proposed findings of fact and any recommendation as to the proper disposition of Petitioner's claims. In particular, this Court finds that an evidentiary hearing is needed to resolve factual disputes underlying Petitioner's claim that, in the context of discouraging Petitioner from accepting a plea bargain offered by the State, Petitioner's trial counsel rendered ineffective assistance by misinforming Petitioner that the maximum prison sentence he could face, if convicted, was an indeterminate sentence of

25 years to life, when Petitioner actually faced a maximum sentence of life imprisonment without parole.

## BACKGROUND

### A. *Petitioner's Indictment*

**\*25** Based on the evidence presented at trial, Petitioner killed Everad "Eric" Gerrald ("Gerrald") during the course of a robbery that Petitioner committed with Michael Suarez ("Suarez") and Anthony Stallings ("Stallings"). (*See generally* Record on Appeal ("R.") (Dkt.10), at 256 [11] (Transcript of Trial, conducted Jan. 15, 2002 through Jan. 28, 2002).) The details of the crime itself are not relevant to this Order.

[11]     The page numbers to the Record on Appeal, as referenced herein, are to the document control numbers stamped at the bottom of each page of the Record.

The police arrested Petitioner during the early morning hours of October 7, 2000. (R., at 918:23–926:19.) The next day, Petitioner gave a statement after being informed of his rights pursuant to *Miranda v. Arizona,* 384 U.S. 436 (1966). (*See id.,* at 929:1–930:18.) In the statement, Petitioner admitted that, although it had been Suarez's idea to rob Gerrald, Petitioner had committed the murder (*see* R., at 1639–41 (People's Exhibit 24 (Written Statement of Devon Millington), dated Oct. 7, 2000)). Petitioner subsequently also gave a videotaped confession. (*See* R., at 1050:16–1052:21, 1642–48 (People's Exhibit 25 (Transcript of Video Statement of Devon Millington)).) As part of the videotaped statement, Petitioner acknowledged that the written statement he had given earlier was his, and that he had signed an explanation of his rights. (*See id.* at 1648.)

On October 12, 2000, a grand jury indicted Petitioner for first-degree murder and Petitioner, Stallings, and Suarez for second-degree murder and several other crimes. (*See* R., at 4–9 (Indictment, dated Oct. 12, 2000).)

### B. *Alleged Plea Offers and Erroneous Advice of Counsel*

Petitioner's father, Roy Millington ("Roy"), retained John Nicholas Iannuzzi, Esq. ("Iannuzzi") as Petitioner's defense counsel. (Declaration in Opposition to Petition for a Writ of Habeas Corpus, dated June 2011 ("Kamlet Decl.") (Dkt.9),

Ex. 17 (Affidavit of Roy Millington, sworn to Sept. 14, 2009 ("Roy Aff.")), ¶ 1.)

According to Petitioner, Iannuzzi told him, in the course of his representation, that the maximum sentence Petitioner would face if convicted was 25 years to life in prison. (*See* Letter from Bari L. Kamlet, dated July 26, 2011 ("Kamlet Ltr."), Ex. 3 (Petitioner's Affidavit, sworn to Sept. 15, 2009 ("Pet.Aff."))), ¶ 8.) Petitioner also asserts that, at some point, Iannuzzi told him that he was attempting to negotiate a 15–year sentence for Petitioner under a plea deal, but that the prosecutor was only offering 20 years to life. (*Id.*) Petitioner further maintains that, "[j]ust before trial," the prosecutor offered a plea deal of 18 years to life, but Iannuzzi "discouraged" Petitioner from accepting that deal, and also discouraged Petitioner's parents from advising him to plead guilty, telling Petitioner: " '18 to life, 25 to life, what's the difference?' " (*Id.*)

After conducting his own legal research, Petitioner allegedly told Iannuzzi that he believed the statute allowed for "natural life," but, according to Petitioner, Iannuzzi insisted that 25 years to life was the maximum. (*Id.*) Petitioner claims that he "followed Iannuzzi's advice" not to accept the plea deal "because [he] thought [Iannuzzi] knew best." (*Id.*)

### C. *Petitioner's Trial., Conviction, and Direct Appeal*

**\*26** Petitioner was eventually tried, separately from his co-defendants, in January, 2002. (*See* R., at 256.) On January 28, 2002, the jury found Petitioner guilty of murder in the first degree (*see* R., at 1632:1–13), and, on April 2, 2002, the trial court sentenced him to life imprisonment without parole (*see* R., at 1685 (Sentencing Transcript)).

Petitioner, still represented by Iannuzzi, appealed to the Appellate Division in October 2006, raising several claims not relevant here. (*See* Kamlet Decl., Ex. 1.) The Appellate Division denied the appeal on February 22, 2007, *see People v. Millington,* 830 N.Y.S.2d 143 (1st Dep't 2007), and, on June 14, 2007, the Court of Appeals denied Petitioner leave to appeal from the Appellate Division's decision, *see People v. Millington,* 9 N .Y.3d 848 (2007).

### D. *Collateral Post–Conviction Proceedings*

Petitioner retained Andrea Hirsch, Esq. ("Hirsch") for the purpose of pursuing additional post-conviction relief. (*See* Kamlet Ltr., Ex. 5 (Letter from Hirsch to Iannuzzi, dated Apr. 4, 2008).) Through Hirsch, Petitioner filed a *coram nobis* petition in the Appellate Division, as well as certain motions

for collateral relief in the trial court. Of particular relevance here is the October 15, 2009 motion filed by Petitioner in the trial court under Section 440.10 of the New York Criminal Procedure Law, challenging the effectiveness of his trial counsel. (*See* Kamlet Decl., Ex. 5 (Notice of Motion to Vacate Judgment and Set Aside Sentence, dated Oct. 15, 2009; Affirmation of Andrea G. Hirsch, Esq., dated Oct. 15, 2009; Memorandum of Law, dated Oct. 15, 2009) ("Pet. § 440.10 Mem.").) On that motion, Petitioner argued, *inter alia*, that Iannuzzi's representation was constitutionally defective because, in the context of advising Petitioner regarding a plea offer, Iannuzzi misrepresented to Petitioner the maximum sentence he could face if convicted of first-degree murder. (*See* Pet. § 440.10 Mem., at 19–20.) [12]

[12]     Petitioner's state *coram nobis* petition raised a related argument-that Iannuzzi had provided ineffective assistance on appeal by raising baseless claims, while neglecting to raise the "strong argument" that he, himself, had deprived Petitioner of effective assistance of counsel in proceedings before the trial court. (*See* Kamlet Decl. ¶ 9 & Ex. 18 (Corrected Motion for a Writ of Error *Coram Nobis;* Affirmation of Andrea G. Hirsch, Esq., dated Oct. 28, 2008; and Memorandum of Law, dated Oct. 28, 2008 ("Coram Nobis Mem."), at 7–13).) On May 7, 2009, the Appellate Division summarily denied Petitioner's motion for a writ of error *coram nobis* (*see* Kamlet Decl., Ex. 3), and the Court of Appeals denied leave to appeal on October 30, 2009, *People v. Millington,* 13 N.Y.3d 837 (2009).

In connection with this Section 440.10 motion, both Petitioner and Respondent submitted affidavits and letters to support their positions. (*See* Kamlet Ltr., Ex. 3–5, 9, 21–23.) Petitioner also submitted several transcripts of pretrial proceedings. (*See* Kamlet Ltr., Ex. 21.) Although Petitioner requested an evidentiary hearing so that the trial court could make credibility determinations and findings of fact (*see* Pet. § 440.10 Mem., at 11), the court denied Petitioner's Section 440.10 motion in its entirety without holding a hearing (Kamlet Decl., Ex. 6 ("11/22/10 Opinion"), at 4).

After reviewing the procedural history of the case, the court concluded its decision with the following brief analysis of Petitioner's ineffective-assistance-of-counsel claim:

Taking all the evidence before this Court into consideration, the Court finds no basis to conclude that trial

counsel's representation of the defendant was ineffective. Applying the standard enunciated in *People v. Baldi* (54 N.Y.2d 137 [1981] ), this Court concludes: 1) despite the overwhelming evidence of guilt, Mr. Ianuzzi [sic] presented a well grounded defense; and 2) that Mr. Ianuzzi [sic] exhibited 'reasonable competence' in his representation of the defendant. As stated in *Baldi,* '[a]n attorney who presents a well grounded but unsuccessful defense will not be held to have provided ineffective assistance of counsel, and thus a defendant will not be entitled to a vacatur of his conviction on such basis.'

**\*27**  (*Id.*) [13] Nowhere in its decision did the trial court specifically address how it resolved Petitioner's and the State's contradictory allegations regarding plea discussions and Iannuzzi's conduct in that context.

[13]     A New York court "adjudicates a federal ineffective-assistance claim on the merits if it applies or simply cites *Baldi,*" *Watkins v. Perez,* 2007 WL 1344168, at *8 (S.D .N.Y. May 7, 2007) (internal quotation marks and citations omitted), which tracks *Strickland [v. Washington,* 466 U.S. 668 (1984) ] at the first prong but departs at the second prong with a standard of prejudice "somewhat more favorable to defendants," *Rosario v. Ercole,* 601 F.3d 118, 124 (2d Cir.2010) (quoting *People v. Turner,* 5 N.Y.3d 476 (N.Y.2005) (collecting cases)); *see also* discussion of the federal *Strickland* standard, *infra.*

On January 6, 2011, Petitioner sought leave to appeal to the Appellate Division. (*See* Kamlet Decl., Ex. 7.) The Appellate Division summarily denied that application on April 14, 2011. (*See* Kamlet Decl., Ex. 8.)

### E. *Federal Habeas Petition*

Proceeding *pro se,* Petitioner initiated the instant habeas proceeding on January 18, 2011. [14] (*See* Petition, dated Jan. 18, 2011 ("Pet.") (Dkt.1).) In his papers, Petitioner noted that Hirsch had prepared his habeas Petition and requested that the Court appoint her to represent him. (*See* Pet. ¶ 13.)

[14]     Although the Court's docket reflects a filing date of January 21, 2011 for the Petition (Dkt.1), a *pro se* prisoner's papers are deemed filed when they are handed over to prison officials for forwarding to the Court. *See Houston v. Lack,* 487 U.S. 266,

270 (1988). Thus, in the absence of evidence to the contrary, the Court will deem the Petition to have been filed on January 18, 2011, the date Petitioner signed it. *See, e.g., Rhodes v. Senkowski,* 82 F.Supp.2d 160, 165 (S.D.N.Y.2000).

Although Petitioner raised a number of claims in his Petition, only one is relevant to this Order—Petitioner's claim (as previously raised in his Section 440.10 motion) that Iannuzzi's representation of Petitioner in connection with plea discussions was constitutionally ineffective because of Iannuzzi's purported failure "to tell [Petitioner] what sentences he faced; to advise [Petitioner] about the strengths and weaknesses of the prosecution's case; [and] to encourage him to accept the plea offer." (Pet.¶¶ 15, 17.)

On June 20, 2011, Respondent filed an opposition to the Petition (*see* Memorandum of Law, dated June 2011 (Dkt.9) (attached to Kamlet Decl.)), arguing, *inter alia,* that no plea was ever offered to Petitioner (*id.,* at 18–21.)

After that, on July 4, 2011, Hirsch filed a Notice of Appearance in this Court, stating that she had "been retained to represent [Petitioner] in all further proceedings in this case." (Dkt.12.) Hirsch filed a reply on Petitioner's behalf on October 6, 2011. (*See* Petitioner's Reply to the State's Opposition Papers (Dkt.15).)

### *DISCUSSION*

### I. *APPLICABLE LEGAL STANDARDS*

#### A. *Standard of Review*

A petitioner who is in custody pursuant to a state court judgment may seek a federal writ of habeas corpus on the ground that his custody is in violation of federal law, *see* 28 U.S.C. § 2254(a), when he has exhausted all available state court remedies or is excused from doing so, *see* 28 U.S.C. § 2254(b)(1). If the petitioner's claim has been adjudicated on the merits by the state court, then the federal court must accord substantial deference to the state court's decision under the standard of review dictated by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2254(d). The relevant section of AEDPA provides that:

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

**\*28** *Id.* This standard of review is, by design, "difficult to meet ." *Harrington v. Richter,* 131 S.Ct. 770,786 (2011).

An "unreasonable application" of clearly established federal law under § 2254(d)(1) occurs when the state court identifies the correct governing legal principle, but unreasonably applies that principle to "a set of facts different from those of the case in which the principle was announced." *Lockyer v. Andrade,* 538 U.S. 63, 76 (2003). The state court's decision "must have been more than incorrect or erroneous"; it must have been "objectively unreasonable." *Wiggins v. Smith,* 539 U.S. 510, 520–21 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 409 (2000) (*Terry Williams)*). Review under Section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster,* 131 S.Ct. 1388, 1398 (2011). Evidence later introduced in federal court is irrelevant to this review. *Id.*

Further, under AEDPA, a state court's factual findings are presumed correct, and can only be overcome by "clear and convincing evidence," 28 U.S.C. § 2254(e)(1), showing that the state court's factual determinations were "objectively unreasonable," *Miller–El v. Cockrell,* 537 U.S. 322, 340 (2003). A federal court may find a factual determination of the state court to have been unreasonable under this standard if the decision "cannot reasonably be reconciled" with the record that was before the state court. *Jones v. Murphy,* 694 F.3d 225, 235 (2d Cir.2012).

Section 2254(e)(2) controls whether a petitioner may receive an evidentiary hearing in federal district court on claims that were not developed in the state courts. *See Williams v. Taylor,* 529 U.S. 420, 429 (2000) (*Michael Williams*). Section

2015 WL 1402133

2254(e)(2) provides that, "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim," with strictly limited exceptions. 28 U.S.C. § 2254(e)(2). A petitioner has *not* "failed to develop" the facts of his claim, and thus *may* receive a hearing without demonstrating that his case falls into the exceptions, "[i]f there has been no lack of diligence at the relevant stages in the state proceedings." *See Michael Williams,* 529 U.S.C. at 437.

Reading *Michael Williams* and *Pinholster* together, a habeas petitioner may receive an evidentiary hearing to determine the merits of his petition in federal court if- and only if- he has been diligent in state court (or meets the exceptions) and can satisfy § 2254(d)(1) solely on the basis of the record that was before the state court. *See* 28 U.S.C. § 2254(e)(2); *Pinholster,* 131 S.Ct. at 1400 & n. 5 (reconciling its holding with *Michael Williams* ). As explained in detail below, that is precisely the posture of Petitioner's case.

### B. *Ineffective Assistance of Counsel*

**\*29** For purposes of review under AEDPA, *Strickland v. Washington,* 466 U.S. 668 (1984) sets out the relevant "clearly established federal law" for ineffective-assistance-of-counsel claims. *See Aparicio v. Artuz,* 269 F.3d 78, 95 & n. 8 (2d Cir.2001) (noting that it is "beyond cavil" that *Strickland* is clearly established federal law). To prevail on a claim of ineffective assistance of counsel under *Strickland,* a petitioner must show that: (1) counsel's performance "fell below an objective standard of reasonableness" in light of prevailing professional norms, and (2) "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 688, 694. A court may reject an ineffective-assistance-of-counsel claim for failure to satisfy either prong of the *Strickland* standard, without reaching the other. *See Strickland,* 466 U.S. at 697.

The Supreme Court has long held that a criminal defendant's Sixth Amendment right to counsel applies in the plea-bargaining phase as well as at trial, *see McMann v. Richardson,* 397 U.S. 759, 771 (1970), and that *Strickland* provides the relevant standard, *see Hill v. Lockhart,* 474 U.S. 52 (1985); *Padilla v. Kentucky,* 559 U.S. 356 (2010); *Missouri v. Frye,* 132 S.Ct. 1399 (2012).

In the context of plea negotiations, counsel must "communicate to the defendant the terms of any plea bargain." *Cullen v. U.S.,* 194 F.3d 401, 404 (2d

Cir.1999) (applying the first prong of the *Strickland* test). Further, "grossly underestimating [the defendant's] sentencing exposure" constitutes a breach of an attorney's duty "to advise his client fully on whether a particular plea to a charge appears desirable." *U.S. v. Gordon,* 156 F.3d 376, 380 (2d Cir.1998) (quoting *Boria v. Keane,* 99 F.3d 492, 496 (2d Cir.1996) (applying *Strickland* )).

Prejudice in this context means that "the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper,* 132 S.Ct. 1376, 1384 (2012); *see also Hill,* 474 U.S. 52. Specifically, where a petitioner claims that deficient advice caused him to reject a favorable plea offer, the petitioner must show that,

> but for the ineffective advice of counsel[,] there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the [petitioner] would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Cooper,* 132 S.Ct. at 1385.

As "the standards created by *Strickland* and § 2254(d) are both highly deferential, ... when the two apply in tandem, review is doubly so." *Richter,* 131 S.Ct. at 788 (internal quotation marks and citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland'* s deferential standard." *Id.*

### II. *THE STATE COURT'S DETERMINATION OF PETITIONER'S CLAIM*

**\*30** Review in this case is complicated by the trial court's failure to make any explicit findings of fact regarding Iannuzzi's conduct in the plea context. (*See* 11/22/10

---

Case 9:19-cv-00952-LEK-TWD    Document 22    Filed 07/27/22    Page 180 of 202
Millington v. Lee, Not Reported in F.Supp.3d (2015)
2015 WL 1402133

Opinion.) To the extent the court implicitly made findings on that subject, there are only two possible sets of findings that could have supported the court's legal conclusion that Iannuzzi "exhibited 'reasonable competence' in his representation of [Petitioner]." *Id.* First, the court could have accepted the truth of Petitioner's assertions regarding the existence of a plea offer and Iannuzzi's erroneous representation regarding the maximum sentence Petitioner could face, but nonetheless found Iannuzzi's conduct to have been constitutionally adequate. Second, the court could have rejected some or all of Petitioner's assertions as untrue.

If this Court were to assume that the state court *accepted* Petitioner's recitation of facts, then this Court would need to determine, under 28 U.S.C. § 2254(d)(l)–and based solely on the record that was before the state court, *see Pinholster,* 131 S.Ct. at 1398–whether the state court's resulting denial of Petitioner's claim constituted an unreasonable application of *Strickland.* On the other hand, if this Court were to assume that the state court *rejected* Petitioner's factual assertions, then this Court would need to determine, under 28 U.S.C. § 2254(d) (2), whether the state court's denial of Petitioner's claim was based on an unreasonable determination of the facts in light of the evidence before it. If, under each of these AEDPA provisions, this Court were to determine that the state court acted unreasonably under the applicable standards, then this Court would need to proceed to consider whether Petitioner is actually being held in custody unlawfully. *See* 28 U.S.C. § 2254(a).

### A. State Court's Application of Strickland

In *Lafler v. Cooper,* 132 S.Ct. 1376 (2012), the Supreme Court addressed factual circumstances materially similar to those presented here. The petitioner in *Cooper* had rejected a plea offer on his attorney's deficient advice that he could not be convicted at trial; he was then convicted and received a harsher sentence than what had been offered under the plea deal. *Id.,* at 1383. The Supreme Court held that "[b]y failing to apply *Strickland* ..., the state court's adjudication was contrary to clearly established federal law." [15] *Cooper,* 132 S.Ct., at 1390.

[15]    Although *Cooper* was decided after the date of the state court decision at issue here, *Cooper* is still instructive, as it addressed a state court decision issued in 2005 (well before the decision being challenged by Petitioner here), and held that the state court's failure to apply *Strickland* to advice

regarding the rejection of a plea offer was contrary to clearly established federal law, even at that time. *See Cooper,* 132 S.Ct. at 1383.

Here, Petitioner claims that the prosecution offered him a plea bargain that he would have accepted, had he known the maximum sentence that could be imposed at trial, but that, because his trial attorney advised him erroneously about his potential sentencing exposure, he elected to stand trial and received a harsher sentence. (*See* Pet. Aff. ¶ 8.)

If the trial court decided or assumed that these assertions by Petitioner were true, then the court could not reasonably have concluded that Iannuzzi's conduct during plea negotiations met "an objective standard of reasonableness" in light of prevailing professional norms. *Strickland,* 466 U.S. at 688. By "grossly underestimating" Petitioner's sentencing exposure, and indeed erroneously advising him that he could not be sentenced to life imprisonment without parole, counsel's representation fell below an objective standard of reasonableness. *See Gordon,* 156 F.3d at 380; *see also Davis v. Greiner,* 428 F.3d 81, 89 (2d Cir.2005) (noting that potential sentencing exposure is a "key consideration" in making an informed decision whether to plead guilty).

**\*31**    Moreover, if the state court decided or assumed that Petitioner's allegations were true, it could not reasonably have concluded that Petitioner suffered no prejudice as a result of his counsel's conduct. To be prejudiced by poor advice at the plea stage, a petitioner must show that he would have accepted a plea offer, that the prosecution would not have withdrawn the offer, that the court would have accepted the agreement, and that "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Cooper,* 132 S.Ct. at 1385. Petitioner asserted that he would have accepted the plea deal of 18 years to life that he claims was offered (a prison term that would have been substantially lower than the term of life imprisonment without parole he eventually received (*see* Pet. Aff. ¶ 8)), and nothing in the record suggests that the offer, if made by the State and accepted by Petitioner, would not have been presented to or accepted by the trial court.

As noted above, the state court concluded that it had "no basis" to find that Petitioner's trial counsel was ineffective, because Iannuzzi "exhibited 'reasonable competence' in his representation." (*See* 11/22/10 Opinion, at 4.) Yet, for the reasons discussed above, if the court assumed or decided that the facts were as Petitioner alleged, then this

Case 9:19-cv-00952-LEK-TWD    Document 22    Filed 07/27/22    Page 181 of 202
Millington v. Lee, Not Reported in F.Supp.3d (2015)
2015 WL 1402133

decision necessarily involved an unreasonable application *of Strickland.*

**B.** *State Court's Determination of the Facts in Light of the Evidence Presented*
Of course, the trial court need not have accepted as true the facts asserted by Petitioner in his Section 440.10 motion. Alternatively, in concluding that Iannuzzi "exhibited 'reasonable competence,' " the court may have implicitly determined that Petitioner was not credible in his assertions (1) that a plea deal was offered; (2) that Iannuzzi improperly advised Petitioner about his maximum sentencing exposure; and (3) that there was a reasonable probability that the plea offer would have been presented to and accepted by the trial court, and that the sentence would have been less severe than the one Petitioner actually received. The state court, however, could not have reasonably made such factual determinations on the record before it, without a hearing.

**1.** *Whether a Plea Offer Was Made*
Petitioner submitted an affidavit to the trial court, in which he attested that a plea offer had been extended to him. Specifically, Petitioner stated:

> Iannuzzi talked about a plea bargain. He said that he was trying to get me 15 years flat. At that time, the DA's office was offering me 20 years to life. Just before trial, they dropped it to 18 years to life.

(Pet.Aff.¶ 8.) While the trial court may have believed that Petitioner lacked credibility in this regard, or may have rejected as hearsay Petitioner's statements as to what Iannuzzi had told him,[16] the record before the trial court also contained the minutes of several pretrial calendar calls (*see* Kamlet Ltr., Ex. 21), which provided independent, reliable evidence that plea negotiations had taken place and that, prior to trial, some type of plea offer had in fact been made to Petitioner.

[16]    The court also may have rejected, on either credibility or hearsay grounds, the statements on this point made by Petitioner's brother, Errol Millington ("Errol"), and father, Roy, both

of whom submitted affidavits in support of Petitioner's Section 440.10 motion. In his affidavit, Errol stated that he was present at a meeting with his father and Iannuzzi, at which Iannuzzi reported that Petitioner could get "18 years to life if he accepted a plea bargain." (Kamlet Decl., Ex. 16 (Affidavit of Errol Millington, sworn to Aug. 26, 2009 ("Errol Aff.")), ¶ 4.) Petitioner's father, for his part, merely reported hearing from Petitioner that "he could get 18 years to life." (Roy Aff. ¶ 3.)

**\*32**  First, the record reflected that, on July 10, 2001, at a calendar call for the case against Petitioner and Stallings, Assistant District Attorney ("ADA") Christine Scaccia stated: "I've also extended what the People's recommendations are as far as sentencing on any possible disposition, and we've had some further discussion about what interest the defendants might have." (*See* Kamlet Ltr., Ex. 21 (attached Transcript of Calendar Call, conducted July 10, 2001), at 4:7–10.) ADA Scaccia further represented that "with respect to these two attorneys [Iannuzzi for Petitioner and Oliver Smith for Stallings]," she could discuss "any details that may need to be gone into" before the hearing date "for disposition purposes." (*Id.* at 5:13–16.) These statements strongly suggested that plea negotiations were then occurring with both Petitioner and Stallings.

Second, the record showed that, at a November 19, 2001 calendar call, attorney Kevin Faga, who apparently worked for Iannuzzi's law firm,[17] appeared on behalf of Petitioner. (*See* Kamlet Ltr., Ex. 21 (attached Transcript of Calendar Call, conducted Nov. 19, 2001), at 2:4–5.) Faga told the judge that Petitioner was withdrawing a pending motion "based on the fact that we are negotiating towards a disposition." (*Id.* at 2:25–3:2.) The prosecutor did not disagree.

[17]    (*See* R., at 20 (Letter from Kevin B. Faga); Kamlet Ltr., Ex. 13 (including correspondence to "Kevin Faga, Esq." at "Iannuzzi & Iannuzzi").)

Finally, on December 3, 2001, ADA Jeffrey Rosenbaum informed the Court on the record, on behalf of the State, that "[ADA] McCarthy says the offers have been made, to be accepted or not," and that "if this case is going to trial, he will be ready to try this case on January 2nd." (*See* Kamlet Ltr., Ex. 21 (attached Transcript of Calendar Call, conducted Dec. 3, 2001 ("12/3/01 Tr.")), at 2:22–24.) The plain implication of this representation by the prosecutor (which suggested that there might be no reason to try the case at all) was that

the State had made plea offers to each of the co-defendants, including Petitioner.

Although, in opposition to Petitioner's Section 440.10 motion, ADA Bari Kamlet informed the trial court that the prosecution case file "contain[ed] no indication that any plea offer was ever extended to [Petitioner]" (Kamlet Decl., Ex. 14, ¶ 10), the State offered no evidence directly refuting its own December 3, 2001 statement on the record that "the offers have been made." In fact, ADA McCarthy submitted an affirmation stating only that he did not "recall extending any plea offer" to Petitioner. (Kamlet Decl., Ex. 10 (Affirmation of Daniel T. McCarthy ("McCarthy Aff.")), ¶ 2.) Similarly, in his own affidavit, Iannuzzi stated only that he could "not recall conversations with the People about a plea offer" or conveying any plea offer to Petitioner. (Kamlet Decl., Ex. 12 (Affirmation of John Nicholas Iannuzzi, dated Feb. 24, 2010 ("Iannuzzi Aff.")), ¶ 5.)

In sum, on his Section 440.10 motion, Petitioner asserted by affidavit that he had been offered a plea deal of 18 years to life imprisonment, and he also submitted transcripts of state court proceedings tending to confirm that a pretrial plea deal had, in fact, been offered to him. Although, in opposition to Petitioner's motion, the State represented that its file did not reflect a plea offer, this, coupled only with counsel's asserted lack of recollection, would not have been sufficient to enable the trial court to conclude, without a hearing, that no plea offer had been made. As any such conclusion "cannot reasonably be reconciled" with the record the court had before it, see Jones, 694 F.3d at 235 & n. 1 (2d Cir.2012), it would have constituted an "unreasonable determination of the facts in light of the evidence presented," 28 U.S.C. § 2254(d)(2).

### 2. Whether Iannuzzi Gave Petitioner Erroneous Information About His Maximum Potential Sentence

**\*33**  In the affidavit he submitted to the trial court, Petitioner also stated that Iannuzzi failed to inform him properly of the "comparative sentence exposure between standing trial and accepting a plea offer" crucial to the decision to accept a plea deal, Gordon, 156 F.3d at 380. Petitioner stated that Iannuzzi explicitly told him that his maximum sentence would be 25 years to life and that Iannuzzi specifically denied that Petitioner could face a life sentence if convicted. (See Pet. Aff. ¶ 8.) By separate affidavit, Petitioner's brother, Errol, corroborated Petitioner's account, stating that he, too, had heard Iannuzzi tell Petitioner that "the maximum sentence [Petitioner] faced if he went to trial was 25 years to life." (Errol Aff. ¶ 4.)

In his own affidavit, Iannuzzi stated that he "was fully aware at the time [he] represented [Petitioner]" that Petitioner could face life in prison without parole, if convicted at trial. (Iannuzzi Aff. ¶ 2.) In his affidavit, Iannuzzi also indicated that he did "not have a recollection of specific conversations that [he] had with [Petitioner]" (id. ¶ 3), but he went on to assert: "My general practice is to advise my clients as to what the law provides with regard to sentencing" (id. ¶ 4). Iannuzzi made no statement, though, as to what his general practice was at the time he represented Petitioner. As to whether he had discouraged Petitioner from accepting a plea offer, Iannuzzi stated only that he had "no current recollection" of ever doing so. (Id. ¶ 6.)

Based on this record, it also would have been unreasonable for the state court to conclude, without a hearing, that Iannuzzi's statements as to his general practice—and his statements about his lack of recollection—conclusively disproved Petitioner's and his brother's specific recollections as to what occurred in this case. See Garcia v. Portuondo, 104 F. App'x 776, 779–80 (2d Cir.2004) (finding that state court's refusal to hold a hearing resulted in a decision that was an "unreasonable determination of the facts in light of the evidence, where prosecutor and trial counsel had submitted affirmations denying petitioner's allegations that counsel had "grossly underestimat[ed]" his sentencing exposure); see also Montes de Oca, 2007 WL 4591991 at *6–7, *14–15 (S.D.N.Y. Dec. 27, 2007) (noting that a record containing conflicting affidavits was inadequate to resolve factual disputes); see also Carrion v. Smith, 365 F. App'x 278, 283 (2d Cir.2010) (after evidentiary hearing, crediting petitioner's specific testimony over counsel's repeated testimony of general practice).

### 3. Whether Petitioner Was Prejudiced

Nothing in the record tended to suggest that a plea offer, if made, would not have been presented to the trial court. Petitioner asserted that, if properly advised about his maximum sentencing exposure at trial, he would have accepted a plea offer of 18 years to life in prison. (See Pet. Aff. ¶ 8.) As the prosecutor denied recollection of extending any offer, his affirmation is silent on the question of whether any such offer would have been withdrawn without being presented to the court. (See McCarthy Aff. ¶ 2.) Yet, the fact that the prosecution apparently entered into a plea deal with one of Petitioner's co-defendants, Suarez (see R., at 602:16–603:19) suggests a reasonable probability that, had a plea offer been accepted by Petitioner, it would not have been withdrawn.

**\*34** Similarly, nothing in the record tends to suggest that, if a plea offer had been presented to the court, it would have been rejected. To the contrary, the calendar call transcripts seem to indicate that the trial judge had no objection to the case being resolved by a plea bargain. (*See, e.g.,* 12/3/01 Tr., at 2:22–25 (trial judge responding, "All right," when informed by the prosecutor that offers had been made); 12/3/01 Tr., at 3:24–25 (trial judge advising that "[i]f you think you are working some disposition out, you better work it out before January 2nd").) The judge's remarks suggest a reasonable probability that a plea deal would have been accepted by the court.

Finally, there is no dispute that the conviction or sentence under a plea deal of 18 years to life imprisonment would have been less severe than the term of life imprisonment without parole to which Petitioner was in fact sentenced.

### C. *Necessity of an Evidentiary Hearing*
As the state court's decision either involved an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence, *see* 28 U.S.C. § 2254(d), this Court must proceed to consider the ultimate question of whether Petitioner is in custody in violation of law, *see* 28 U.S.C. § 2254(a), without deference to the state court's decision, *see Pan etti v. Quarterman,* 551 U.S. 930, 948 (2007).

Factual disputes remain regarding whether a plea deal was actually offered to Petitioner and, if so, the terms of that plea offer; the quality of advice given by counsel about any plea offer; and the credibility of the various affiants, which cannot adequately be resolved without a hearing. *See Garcia,* 104 F. App'x at 779–80; *Montes de Oca,* 2007 WL 4591991 at \*6–7, \*14–15. These factual disputes remain not due to a lack of diligence on Petitioner's part, but due to the state court's refusal to hold the hearing Petitioner requested. Given that Petitioner exercised diligence, and thus did not "fail [ ]

to develop" the factual basis of his claim, AEDPA does not bar this Court from holding an evidentiary hearing in this case. *See Michael Williams,* 529 U.S .C. at 437. Neither is *Pinholster* a barrier, as that case limited the ability of a district court to hold a hearing only with respect to review under § 2254(d)(1), *see Pinholster,* 131 S.Ct. at 1398–an inquiry this Court has undertaken, above, without reference to any evidence other than what was before the state court.

Accordingly, as a hearing is both permissible for, and necessary to, the resolution of Petitioner's ineffective-assistance-of-counsel claim, this Court will hold an evidentiary hearing to evaluate the credibility of Petitioner and any other witnesses with relevant knowledge and to consider any evidence presented. Subsequent to the hearing, this Court will issue a Report and Recommendation to Judge Schofield as to the appropriate disposition of the Petition, in its entirety.

### CONCLUSION

**\*35** For the foregoing reasons, counsel are directed to initiate jointly a telephone conference with this Court on November 21, 2013, at 2:00 p.m., at which time this Court will schedule a hearing on Petitioner's ineffective-assistance-of-counsel claim. As Petitioner has now retained counsel for all proceedings herein (Dkt.12), there is no need for this Court to appoint counsel for purposes of the hearing, and Petitioner's initial application for appointment of counsel (as contained in his Petition (Dkt.1)) is denied as moot.

SO ORDERED.

Dated: Nov. 13, 2013.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 1402133

---

**End of Document**
© 2022 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 3895235
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Patrick E. WEST, Petitioner,
v.
Donald UHLER, Superintendent, Upstate
Correctional Facility, [1] Respondent.

[1]    Donald Uhler, Superintendent, Upstate
       Correctional Facility, is substituted for David A.
       Rock, former Superintendent, Upstate Correctional
       Facility. FED. R. CIV. P. 25(d).

No. 9:12–cv–01611–JKS.
|
Signed Aug. 8, 2014.

**Attorneys and Law Firms**

Patrick E. West, Malone, NY, pro se.

Paul B. Lyons, New York State Attorney General, New York,
NY, for Respondent.

MEMORANDUM DECISION

JAMES K. SINGLETON, JR., Senior District Judge.

 *1  Patrick E. West, a state prisoner proceeding *pro se,* filed a
Petition for Writ of Habeas Corpus with this Court pursuant to
28 U.S.C. § 2254. West is in the custody of the New York State
Department of Corrections and Community Supervision and
is incarcerated at Upstate Correctional Facility. Respondent
has answered, and West has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On the evening of December 31, 2008, West attended a
family party and then went to a bar afterwards, and consumed
several alcoholic drinks and possibly prescription drugs over
the course of the evening. As West was walking home,
James Adams bumped into him. West punched Adams in
the head and then stomped on Adams's head after Adams
fell to the ground. West was arrested on January 1, 2009,

and initially charged with second-degree assault and seventh-
degree criminal possession of a controlled substance. West
claimed he acted in selfdefense. Adams died the following
day of acute brain injuries due to blunt force trauma to the
head, and West was subsequently indicted by a grand jury
for first-degree and second-degree manslaughter. A jury
convicted West of first-degree manslaughter. The court sentenced West
to 21 years' imprisonment followed by 5 years of post-release
supervision, and ordered him to pay restitution in the amount
of $36,293.13.

West directly appealed through counsel, arguing that: 1) the
trial court erroneously allowed the prosecution to designate
one of its own witnesses, Robin Stevens, "hostile," thereby
improperly allowing the prosecution to cross-examine and
impeach Stevens in violation of West's right to confrontation;
2) the trial court erroneously allowed the prosecution to
use Stevens's out-of-court statements to impeach Stevens
and substitute for his testimony in violation of West's
right to confrontation; 3) the trial court failed to give
sufficient limiting or curative instructions regarding Stevens's
testimony; 4) objections to the above-mentioned errors were
properly preserved for appeal; and 5) the above-mentioned
errors could not be deemed harmless because the evidence
against West was not overwhelming.

The Appellate Division unanimously affirmed West's
judgment of conviction in a reasoned opinion. *People v. West,*
85 A.D.3d 1393, 925 N.Y.S.2d 272, 273 (N.Y.App.Div.2011).
The appellate court held that, "[g]iven Stevens' repeated
refusals at trial to answer any questions concerning the written
statement he provided to police regarding certain admissions
allegedly made by [West] while in jail, County Court properly
exercised its discretion in declaring Stevens to be a hostile
witness and permitting the use of leading questions by the
People." *Id.* at 272. The court further found that West had
failed to preserve for review his claims that the prosecution
was improperly permitted to impeach Stevens with his prior
out-of-court statements in violation of New York Criminal
Procedure Law ("CPL") § 60.35 and his right to confrontation
and that the trial court failed to adequately instruct the jury
regarding the limited purpose for which such statements could
be considered. *Id .* at 272–73. In the alternative, the court
concluded that the trial court provided prompt and appropriate
limiting instructions and that the use of Stevens's prior
statements for impeachment purposes, although improper,
was harmless in light of the overwhelming evidence of West's
guilt. *Id.* at 273.

**\*2** West filed a counseled application for leave to appeal to the Court of Appeals. West argued that the Appellate Division erred in concluding that the trial court properly exercised its discretion in declaring Stevens a hostile witness and in finding that the People's improper impeachment of Stevens was unpreserved and harmless. The Court of Appeals denied leave to appeal without comment. *People v. West,* 957 N.E.2d 1164, 1164 (N.Y.2011).

West then filed a *pro se* motion to vacate the judgment pursuant to CPL § 440.10. West argued that trial counsel was ineffective for failing to "state factual allegations inside of his omnibus motion to secure the suppression" of his inculpatory statements to the police and for otherwise moving to suppress those statements. The trial court denied relief without a hearing, noting that West had not raised an ineffective assistance of counsel claim on direct appeal despite the fact that his appellate counsel was different from his trial counsel. The court alternatively held that, viewing the record as a whole, trial counsel provided West meaningful and effective assistance of counsel. West sought leave to appeal from the trial court's denial of his motion, arguing that the trial court erred in denying his motion without a hearing. The Appellate Division denied relief without comment. West then filed for leave to appeal to the Court of Appeals. The Court of Appeals dismissed the application for leave to appeal, concluding that the order sought to appeal from was not appealable.

West then filed a *pro se* petition for writ of error coram nobis, arguing that his appellate counsel was ineffective for failing to argue on direct appeal that the prosecutor committed misconduct where he "became an unsworn witness for the prosecution and placed his own veracity as an issue before the jury and also vouched for ... his witness," and for failing to argue that his sentence was harsh and excessive. The Appellate Division unanimously denied West relief without comment. West then applied for leave to appeal, which the Court of Appeals denied.

West timely filed his *pro se* Petition with this Court on October 25, 2012.

## II. GROUNDS RAISED

In his Petition to this Court, West argues that: 1) the trial court violated CPL §§ 440.30(5) & (7) in denying his motion to vacate the judgment by failing to hold an evidentiary hearing "to develop the facts missing on the record in finding[s] of

facts, conclusions of law and reasons for its determination"; 2) trial counsel was ineffective for failing to secure the suppression of his inculpatory statements to the police; and 3) appellate counsel was ineffective for failing to argue on direct appeal that a) the prosecutor committed misconduct in summation, b) his sentence was harsh and excessive, and c) the trial court erred in concluding that Stevens was a hostile witness.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is "contrary" to federal law "if the state court applies a rule that contradicts the governing law set forth" in controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor,* 529 U.S. 362, 406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

**\*3** The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision," *Williams,* 529 U.S. at 412, and not circuit precedent, *see Renico v. Lett,* 559 U.S. 766, 777–78, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010). The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds and not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer,* 537 U.S. 3, 10, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002). Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.' " *Carey v. Musladin,* 549 U.S. 70, 77, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006) (citation omitted). In applying these standards on habeas review, this Court reviews this "last reasoned decision" by the state court. *Ylst v. Nunnemaker,* 501 U.S. 797, 804, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir.2000). Under AEDPA, the state court's findings of fact are presumed to be

correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e) (1); *see also Miller–El v. Cockrell,* 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

IV. DISCUSSION

A. Exhaustion
This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese,* 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004) (citing cases). To be deemed exhausted, a claim must have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *Galdamez v. Keane,* 394 F.3d 68, 74 (2d Cir.2005). Respondent is correct in asserting that West failed to exhaust, such as through a petition for writ of error coram nobis, his claim that appellate counsel was ineffective for failing to raise on direct appeal the argument that the trial court erred in permitting Stevens to be treated as a hostile witness.

Exhaustion of state remedies also requires a petitioner to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used. *Jackson v. Edwards,* 404 F.3d 612, 619 (2d Cir.2005). Respondent correctly contends that West failed to exhaust his claim that the trial court violated CPL §§ 440.30(5) & (7) by denying his motion to vacate his sentence without holding an evidentiary hearing because he raised it on state-law grounds only.

**\*4** [W]hen a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez,* 510 F.3d 382, 390 (2d Cir.2008) (citation

omitted); *see also See Grey v. Hoke,* 933 F.2d 117, 121 (2d Cir.1991). A habeas petitioner may only avoid dismissal of his procedurally defaulted claims if he can demonstrate "cause for the default and prejudice from the asserted error," *House v. Bell,* 547 U.S. 518, 536, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006), or a "fundamental miscarriage of justice," *Murray v. Carrier,* 477 U.S. 478, 495–96, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), *superceded by statute on other grounds, United States v. Gonzalez–Largo,* No. 2:07–cr–0014, 2012 WL 3245522, at \*2 (D.Nev. Aug.7, 2012). West does not claim that cause exists for his procedural default. Because West already appealed the denial of his CPL § 440 motion, he may not now return to state court to raise any federal aspect of his claim that the trial court denied his motion without a hearing, and this claim may accordingly be deemed exhausted but procedurally defaulted from habeas review. *See Ramirez v. Attorney Gen.,* 280 F.3d 87, 94 (2d Cir.2001).

West's unexhausted ineffective assistance of appellate counsel claim is not barred, however, because there is no time limit or number bar in filing writ of error coram nobis applications. *See Smith v. Duncan,* 411 F.3d 340, 347 n. 6 (2d Cir.2005); *Turner v. Sabourin,* 217 F.R.D. 136, 147 (E.D.N.Y.2003). West may therefore still exhaust this claim in state court. This Court could stay the Petition and allow West to return to state court to satisfy the exhaustion requirement as to this remaining claim. *See Zarvela v. Artuz,* 254 F.3d 374, 380–83 (2d Cir.2001). However, West has not requested that this Court stay and hold his petition in abeyance. Moreover, the Supreme Court has held that it is an abuse of discretion to stay a mixed petition pending exhaustion where: 1) the petitioner has not shown good cause for failing to exhaust all available state court remedies; and 2) the unexhausted claim is "plainly meritless." *Rhines v. Weber,* 544 U.S. 269, 277, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). In his Petition, West provides no reason why he did not seek relief on this claim through an additional coram nobis application to the state court. Accordingly, this Court declines to dismiss the claim solely on exhaustion grounds and will instead reach the merits of all of his claims, as discussed below.

B. Merits
West argues that he was denied effective assistance of counsel by both his trial and appellate counsel.

    a. *Strickland* and New York Standards on habeas review
To demonstrate ineffective assistance of counsel under *Strickland v. Washington,* a defendant must show both that

his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper,* ––– U.S. ––––, ––––, 132 S.Ct. 1376, 1385–86, 182 L.Ed.2d 398 (2012); *Glover v. United States,* 531 U.S. 198, 203–04, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001); *Williams,* 529 U.S. at 393–95. Thus, West must show that his counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland,* 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

**\*5** New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness.' *Rosario v. Ercole,* 601 F.3d 118, 124 (2d Cir.2010) (citing *People v. Turner,* 5 N.Y.3d 476, 806 N.Y.S.2d 154, 840 N.E.2d 123 (N.Y.2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that defendant did not receive a fair trial." *Id.* at 124 (quoting *People v. Benevento,* 91 N.Y.2d 708, 674 N.Y.S.2d 629, 697 N.E.2d 584, 588 (N.Y.1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole." *Id.* (quoting *Benevento,* 674 N.Y.S.2d 629, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi,* 54 N.Y.2d 137, 444 N.Y.S.2d 893, 429 N.E.2d 400, 405 (N.Y.1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner,* 806 N.Y.S.2d 154, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall.' *Rosario,* 601 F.3d at 124 (citing *People v. Caban,* 5 N.Y.3d 143, 800 N.Y.S.2d 70, 833 N.E.2d 213, 222 (N.Y.2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard. *Id.* at 125.

> b. Trial counsel's failure to set forth the factual basis for suppression in the omnibus motion and secure the suppression of his initial statements to the police

West asserts that he "was denied meaningful and [ ]effective representation by counsel's failure to state factual allegations inside of his omnibus motion to secure the suppression of [his] induced, provoked statements" to the police and counsel's failure to secure the suppression of those statements. The § 440 court denied relief, concluding that West failed to raise the claim on direct appeal despite the fact that he was represented by different counsel on appeal, and that in any event, trial counsel provided meaningful representation.

As an initial matter, "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim," even if, as here, the state court also rejected the claim on its merits. *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Green v. Travis,* 414 F.3d 288, 294 (2d Cir.2005). In finding this claim unpreserved for appellate review, the trial court relied upon CPL § 440.10(2)(c), which requires a state court to deny a motion to vacate a judgment based on a constitutional violation where the defendant unjustifiably failed to argue the constitutional violation on direct appeal despite a sufficient record upon which to base such an appeal. The purpose of the rule set forth in CPL § 440.10(2)(c) "is to prevent CPL

440.10 from being employed as a substitute for direct appeal when [the] defendant was in a position to raise an issue on appeal ... or could readily have raised it on appeal but failed to do so." *People v. Cooks,* 67 N.Y.2d 100, 500 N.Y.S.2d 503, 491 N.E.2d 676, 678 (N.Y.1986) (citations omitted). New York courts have held that some ineffective assistance claims are "not demonstrable on the main record" and are more appropriate for collateral or post-conviction attack, through which the necessary evidentiary record can be developed. *People v. Harris,* 109 A.D.2d 351, 491 N.Y.S.2d 678, 687 (N.Y.App.Div.1985) (collecting cases); *see also People v. Brown,* 45 N.Y.2d 852, 410 N.Y.S.2d 287, 382 N.E.2d 1149, 1149–50 (N.Y.1978).

**\*6** Here, however, West's claim is based on the omnibus motion and the transcripts of the suppression hearing, which are part of the trial record and thus would have provided a sufficient basis to attack trial counsel's effectiveness on direct appeal. Federal courts in this Circuit have consistently held that where a state court concluded that a petitioner's ineffective assistance of counsel claim raised in a CPL § 440.10 was procedurally barred by CPL § 440.10(2)(c), and the claim was indeed fully developed in the trial record, the petitioner has also defaulted that claim on federal habeas review. *See Sweet v. Bennett,* 353 F.3d 135, 139–41 (2d Cir.2003); *McCall v. Rivera,* 965 F.Supp.2d 311, 334–35 (S.D.N.Y.2013); *Hogan v. West,* 448 F.Supp.2d 496, 506–07 (W.D.N.Y.2006). Because West has failed to assert cause for the default and prejudice, or that failure to consider the claim will result in miscarriage of justice, his claim is procedurally defaulted from review by this Court. *Sweet,* 353 F.3d at 141.

In any event, the § 440 court's alternative conclusion that West's trial counsel provided meaningful representation was not unreasonable or contrary to federal law. In the omnibus motion, defense counsel moved for the suppression of West's statements made to Sergeant Troyer and Sergeant Strangeway on the grounds that his statements were "elicited by coercion and the force of excessive police authority." Defense counsel moved in the alternative for a *Huntley* hearing.[2] The omnibus motion correctly noted that "[West] is not required to make any other specific factual allegations [in the motion] as to the involuntariness of his statements" to the police. CPL §§ 710.20(3), 710.60(3)(b);[3] *see People v. Jones,* 95 N.Y.2d 721, 723 N.Y.S.2d 761, 746 N.E.2d 1053, 1056 n. 2 (N.Y.2001) ("Sworn allegations of fact are not required in motions for suppression of either involuntarily made statements or identification testimony resulting from improper procedures." (citations omitted));

*People v. Huntley,* 259 A.D.2d 843, 687 N.Y.S.2d 747, 749–50 (N.Y.App.Div.1999). Thus, West's claim that his counsel was ineffective for failing to set forth the factual basis for his suppression claim in the omnibus motion is without merit, as under New York law, a factual basis for the claim was not required.

2      *People v. Huntley,* 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (N.Y.1965). The term "*Huntley* hearing" is a shorthand reference to the hearing held in New York on a challenge to the admissibility of statements made to law enforcement personnel.

3      CPL § 710.20(3) provides that a court may suppress evidence on the ground that it "[c]onsists of a record or potential testimony reciting or describing a statement of such defendant involuntarily made." CPL § 710.60(3)(b) provides that "[t]he court may summarily deny the motion if ... [t]he sworn allegations of fact do not as a matter of law support the ground alleged; *except that this paragraph does not apply where the motion is based upon the ground specified in subdivision three or six of section 710.20.*" (Emphasis added).

West's claim that counsel was ineffective for failing to successfully secure the suppression of his statements to Sergeant Strangeway and Sergeant Troyer is also without merit. At the *Huntley* hearing, defense counsel skillfully cross-examined Sergeant Cute, who took an initial statement from West, Officer Barber, who also initially responded to the scene, Officer Abbott, who transported West to the station, Sergeant Strangeway, who was called to the scene by Officer Cute, and Sergeant Troyer, who arrived at the scene after being notified of the incident by Sergeant Strangeway and who interviewed West at the station. Defense counsel elicited from Officer Barber, Officer Abbott, and Sergeant Strangeway that West was intoxicated at the time he made his initial inculpatory statements to Sergeant Cute. Defense counsel was also able to elicit from Sergeant Troyer that he did not feel comfortable questioning West after he was transported to the station because West's condition had deteriorated and he was "incoherent," had trouble walking, and kept falling asleep. According to Sergeant Troyer, it would have been "improper" to take his statement at that time. West was sent to the hospital for treatment and when he returned to the station, he was no longer incoherent. Sergeant Troyer proceeded to take a statement from him at that time, but testified that he did not know what had happened at the

hospital or if West had gotten any sleep. Defense counsel was also able to elicit that Sergeant Troyer failed to completely fill out the form indicating that he advised West of his *Miranda* rights. Viewing the transcripts of the suppression hearing as a whole, defense counsel vigorously cross-examined the People's witnesses and effectively called into question the circumstances under which the police took several statements from West, highlighting in particular West's intoxicated state. The Sixth Amendment does not require more. Although the court ultimately denied West's motion to suppress his inculpatory statements to the police, there was nothing deficient about defense counsel's performance either in moving or arguing for the suppression of those statements. The state court did not unreasonably determine that counsel provided West meaningful representation.

**\*7** Construing West's claim liberally, *see Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007), he appears to argue that, in denying his CPL § 440 motion, the trial court violated CPL §§ 440.30(5) & (7) by failing to hold an evidentiary hearing or "to develop the facts missing on the record in finding[s] of fact, conclusions of law and reasons for its determination." [4]

[4]    CPL § 440.30(5) provides in pertinent part that "[i]f the court does not determine the [CPL § 440.10] motion pursuant to [CPL § 440.30] subdivisions two, three or four, it must conduct a hearing and make findings of fact essential to the determination thereof." CPL § 440.30(7) provides that "[r]egardless of whether a hearing was conducted, the court, upon determining the motion, must set forth on the record its findings of fact, its conclusions of law and the reasons for its determination."

As discussed *supra,* West failed to exhaust this claim because he raised it on state-law grounds only. Moreover, West's claim is not cognizable on federal habeas review. The United States Supreme Court has recognized that the Constitution does not compel states to provide post-conviction proceedings for relief. *Lackawanna Cnty. Dist. Attorney v. Coss,* 532 U.S. 394, 402–03, 121 S.Ct. 1567, 149 L.Ed.2d 608 (2001) (citing cases). Accordingly, federal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings. *See Word v. Lord,* 648 F.3d 129, 132 (2d Cir.2011) (per curiam) ("[A]lleged errors in a postconviction proceeding are not grounds for § 2254 review because federal

law does not require states to provide a postconviction mechanism for seeking relief.").

West's claim might also be construed as a request for an evidentiary hearing in this Court. "A district court has broad discretion to hear further evidence in habeas cases." *Nieblas v. Smith,* 204 F.3d 29, 31 (2d Cir.1999). "[W]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Bracy v. Gramley,* 520 U.S. 899, 908–09, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997) (quoting *Harris v. Nelson,* 394 U.S. 286, 300, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969)); *see also Schriro v. Landrigan,* 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.").

West fails, however, to specify what evidence he wishes to present. He states only that an "[e]videntiary hearing is required to develop the facts missing on the record [for the § 440 court's] determination[s]." A district court may not hold an evidentiary hearing on a claim for which a petitioner failed to develop a factual basis in state court unless the petitioner shows that: (1) the claim relies either on (a) a new rule of constitutional law that the Supreme Court has made retroactive to cases on collateral review, or (b) a factual predicate that could not have been previously discovered through the exercise of due diligence, and (2) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found the petitioner guilty of the underlying offense. 28 U.S.C. § 2254(e)(2).

**\*8** Where the failure to develop the factual basis for the claim in the state court proceedings is not attributable to the petitioner, to receive an evidentiary hearing, the petitioner must make a colorable claim for relief and meet one of the factors set forth in *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), *overruled in part on other grounds by Keeney v. Tamayo–Reyes,* 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992); superseded in part by statute, 28 U.S.C. § 2254(e)(2) (1996). In Townsend, the Supreme Court concluded that a federal habeas petitioner is entitled to an evidentiary hearing on his factual allegations if: (1) the merits of the factual dispute were not resolved in the state hearing;

(2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing. 372 U.S. at 313.

As discussed above, West has failed to assert a colorable claim for relief as to either of his ineffective assistance of trial counsel claims. Because he does not cite to new laws or underlying facts that were not developed on the record before the state courts, he also has failed to satisfy his burden of proof under 28 U.S.C. § 2254(e)(2). Accordingly, he is not entitled to an evidentiary hearing in this Court.

### c. Appellate counsel's failure to argue prosecutorial misconduct

West next argues, as he did in his coram nobis petition, that his appellate counsel was ineffective for failing to argue on direct appeal that the prosecutor committed misconduct in summation when he "became an[ ] unsworn witness for the prosecution and placed his own veracity as an issue before the jury, [and] also vouched for his witness." The Appellate Division unanimously denied West relief without comment.

In its case-in-chief, the prosecution called Robin Stevens to testify regarding certain inculpatory statements West made to Stevens in jail on the night West was arrested. Stevens testified about his own criminal history, that he knew both West and Adams, and that West was housed next to him in jail on January 1, 2009, when West was arrested. Stevens admitted that he had given a statement to the police and testified in the grand jury, but declined to identify West at trial or answer questions about the content of his police statement and grand jury testimony. Stevens did not initially invoke the Fifth Amendment, instead stating that he was not worried about incriminating himself. Rather, he asserted that the incident was "[j]ust none of [his] business," and that "[k]arma is a very bad thing." When the prosecution then asked if his statement to Sergeant Troyer was true, Stevens stated that he would "plead the fifth on that one." The prosecution then moved to treat Stevens as a hostile witness. Over defense counsel's objections, the court granted the prosecution's request and allowed the prosecution to ask Stevens leading questions.

**\*9** The prosecutor then asked Stevens two leading questions regarding the content of his statement to the police about what West had confessed to him, but Stevens refused to answer. He initially stated that he did not "want to answer," but then stated "I plead the Fifth." Defense counsel objected on the grounds that the prosecutor was "in effect testifying," but the court overruled that objection on the ground that the counsel's questions "can't be considered as evidence by the jury and have to be disregarded as evidence by the jury as is part of my standard instructions." The prosecutor then asked Stevens several additional leading questions regarding the content of his police statement, and Stevens repeatedly invoked his Fifth Amendment right to remain silent. The only substantive question Stevens answered about West concerned whether West told Stevens that he was intoxicated on alcohol and Clonazepam on the night of the incident. Stevens stated, "He was really drunk. I could smell liquor on him before he walked in the door. He was pretty wasted, he was drunk." The prosecutor clarified that he was asking Stevens if West *told* him that he was drunk on Long Island Iced Teas and Clonazepam, and Stevens replied that he was again "plead[ing] the Fifth."

At the conclusion of direct testimony, defense counsel moved to "strike all of the testimony" in which Stevens had invoked the Fifth Amendment. The court ruled that "[c]ertainly anything that he pled the Fifth on will be stricken and certainly the questions are not as I said evidence themselves and none of those statements are received into evidence and the jury is so instructed."

Defense counsel then proceeded to cross-examine Stevens at length. Stevens did not invoke his Fifth Amendment right against self-incrimination at any time during cross-examination. Stevens testified that he had been incarcerated for most of his adult life, that he told the grand jury that West was a friend of his, that he had violated various orders of protection, that he sold drugs for approximately ten years, that he had trouble following laws he did not agree with, that had previously pled guilty to endangering the welfare of a child, and that he had violated probation on various occasions for smoking marijuana because he had a problem with authority figures and he did not like his probation officer. Stevens testified that he had previously been convicted for the criminal sale of a controlled substance in the third degree. He claimed that if he failed to take a plea that was offered to him in that case that he would "get smashed" because the judge, district attorney, and his own attorney did not like him. That court ultimately refused to

2014 WL 3895235

sentence him in accordance with his plea deal because he had not been honest with his probation officer about the fact that he had withdrawn from college. Stevens also testified that he pled guilty to criminal contempt in the second degree in exchange for dropping an order of protection which prevented him from seeing his daughter.

**\*10** In summation, the prosecutor noted that Stevens "didn't want to be here. And he refused to confirm or deny the things he had previously told the police shortly after Pat West and he had been together in [jail]." The prosecutor continued:

> So it's only fair to [West] that you can't rely on the things I asked Robin Stevens about what he said [to the police]. You can't rely on those questions for the truth of the matters that were contained in those statements. But unless the judge tells you otherwise, and I don't think he will, you can consider what he did acknowledge from his statement, and the fact that he did acknowledge giving a statement to Sergeant Troyer, and the fact that he did acknowledge testifying in the grand jury when this case was indicted, and you can consider how he presented himself in this courtroom, *and you can consider how he never denied making a single statement I asked him about, simply refused to answer.*

The prosecutor further stated that although he was "not going to vouch for Robin Stevens," the jurors "don't have to leave your common sense behind on this witness either, or forget what you saw when he testified. You can and should consider how you saw him act on the witness stand, what he did say, *what he didn't say, and what logical inferences you might want to draw from all that.*"

After summation was complete and the jury had been excused, defense counsel objected to the prosecution's summation, arguing as follows:

> [The prosecutor] indicated that Robin Stevens did not deny any of the questions I posed to him with regard to the statements he made previously, he just didn't answer. I would object on the grounds it would be improper to suggest [that an] inference can be made for refusal to answer based upon the right not to incriminate yourself.

The prosecutor argued in response that he had been clear that the jury could not infer that any information in his questions were true, but that the jury had a right to consider what it observed of Stevens in the courtroom. The court overruled defense counsel's objection without comment.

As noted above, West argues that appellate counsel was ineffective for failing to argue on direct appeal that the prosecutor committed misconduct in summation by becoming an unsworn witness for the prosecution, "placing his own veracity [at] issue," and vouching for Stevens. Trial counsel did not object on those grounds, and according failed to preserve such a claim for appeal. *See People v. Giuca,* 58 A.D.3d 750, 871 N.Y.S.2d 709, 711 (N.Y.App.Div.2009) ( "The defendant's contention that the prosecutor's misstatements of the law during summation deprived him of a fair trial is unpreserved for appellate review since the defendant did not object to those remarks." (citations omitted)). Instead, trial counsel argued that the prosecutor misstated the law. Appellate counsel's decision to argue the preserved claim on direct appeal that the prosecutor had misstated the law and forgo the unpreserved claim that the prosecutor committed misconduct by vouching for Stevens, assuming the role of an unsworn witness, and placing his own veracity at issue, was a reasonable trial strategy which this Court may not second-guess. After reviewing closing argument as a whole, there is no evidence that the prosecutor committed misconduct in the manner West suggests. The prosecutor specifically stated that he was not vouching for Stevens, and at no time asked the jury to pass on his personal integrity or ethics or asserted statements akin to unsworn testimony. *Cf. Floyd v. Meachum,* 907 F.2d 347, 354 (2d Cir.1990) (discussing the impropriety of the prosecution's request that the jury pass on her personal integrity and professional ethics before deliberating on the evidence, thereby implying that she personally vouched for

a witness's credibility). West has failed to demonstrate that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994). On the contrary, appellate counsel deftly chose to assert the stronger argument-that the prosecutor improperly advised the jury that it could make inferences based on Stevens's invocation of his right to remain silent-over the weaker argument West suggests should have been raised. Contrary to West's suggestion, appellate counsel does not have a duty to advance every nonfrivolous argument that could be made. *Jones v. Barnes,* 463 U.S. 745, 754, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Rather, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id.* at 751–52; *Aparicio v. Artuz,* 269 F.3d 78, 99 (2d Cir.2001) (holding that it is not ineffective counsel to fail to raise meritless claims). Appellate counsel was not deficient in failing to raise this claim on direct appeal, and the Appellate Division's denial of West's ineffective assistance of appellate counsel claim was therefore not unreasonable or contrary to federal law.

#### d. Appellate counsel's failure to argue harsh and excessive sentence

**\*11** West next argues that appellate counsel was ineffective for failing to argue on direct appeal that his sentence was harsh and excessive. West raised this claim in his coram nobis petition. The Appellate Division unanimously denied West relief without comment, and the Court of Appeals denied leave to appeal.

In New York, first-degree manslaughter is a class B felony offense for which a defendant may be sentenced from 5 to 25 years' imprisonment along with 21/2 to 5 years of post-release supervision. N.Y. PENAL LAW §§ 125.20(1), 70.02(1)(a), 70.02(3)(a), 70.45(2)(f). It is undisputed that West's sentence of 21 years' imprisonment followed by 5 years' post-release supervision was within that statutory range. The Appellate Division is authorized to reduce sentences which, although legal, are "unduly harsh or severe," CPL § 470.15(6)(b); however, "[w]here a sentence is within permissible statutory ranges, it will not be disturbed unless the sentencing court abused its discretion or extraordinary circumstances exist warranting modification." *People v. Mitchell,* 289 A.D.2d 776, 734 N.Y.S.2d 353, 358 (N.Y.App.Div.2001) (citation omitted).

According to the pre-sentence investigation report, although this was West's first experience with the penal system, he had previously been involved in similar violent episodes. In April 2008, West punched a man in the face in a parking lot and later claimed that that victim and his brother had "jumped" him for no apparent reason. One month later, in the same parking lot, West punched another man two or three times until the man was unconscious and suffered numerous facial fractures. West again claimed he was acting in self-defense, and told the police, "It's not my fault I hit harder than they do." The pre-sentence investigation report also recounted that West told Stevens while they were briefly in jail together that on the night of the incident he was intoxicated and high on prescription drugs when he punched Adams and then stomped the "shit out of his head" after Adams fell to the ground. He also reportedly told Stevens that he would not be in jail if not for his wife, because she had left him and he was "really pissed off" when he encountered Adams. According to the report, Sergeant Troyer stated that West "took no responsibility and showed no remorse," and that his statements about his prior physical altercations were consistent with each other "almost word for word, that it was self-defense." The report stated that West said, "Well the guy ran into me, what was I supposed to do?" The report noted that West failed to show remorse and responsibility for his actions, and concluded:

> It appears that the only person who could have predicted this type of behavior was [West] himself. He was aware that he has a quick temper and that when he drinks he is more likely to engage in physical altercations, as evidenced by his past history. He is also aware of his physical strength as evidenced by a former statement made to the police that, "It's not my fault that I hit harder than they do." Previous to this matter [West] had struck another individual hard enough to render him unconscious and require treatment at University Hospital. [West] did nothing to seek help for his aggressive behavior making it inevitable that he would eventually cause serious lasting physical injury or death.

> **\*12** Under these circumstances, [West's] potential for law abiding behavior is extremely poor. For the protection of the community he needs to be removed from society. It is hoped that as he matures he will recognize that he does have aggression issues as well as drug and alcohol issues and will seek treatment for same.

After reviewing the pre-sentence investigation report and hearing impact statements as well as argument of counsel, the court characterized the incident as a "random act of

brutality" by West who "barely [k]new his victim" and "certainly had no motive to attack him in this vicious way." The court considered the mitigating factors argued by defense counsel, including West's relative youth and his lack of a prior criminal record, and weighed them against the "substantial" aggravating factors, including "[t]he savage nature of the attack itself," West's "lack of regard for his victim ... at any stage of this matter, including leaving him behind in the snow after the attack simply to be found by others," "the evidence ... of similar acts of violence," and the fact that "moments after his crime against Mr. Adams, [West] was involved in another fight." The court was "particularly concerned about the lack of remorse" West showed at any stage. "Balancing these factors," the court ultimately concluded that "a severe sentence is required ... by such a senseless act of violence."

The Appellate Division's denial of West's ineffective assistance of appellate counsel claim was not unreasonable or contrary to federal law. Although appellate counsel could conceivably have argued that West's sentence was harsh and excessive, it is not likely that counsel would have succeeded, and as discussed *supra,* appellate counsel need not raise every non-frivolous argument. *Jones,* 463 U.S. at 751–52, 754; *Aparicio,* 269 F.3d at 99. There is no evidence that extraordinary circumstances warranted modification of his sentence; rather, the record supports the imposition of a lengthy sentence given West's history of violence, his awareness of his short temper and physical strength, the lack of motive and the brutality of the act, and West's lack of regard for the victim or remorse for what occurred. In addition, the sentencing court carefully weighed both aggravating and mitigating factors, and it is not likely that the Appellate Division would have found that it abused its discretion in balancing those factors. Given the court's deliberation over the sentence and the support in the record for a lengthy sentence, any argument by counsel that the Appellate Division should reduce the sentence as harsh and severe would have likely have been fruitless, and counsel is not deficient for focusing on the stronger arguments on appeal. *Mayo,* 13 F.3d at 533; *Jones,* 463 U.S. at 751–52. Therefore, the denial of West's ineffective assistance of appellate counsel claim was not unreasonable or contrary to federal law.

e. Appellate counsel's failure to argue that the trial court erred in declaring Stevens a hostile witness

*13 Finally, West argues that appellate counsel was ineffective for failing to argue on direct appeal that "[t]he trial court erred in allowing the [prosecution] to declare

[Stevens,] its own witness, '[h]ostile,' thereby allowing cross-examination and impeachment which constituted prejudicial error and deprived [him] of his fundamental confrontation rights." As discussed *supra,* this claim is unexhausted, and in any event is completely without merit. Appellate counsel did in fact argue on direct appeal to the Appellate Division that the trial court erred in allowing the prosecution to declare Stevens hostile, "thereby allowing impeachment which constituted prejudicial error and deprived [West] of his fundamental confrontation rights," and further argued that the claim was preserved for review and was not harmless. The Appellate Division concluded that the trial court properly exercised its discretion in declaring Stevens hostile given his refusal at trial to answer any questions about the written statement he had provided to the police regarding the admissions West allegedly made to him. *West,* 925 N.Y.S.2d at 272. In applying for leave to appeal to the Court of Appeals, counsel similarly argued that the Appellate Division erred in concluding that the trial court properly exercised its discretion in declaring Stevens a hostile witness and in finding that the People's improper impeachment of Stevens was unpreserved and harmless. The Court of Appeals denied relief without comment. *West,* 17 N.Y.3d 905, 933 N.Y.S.2d 660, 957 N.E.2d 1164, 1164. Thus, West's claim that appellate counsel was ineffective in this regard is belied by the record and rejected by this Court.

To the extent West challenges the state court's implicit ruling that treating Stevens as a hostile witness did not violate his right to confrontation, that ruling was not unreasonable or contrary to federal law. The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. CONST. amend. VI. It is well-settled that the Confrontation Clause only guarantees "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (citation and internal quotation marks omitted). The Second Circuit has recognized "that in some instances a defendant's sixth amendment right to confrontation will be denied as a result of a witness' invocation of his or her fifth amendment privilege against self-incrimination." *Bagby v. Kuhlman,* 932 F.2d 131, 135 (2d Cir.1991) (collecting cases). However, not every instance in which a witness invokes the privilege will give rise to a confrontation violation; rather, "the sixth amendment is violated only when assertion of the privilege

2014 WL 3895235

undermines the defendant's opportunity to test the truth of the witness' direct testimony." *Id.*

**\*14** Here, West was not precluded from undermining Stevens's direct testimony. Direct testimony which was not stricken was limited to his criminal history and the bare fact that he had spoken to police and testified before the grand jury about the content of a conversation he had with West while they were incarcerated together shortly after West's arrest. Defense counsel was able to critically attack Stevens's credibility, eliciting an explicit lack of respect for the law as well as a detailed criminal history which rendered him incarcerated for the majority of his adult life. Stevens did not testify to anything of substance against West on direct, and to the extent that the jury could infer that he had previously incriminated West, defense counsel was able to substantially undermine any detrimental inference through cross-examination. *Pennslyvania v. Ritchie,* 480 U.S. 39, 51–52, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) (the right to cross-examination "includes the opportunity to show that a witness is biased, or that the testimony is exaggerated or unbelievable," and this type of evidence "can make the difference between conviction and acquittal"); *Bagby,* 932 F.2d at 137 ("a witness' invocation of the fifth amendment will not violate a defendant's right to confrontation *unless* the refusal precludes the defendant from testing the truth of the witness' prior testimony" (citation and internal quotation marks omitted)). Because Stevens's invocation of his Fifth Amendment right against self-incrimination did not preclude defense counsel from testing the very limited nature of his direct testimony, any claim by appellate counsel that West was

precluded from confronting Stevens in violation of the Sixth Amendment would have been futile. *Jones,* 463 U.S. at 751–52.

V. CONCLUSION

West is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED.**

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.' " (quoting *Miller–El,* 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Second Circuit Court of Appeals. *See* FED. R.APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 3895235

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 3778587
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Lamount GREEN, Petitioner,
v.
William HAGGETT, Respondent.

No. 9:13–CV–0016 (GLS).
|
Signed July 31, 2014.

**Attorneys and Law Firms**

Lamount Green, Coxsackie, NY, pro se.

Hon. Eric T. Schneiderman, New York State Attorney
General, Joanna R. Hershey, AAG., of Counsel, New York,
NY, for Respondent.

**DECISION AND ORDER**

GARY L. SHARPE, Chief Judge.

**I. INTRODUCTION**

*1 Petitioner Lamount Green, appearing pro se, filed a
petition for a writ of habeas corpus pursuant to 28 U.S.C. §
2254, along with supporting papers and exhibits. Dkt. No.
1, Petition ("Pet.") at 2; Dkt. No. 1–2, Declaration Under
Penalty of Perjury of Lamount Green ("Dec."); Dkt. No.
1–3, Exhibits A–C; Dkt. No. 1–4, Memorandum of Law
("Mem."). Respondent filed an answer to the petition and
the relevant state court records, and petitioner has filed a
reply. Dkt. No. 16, Answer; Dkt. No. 16–1, Memorandum of
Law in Opposition to Petition for a Writ of Habeas Corpus
("R.Mem."); Dkt. No. 17, State Court Records; Dkt. No. 21,
Petitioner's Reply to Respondent's Opposition to Petition for
a Writ of Habeas Corpus ("Reply").

For the reasons that follow, the petition is denied and
dismissed.

**II. BACKGROUND**

Petitioner challenges a 2008 judgment of conviction in
Albany County Court, following a non jury trial, of second
degree criminal possession of a weapon (N.Y. Penal Law §

265.03(3)). Pet. at 2; R. Mem. at 1. The Appellate Division,
Third Department, briefly summarized the facts of this case:

> Police in the City of Albany stopped
> an automobile that had been reported
> stolen and ordered its three occupants,
> including [petitioner] who was in the
> front passenger seat, out of the vehicle.
> The vehicle was then searched and
> a loaded semiautomatic .380 caliber
> handgun was recovered beneath a mat
> on the floor in front of the back
> seat. [Petitioner], who was wearing
> a bulletproof vest, was arrested and
> charged with criminal possession of
> a weapon in the second degree and
> unauthorized use of a motor vehicle in
> the third degree. After a nonjury trial,
> County Court found [petitioner] guilty
> of criminal possession of a weapon in
> the second degree[.]

People v. Green, 84 A.D.3d 1499, 1500 (3d Dep't.2011). The
specific facts are known to the parties and will be repeated
only to the extent necessary to address petitioner's claims.

Prior to sentencing, petitioner moved to set aside the
verdict pursuant to New York Criminal Procedure Law
("CPL") § 330.30. He claimed that a post-verdict affidavit
from his co-defendant, Phillip Wilson, would have changed
the outcome of his trial. Dkt. No. 17–3, Affirmation/
Memorandum of Law, at 1–3; see Dkt. No. 1–3, Exhibit
C, Wilson affidavit. Specifically, petitioner stated that in
the Wilson affidavit, signed two weeks after petitioner was
found guilty, Wilson stated the gun was his alone and
that petitioner had no knowledge of its existence before
the Albany Police Department found it. Dkt. No. 17–3,
Affirmation/Memorandum of Law, at 1–3. Petitioner argued
that the Wilson affidavit would have negated the presumption
that all occupants of the vehicle equally possessed the gun. Id.
at 3. He also argued that since Wilson was under indictment
for possessing the same gun, but had not yet been tried at
the time of petitioner's trial, Wilson's affidavit could not have
been produced before Wilson pled guilty. Id. at 3–4.

*2 On August 13, 2008, the trial court denied the motion,
finding that the Wilson affidavit could have been obtained

with due diligence prior to petitioner's trial, and the affidavit "merely contradict[ed] the compelling evidence introduced at the trial." Dkt. No. 17–3, Decision and Order, Herrick, J., Aug. 13, 2008 at 2. Petitioner was sentenced, as a second felony offender, to serve 121/2 years in prison, followed by five years of postrelease supervision. *Green,* 84 A.D.3d at 1500; Dkt. No. 17–19, Sentencing Tr., Aug. 13, 2008 at 7–8. [1]

[1]   The Appellate Division's statement that petitioner was sentenced to serve 12 years in prison followed by five years post-release supervision appears to be a typographical error. *Green,* 84 A.D.3d at 1500.

Petitioner appealed to the Appellate Division, Third Department, arguing: (1) the evidence was insufficient because the prosecutor did not prove that petitioner possessed the gun outside his home or business; and (2) the trial court erred when it introduced into evidence a photograph of petitioner wearing a bullet proof vest. Dkt. No. 17–1, Brief and Appendix at 3–9. The Appellate Division ruled that petitioner failed to preserve his legal sufficiency claim because it was not raised in his "motion to dismiss[.]" *Green,* 84 A.D.3d at 1500. The court rejected petitioner's claim that he was deprived of a fair trial by the admission into evidence of the photograph because petitioner was not tried by a jury, and the trial judge, "by reasons of ... learning, experience and judicial discipline, is uniquely capable of distinguishing the issues and of making an objective determination based upon appropriate legal criteria, even if presented with evidence which should not have been admitted." *Id.* at 1500 (citations and internal quotation marks omitted). Finally, the Appellate Division ruled that the photograph, along with petitioner's statement to police that he "could have made it ugly [and] could have gone out and started shooting," was relevant to establish that petitioner "knew a loaded firearm was in the vehicle." *Id.* at 1500–1501. The New York Court of Appeals denied leave to appeal on November 7, 2011, and denied reconsideration on March 13, 2012. *Green,* 17 N.Y.3d 953 (2011), *recon. den.* 18 N.Y.3d 958 (2012).

Petitioner filed a writ of error coram nobis, dated March 23, 2012, in which he argued appellate counsel failed to: (1) present the Appellate Division with proof that petitioner preserved his legal sufficiency claim; and (2) argue that the trial court improperly denied petitioner's CPL § 330.30 motion without holding an evidentiary hearing. Dkt. No. 17–11, Notice of Motion for a Petition for a Writ of Error Coram Nobis with Supporting Affidavit ("Writ"). On May 18, 2012, the Appellate Division denied the writ, and on December 27,

2012, the New York Court of Appeals denied leave to appeal. Dkt. No. 17–12, Decision and Order on Motion; Dkt. No. 17–13, Order Denying Leave.

Petitioner also filed a motion to vacate his conviction pursuant CPL § 440.10 in the Albany County Court, in which he argued that the People failed to prove he did not possess the gun in his home or place of business. Dkt. No. 17–14, Affidavit in Support of Motion to Vacate Judgment, at 2–4. The People opposed the motion. Dkt. No. 17–15, Affirmation in Opposition. On August 20, 2012, the Albany County Court denied the motion pursuant to CPL § 440.10(2)(a) because the claim was previously heard on direct appeal. Dkt. No. 17–16, Decision and Order, Herrick, J., Aug. 20, 2012. The Appellate Division denied leave to appeal on November 19, 2012. Dkt. No. 17–18, Decision, Spain, J., Nov. 19, 2012.

## III. THE PETITION

**\*3** Petitioner raises the following grounds for habeas relief: the evidence was legally insufficient, and he is innocent, because the People failed to plead or prove that he possessed the gun outside his home or business (Grounds One and Four); the trial court erred by denying his CPL § 330.30 motion without conducting an evidentiary hearing based on the Wilson affidavit (Ground Two); and appellate counsel was ineffective (Ground Three). Pet. at 5–6; Dec. at 1–7; Dkt. No. 1–3, Exhibits; Mem. at 1–16.

## IV. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. §§ 2254(d)(1), (2); *Cullen v. Pinholster,* —— U.S. ——, 131 S.Ct. 1388, 1398, 1400 (2011); *Premo v. Moore,* —— U.S. ——, 131 S.Ct. 733, 739 (2011); *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson,* —— U.S. ——, 131 S.Ct. 1305, 1307 (2011) (per curiam) (quoting *Renico*

2014 WL 3778587

*v. Lett,* 559 U.S. 766, 773 (2010) (internal quotation marks omitted)).

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents." *Nevada v. Jackson,* —— U.S. ——, 133 S.Ct. 1990, 1992 (2013) (per curiam) (quoting *Harrington v. Richter,* —— U.S. ——, 131 S.Ct. 770, 786 (2011)); *see Metrish v. Lancaster,* —— U.S. ——, 133 S.Ct. 1781, 1787 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.") (quoting *Richter,* 131 S.Ct. at 786–87)).

Additionally, AEDPA foreclosed " 'using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews,* —— U.S. ——, 132 S.Ct. 2148, 2149 (2012) (per curiam) (quoting *Renico,* 559 U.S. at 779). A state court's findings are not unreasonable under § 2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. *Wood v. Allen,* 558 U.S. 290, 301 (2010). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable-a substantially higher threshold." *Schriro,* 550 U.S. at 473. Finally, federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "clear and convincing evidence." *Id.* at 473–74 (quoting § 2254(e)(1)).

### B. Sufficiency of the Evidence

**\*4** Petitioner argues in Grounds One and Four of his petition, as he did on direct appeal, that the evidence was insufficient to prove his guilt because the People failed to prove that he did not possess the gun in his home or place of business. Pet. at 5–6; Mem. at 2–6; 9–16.

The Appellate Division rejected petitioner's sufficiency claim because he "never made this argument before County Court in his motion to dismiss and, thus, has not preserved this issue for appellate review." *Green,* 84 A.D.3d at 1500. Though the court did not explicitly cite to the statute, its holding and the cases to which it cited refer to New York's

procedural requirement that errors of law be preserved by objection or protest at the time of the challenged ruling, or "at any subsequent time when the court had an opportunity of effectively changing" the ruling. CPL § 470.05(2). Respondent argues that petitioner's sufficiency claim is barred by an adequate and independent state court finding of default because the Appellate Division relied upon the preservation rule to preclude review of that claim. R. Mem. at 14–16. This court agrees.

Federal habeas review of a state court's application of its own rules is deferential and is focused on whether the challenged ruling "falls within the state's usual practice and is justified by legitimate state interests, not whether the state court ruling was correct." *Downs v. Lape,* 657 F.3d 97, 101 (2d Cir.2011). Substantive review of a habeas claim is prohibited if the state court rested its decision on "a state-law ground that 'is independent of the federal question and adequate to support the judgment.' " *Cone v. Bell,* 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson,* 501 U.S. 722, 729 (1991)).

In this case, the Appellate Division's ruling that petitioner failed to preserve his sufficiency claim "for appellate review constitutes a state ground that is indisputably independent" of the constitutional question of whether the evidence was sufficient. *Downs,* 657 F.3d at 102. The Second Circuit has "held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule." *Downs,* 657 F.3d at 104 (citations omitted). Petitioner argues, however, that the Appellate Division's application of the preservation rule was inadequate, exorbitant and serves no legitimate state interest. Reply at 14–18. This court must therefore determine whether the state procedural ground is adequate to preclude federal habeas review in this case. *Lee v. Kemna,* 534 U.S. 362, 375 (2002) (stating that the adequacy of a state procedural bar " 'is itself a federal question.' ") (quoting *Douglas v. Alabama,* 380 U.S. 415, 422 (1965); *Downs,* 657 F.3d at 102 (citing *Walker v. Martin,* —— U.S. ——, 131 S.Ct. 1120, 1127 (2011)).

To assess adequacy, this court must examine whether the state court's application of the procedural rule constitutes an "exorbitant misapplication" that does not serve a "legitimate state interest." *Downs,* 657 F.3d at 102 (quoting *Walker,* 131 S.Ct. at 1127); *see Lee,* 534 U.S. at 376 (noting that there are "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question."). Several considerations are relevant to that determination: (1) whether

2014 WL 3778587

the alleged procedural violation was actually relied on in the trial court and whether perfect compliance with the rule would have changed the trial court's decision; (2) whether the state case law indicates compliance with the rule was demanded in this case; and (3) whether petitioner "substantially complied" with the rule given the "realities of trial," and whether demanding perfect compliance with the rule would serve a legitimate state governmental interest. *Lee,* 534 U.S. at 387; *Whitley v. Ercole,* 642 F.3d 278, 289–92 (2d Cir.2011); *Cotto v. Herbert,* 331 F.3d 217, 240 (2d Cir.2003).

**\*5** There is nothing in this record to conclude that the Appellate Division's application of the preservation rule was exorbitant. The first *Lee* consideration, "whether perfect compliance" with the preservation rule "would have changed the trial court's decision," is "not very relevant" in cases like this. *Whitley,* 642 F.3d at 289. Given the absence of a preserved argument, "it is impossible to conclusively determine, as the [Supreme] Court did in *Lee,* that perfect compliance with the procedural rule would have had no effect on the outcome below." *Id.; Cotto,* 331 F.3d at 242. Moreover, the Appellate Division's ruling differs from that in *Lee,* "which demanded formally perfect compliance with the state's procedural rule without regard to its underlying objectives[ .]" *Downs,* 657 F.3d at 107. Instead, the ruling advanced New York's legitimate interest in ensuring that " 'parties draw the trial court's attention to any potential error while there is still an opportunity to address it[.]' " *Whitley,* 642 F.3d at 288 (citations omitted) (quoting *Cotto,* 331 F.3d at 245, and *Garcia,* 188 F.3d at 82); *see also Garvey v. Duncan,* 485 F.3d 709, 720 (2d Cir.2007) ("[D]emanding compliance with [§ 470.05(2) ] serves a legitimate governmental interest in this case, that is to say, the interest in allowing the trial court to have the first opportunity to rule on and possibly rectify any alleged legal error.").

Additionally, New York law courts regularly apply the preservation rule to parties in petitioner's "predicament," *Lee,* 534 U.S. at 382, who want to argue on appeal that the evidence at trial was insufficient to sustain their convictions. *See People v. Hawkins,* 11 N.Y.3d 484, 491 (2008) ( "Preservation-or, more precisely, the lack of preservation-frequently accounts for the disposition of criminal cases in this Court. The issue, therefore, again merits some elaboration, not only to explain the result in the appeals before us but also in the interest of encouraging that a proper record be made in the first instance."); *see also People v. Carncross,* 14 N.Y.3d 319, 324–25 (2010) (" 'where a motion to dismiss for insufficient evidence [is] made,

the preservation requirement compels that the argument be specifically directed at the alleged error[.]' ") (quoting *People v. Gray,* 86 N.Y.2d 10, 19 (1995), quoting *People v. Cona,* 49 N.Y.2d 26, 33 n. 2 (1979) (alteration in original)); *People v. Hines,* 97 N.Y.2d 56, 61 (2001) ("Because defendant waived review of the mid-trial decision by testifying himself and presenting the testimony of other witnesses this was not an issue of law that could properly be adjudicated in a CPL 330.30 motion. As the trial court lacked jurisdiction to address the sufficiency of the People's case-in-chief in the context of the CPL 330.30 motion, and this issue was the basis for its decision to set aside the guilty verdict, reversal of that decision was warranted. We, therefore, affirm the order of the Appellate Division reversing the trial court's CPL 330.30 determination and reinstating the guilty verdict.") (internal citation omitted); *People v. Heary,* 104 A.D.3d 1208, 1209 (4th Dep't.2013) (finding that a sufficiency argument was "not preserved for our review inasmuch as defendant did not move for a trial order of dismissal on that ground.") (citation and internal quotation marks omitted).

**\*6** Finally, although petitioner argues that counsel "substantially complied" with the preservation rule given the "realities of trial," this court disagrees. Reply at 16–17 (citing *Lee,* 534 U.S. at 387 and *Cotto,* 331 F.3d at 240). In support of his argument, petitioner points to a page of the trial transcript containing part of trial counsel's closing argument, in which he stated:

> Something else actually just occurred to us in that there's been absolutely, absolutely no testimony that the exception did not apply. That exception that Mr. Green possessed this firearm in a place that wasn't his home or place of business. Your Honor, this is an exception that needs to be proven beyond a reasonable doubt, did not apply to Mr. Green. There's been no testimony that this wasn't his home, that this wasn't his place of business, and while it might seem obvious, it can't be ruled out there.

Dkt. No. 1–3, Exhibit A, Trial Tr. at 200–201. As the Appellate Division pointed out, however, trial counsel did not

make this argument in his motion to dismiss the indictment after the People rested. *Green,* 82 A.D.3d at 1500. Nor did counsel make this argument after he rested petitioner's case. Dkt. No. 17–19, Trial Transcript, Jun. 24, 2008, at 187–190, 197; CPL § 470.05(2). Instead, counsel made the argument in summation, when the trial court's function shifted to that of fact-finder. Trial Tr. at 197–206. The Appellate Division apparently concluded that raising a sufficiency claim in summation, as a reason the trial court should acquit petitioner, was insufficient to preserve it. *Green,* 84 A .D.3d at 1500. This court has found no case-and petitioner has cited none-in which the Appellate Division ruled that a sufficiency argument was preserved for appellate review when it was raised for the first time in summation during a non jury trial. Based on the record, counsel did not substantially comply with the preservation rule.

In sum, the Appellate Division's "finding of non-preservation fell within the boundaries of the normal application" of New York's preservation rule. *Downs,* 657 F.3d at 107. The Appellate Division's ruling "reinforced valid state interests in this case, and it does not fall within the 'limited category' of 'exceptional cases' contemplated by *Lee,* 534 U.S. at 376." *Downs,* 657 F.3d at 108. Petitioner's sufficiency claim is therefore procedurally barred by an adequate and independent state court ground.

Petitioner's claim may be reviewed only if he shows cause for the procedural default and actual resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice. *House v. Bell,* 547 U.S. 518, 536–39 (2006); *Schlup v.. Delo,* 513 U.S. 298, 327 (1995). To establish cause, petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Maples v. Thomas,* ––– U.S. ––––, 132 S.Ct. 912, 922 (2012); *Coleman v. Thompson,* 501 U.S. 722, 753 (1991). If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *See Murray v. Carrier,* 477 U.S. 478, 496 (1986) (referring to the "cause-and-prejudice standard"); *Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985).

**\*7** In an apparent attempt to show cause, petitioner argues that appellate counsel was ineffective for failing to alert the Appellate Division that the sufficiency claim was preserved by trial counsel's summation. Pet. at 6. The ineffectiveness of counsel for not raising or preserving a claim in state court

will be sufficient to show cause for a procedural default only when counsel was so ineffective that the representation violated the petitioner's Sixth Amendment right to counsel. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Aparicio v. Artuz,* 269 F.3d 78, 91 (2d Cir.2001). As discussed more fully below, petitioner's appellate counsel claim is without merit, and therefore may not serve as "cause" for a procedural default. *Aparicio,* 269 F.3d at 91–92. Petitioner has failed to demonstrate cause, and the court therefore need not decide whether he suffered actual prejudice. *Murray,* 477 U.S. at 496; *Stepney,* 760 F.2d at 45.

Finally, petitioner has not presented any new evidence that he is actually innocent of the crimes for which he was convicted, or that the failure to review his sufficiency claim would result in a fundamental miscarriage of justice. *House,* 547 U.S. at 536–39; *Schlup,* 513 U.S. at 327. Actual innocence "means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623–24 (1998). To make a credible claim of actual innocence, a petitioner must present "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" which makes it "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Doe v. Menefee,* 391 F.3d 147, 161–62 (2d Cir.2004) (quoting *Schlup,* 513 U.S. at 324, 327 (internal quotation marks omitted).

As the trial court found when it denied petitioner's CPL § 330.30 motion, the Wilson affidavit could have been discovered and obtained prior to petitioner's trial. Dkt. No. 17–3, Decision and Order, Herrick, J., Aug. 13, 2008 at 2–3. Moreover, this court cannot conclude that no reasonable juror would have convicted petitioner had the Wilson affidavit been produced at petitioner's trial. As the trial court also found, the affidavit merely contradicts the evidence of petitioner's guilt, including: he was an occupant in a vehicle police initially identified as stolen; the loaded, operable gun was recovered in the vehicle; petitioner was wearing a bullet-proof vest; DNA testing could not exclude petitioner as a contributor of the DNA sample found on the gun;[2] petitioner's statement at arraignment that he "could have made it ugly for you all. [He] could have gone out and started shooting," and petitioner's admission that the gun belonged to him. Dkt. No. 17–19, Trial Tr. at 35–35, 37–38, 40–41, 46–48, 57–58, 68–69, 72, 80, 85–86, 99, 113–14, 117, 135–37, 139–40, 160–63, 174–75, 194–95.[3]

2    The DNA did not "match exactly either [petitioner] or Philip Wilson[.]" Dkt. No. 17–19, Trial Tr. at 161.

3    It is also worth noting that trial counsel presented evidence that Wilson told Detective Jason Vogel he met the occupants of the car at a party and they gave him a ride, but he did not know them, and Wilson did not react when he was told a gun was recovered from the car near where he was sitting. Dkt. No. 17–19, Trial Tr. at 194–95.

Finally, to the extent petitioner is raising a free-standing claim of actual innocence based on the Wilson affidavit (Ground Four), no relief is due. *See* Pet. at 6; Dkt. No. 1–2, Dec. at 1–7. A claim of " 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins,* 506 U.S. 390, 404 (1993).

**\*8** For the foregoing reasons, Grounds One and Four of the petition are procedurally defaulted and are dismissed. [4]

4    Even if petitioner's sufficiency claim was properly before the court, no relief would issue. Evidence is sufficient to support a conviction whenever, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Parker v. Matthews,* —— U.S. ——, 132 S.Ct. 2148, 2152 (2012) (per curiam) (emphasis in original) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). This inquiry "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera,* 506 U.S. at 402 (emphasis in original). Based on this record, the court cannot say that the trier of fact's decision to convict petitioner was irrational, and the verdict is well supported by the record evidence. *See* Dkt. No. 17–19, Trial Transcript.

### C. Denial of CPL § 330.30 Motion

Petitioner argues in Ground Two of the petition that the trial court erred by refusing to grant him an evidentiary hearing to review new evidence that he discovered after trial. Pet. at 5. Specifically, petitioner argues that the Wilson affidavit

exonerates him because in the affidavit, Wilson claimed sole ownership of the gun. Petitioner claims he could not have discovered this information sooner because the affidavit was signed after his trial, and he could not have called Wilson to testify because, at the time of petitioner's trial, Wilson was still under indictment and his case was not yet disposed. *See id.,* Dkt. No. 1–2, Dec. at 1–7; Reply at 21–22. Respondent argues that this claim is not cognizable on federal habeas review. R. Mem. at 13–14. This court agrees.

A federal court can grant a writ of habeas corpus only where the petitioner is in state custody in violation of "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The United States Constitution does not compel states to provide post-conviction proceedings for relief. *Lackawanna Cnty. Dist. Attorney v. Coss,* 532 U.S. 394, 402 (2001); *Pennsylvania v. Finley,* 481 U.S. 551, 557 (1987). Therefore, "alleged errors in a post-conviction proceeding are not grounds for § 2254 review." *Word v. Lord,* 648 F.3d 129, 132 (2d Cir.2011) (per curiam). Petitioner's claim is that there was a procedural defect in the conduct of a state post-conviction proceeding, because the trial court failed to hold a hearing, and federal habeas relief is not available for such alleged defects. *Word,* 648 F.3d at 132; *see Smalls v. Bradt,* No. 1:11–CV–0915, 2012 WL 3722222 at \*10 (W.D.N.Y .Aug. 27, 2012) ("Petitioner's claim that the trial court erred in denying his CPL § 330.30 motion without conducting a hearing does not implicate federal law and is not cognizable for habeas review."); *Jones v. Duncan,* 162 F.Supp.2d 204, 217–18 (S.D.N.Y.2001) (petitioner's claim that the trial court violated his due process right by denying his Section 330.30 and 440.10 motions without holding a hearing was not cognizable on habeas review).

Accordingly, Ground Two is dismissed.

### D. Ineffective Assistance of Appellate Counsel

Petitioner claims in Ground Three of his petition that appellate counsel was ineffective for failing to: (1) alert the Appellate Division that his sufficiency claim was preserved for review by trial counsel's statement during his summation; and (2) argue that his CPL § 330.30 motion was improperly denied without a hearing to develop the record with regard to the Wilson affidavit. Pet. at 6; Dkt. No. 1–2, Dec. at 6–7; Reply at 6–8.

Petitioner raised these claims in his writ of error coram nobis, and in his application for leave to appeal the denial of that writ in the New York Court of Appeals. Dkt. No.

17–11, Writ. The Appellate Division rejected them on the merits, and that decision is entitled to AEDPA deference. Dkt. No. 17–12, Decision and Order on Motion; *see Mosby v. Senkowski,* 470 F.3d 515, 519 (2d Cir.2006) ("Although the Appellate Division's summary rejection of Mosby's coram nobis petition did not mention Mosby's federal claim, it nonetheless constituted an adjudication on the merits.").

**\*9** The *Strickland* test was originally formulated in the context of evaluating claims of trial counsel's ineffectiveness, but the same test applies to appellate counsel. *Smith v. Robbins,* 528 U .S. 259, 285–86 (2000); *Evitts v. Lucey,* 469 U.S. 387, 394 (1985). To establish ineffective assistance of appellate counsel, a petitioner must demonstrate that appellate counsel's performance fell below an objective standard of professional reasonableness, and but for appellate counsel's errors, the results of the proceedings would have been different, *i.e.,* the error caused prejudice to the petitioner. *Smith,* 528 U.S. at 285–286; *Strickland,* 466 U.S. at 688, 694. A petitioner must show more than counsel's failure to raise a non-frivolous argument, because counsel is required to use professional judgment when deciding to concentrate on a few key issues while eliminating weaker arguments, and is not required to advance every argument, regardless of merit, urged by the petitioner. *Evitts,* 469 U.S. at 394; *Jones v. Barnes,* 463 U.S. 745, 751–52 (1983); *Sellan,* 261 F.3d at 317. A reviewing court must determine not whether the state court's rejection of the ineffective assistance of counsel claim was correct, but whether, under *Strickland,* it was "objectively unreasonable." *Mosby,* 470 F.3d at 519. Petitioner's disagreement with the choices counsel made, even if those choices proved unsuccessful, does not render counsel ineffective. *Strickland,* 466 U.S. at 690–91.

Petitioner's first claim, that appellate counsel was ineffective for not presenting evidence on appeal that his sufficiency claim was preserved, warrants no relief. Appellate counsel likely recognized, as noted above, that trial counsel did not properly preserve petitioner's sufficiency claim. Counsel was not ineffective for failing to raise a meritless argument. *See Torres v. McGrath,* 407 F.Supp.2d 551, 562 (S.D.N.Y.2006) ("[f]ailure to make a meritless argument does not amount to ineffective assistance.") (internal quotations and citation omitted). [5]

[5] It is worth noting that the Appellate Division has the power to review unpreserved claims in the interest of justice pursuant to CPL § 470.15(3)(c). Counsel may have decided to argue petitioner's

sufficiency claim, despite the lack of preservation, in the hope that the Appellate Division exercised that power. Appellate counsel is not ineffective simply because the Appellate Division found the claim unpreserved and declined to review it in the interest of justice. *See Anderson v. Keane,* 283 F.Supp.2d 936, 946 (S.D.N .Y.2003) (noting that the Appellate Division retains "substantial authority to decide whether review is warranted, based on the entirety of the circumstances.").

Petitioner's second claim, that appellate counsel failed to argue that the trial court improperly denied his CPL § 330.30 motion without a hearing despite petitioner's request that he include this claim, also fails. It bears repeating that counsel is not required to advance every argument urged by the petitioner. *Evitts,* 469 U.S. at 394. Appellate counsel filed a brief in which he advanced the claims he believed had the greatest chance of success. Dkt. No. 17–1, Brief and Appendix at 3–10. "This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536 (1986) (quoting *Jones,* 463 U.S. at 751–52).

In sum, the Appellate Division's rejection of petitioner's appellate counsel effectiveness claims was not objectively unreasonable, nor was it contrary to clearly established Supreme Court precedent. Ground Three of the petition is therefore denied and dismissed.

## IV. CONCLUSION
**\*10 WHEREFORE,** it is

**ORDERED** that the petition for a writ of habeas corpus, Dkt. No. 1, is **DENIED** in its entirety and **DISMISSED;** and it is further

**ORDERED** that no certificate of appealability shall issue in this case because petitioner has failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S .C. § 2253(c)(2); [6] and it is further

[6] *See Miller–El v. Cockrell,* 537 U.S. 322, 336 (2003) (" § 2253 permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right' "); *Richardson v. Greene,* 497 F.3d 212, 217 (2d

Cir.2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation") (emphasis in original) (citation omitted)).

**ORDERED** that the Clerk serve a copy of this Decision and Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 3778587

---

**End of Document**    © 2022 Thomson Reuters. No claim to original U.S. Government Works.